BRUCE L. SIMON (#96241)
PHILIP L. GREGORY (#95217)
KELLY L. BULAWSKY (#234025)
**COTCHETT, PITRE, SIMON & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Michael D. Liberty (#136088)
**LAW OFFICES OF MICHAEL D. LIBERTY**
1290 Howard Avenue, Suite 303
Burlingame, CA 94010
Telephone: (650) 685-8085
Facsimile: (650) 685-8086

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| NICKLOS CIOLINO, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY, a Delaware corporation;<br><br>    Defendant. | CIVIL ACTION NO. C 05 3580 PVT<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

---

**CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Defendant Hewlett-Packard Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   The Subject Technology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   HP's "SureSupply" Marketing Campaign . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI.  FIRST CAUSE OF ACTION
    (Violations of Business & Professions Code § 17500 et seq.) . . . . . . . . . . . . . . . . 8

VII. SECOND CAUSE OF ACTION
    (Violations of Business & Professions Code § 17200 et seq.) . . . . . . . . . . . . . . . . 8

VIII. THIRD CAUSE OF ACTION
    (Breach of Express Warranty) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IX.  FOURTH CAUSE OF ACTION
    (Breach of Implied Warranty) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

X.   FIFTH CAUSE OF ACTION
    (Breach of the Covenant of Good Faith and Fair Dealing) . . . . . . . . . . . . . . . . . 11

XI.  PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

XII. JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Plaintiff Nicklos Ciolino (referred to hereafter as "Plaintiff"), individually and on behalf of the class defined below, brings this action for damages and injunctive relief against defendant, Hewlett-Packard Company, demanding a trial by jury, and complains and alleges as follows:

## I. INTRODUCTION

1. Plaintiff brings this class action on his own behalf, and on behalf of others in the United States, who purchased HP printers and/or ink jet cartridges from January 2001 to the present (the "Class Period"). These cartridges contain a mechanism or chip, which prematurely registers that the cartridge is empty or expired. This technology in the cartridges is likely to deceive consumers into thinking that their cartridges are depleted when, in fact, they are not. The cartridges also have an undisclosed expiration date as alleged in greater detail below.

2. Defendant Hewlett-Packard Company ("HP") is the world's leading manufacturer of printers and printer supplies. The deceptive and unlawful business practices alleged herein are designed to increase the sale of its replacement ink cartridges to the detriment of consumers. While representing to consumers that HP printers should only use HP ink cartridges, HP fails to disclose to consumers the truth about its inkjet cartridge technology. The truth is that HP has engineered this technology to signal to the customer that the inkjet cartridge needs to be replaced before it is actually depleted. In addition, this "smart chip" will then steer the consumer to an HP website to purchase HP replacement cartridges online. Given all the circumstances, consumers are likely to be misled into thinking that they need to purchase new cartridges before they actually need to do so.

3. HP's smart chip cartridges also come with a built-in expiration date which is not provided to consumers and will automatically shut down the operation of the printer cartridge at a predetermined number of days after the date of manufacture. Not only is the expiration date timed well before the ink in the cartridge ceases to be usable for printing, a HP inkjet cartridge can be rendered unusable even before it is installed in a printer. Consumers who stock up on cases of cartridges may come to find that part of their inventory is unusable; particularly if the product has not been shipped from HP right away.

---

CLASS ACTION COMPLAINT

1

4. HP also claims that its cartridges provide the consumer with equal or greater value than cartridges offered by HP's competitors and will improve printer performance. Further, HP says that its cartridges will "reduce supplies waste" and are an important "part of a printing system." In reality, however, HP's "smart chip" design prevents consumers from using their HP printers in the most cost effective manner.

5. HP has sold thousands of printers and cartridges to the public during the class period and without the benefit of a class action such as this, consumers will continue to be deceived by said practices.

6. This action seeks to end HP's deceptive and unconscionable practices relating to its use of the "smart chip" in its printers and ink cartridges as well as other conduct improperly hastening the replacement of HP ink cartridges, and seeks damages and injunctive relief related to that conduct.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this civil action pursuant to the Class Action Fairness Act, and particularly, 28 U.S.C. § 1332(d)(2), as the matter in controversy in this action exceeds $5,000,000.00 and is a class action in which some members of the class of plaintiffs are citizens of a state that is different from the Defendant Hewlett Packard.

