1  BRUCE L. SIMON (#96241)
   **COTCHETT, PITRE, SIMON & McCARTHY**
2  San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
3  Burlingame, CA 94010
   Tel: (650) 697-6000
4  Fax: (650) 692-3606

5  PATRICK McNICHOLAS (#125868)
   **McNICHOLAS & McNICHOLAS, LLP**
6  10866 Wilshire Blvd., Suite 1400
   Los Angeles, CA 90024
7  Tel: (310) 474-1582
   Fax: (310) 475-7871

8
   JONATHAN SHUB (#237708)
9  **SHELLER, LUDWIG & BADEY**
   1528 Walnut Street, 3rd Floor
10 Philadelphia, PA 19102
   Tel: (215) 790-7300
11 Fax: (215) 546-0942

12 *Co-Lead Counsel*

13 Other Counsel listed in signature page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| In re: HP INKJET PRINTER LITIGATION | MASTER FILE NO. C053580 JF |
| | **CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| This Document Relates To: | |
| All Actions | **DEMAND FOR JURY TRIAL** |

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | JURISDICTION AND VENUE | 2 |
| III. | THE PARTIES | 2 |
| | A. Plaintiffs | 2 |
| | B. Defendant Hewlett-Packard Company | 2 |
| IV. | CLASS ACTION ALLEGATIONS | 2 |
| V. | FACTUAL ALLEGATIONS | 5 |
| | A. The Subject Technology | 5 |
| | B. HP's "SureSupply" False Advertising Campaign | 7 |
| VI. | FIRST CAUSE OF ACTION (Breach of Express Warranty) | 7 |
| VII. | SECOND CAUSE OF ACTION (Breach of Implied Warranty) | 8 |
| VIII. | THIRD CAUSE OF ACTION (Unjust Enrichment) | 9 |
| IX. | FOURTH CAUSE OF ACTION (Violations of Civil Code § 1750 *et seq.*) | 10 |
| X. | FIFTH CAUSE OF ACTION (Violations of Business & Professions Code § 17500 *et seq.*) | 11 |
| XI. | SIXTH CAUSE OF ACTION (Violations of Business & Professions Code § 17200 *et seq.*) | 11 |
| XII. | PRAYER FOR RELIEF | 13 |
| XIII. | DEMAND FOR JURY TRIAL | 14 |

Plaintiffs Nicklos Ciolino and Daniel Feder (hereinafter "Plaintiffs"), individually and on behalf of the Class defined below, bring this action for damages and injunctive relief against Defendant, Hewlett-Packard Company, demanding a trial by jury, and complain and allege as follows:

## I. INTRODUCTION

1. Defendant Hewlett-Packard Company (hereinafter "HP" or "Defendant"), the world's leading manufacturer of printers and printer supplies, engages in deceptive and unconscionable conduct designed to increase the sale of its very profitable replacement ink cartridges to the detriment of, and at the cost to, unsuspecting consumers. At the heart of this unlawful conduct is what HP calls its "smart chip," which HP has embedded into printer cartridges claiming with much fanfare that the chip will improve "printer performance." It does not.

2. HP's claims relating to the "smart chip" technology are misleading and false and harm consumers. For example, the "smart chip" is designed and programmed to send a premature and false message to consumers advising them that they will need to purchase a replacement cartridge of ink, when in fact, the printer cartridge is far from empty and is capable of printing hundreds of additional pages. The "smart chip" also steers consumers to an HP sponsored website to purchase HP replacement cartridges online before the consumer in fact needs replacement ink. Additionally, the "smart chip" has been programmed in conjunction with the use of various HP printer models, to automatically prevent the use of a printer cartridge, even if full or nearly full, on a date predetermined by HP. This expiration date is timed well before the ink in the cartridge ceases to be useable for printing. Each of these examples, illustrate HP's ongoing effort to use its "smart chip" technology to deceive consumers into purchasing additional ink from HP.

