\*\*E-filed 3/7/06\*\*

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re: HP INKJET PRINTER LITIGATION | Case Number C 05-3580 JF |
| | ORDER[1] GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE |
| | [Docket No. 34] |

**I. BACKGROUND**

Hewlett-Packard Co. ("HP") manufactures printing supplies and inkjet printers. Nicklos Ciolino ("Ciolino") and Daniel Feder ("Feder") (collectively, "Plaintiffs") both own HP printers purchased from CompUSA and Best Buy that use "smart chip" technology.[2] "Smart chip" technology is designed to inform the consumer of the remaining ink level in an HP ink cartridge and when to reorder ink for an HP printer. For instance, once the "smart chip" reads that the cartridge's ink level is low, the "smart chip" sends a warning message to the consumer's printer

---

[1] This disposition is not designated for publication and may not be cited.

[2] Ciolino owns a HP PSC 2510 Photosmart printer. Feder did not identify the printer model he owns.

Case No. C 05-3580 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE
(JFEX1)

1  that the ink level is low and new ink needs to be ordered.

2      Plaintiffs allege that HP engaged in unfair and deceptive conduct in connection with the
3  "smart chip" technology in its ink cartridges. Plaintiffs contend that the "smart chips" are
4  "programmed to prematurely register ink replacement long before depletion of the ink supply.
5  Frequently, these cartridges can register as empty when they in fact have substantial ink
6  remaining." Consolidated and Amended Complaint ("Amended Complaint"), ¶ 23. Plaintiffs
7  also contend that HP's "smart chip" — without regard to the actual supply of remaining ink —
8  "is capable of rendering a cartridge unusable through the use of a built-in expiration date that is
9  concealed from consumers. An external date stamp instead only discloses the end of warranty
10 date, but not the date in which the cartridge is rendered unuseable." *Id.*, ¶ 24.

11     In addition, HP allegedly "fails to explain the expiration feature at the point of purchase
12 and omits such information in their marketing materials." *Id.*, ¶ 25. Specifically, HP's
13 "SureSupply" campaign and website omit such information. First, HP's "SureSupply" campaign
14 promotes the "smart chip" technology as "a free user-friendly tool enabled through Smart
15 printing technology that provides . . . an easy way to manage and purchase HP genuine printing
16 supplies[.]" *Id.*, ¶ 27. Second, HP's website claims that "SureSupply automatically tracks and
17 manages customers' toner or ink level usage, and provides alerts via email or cell phone when
18 toner or ink is low. With a couple of clicks of a button, customers can access cartridge
19 information, pricing and purchasing options that best meet their needs from the reseller of their
20 choice." *Id.* Plaintiffs contend that HP's "SureSupply" campaign is false because the actual
21 design of the "smart chip" limits consumers' use of ink cartridges and makes consumers believe
22 that their cartridges are empty or expired and must be replaced. In sum, Plaintiffs assert that "HP
23 has deliberately withheld from its consumers information about the true functioning of the smart
24 chip . . . ." *Id.*, ¶ 28.

25     On October 31, 2005, Plaintiffs filed an amended class action complaint ("amended
26 complaint") against HP. Plaintiffs assert claims for: (1) breach of express warranty; (2) breach of
27 implied warranty; (3) unjust enrichment; (4) violations of the California Consumers Legal

28

Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; (5) violations of the California False Advertising Act ("FAA"), California Business & Professions Code § 17500 *et seq.*; and (6) violations of the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*

On January 6, 2006, HP filed a motion to dismiss and in the alternative a motion to strike. HP claims that Plaintiffs have not alleged an actual injury in connection with their six causes of action. Additionally, HP asserts that Plaintiffs' claims under the UCL, FAA, and CLRA fail because the claims do not identify with the requisite particularity any statement, representation, or conduct of HP that could support a claim under these statutes. HP also contends that the breach of express warranty claim fails for lack of notice and insufficient facts and that the breach of implied warranty claim fails because Plaintiffs were not in privity with HP. Finally, HP asserts that the unjust enrichment claim is precluded because the written warranty agreements govern the relationship between HP and Plaintiffs.

On February 3, 2006, Plaintiffs filed opposition and HP filed a reply on February 10, 2006. Having considered the briefs, relevant evidence, and the oral arguments at the hearing on February 24, 2006, the Court will grant in part and deny in part the motion to dismiss and deny the motion to strike.