8. Venue is proper in this District, and in particular the San Jose Division, under 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b) and (c), because Hewlett-Packard maintains its headquarters, transacts business, maintains offices, or is otherwise found within this District; and the Defendant's unlawful acts giving rise to Plaintiff's claim occurred, and a substantial portion of the affected trade and commerce described below has been carried out in this District.

## III. THE PARTIES

### A. Plaintiff

9. Plaintiff Nicklos Ciolino, an individual, is a resident of San Mateo County, California, and the owner of an HP printer that utilizes cartridges with "smart-chip" technology. He purchased an HP inkjet printer, model HP PSC 2510 Photosmart at CompUSA in South San Francisco, California.

CLASS ACTION COMPLAINT

**B.     Defendant Hewlett-Packard Company**

10.    Defendant HP is a publicly traded corporation with its principal office and headquarters in Palo Alto, California. HP's Imaging and Printing Group provides home and business printing, imaging and publishing devices, digital products and printer supplies, and consumables, such as ink or toner cartridges.

11.    Substantially all of the profits generated by HP's Imaging and Printing Group result from the sale of ink cartridges. The printer and cartridge business is much like razors and razorblades, in that the printers are priced low since the margins on the cartridges are high. Printer supplies account for half of the annual revenues generated by HP's Imaging and Printing Group. According to HP, 10 percent of revenue year-over-year is generated by the sale of consumables: "The growth in revenue was driven by the continuing increase in HP's installed base and growth in ink-intensive digital imaging solutions and applications."

## IV. CLASS ACTION ALLEGATIONS

12.    Plaintiff brings this action on behalf of himself, and pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following Class:

> **All purchasers in the United States who, during the period from at least January 2001 to the present, purchased HP inkjet printers which used cartridges that contain a technology, which prematurely registers that the cartridge is empty or expired, and/or purchasers of the HP inkjet cartridges with said technology. Excluded from the Class are (1) employees of the defendant, including its officers or directors; (2) defendant's affiliates, subsidiaries, or co-conspirators; and (3) the Court to which this case is assigned.**

13.    Plaintiff does not know the exact number of Class members, since such information is in the exclusive control of the Defendant. However, Plaintiff believes that due to the nature of the trade and commerce involved, Class members are sufficiently numerous, most likely thousands of purchasers, and geographically dispersed throughout the United States, that joinder of all Class members is impracticable. The information as to the identity of the Class members can be readily determined from records maintained by the Defendant and its agents. Fed.R.Civ.P.23(a)(3)

14.    Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff is a direct purchaser of HP "smart chip" technology and, by

CLASS ACTION COMPLAINT

3

asserting his claim, will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of HP and their co-conspirators as alleged herein, and the relief sought is common to the Class. Fed.R.Civ.P. 23(a)(3).

15.  The common legal and factual questions which do not vary from class member to class member and which may be determined without reference to individual circumstances of any class member include, but are not limited to, the following:

   a.  Whether Defendant has undertaken a common business practice of producing and selling to the public inkjet printers which contain HP cartridges that mislead the consumer into thinking the cartridge is empty when it still has ink in it;

   b.  Whether Defendant adequately disclosed this condition, and/or concealed said material;

   c.  Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

   d.  Whether Defendant's use of advertising and other representations constitutes unfair competition and unfair, deceptive, untrue or misleading advertising;

   e.  Whether Defendant failed to disclose material facts about the subject HP cartridges and printers;

   f.  Whether Defendant was unjustly enriched by its conduct;

   g.  Whether Defendant breached its warranties with Plaintiff and the Class;

   h.  Whether Defendant breached the implied covenant of good faith and fair dealing with Plaintiff and the Class; and

   i.  Whether class members are entitled to monetary recovery including punitive damages, restitution, disgorgement of profits, and injunctive relief, and the proper measure, nature and extent of such relief.