3. This lawsuit, brought on behalf of consumers of HP printers and ink cartridges, seeks to end HP's deceptive and unconscionable practices relating to its use of the "smart chip" in its printers and ink cartridges and prays for relief addressing HP's conduct, including without

---

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT
1

1 limitation, relief in the form of damages, restitution and injunctions, as indicated in each cause of
2 action.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this civil action pursuant to the Class Action Fairness Act, and particularly, 28 U.S.C. § 1332(d)(2), as the matter in controversy in this action exceeds $5,000,000.00 and is a class action in which some members of the class of plaintiffs are citizens of a state that is different from the Defendant.

5. Venue is proper in this District, and in particular the San Jose Division, under 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b) and (c), because Hewlett-Packard maintains its headquarters, transacts business, maintains offices, or is otherwise found within this District; and the Defendant's unlawful acts giving rise to Plaintiffs' claim occurred, and a substantial portion of the affected trade and commerce described below has been carried out in this District.

## III. THE PARTIES

### A. Plaintiffs

6. Plaintiff Nicklos Ciolino, an individual, is a resident of San Mateo County, California, and is the owner of an HP printer that utilizes cartridges with "smart chip" technology. He purchased his HP printer for personal, family of household use.

7. Plaintiff Daniel Feder, an individual, is a resident of Marin County, California, and is the owner of an HP printer that utilizes the cartridges with "smart chip" technology. He purchased his HP printer for personal, family of household use.

### B. Defendant Hewlett-Packard Company

8. Defendant Hewlett-Packard Company is a publicly traded corporation with worldwide corporate headquarters in Palo Alto, California.

## IV. CLASS ACTION ALLEGATIONS

9. Plaintiffs bring this action on behalf of themselves, and pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following Class:

///
///

---

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT
2

**All purchasers who, whether for business, personal, family, household or other use, purchased HP inkjet printers which use cartridges containing a technology that prematurely registers the cartridge as empty or expired, and/or who purchased HP inkjet cartridges with said technology. Excluded from the Class are (1) employees of the defendant, including its officers or directors; (2) defendant's affiliates, subsidiaries, or co-conspirators; and (3) the Court to which this case is assigned.**

10. Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of the Defendant. However, Plaintiffs believe that due to the nature of the trade and commerce involved, Class members are sufficiently numerous, most likely thousands of purchasers, and geographically dispersed throughout the United States, and that joinder of all Class members is impracticable. The information as to the identity of the Class members can be readily determined from records maintained by the Defendant and its agents. Fed.R.Civ.P.23(a)(3)

11. Plaintiffs' claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiffs are direct purchasers of HP "smart chip" technology and, by asserting their claims, will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of HP and their co-conspirators as alleged herein, and the relief sought is common to the Class. Fed.R.Civ.P. 23(a)(3)

12. The common legal and factual questions which do not vary from Class member to Class member and which may be determined without reference to individual circumstances of any Class member include, but are not limited to, the following:

    a. Whether Defendant has undertaken a common business practice of producing and selling to the public inkjet printers which are compatible with HP replacement ink cartridges containing the so-called "smart chip" technology that send an electronic message misleading the consumer into thinking the cartridge is empty or low on ink;

    b. Whether Defendant has undertaken a common business practice of selling inkjet printers that will disable or render unuseable an HP replacement ink cartridge containing the so-called "smart chip" technology after a predetermined expiration date;

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT
3

    c.    Whether Defendant adequately disclosed these practices, and/or concealed materials related to these practices;

    d.    Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

    e.    Whether Defendant's use of advertising and other representations constitutes unfair competition and unfair, deceptive, untrue or misleading advertising;

    f.    Whether Defendant failed to disclose material facts about the subject HP cartridges and printers;

    g.    Whether Defendant was unjustly enriched by its conduct;

    h.    Whether Defendant breached its warranties with Plaintiff and the Class;

    i.    Whether Defendant breached the implied covenant of good faith and fair dealing with Plaintiff and the Class; and

    j.    Whether Class members are entitled to monetary recovery including punitive damages, restitution, disgorgement of profits, and injunctive relief, and the proper measure, nature and extent of such relief.