## II.  MOTION TO DISMISS

A.     Legal Standard

A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two reasons: (1) Lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

"A complaint should not be dismissed unless it appears beyond doubt the plaintiff can

3

Case No. C 05-3580 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE
(JFEX1)

1 prove no set of facts in support of his claim that would entitle him to relief." *Clegg*, 18 F.3d at
2 754. The court, however, "is not required to accept legal conclusions cast in the form of factual
3 allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id.* at
4 754-55. A court's review is limited to the face of the complaint, documents the complaint
5 referenced, and matters of which the court may take judicial notice. *Anderson v. Clow (In re Stac*
6 *Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *Levine v. Diamanthuset, Inc.*, 950
7 F.2d 1478, 1483 (9th Cir. 1991).

8      Motions to dismiss generally are viewed with disfavor under this liberal standard and are
9 granted rarely. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Leave to
10 amend must be granted unless it is clear that amendments cannot cure the complaint's
11 deficiencies. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Nevertheless, when
12 amendment would be futile dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d
13 386, 393 (9th Cir. 1996); *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988); *Beezley v.*
14 *Fremont Indem. Co.*, 804 F.2d 530, 531 (9th Cir. 1986) (*per curiam*).

15 B.    <u>Standing</u>

16      "To establish the 'irreducible constitutional minimum of standing,' the plaintiff must
17 demonstrate that there was an injury-in-fact that is fairly traceable to the challenged conduct and
18 that the injury can be redressed by a favorable decision by the Court." *Muir v. Navy Fed. Credit*
19 *Union*, 366 F.Supp.2d 1, 2 (D.D.C. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,
20 560-61 (1992)). HP argues that Plaintiffs fail to allege actual injury in each of their six claims
21 for relief.

22      Plaintiffs allege general injuries resulting from HP's use of the "smart chip." Paragraph
23 65 of Plaintiffs' amended complaint, for example, states that "[c]onsumers are . . . injured when
24 their printers begin to malfunction as a result of premature warnings of ink depletion and
25 cartridge expiration and when they are caused to purchase new cartridges before the old ones
26 have really run out of ink." Amended Complaint, ¶ 65. However, Plaintiffs do not specify
27 whether their own printers began to malfunction or any other specific injuries. As HP makes
28

4

1  clear, "[n]either plaintiff ever alleges that he purchased an HP cartridge that was 'partially
2  usable,' or for that matter ever alleges anything at all about the performance of his HP printer or
3  print cartridges. And neither plaintiff alleges that he purchased a new printer cartridge that was
4  somehow 'unnecessary' as a result of HP's conduct." Reply at 4; *see Simon v. E. Ky. Welfare*
5  *Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("[N]amed plaintiffs who represent a class must allege
6  and show that they personally have been injured, not that injury has been suffered by other,
7  unidentified members of the class to which they belong and which they purport to represent."
8  (citation and internal quotation omitted)). The other paragraphs Plaintiffs cite in their opposition
9  to show injury similarly fail. *See* Opposition at 3-4. Because Plaintiffs do not allege injury-in-
10 fact, they also fail to allege the requisite casual connection between the alleged injuries and HP's
11 conduct. Nor do Plaintiffs explain how their specific injuries will be redressed by the relief
12 sought. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (finding that the "litigant must
13 clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements").
14 Plaintiffs will be granted leave to amend their complaint to address these deficiencies.

15 C.     Unfair Competition Law

16     The UCL defines "unfair competition" to include "any unlawful, unfair or fraudulent
17 business act or practice." Cal. Bus. & Prof. § 17200. By proscribing any "unlawful" business
18 practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the
19 unfair competition law makes independently actionable." *Cel-Tech Communications, Inc. v. Los*
20 *Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). The UCL has been interpreted broadly to
21 prohibit unfair competition. *See, e.g., Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th
22 553 (1998) (selling of cigarettes to minors in violation of state penal code constitutes unfair
23 competition under the statute).

24     To state a claim under Cal. Bus. & Prof. Code § 17200 *et seq.*, a plaintiff must show only
25 that "members of the public are likely to be deceived." *Freeman v. Time, Inc.*, 68 F.3d 285, 289
26 (9th Cir. 1995) (citations and internal quotation omitted). However, allegations "must state with
27 reasonable particularity the facts supporting the statutory elements" of the alleged violation.
28

5

1  *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1316 (N.D. Cal. 1997)

2  (quoting *Khoury v. Maly's of Cal., Inc.*, 14 Cal.App.4th 612, 619 (1993)).  Moreover, a claim

3  under the UCL need not be based upon violation of another law as "a practice may be deemed

4  unfair even if not specifically proscribed by some other law."  *Cel-Tech Communications, Inc.*,

5  20 Cal.4th at 180.  In the instant case, Plaintiffs have identified with the required particularity the

6  statements and representations by HP that allegedly violates the UCL, FAA, and CLRA.