16.  Those common questions and others predominate over questions, if any, that affect only individual members of the Class. Fed.R.Civ.P.23(a)(3)

---

**CLASS ACTION COMPLAINT**

4

1   17.   Plaintiff and its counsel will fairly and adequately represent the interests of the
2   Class in that Plaintiff is a typical direct purchaser of HP "smart chip" technology. There are no
3   material conflicts with any other member of the Class that would make class certification
4   inappropriate. Plaintiff has retained attorneys experienced in the prosecution of class actions,
5   including complex cases and consumer actions, and Plaintiff intends to prosecute this action
6   vigorously. Fed.R.Civ.P.23(a)(3)
7   18.   A class action is superior to other available methods for the fair and efficient
8   adjudication of this controversy, since individual litigation of the claims of all class members is
9   impracticable. Even if every class member could afford individual litigation, the court system
10  could not. It would be unduly burdensome on the courts if individual litigation of numerous
11  cases would proceed. By contrast, the conduct of this action as a class action, with respect to
12  some or all of the issues presented in this Complaint, presents fewer management difficulties,
13  conserves the resources of the parties and of the court system, and protects the rights of each
14  class member. Fed.R.Civ.P.23(a)(3)
15  19.   Prosecution of separate actions by individual Class members would create the risk
16  of inconsistent or varying adjudications, establishing incompatible standards of conduct for the
17  Defendant and would magnify the delay and expense to all parties and to the court system
18  resulting from multiple trials of the same complex factual issues. Fed.R.Civ.P.23(a)(3)
19  20.   Injunctive relief is appropriate as to the Class as a whole because Defendant has
20  acted or refused to act on grounds generally applicable to the Class. Fed.R.Civ.P.23(a)(3)
21  21.   Whatever difficulties may exist in the management of the class action will be
22  greatly outweighed by the benefits of the class action procedure, including, but not limited to,
23  providing Class members with a method for the redress of claims that may not otherwise warrant
24  individual litigation.

## V.   FACTUAL ALLEGATIONS

**A.   The Subject Technology**

27  22.   The Wall Street Journal has reported that "profit margins on H-P's ink and toner
28  remain some of the most envied in the technology industry, at more than 50% for toner and more

---

CLASS ACTION COMPLAINT

5

than 60% for ink cartridges." A typical, black and white HP replacement cartridge costs around $35.00, while it costs HP much less to produce it, with some estimates as low as $3.00 to manufacture the cartridge. Replacement cartridges for the higher-end, color printers are more expensive.

23. By investing an annual $1 billion on the engineering of its ink and toner cartridges, HP developed and embedded into their printer cartridges what they call a "smart chip." HP claims that the smart chip is designed to improve printer performance by reporting to the consumer the remaining ink levels and signaling when ink must be reordered. According to HP, the smart chip stores information about the type and status of the supply of ink in the cartridge. Once the ink level is registered as low, the printer will send a warning message to the consumer that the ink level is low and the cartridge needs to be replaced.

24. In reality, the smart chip is pre-programmed to prematurely register ink replacement long before depletion of the ink supply. Frequently, these cartridges can register as empty when the cartridge has substantial ink left. These cartridges are required for HP's most commonly used personal inkjet printers, including, but not limited to the PSC 2510 Photosmart All-in-One, DeskJet 812C, 840C, 842C, as well as the 2000C and 2500C high end printers used by businesses.

25. Moreover, without regard to the actual supply of remaining ink available in a cartridge, the smart chip renders a cartridge unusable through the use of a built-in expiration date that is concealed from consumers. The external date stamp visible to the consumer is, in fact, two years premature of the built-in expiration date, representing instead the end of warranty date which is two and a half years following the date of manufacture.

26. The true expiration date relates only to cartridges installed before the "install-by" date. For cartridges installed after the "install-by" date, the in-printer-life of the cartridge will be less than the standard 30 months life of the cartridge. HP fails to explain the expiration feature at the point of purchase and omits such information in their marketing materials.

27. The "smart chip's" design deliberately limits the consumer in his or her ability to use the cartridge to its full ink potential, and deprives the consumer of choice. For example HP

---

CLASS ACTION COMPLAINT

welds its cartridges and uses different printer head designs, preventing the consumer from attempting to refill the cartridge. Additionally, according to the Limited Warranty for HP Inkjet Print Cartridge Printerheads and Ink Supplies, HP will void the warranty on any printer or cartridge if a cartridge was refilled using a third party device. Thus, HP compounds the impact of the "smart chip" technology by directing consumers to use only their cartridges, and designing them so that they cannot be refilled by third parties, which is a much cheaper way to replace ink.