13. These common questions and others predominate over questions, if any, that affect only individual members of the Class. Fed.R.Civ.P.23(a)(3)

14. Plaintiffs and their counsel will fairly and adequately represent the interests of the Class in that Plaintiffs are typical direct purchasers of HP "smart chip" technology. There are no material conflicts with any other member of the Class that would make class certification inappropriate. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including complex cases and consumer actions, and Plaintiffs intend to prosecute this action vigorously. Fed.R.Civ.P.23(a)(3)

15. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous

1  cases would proceed. By contrast, the conduct of this action as a class action, with respect to
2  some or all of the issues presented in this Complaint, presents fewer management difficulties,
3  conserves the resources of the parties and of the court system, and protects the rights of each
4  Class member. Fed.R.Civ.P.23(a)(3)

5      16.    Prosecution of separate actions by individual Class members would create the risk
6  of inconsistent or varying adjudications, establishing incompatible standards of conduct for the
7  Defendant and would magnify the delay and expense to all parties and to the court system
8  resulting from multiple trials of the same complex factual issues. Fed.R.Civ.P.23(a)(3)

9      17.    Injunctive relief is appropriate as to the Class as a whole because Defendant has
10 acted or refused to act on grounds generally applicable to the Class. Fed.R.Civ.P.23(a)(3)

11     18.    Whatever difficulties may exist in the management of the class action will be
12 greatly outweighed by the benefits of the class action procedure, including, but not limited to,
13 providing Class members with a method for the redress of claims that may not otherwise warrant
14 individual litigation.

## V. FACTUAL ALLEGATIONS

### A. The Subject Technology

17     19.    HP's Imaging and Printing Group provides home and business printing, imaging
18 and publishing devices, digital products and printer supplies, and consumables, such as ink and
19 toner cartridges.

20     20.    Substantially all of the profits generated by HP's Imaging and Printing Group
21 result from the sale of ink cartridges. The printer and ink cartridge business is much like razors
22 and razor blades, in that the printers are priced low because the margins on the cartridges are
23 high. Printer supplies account for half of the annual revenues generated by HP's Imaging and
24 Printing Group. According to HP, 10 percent of revenue year-over-year is generated by the sale
25 of consumables: "The growth in revenue was driven by the continuing increase in HP's installed
26 base and growth in ink-intensive digital imaging solutions and applications."

27     21.    The Wall Street Journal has reported that "profit margins on H-P's ink and toner
28 remain some of the most envied in the technology industry, at more than 50% for toner and more

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT
5

than 60% for ink cartridges." A typical, black and white HP replacement cartridge costs about $35.00 to purchase, while it costs HP much less to produce it, with some estimates as low as $3.00 to manufacture the cartridge. Replacement cartridges for the higher-end, color printers are more expensive.

22. By investing an annual $1 billion on the engineering of its ink and toner cartridges, HP developed a "smart chip" that HP embedded into its printer cartridges. HP claims that the "smart chip" is designed to improve printer performance by reporting to the consumer the remaining ink levels and signaling when ink must be reordered. According to HP, the "smart chip" stores information about the type and status of the supply of ink in the cartridge. Once the ink level is registered as low, the printer will send a warning message to the consumer that the ink level is low and the cartridge needs to be replaced.

23. In reality, the "smart chip" is programmed to prematurely register ink replacement long before depletion of the ink supply. Frequently, these cartridges can register as empty when they in fact have substantial ink remaining. These cartridges are required for HP's most commonly used personal inkjet printers, including, but not limited to, the PSC 2510 Photosmart All-in-One, DeskJet 812C, 840C, 842C, as well as the 2000C and 2500C high end printers used by businesses.

24. Moreover, without regard to the actual supply of remaining ink available in a cartridge, the "smart chip" is capable of rendering a cartridge unusable through the use of a built-in expiration date that is concealed from consumers. An external date stamp instead only discloses the end of warranty date, but not the date in which the cartridge is rendered unuseable.