7  Specifically, paragraphs 27 and 28 of the amended complaint describe how HP deceives

8  consumers through its "SureSupply" campaign and points to a particular HP statement and

9  representation on HP's website:

> 27.   As part of its "SureSupply" campaign, HP promotes the "smart chip" technology as "a free user-friendly tool enabled through Smart printing technology that provides you with an easy way to manage and purchase HP genuine printing supplies . . ."  HP's website claims that "SureSupply automatically tracks and manages customers' toner or ink level usage, and provides alerts via email or cell phone when toner or ink is low.  With a couple of clicks of a button, customers can access cartridge information, pricing and purchasing options that best meet their needs from the reseller of their choice."
>
> 28.   The "SureSupply" campaign is false because, in fact, the design of the "smart chip" deliberately limits a consumer's ability to use an ink cartridge to its full potential.  "Smart chips" and the "SureSupply" campaign deceive customers into falsely believing that their cartridges are empty and can cause damage to the printer, or that their cartridge [sic] are expired and must be replaced.  Absent from HP's marketing material is any mention of the "smart chip's" predetermined shelf-life or premature signals of ink depletion.  The use of cartridges embedded with "smart chip" technology increases the consumers' cost to use HP printers.  HP has deliberately withheld from its consumers information about the true functioning of the smart chip in a effort to prevent damage to their bottom line.

Amended Complaint, ¶¶ 27-28.  After reviewing paragraphs 27 and 28, the Court concludes that it is possible that the website statements could deceive a reasonable consumer.  Reasonable consumers very well could believe that their cartridges are empty or almost empty and must be replaced, and by not immediately ordering new cartridges from HP they run the risk of not

6

having a properly running printer.[3]  Accordingly, the state unfair competition causes of action will not be dismissed.

D.  Breach of Express Warranty

HP next contends that Plaintiffs' breach of express warranty claim should be dismissed because there are not sufficient facts to justify such a claim.  "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury."  *Williams v. Beechnut Nutrition Corp.*, 185 Cal.App.3d 135, 142 (1986).  The Court agrees that Plaintiffs' amended complaint does not comply with the requirements of *Williams*.  While Plaintiffs state that HP breached warranty obligations with the use of an expiration date as to the "smart chip" cartridges, it is unclear what precise terms of the warranty were supposedly breached.  Nor do Plaintiffs identify any specific warranty provision upon which they allegedly relied.  For example, paragraph 26 of the amended complaint provides: "According to the Limited Warranty for HP Inkjet Print Cartridge Printerheads and Ink Supplies, HP will void the warranty on any printer or cartridge if a cartridge was refilled using a third party device."  Amended Complaint, ¶ 26.

HP further contends that Plaintiffs cannot recover for breach of express warranty because timely notice of such breach was not given.  The California Commercial Code § 2607(3)(A) provides that a "buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."  Cal. Com. Code § 2607(3)(A).  "The requirement of notice of breach is . . . designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements."  *Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal.3d 374, 380

---

[3]  Similarly, Plaintiffs properly allege a violation of the FAA and CLRA.  Reading paragraphs 22-25 — how HP uses the "smart chip" in its deceptive scheme — and paragraphs 27-28 — the HP "SureSupply" website — together with the allegations contained in the amended complaint's CLRA count and FAA count, it is clear that Plaintiffs have alleged a violation of these statutes.  *See* Amended Complaint ¶¶ 49-55, 59-60.

(1974).