### B. HP's "SureSupply" Marketing Campaign

28. Using the "smart chip" to increase HP sales of replacement ink cartridges includes not only deceiving consumers into believing they need new ink, but that they specifically need HP ink. As such, part of the "smart chip" technology leads consumers directly to the online purchase of HP replacement cartridges. Such tactics are part of the "SureSupply" campaign.

29. SureSupply, as promoted on HP's website, describes the "smart chip" technology as, "...a free user-friendly tool enabled through Smart printing technology that provides you with an easy way to manage and purchase HP genuine printing supplies..." SureSupply urges the consumer to buy HP products online in an effort to "Print 24/7," "Never run out of supplies..." and "make the reordering of new supplies a no-brainer."

30. HP's website and literature are devoted to promoting its own line of cartridges to the exclusion of alternative options that may exist for the consumer. For example, HP's website promotes how "SureSupply automatically tracks and manages customers' toner or ink level usage, and provides alerts via email or cell phone when toner or ink is low. With a couple of clicks of a button, customers can access cartridge information, pricing and purchasing options that best meet their needs from the reseller of their choice."

31. HP further scares the consumer into believing that their printer will underperform if third party consumables are used. HP states, "We recognize that people have a choice, but we feel it's incredibly important that people make a choice in an informed environment." In truth, HP has designed it printers with the intention of preventing consumers from using consumables offered by third parties.

---

CLASS ACTION COMPLAINT

7

32. HP's marketing campaign is designed to limit the consumer's freedom to choose, and wrongly describes the smart chip as a "free tool which benefits the consumer".

33. Absent from HP's marketing material is any mention of the "smart chip's" predetermined shelf-life or premature signals of ink depletion. HP has deliberately withheld from its consumers information about the true functioning of the smart chip in a effort to prevent damage to their bottom line.

## VII. FIRST CAUSE OF ACTION

### (Violations of Business & Professions Code § 17500 et seq.)

34. Plaintiff incorporates and realleges all of the foregoing paragraphs, as though fully set forth herein.

35. Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of their goods and services, and other practices, as set forth above, which are not as advertised or as otherwise represented, constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, under Business & Professions Code Section 17500. These advertisements and practices have deceived, and are likely to deceive, the consuming public, in violation of those sections.

36. Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiff, the Class, and the public.

37. Plaintiff and the Class are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business acts or practices, and enjoining Defendant to cease and desist from engaging in the practices described herein.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## VI. SECOND CAUSE OF ACTION

### (Violations of Business & Professions Code § 17200 et seq.)

38. Plaintiff incorporates and realleges all of the foregoing paragraphs, as though fully set forth herein.

---

CLASS ACTION COMPLAINT

8

39. Defendant has engaged in unfair competition within the meaning of California Business & Professions Code § 17200 et seq. because Defendant's conduct is fraudulent, unfair and illegal as herein alleged. Defendant's conduct was substantially injurious to Plaintiff.

40. Defendant's hereinabove alleged wrongful business acts constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is selling their products and marketing them in a manner that is likely to deceive the public, and Plaintiff suffered actual harm associated therewith.

41. Defendant's business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that HP cartridges are empty of ink or that HP cartridges are expired when this is not true. Consumers are further injured when their printers begin to malfunction as a result of premature warnings of ink depletion and cartridge expiration, and when they are caused to purchase new cartridges before the old ones have really run out of ink. Consumers are further harmed by cartridges which expire without warning.

42. Defendant's business practices are unlawful because the conduct constitutes a breach of warranty, false marketing and advertising, as well as the other causes of action herein alleged.

43. The practices are fraudulent because they were likely to deceive consumers into believing that their cartridges were empty and could cause damage to the printer, or that their cartridges were expired and must be replaced.

44. Plaintiff has standing to pursue this claim as the Plaintiff has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiff, the Class, and the public.

45. Plaintiff and the Class are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

obtained by Defendant as a result of such business acts or practices, and enjoining Defendant to cease and desist from engaging in the practices described herein.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## VIII. THIRD CAUSE OF ACTION

### (Breach of Express Warranty)

46. Plaintiff incorporates and realleges all of the foregoing paragraphs, as though fully set forth herein.

47. Defendant HP issued written warranties to Plaintiff and the Class wherein Defendant warranted that their inkjet printers and cartridges were fit for the purpose for which they were intended, and were free of defects.