25. HP fails to explain the expiration feature at the point of purchase and omits such information in their marketing materials.

26. According to the Limited Warranty for HP Inkjet Print Cartridge Printerheads and Ink Supplies, HP will void the warranty on any printer or cartridge if a cartridge was refilled using a third party device. Thus, HP compounds the impact of the "smart chip" technology by directing consumers to use only their cartridges, and designing them so that they cannot be refilled by third parties, which is a much cheaper way to replace ink.

### B. HP's "SureSupply" False Advertising Campaign

27. As part of its "SureSupply" campaign, HP promotes the "smart chip" technology as "a free user-friendly tool enabled through Smart printing technology that provides you with an easy way to manage and purchase HP genuine printing supplies..." HP's website claims that "SureSupply automatically tracks and manages customers' toner or ink level usage, and provides alerts via email or cell phone when toner or ink is low. With a couple of clicks of a button, customers can access cartridge information, pricing and purchasing options that best meet their needs from the reseller of their choice."

28. The "SureSupply" campaign is false because, in fact, the design of the "smart chip" deliberately limits a consumer's ability to use an ink cartridge to its full potential. "Smart chips" and the "SureSupply" campaign deceive customers into falsely believing that their cartridges are empty and can cause damage to the printer, or that their cartridge are expired and must be replaced. Absent from HP's marketing material is any mention of the "smart chip's" predetermined shelf-life or premature signals of ink depletion. The use of cartridges embedded with "smart chip" technology increases the consumers' cost to use HP printers. HP has deliberately withheld from its consumers information about the true functioning of the smart chip in a effort to prevent damage to their bottom line.

## VI. FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

29. Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 28, inclusive, set forth above.

30. Defendant HP issued written warranties to Plaintiffs and the Class wherein Defendant warranted that their inkjet printers and cartridges were fit for the purpose for which they were intended, and were free of defects.

31. Plaintiffs and the Class purchased HP inkjet printers and cartridges from HP and/or HP-authorized retailers. Plaintiffs relied on representations made by HP in HP's labels and marketing materials.

32. Plaintiffs and the Class have performed all conditions, covenants and promises required to be performed on their part in accordance with the warranties.

33. As unsophisticated consumers, Plaintiffs and the Class are relieved of any notice requirement, and HP, who has superior knowledge of its technology, is estopped from asserting lack of notice as a defense.

34. At all times, HP had knowledge of the deceptive and misleading nature of the printers and cartridges equipped with "smart chip" technology because HP developed this technology. Therefore, notification to HP would serve no purpose, and based on this additional basis, HP is estopped from asserting lack of notice as a defense.

35. Defendant has breached warranty obligations with the use of an expiration date as to the "smart chip" cartridges that begins to run at point of manufacture, not at point of purchase as stated in paragraph one of the Hewlett-Packard Limited Warranty.

36. Defendant has breached its warranty obligations by engineering its cartridges to prematurely signal that they must be replaced.

37. Defendant has breached its warranty obligations by undertaking the wrongful acts herein alleged.

38. Defendant's breach of the warranty was a substantial factor in causing Plaintiffs and the Class to suffer economic losses and other general, consequential and specific damages, according to proof.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## VII. SECOND CAUSE OF ACTION

### (Breach of Implied Warranty)

39. Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 28, and 30 through 38, set forth above.

40. Defendant had direct dealings with Plaintiffs and the Class through its vast marketing efforts and the interactive features of the "smart chip" technology and "SureSupply" campaign. As a result of the direct dealings with Defendant, Plaintiffs and the Class purchased HP inkjet printers and cartridges from HP and/or HP-authorized retailers. Plaintiffs and the

Class relied on HP's skill and judgment to furnish printers and cartridges suitable for the purpose for which they are intended.

41. Defendant impliedly warranted that their inkjet printers and cartridges were fit for the purpose for which they were intended, and free of defects. Plaintiffs and the Class are the intended beneficiaries of Defendant's implied warranties.

42. Plaintiffs and the Class have performed all conditions, covenants and promises required to be performed on their part in accordance with the warranties.