However, timely notice of a breach under California law is no longer required where the action is against a manufacturer on a warranty that arises independently of a contract of sale, such as a manufacturer's express warranty. *Greenman v. Yuba Power Prods.*, 59 Cal.2d 57, 61 (1963). The *Greenman* court explained that "[t]he notice requirement . . . is not an appropriate one for the court to adopt in actions by injured consumers against manufacturers with whom they have not dealt." *Id.* According to *Greenman*, the notice requirement "becomes a booby-trap for the unwary. The injured consumer is seldom steeped in the business practice which justifies the rule, and at least until he has had legal advice it will not occur to him to give notice to one whom he has had no dealings." *Id.* (citations and internal quotations omitted). In the instant case, Plaintiffs bought their HP printers from retail sellers. HP's express warranties were not contained in the contract of sale between the Plaintiffs and the retail sellers, but instead were created independently in HP's brochure. Thus, even if Plaintiffs did not give timely notice of breach of express warranty to HP, the claim is not barred. *See Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh*, 217 Cal.App.2d 492, 514-15 (1963) (finding that "even if the plaintiff did not give timely notice of breach of warranty to the manufacturer the cause of action should not be held to have been barred").[4]

Regardless, "notice otherwise given within a reasonable period of time can under California law follow commencement of suit provided it is subsequently and properly pleaded." *Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172, 174 (9th Cir. 1961). On November 7, 2005, Plaintiffs subsequently provided notice to HP contained in a letter from Plaintiffs' counsel, Bruce L. Simon. *See* Declaration of Bruce L. Simon ("Simon Decl."), Ex. A. The letter

---

[4] HP's reliance on *Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal.App.4th 357, 369-70 (1997), is unfounded. The *Fieldstone* plaintiff, as opposed to the *Greenman* plaintiff, was sophisticated. *Id.* at 369. After explaining the difference between the unsophisticated plaintiff in *Greenman* and the sophisticated plaintiff in *Fieldstone*, the court states, "[t]hat is hardly the situation where, as here, plaintiff is a sophisticated development company which has built many thousands of homes over the last two decades." *Fieldstone*, 54 Cal.App.4th at 369.

8

Case No. C 05-3580 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE
(JFEX1)

provided that Plaintiffs "hereby demand that within 30 days . . . HP cease to engage in and rectify the wrongful business practices detailed above. In addition, plaintiffs demand that HP refund, replace, and correct the defective inkjet printers and printer cartridges sold to plaintiffs . . . ." *Id.* The letter, therefore, provided HP with notice and an opportunity to cure its breaches, which HP allegedly has failed to do.[5] Accordingly, Plaintiffs will be given leave to amend their claim for breach of express warranty to remedy the deficiencies described above.

E.  Breach of Implied Warranty

HP next argues that Plaintiffs' breach of implied warranty claim should be dismissed both for lack of notice and for lack of privity. As to the notice requirement, see the discussion above. As to the second part, HP is correct that "[v]ertical privity is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability."[6] *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 1441 (1991). "The term 'vertical privity' refers to links in the chain of distribution of goods. If the buyer and seller occupy adjoining links in the chain, they are in vertical privity with each other . . . ." *Osborne v. Subaru of America, Inc.*, 198 Cal.App.3d 646, 656 n.6 (1988). For example, in *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1141 (C.D. Cal. 2005), the court found that under California law, a laptop computer buyer who purchased a computer from a retailer lacked vertical privity with the computer manufacturer as required to state a claim for breach of implied warranty of merchantability.

In line with *Anunziato*, the Plaintiffs in the instant case purchased HP products from CompUSA and Best Buy, and thus lacked vertical privity with the manufacturer, HP. However, "privity is not required where plaintiff relied on defendant's promotional materials." *Fieldstone*,

---

[5] HP notes that the notice letter was sent seven days after Plaintiffs' amended complaint was filed on October 31, 2006. This error is not fatal, however, and HP cites no controlling authority to the contrary.

[6] Plaintiffs do not specify whether they are alleging a breach of implied warranty of fitness or implied warranty of merchantability.

9

Case No. C 05-3580 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE
(JFEX1)

54 Cal.App.4th at 371.  The Court concludes that Plaintiffs' breach of implied warranty claim is inadequate as presently pled because Plaintiffs have not alleged that they relied on HP's advertisements or promotional materials in purchasing their HP products.  It is also unclear to the Court whether Plaintiffs directly bought ink cartridges from HP's website using the "SureSupply."  Plaintiffs, therefore, are given leave to amend to remedy the deficiencies outlined above.