48. Plaintiff and the Class have performed all conditions, covenants and promises required to be performed on their part in accordance with the warranties.

49. As unsophisticated consumers, Plaintiff and the Class are relieved of any notice requirement, and HP, who has superior knowledge of its technology, should be estopped from asserting lack of notice as a defense.

50. HP was a remote seller and Plaintiff did not deal directly with HP.

51. Defendant has breached warranty obligations with the use of an expiration date as to the 'smart chip" cartridges that begins to run at point of manufacture, not at point of purchase as stated in paragraph one of the Hewlett-Packard Limited Warranty.

52. Defendant has breached warranty by engineering its cartridges to prematurely signal that they must be replaced.

53. Defendant breached the warranties by undertaking the wrongful acts hereinabove alleged.

54. Defendant's breach of the warranty was a substantial factor in causing Plaintiff and the Class to suffer economic losses and other general, consequential and specific damages, according to proof.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

---

CLASS ACTION COMPLAINT

10

## IX. FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty)

55.     Plaintiff incorporates and realleges all of the foregoing paragraphs, as though fully set forth herein.

56.     Plaintiff and the Class entered into implied warranties with Defendant wherein Defendant warranted that their inkjet printers and cartridges were fit for the purpose for which they were intended, and were free of defects.

57.     Plaintiff and the Class have performed all conditions, covenants and promises required to be performed on their part in accordance with the warranties.

58.     Defendant breached the warranties by undertaking the wrongful acts hereinabove alleged.

59.     As a result of Defendant's breach of the warranty, Plaintiff and the Class have suffered economic losses and other general, consequential and specific damages, including the amount paid for printing using "smart chip" cartridges, according to proof.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## X. FIFTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

60.     Plaintiff incorporates and realleges all of the foregoing paragraphs, as though fully set forth herein.

61.     The warranties entered into between Plaintiff and the Class and Defendant are contracts that contain an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the contracts fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiff and the Class from performing any or all conditions of the contracts that they agreed to perform, or any acts that would deprive Plaintiff and the Class of their benefits.

62.     Plaintiff and the Class performed all conditions, covenants and promises to be performed on their part in accordance with the contracts.

CLASS ACTION COMPLAINT

11

63.  Defendant knew Plaintiff and the Class fulfilled all their duties and conditions under the contract.

64.  Defendant breached the implied covenant of good faith and fair dealing under the contracts by engaging in the conduct complained of herein, including increasing the cost of use of HP printers through its smart chip technology.

65.  As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have suffered economic losses and other general, consequential and specific damages, including the amount paid for the portability fees, according to proof.

66.  The aforementioned acts of Defendant were done maliciously, oppressively, and with intent to defraud, and Plaintiff and the Class are entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## XI. PRAYER FOR RELIEF

1.  Certification of the proposed class and notice thereto to be paid by Defendant;

2.  For restitution and disgorgement on certain causes of action;

3.  For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

4.  For compensatory and general damages according to proof on certain causes of action;

5.  For special damages according to proof on certain causes of action;

6.  Prejudgment interest at the maximum rate;

7.  Costs of the proceedings herein;

8.  Reasonable attorneys fees as allowed by statute; and

9.  All such other and further relief as the Court deems just and proper.

Dated: September 6, 2005        COTCHETT, PITRE, SIMON & McCARTHY
                                LAW OFFICES OF MICHAEL D. LIBERTY

                                By: _____
                                    BRUCE L. SIMON
                                    *Attorneys for Plaintiffs and the Class*

---

CLASS ACTION COMPLAINT

## XIII. JURY DEMAND

Plaintiff on behalf of himself and all others similarly situated hereby request a jury trial on the claims so triable.

Dated: September 6, 2005

**COTCHETT, PITRE, SIMON & McCARTHY**
**LAW OFFICES OF MICHAEL D. LIBERTY**

By: _____
BRUCE L. SIMON
*Attorneys for Plaintiffs and the Class*

---

**CLASS ACTION COMPLAINT**

13