43. Defendant breached the warranties by undertaking the wrongful acts herein alleged.

44. As a result of Defendant's breach of the warranty, Plaintiffs and the Class have suffered economic losses and other general, consequential and specific damages, including the amount paid for printing using "smart chip" cartridges, according to proof.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## VIII. THIRD CAUSE OF ACTION

### (Unjust Enrichment)

45. Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 28, inclusive, set forth above.

46. As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

47. Specifically, Defendant's programming of the "smart chip" to call for replacement of printer cartridges prior to depletion of ink and with a pre-determined shut down date, regardless of remaining supplies, and Defendant's concealment of these facts from consumers of printers and printer cartridges utilizing the so-called "smart chip" technology resulted in Defendant's wrongful receipt of profits.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

///
///

## IX. FOURTH CAUSE OF ACTION

### (Violations of Civil Code § 1750 *et seq.*)

48. Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 28, inclusive, set forth above.

49. The Consumers Legal Remedies Act, Civil Code Section 1750 *et seq.* (hereinafter "CLRA") was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code Section 1170.

50. The CLRA applied to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services for personal, family or household use.

51. At all relevant times, Plaintiffs and members of the Class were "consumers" as that term is defined in Civil Code Section 1761(d).

52. The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code Section 1761.

53. Defendant's practices in connection with the marketing and sale of its printers and printer cartridges violate the CLRA in at least the following respects:

   a. In violation of Section 1170(a)(5), Defendant has represented that the HP cartridges have characteristics that they do not have;

   b. In violation of Section 1770(a)(9), Defendant has advertised the HP cartridges with an intent not to sell them as advertised; and

   c. In violation of Section 1170(15), Defendant represented that printer cartridge replacement was needed when it was not.

54. Defendant's failure to disclose and knowing concealment of the true function, design and operation of the "smart chip" technology and the true ink level in printer cartridges are omissions and concealments of material fact that constitute unfair and/or deceptive business practices in violation of Civil Code Section 1170(a).

55. Defendant's violations of Civil Code Section 1170 present a continuing threat to members of the public in that Defendant is continuing to engage in the practices alleged herein, and will not cease until an injunction is issued by this Court.

56. Plaintiffs will provide Defendant with notice and opportunity to cure its violations. In the event Defendant fails to do so, Plaintiffs will amend this complaint to seek actual and punitive damages.

57. Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to Civil Code Section 1780(d).

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## X. FIFTH CAUSE OF ACTION

### (Violations of Business & Professions Code § 17500 *et seq.*)

58. Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 28, 30 through 37, 40 through 43, 46 and 49 through 55, inclusive, set forth above.

59. Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of their goods and services, and other practices, as set forth above, which are not as advertised or as otherwise represented, constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, under Business & Professions Code Section 17500. These advertisements and practices have deceived, and are likely to deceive, the consuming public, in violation of those sections.

60. Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiffs, the Class, and the public.

61. Plaintiffs and the Class are entitled to injunctive relief, enjoining Defendant to cease and desist from engaging in the practices described herein.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## XI. SIXTH CAUSE OF ACTION

### (Violations of Business & Professions Code § 17200 *et seq.*)

62. Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 28, 30 through 37, 40 through 43, 46, and 49 through 55, inclusive, set forth above.

63. Defendant has engaged in unfair competition within the meaning of California Business & Professions Code Section 17200 *et seq.* because Defendant's conduct is fraudulent, unfair and illegal as herein alleged. Defendant's conduct was substantially injurious to Plaintiffs.

64. Defendant's wrongful business acts constituted, and constitute, a continuing course of conduct of unfair competition because Defendant is selling its products and marketing them in a manner that is likely to deceive the public, and Plaintiffs suffered actual harm as a result.

65. Defendant's business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that HP cartridges are empty of ink or that the ink in the HP cartridges is unusable when this is not true. Consumers are further injured when their printers begin to malfunction as a result of premature warnings of ink depletion and cartridge expiration and when they are caused to purchase new cartridges before the old ones have really run out of ink. Consumers are further harmed by cartridges which expire without warning.