F.     Unjust Enrichment

HP argues that Plaintiffs' unjust enrichment claim must be dismissed because specific contracts that exist between Plaintiffs and HP, and an action for unjust enrichment does not lie where a contractual relationship exists between the parties.  *Gerlinger v. Amazon.com, Inc.*, 311 F.Supp.2d 838, 856 (N.D. Cal. 2004).  "Under California law . . . unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties.  *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

Under California law, unjust enrichment is "synonymous with restitution."  *McBride v. Boughton*, 123 Cal.App.4th 379, 387 (2004).  To prevail on an unjust enrichment claim, plaintiff must establish that defendant received a benefit and that it would be unjust to allow defendant to retain the benefit at the expense of plaintiff.  *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000).  "Determining whether it is unjust for a person to retain a benefit may involve policy considerations."  *First Nationwide Sav. v. Perry*, 11 Cal.App.4th 1657, 1663 (1992).

Here, Plaintiffs assert that, "the express warranty at issue is not a binding agreement between the parties.  There has been no bargain-for-exchange between plaintiffs and HP.  Rather, the bargain for exchange occurred between the retail seller and the plaintiffs."  Opposition at 16. Further, "Plaintiffs received the written warranties subsequent to their purchases of HP's products.  Thus, the warranty itself was not specifically contracted for and cannot, by any means, limit plaintiffs' right to recover for unjust enrichment."  *Id.*  Moreover, although the terms of HP's written warranty agreements may govern the relationship between HP and Plaintiffs,

Case No. C 05-3580 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE
(JFEX1)

Plaintiffs may plead an unjust enrichment claim in the alternative. Accordingly, HP's motion to dismiss Plaintiffs' unjust enrichment claim will be denied.

### III. MOTION TO STRIKE

A. <u>Legal Standard</u>

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation. *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992). Allegations "supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant." *Id.* Moreover, allegations that contribute to a full understanding of the complaint as a whole need not be stricken. *Id.*

B. <u>Paragraph 12(i) and Paragraph 26</u>

    1. <u>Paragraph 12(i)</u>

Paragraph 12(i) of Plaintiffs' amended complaint reads:

> The common legal and factual questions which do not vary from Class member to Class member and which may be determined without reference to individual circumstances of any Class member include, but are not limited to, the following:
>
> . . . .
>
> (i) Whether Defendant breached the implied covenant of good faith and fair dealing with Plaintiff and the Class[.]"

Amended Complaint, ¶ 12(i).

HP moves to strike paragraph 12(i) as immaterial and irrelevant because "Plaintiffs have not asserted a cause of action for breach of the implied covenant of good faith and fair dealing against HP . . . ." Motion to Strike at 6. The Court disagrees. Not only does paragraph 12(i) relate to Plaintiffs' specific allegations of HP's misconduct under California Business & Professions Code § 17200, but the paragraph also is relevant to the subject matter of the litigation because conduct constituting a breach of an implied covenant of good faith and fair dealing also

11

may constitute an unfair business practice under Section 17200.  *See Heighley v. J.C. Penny Life Ins. Co.*, 257 F.Supp.2d 1241, 1256-58 (C.D. Cal. 2003).

   2.   Paragraph 26

Paragraph 26 of Plaintiffs' amended complaint provides:

> According to the Limited Warranty for HP Inkjet Cartridge Printerheads and Ink Supplies, HP will void the warranty on any printer or cartridge if a cartridge was refilled using a third party device.  Thus, HP compounds the impact of the "smart chip" technology by directing consumers to use only their cartridges, and designing them so that they cannot be refilled by third parties, which is a much cheaper way to replace ink.

Amended Complaint, ¶ 26.

Plaintiffs contend that paragraph 26 is relevant to their causes of action for breach of warranty and for violation of the UCL.  The Court agrees.  Paragraph 26 supplies background information about HP's practices that is not unduly prejudicial to HP.  *See LeDuc*, 814 F. Supp. at 830.  Accordingly, the motion to strike will be denied.

### IV.  ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED HP's motion to dismiss is GRANTED in part and DENIED in part and HP's motion to strike is DENIED.  Plaintiffs may file an amended complaint on or before March 31, 2006, that addresses the deficiencies identified herein.

IT IS SO ORDERED.

DATED: March 7, 2006

_____
JEREMY FOGEL
United States District Court

12

Case No. C 05-3580 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE
(JFEX1)

This Order has been served upon the following persons:

Bruce Lee Simon, bsimon@cpsmlaw.com

Kelly L Bulawsky, kbulawsky@cpsmlaw.com

Philip L. Gregory, pgregory@cpsmlaw.com

Sally J. Berens, sberens@gibsondunn.com

Case No. C 05-3580 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE
(JFEX1)