66. Defendant's business practices are unlawful because the conduct constitutes a breach of warranty, false marketing and advertising, as well as the other causes of action herein alleged.

67. The practices are fraudulent because they were likely to deceive consumers into believing that their cartridges were empty and could cause damage to the printer, or that their cartridges were expired and must be replaced.

68. Plaintiffs have standing to pursue this claim because Plaintiffs have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiffs, the Class, and the public.

69. Plaintiffs and the Class are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

obtained by Defendant as a result of such business acts or practices, and enjoining Defendant to cease and desist from engaging in the practices described herein.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## XII. PRAYER FOR RELIEF

1. Certification of the proposed Class and notice thereto to be paid by Defendant;

2. For restitution and disgorgement on certain causes of action;

3. For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

4. For an injunction ordering Defendant to provide informative disclosures and education to the public regarding the "smart chip" technology;

5. For compensatory and general damages according to proof on certain causes of action;

6. For special damages according to proof on certain causes of action;

7. Prejudgment interest at the maximum rate;

8. Costs of the proceedings herein;

9. Reasonable attorneys' fees as allowed by statute; and

10. All such other and further relief as the Court deems just and proper.

Dated: October 31, 2005

COTCHETT, PITRE, SIMON & McCARTHY
McNICHOLAS & McNICHOLAS, LLP
SHELLER, LUDWIG & BADEY
LAW OFFICES OF MICHAEL D. LIBERTY
THE GARCIA LAW FIRM
CHAVEZ & GERTLER LLP
CUNEO, WALDMAN & GILBERT, LLC
SEEGER WEISS LLP
EDELSON & ASSOCIATES, LLC
LAW OFFICES OF SCOTT E. SHAPIRO, P.C.

By: _____
BRUCE L. SIMON
*Co-Lead Counsel for Plaintiffs and the Class*

## XIII. DEMAND FOR JURY TRIAL

Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial on the claims so triable.

Dated: October 31, 2005

COTCHETT, PITRE, SIMON & McCARTHY
McNICHOLAS & McNICHOLAS, LLP
SHELLER, LUDWIG & BADEY
LAW OFFICES OF MICHAEL D. LIBERTY
THE GARCIA LAW FIRM
CHAVEZ & GERTLER LLP
CUNEO, WALDMAN & GILBERT, LLC
SEEGER WEISS LLP
EDELSON & ASSOCIATES, LLC
LAW OFFICES OF SCOTT E. SHAPIRO, P.C.

By: /s/ Bruce L. Simon

BRUCE L. SIMON
*Co-Lead Counsel for Plaintiffs and the Class*

---

CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT
14

*HP Inkjet Litigation*
*Master File No. C053580 JF*

## PROOF OF SERVICE

I am employed in the County of San Mateo, State of California. I am a citizen of the United States, over the age of 18 years and not a party to the within cause. My business address is the Law Offices of Cotchett, Pitre, Simon & McCarthy, San Francisco Airport Office Center, 840 Malcolm Road, Suite 200, Burlingame, California, 94010.

On October 31, 2005, I served the following document(s) in the manner described below:

**CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF**

___ **BY MAIL:** I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Following that practice, I placed a true copy of the aforementioned document(s) in a sealed envelope, addressed to each addressee, respectively, as specified below. The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service on that same day in the ordinary course of business.

___ **BY FACSIMILE:** I am readily familiar with this firm's practice for causing documents to be served by facsimile. Following that practice, I caused the aforementioned document(s) to be transmitted to the telephone number(s) of the addressee(s) specified below:

___ **BY OVERNIGHT COURIER SERVICE:** I am readily familiar with this firm's practice for causing documents to be served by overnight courier. Following that practice, I caused the sealed envelope containing the aforementioned document(s) to be delivered via overnight courier service to the addressee(s) specified below

___ **BY PERSONAL SERVICE:** I personally hand delivered a sealed envelope containing the aforementioned document(s) to be the addressee(s) specified below.

___ **BY ELECTRONIC SERVICE:** I caused to electronically send the aforementioned document(s) to the following e-mail addresses:

**SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Burlingame, California, on October 31, 2005.

JoAnne Lein

LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

PROOF OF SERVICE
1

*HP Inkjet Litigation*
*Civil Action No. C053580 JF*

### SERVICE LIST

| | |
|---|---|
| Robert E. Cooper<br>Peter Sullivan<br>Samuel G. Liversidge<br>**GIBSON DUNN & CRUTCHER**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Tel:(213) 229-7000<br>Fax:(213) 229-7520<br>psullivan@gibsondunn.com | *Counsel for Defendant* |
| Michael J. Holston<br>John F. Schultz<br>Robert A. Particelli<br>**MORGAN LEWIS & BOCKIUS LLP**<br>1701 Market Street<br>Philadelphia, PA 19103<br>Tel: (215) 963-5000<br>Fax: (215) 963-5001<br>mholston@morganlewis.com | *Counsel for Defendant* |
| Stephen M. Garcia<br>**THE GARCIA LAW FIRM**<br>One World Trade Center, Suite 1950<br>Long Beach, California 90831<br>Tel: (562) 216-5270<br>Fax: (562) 216-5271<br>sgarcia@lawgarcia.com | *Counsel for Plaintiffs and the Class* |
| Patrick McNicholas<br>**MCNICHOLAS & MCNICHOLAS LLP**<br>10866 Wilshire Boulevard, Suite 1400<br>Los Angeles, California 90024-4338<br>Tel: (310) 474-1582<br>Fax: (310) 475-7871<br>pmc@mcnicholaslaw.com | *Counsel for Plaintiffs and the Class* |
| Scott E. Shapiro<br>Hubert Yun<br>**LAW OFFICES OF SCOTT E. SHAPIRO, P.C.**<br>17337 Ventura Boulevard, Suite 200<br>Encino, CA 91316<br>Tel: (818) 990-0706<br>Fax: (818) 990-0276<br>shapiro@ses-law.com | *Counsel for Plaintiffs and the Class* |

| | |
|---|---|
| Michael D. Liberty<br>**LAW OFFICES OF MICHAEL D. LIBERTY**<br>1290 Howard Avneue, Suite 333<br>Burlingame, CA 94010<br>Tel: (650) 685-8085<br>Fax: (650) 685-8086<br>mdlaw@pacbell.net | *Counsel for Plaintiffs and the Class* |
| Jonathan Shub<br>**SHELLER LUDWIG & BADEY**<br>1528 Walnut Street, Third Floor<br>Philadelphia, PA 19102<br>Tel: (215) 790-7300<br>Fax: (215) 546-0942<br>jshub@sheller.com | *Counsel for Plaintiffs and the Class* |
| Mark Chavez<br>**CHAVEZ & GERTLER**<br>42 Miller Ave.<br>Mill Valley, CA 94941<br>Tel: (415) 381-5599<br>Fax: (415) 381-5572<br>mark@chavezgertler.com | *Counsel for Plaintiffs and the Class* |
| Steven Berk<br>**CUNEO, WALDMAN & GILBERT, LLC**<br>317 Massachusetts Avenue, Suite 300<br>Washington, DC 20002<br>Tel: (202) 789-3960<br>Fax: (202) 789-1813<br>StevenB@cuneolaw.com | *Counsel for Plaintiffs and the Class* |
| Mark Edelson<br>**EDELSON & ASSOCIATES, LLC**<br>45 West Court Street<br>Doylestowwn, PA 18901<br>Tel: (215) 230-8043<br>Fax: (215) 230-8735<br>medelson@hofedlaw.com | *Counsel for Plaintiffs and the Class* |
| David Buchanan<br>**SEEGER WEISS LLP**<br>One William Street<br>New York, New York 10004<br>Tel: (212) 584-0700<br>Fax: (212) 584-0799<br>dbuchanan@seegerweiss.com | *Counsel for Plaintiffs and the Class* |