1   BRUCE L. SIMON (#96241)
    **COTCHETT, PITRE, SIMON & McCARTHY**
2   San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
3   Burlingame, CA  94010
    Tel: (650) 697-6000
4   Fax: (650) 692-3606

5   PATRICK McNICHOLAS (#125868)
    **McNICHOLAS & McNICHOLAS, LLP**
6   10866 Wilshire Blvd., Suite 1400
    Los Angeles, CA 90024
7   Tel: (310) 474-1582
    Fax: (310) 475-7871
8
    JONATHAN SHUB (#237708)
9   **SHELLER, LUDWIG & BADEY**
    1528 Walnut Street, 3rd Floor
10  Philadelphia, PA 19102
    Tel: (215) 790-7300
11  Fax: (215) 546-0942

12  *Co-Lead Counsel*

13  Other Counsel listed in signature page

14

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

17                  **(SAN JOSE DIVISION)**

18
    In re: HP INKJET PRINTER LITIGATION   )   **MASTER FILE NO. C053580 JF**
19                                         )
    ———————————————————————   )   **SECOND CONSOLIDATED AND**
20                                         )   **AMENDED CLASS ACTION COMPLAINT**
    This Document Relates To:             )   **FOR DAMAGES AND INJUNCTIVE**
21                                         )   **RELIEF**
        All Actions                       )
22                                         )   **DEMAND FOR JURY TRIAL**
    ———————————————————————   )
23

24

25

26

27

28

───────────────────────────────────────────────
**SECOND CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**

1

## <u>TABLE OF CONTENTS</u>

2                                                                                                    <u>Page</u>

3     I.       INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4     II.      JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5     III.     THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6              A.     Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7              B.     Defendant Hewlett-Packard Company . . . . . . . . . . . . . . . . . . . . . . . . . 2

8     IV.      CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9     V.       FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10             A.     The Subject Technology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11             B.     HP's "SureSupply" False Advertising Campaign . . . . . . . . . . . . . . . . . . 7

12             C.     Plaintiff Nicklos Ciolino's Experience . . . . . . . . . . . . . . . . . . . . . . . . . 8

13             D.     Plaintiff Daniel Feder's Experience . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14    VI.      FIRST CAUSE OF ACTION
               (Breach of Express Warranty) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
15
       VII.    SECOND CAUSE OF ACTION
16             (Breach of Implied Warranty) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17    VIII.    THIRD CAUSE OF ACTION
               (Unjust Enrichment) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
18
       IX.     FOURTH CAUSE OF ACTION
19             (Violations of California Civil Code § 1750 *et seq.*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20    X.       FIFTH CAUSE OF ACTION
               (Violations of California Business & Professions Code § 17500 *et seq.*) . . . . . . . . . . . 13
21
       XI.     SIXTH CAUSE OF ACTION
22             (Violations of California Business & Professions Code § 17200 *et seq.*) . . . . . . . . . . . 14

23    XII.     PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24    XIII.    DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

25

26

27

28

1    Plaintiffs Nicklos Ciolino and Daniel Feder (hereinafter "Plaintiffs"), individually and on

2    behalf of the Class defined below, bring this action for damages and injunctive relief against

3    Defendant, Hewlett-Packard Company, demanding a trial by jury, and complain and allege as

4    follows:

5                                  **I. INTRODUCTION**

6        1.      Defendant Hewlett-Packard Company (hereinafter "HP" or "Defendant"), the

7    world's leading manufacturer of printers and printer supplies, engages in deceptive and

8    unconscionable conduct designed to increase the sale of its very profitable replacement ink

9    cartridges to the detriment of, and at the cost to, unsuspecting consumers.  At the heart of this

10   unlawful conduct is what HP calls its "smart chip," which HP has embedded into printer

11   cartridges claiming with much fanfare that the chip will improve "printer performance."  It does

12   not.

13       2.      HP's claims relating to the "smart chip" technology are misleading and false and

14   harm consumers.  For example, the "smart chip" is designed and programmed to send a

15   premature and false message to consumers advising them that they will need to purchase a

16   replacement cartridge of ink, when in fact, the printer cartridge is far from empty and is capable

17   of printing hundreds of additional pages.  The "smart chip" also steers consumers to an HP

18   sponsored website to purchase HP replacement cartridges online before the consumer in fact

19   needs replacement ink.  Additionally, the "smart chip" has been programmed in conjunction with

20   the use of various HP printer models, to automatically prevent the use of a printer cartridge, even

21   if full or nearly full, on a date predetermined by HP.  This expiration date is timed well before the

22   ink in the cartridge ceases to be useable for printing.  Each of these examples, illustrates HP's

23   ongoing effort to use its "smart chip" technology to deceive consumers into purchasing

24   additional ink from HP.

25       3.      This lawsuit, brought on behalf of consumers of HP printers and ink cartridges,

26   seeks to end HP's deceptive and unconscionable practices relating to its use of the "smart chip"

27   in its printers and ink cartridges and prays for relief addressing HP's conduct, including without

28   limitation, relief in the form of compensatory damages for printer cartridge ink that Plaintiffs and

the Class purchased but were unable to use, restitution, and injunctive relief as indicated in each cause of action.

## II. JURISDICTION AND VENUE

4.     This Court has jurisdiction over this civil action pursuant to the Class Action Fairness Act, and particularly, 28 U.S.C. Section 1332(d)(2), as the matter in controversy in this action exceeds $5,000,000.00 and is a class action in which some members of the class of plaintiffs are citizens of a state that is different from the Defendant.

5.     Venue is proper in this District, and in particular the San Jose Division, under 15 U.S.C. Sections 15, 22, and 26 and 28 U.S.C. Section 1391(b) and (c), because HP maintains its headquarters, transacts business, maintains offices, or is otherwise found within this District; and the Defendant's unlawful acts giving rise to Plaintiffs' claim occurred, and a substantial portion of the affected trade and commerce described below has been carried out in this District.

## III. THE PARTIES

**A.     Plaintiffs**

6.     Plaintiff Nicklos Ciolino, an individual, is a resident of San Mateo County, California, and is the owner of an HP printer that utilizes cartridges with "smart chip" technology.  He purchased his HP printer for personal, family of household use.

7.     Plaintiff Daniel Feder, an individual, is a resident of Marin County, California, and is the owner of an HP printer that utilizes the cartridges with "smart chip" technology.  He purchased his HP printer for personal, family of household use.

**B.     Defendant Hewlett-Packard Company**

6.     Defendant Hewlett-Packard Company is a publicly traded corporation with worldwide corporate headquarters in Palo Alto, California.

/ / /

1

## IV.  CLASS ACTION ALLEGATIONS

2   7.   Plaintiffs bring this action on behalf of themselves, and pursuant to Federal Rules

3   of Civil Procedure 23(a) and (b)(3), on behalf of the following Class:

4   **All individuals and entities who, whether for business, personal, family, household**
**or other use, purchased a HP inkjet printer or printer cartridge containing a**
5   **technology that prematurely registers the cartridge as being low on ink and/or shuts**
**down the cartridge on a predetermined date even though there is ink in the**
6   **cartridge.  Excluded from the Class are (1) employees of the Defendant, including its**
**officers or directors; (2) Defendant's affiliates, subsidiaries, or co-conspirators; and**
7   **(3) the Court to which this case is assigned.**

8   8.   Plaintiffs do not know the exact number of Class members because such

9   information is in the exclusive control of the Defendant.  However, Plaintiffs believe that due to

10   the nature of the trade and commerce involved, Class members are sufficiently numerous, most

11   likely thousands of purchasers, and geographically dispersed throughout the United States, and

12   that joinder of all Class members is impracticable.  The information as to the identity of the Class

13   members can be readily determined from records maintained by the Defendant and its agents.

14   9.   Plaintiffs' claims are typical of, and not antagonistic to, the claims of the other

15   Class members because Plaintiffs are direct purchasers of HP "smart chip" technology and, by

16   asserting their claims, will also advance the claims of all members of the Class who were

17   damaged by the same wrongful conduct of HP and their co-conspirators as alleged herein, and

18   the relief sought is common to the Class.

19   10.   The common legal and factual questions which do not vary from Class member to

20   Class member and which may be determined without reference to individual circumstances of

21   any Class member include, but are not limited to, the following:

22   a.   Whether Defendant has undertaken a common business practice of

23   producing and selling to the public inkjet printers which are compatible

24   with HP replacement ink cartridges containing the so-called "smart chip"

25   technology that send an electronic message misleading the consumer into

26   thinking the cartridge is empty or low on  ink;

27   b.   Whether Defendant has undertaken a common business practice of selling

28   inkjet printers that will disable or render unuseable an HP replacement ink

1   cartridge containing the so-called "smart chip" technology after a

2   predetermined expiration date;

3   c.   Whether Defendant adequately disclosed these practices, and/or concealed

4   materials related to these practices;

5   d.   Whether Defendant engaged in unfair, unlawful and/or fraudulent business

6   practices;

7   e.   Whether Defendant's use of advertising and other representations

8   constitutes unfair competition and unfair, deceptive, untrue or misleading

9   advertising;

10   f.   Whether Defendant failed to disclose material facts about the subject HP

11   cartridges and printers;

12   g.   Whether Defendant was unjustly enriched by its conduct;

13   h.   Whether Defendant breached its warranties with Plaintiff and the Class;

14   i.   Whether Defendant breached the implied covenant of good faith and fair

15   dealing with Plaintiff and the Class; and

16   j.   Whether Class members are entitled to monetary recovery including

17   punitive damages, restitution, disgorgement of profits, and injunctive

18   relief, and the proper measure, nature and extent of such relief.

19   13.   These common questions and others predominate over questions, if any, that

20   affect only individual members of the Class.

21   14.   Plaintiffs and their counsel will fairly and adequately represent the interests of the

22   Class in that Plaintiffs are typical direct purchasers of HP "smart chip" technology.  There are no

23   material conflicts with any other member of the Class that would make class certification

24   inappropriate.  Plaintiffs have retained attorneys experienced in the prosecution of class actions,

25   including complex cases and consumer actions, and Plaintiffs intend to prosecute this action

26   vigorously.

27   15.   A class action is superior to other available methods for the fair and efficient

28   adjudication of this controversy because individual litigation of the claims of all Class members

is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

16.     Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.

17.     Injunctive relief is appropriate as to the Class as a whole because Defendant has acted or refused to act on grounds generally applicable to the Class.

18.     Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may not otherwise warrant individual litigation.

## V.   FACTUAL ALLEGATIONS

### A.   The Subject Technology

19.     HP's Imaging and Printing Group provides home and business printing, imaging and publishing devices, digital products and printer supplies, and consumables, such as ink and toner cartridges.

20.     Substantially all of the profits generated by HP's Imaging and Printing Group result from the sale of ink cartridges. The printer and ink cartridge business is much like razors and razor blades, in that the printers are priced low because the margins on the cartridges are high. Printer supplies account for half of the annual revenues generated by HP's Imaging and Printing Group. According to HP, 10 percent of revenue year-over-year is generated by the sale of consumables: "The growth in revenue was driven by the continuing increase in HP's installed base and growth in ink-intensive digital imaging solutions and applications."

21.     The Wall Street Journal has reported that "profit margins on H-P's ink and toner remain some of the most envied in the technology industry, at more than 50% for toner and more than 60% for ink cartridges." A typical, black and white HP replacement cartridge costs about $35.00 to purchase, while it costs HP much less to produce it, with some estimates as low as $3.00 to manufacture the cartridge. Replacement cartridges for the higher-end, color printers are more expensive.

22.     By investing an annual $1 billion on the engineering of its ink and toner cartridges, HP developed a "smart chip" that HP embedded into its printer cartridges. HP claims that the "smart chip" is designed to improve printer performance by reporting to the consumer the remaining ink levels and signaling when ink must be reordered. According to HP, the "smart chip" stores information about the type and status of the supply of ink in the cartridge. Once the ink level is registered as low, the printer will send a warning message to the consumer that the ink level is low and the cartridge needs to be replaced.

23.     In reality, the "smart chip" is programmed to prematurely register ink replacement long before depletion of the ink supply. Frequently, these cartridges can register as empty when they in fact have substantial ink remaining. These cartridges are required for HP's most commonly used personal inkjet printers, including, but not limited to, the PSC 2510 Photosmart All-in-One, DeskJet 812C, 840C, 842C, as well as the 2000C and 2500C high end printers used by businesses.

24.     Moreover, without regard to the actual supply of remaining ink available in a cartridge, the "smart chip" is capable of rendering a cartridge unusable through the use of a built-in shut down date that is concealed from consumers. This concealed feature automatically shuts down a printer cartridge on the earlier of the following dates: (1) thirty months after the cartridge has been installed in a printer; or (2) thirty months after the "install-by" date. Not only is this shut down timed well before the ink in the cartridge ceases to be usable for printing, but the shut down can occur even before the cartridge has been installed in a printer.

25.     HP fails to explain the shut down feature at the point of purchase and omits such information in their marketing materials. The external date stamp that appears on HP's

---

packaging and on the printer cartridge only discloses the end of the warranty period, not the date on which the cartridge will automatically shut down and be rendered unuseable.  Plaintiffs believe and thereon allege that HP cartridges can, and do, expire while they are still under warranty.

26.     According to the Limited Warranty for HP Inkjet Print Cartridge Printerheads and Ink Supplies, HP printer cartridges are warranted to be "free from defects in materials and workmanship during the period of the warranty."  This warranty coverage lasts "until the HP ink is depleted or the 'end of warranty' date has been reached, whichever comes first."  HP's warranty disclaims coverage for HP printer cartridges "that have been refilled, remanufactured, refurbished, misused, tampered with, or products receiving a printer generated expiration message."  A copy of HP's Limited Warranty is attached hereto as Exhibit A.

27.     Because the "smart chip" is programmed to prematurely register cartridges as being depleted and send a low-ink message, it operates to cut consumers' warranty period short.  HP thus compounds the impact and harm of the "smart chip" technology by linking the end of the warranty period to the depletion of ink and receipt of a printer generated expiration message.

**B.     HP's "SureSupply" False Advertising Campaign**

28.     As part of its "SureSupply" campaign, HP promotes the "smart chip" technology as "a free user-friendly tool enabled through Smart printing technology that provides you with an easy way to manage and purchase HP genuine printing supplies. . . ."  HP's website claims that "SureSupply automatically tracks and manages customers' toner or ink level usage, and provides alerts via email or cell phone when toner or ink is low.  With a couple of clicks of a button, customers can access cartridge information, pricing and purchasing options that best meet their needs from the reseller of their choice."  Additionally, HP claims that by using "SureSupply," consumers will "[n]ever run out of supplies" and will "[s]ave time [a]nd money."  HP's "SureSupply" literature is attached hereto as Exhibit B.

29.     The "SureSupply" campaign is false because, rather than track the true ink level in a cartridge, the "smart chip" prematurely registers the ink as being low and limits a consumer's ability to use all of the ink in his or her printer cartridge.  "Smart chips" and the "SureSupply"

campaign deceive consumers into falsely believing that their cartridges are empty and can cause damage to the printer, that their cartridge are expired and must be replaced, or that the warranty coverage on the printer cartridge has ended. Absent from HP's marketing material is any mention of the "smart chip's" predetermined shut down date or premature signals of ink depletion. And rather than save consumers money, the use of cartridges embedded with "smart chip" technology increases the cost for consumers to use HP printers because consumers are deceived into discarding printer cartridges that still have useable ink and purchasing unnecessary replacement cartridges. HP has deliberately withheld from its consumers information about the true functioning of the smart chip in a effort to prevent damage to their bottom line.

### C.   Plaintiff Nicklos Ciolino's Experience

30.    Plaintiff Nicklos Ciolino owns an HP Photosmart printer (model HP PSC 2510) that utilizes printer cartridges with "smart chip" technology. On multiple occasions, in connection with the use of his HP printer, Ciolino received low-ink warnings. Believing the warnings he received were accurate and the cartridges were empty or nearly empty, Ciolino ceased using the cartridges and purchased additional HP replacement ink cartridges. The ink in Ciolino's printer cartridge was not empty or nearly empty when Ciolino received the low-ink warning messages. In fact, the printer cartridges had substantial ink remaining, which would likely continue to print for several additional print jobs.

31.    As a result of this misleading and inaccurate warning, Ciolino was unable to obtain the full value of his HP printer cartridges and unnecessarily purchased additional replacement cartridges. If HP's low-ink warnings were accurate and not misleading, Cioliono would have obtained the full value of the HP printer cartridges he purchased. Ciolino has suffered actual and monetary injury by virtue of purchasing HP ink that he was unable to use.

### D.   Plaintiff Daniel Feder's Experience

32.    Plaintiff Daniel Feder owns a HP printer that utilizes "smart chip" technology. He purchased his HP printer for personal, family and household use. Since Feder has owned his HP printer, he has received several low-ink warnings. Based on those warnings, he believed that his printer cartridges were empty or almost empty of ink. He discarded his printer cartridges and

purchased new replacement cartridges upon receipt of low-ink warnings.  Contrary to the low-ink warnings, the printer cartridges that Feder discarded actually had substantial levels of ink remaining and were still useable.

33.   As a result of the misleading and inaccurate warnings, Feder was unable to obtain the full value of his HP printer cartridges and purchased unnecessary replacement cartridges.  If HP's low-ink warnings were accurate and not misleading, Feder would have obtained the full value of the HP printer cartridges he purchased.  Feder has suffered actual and monetary injury by virtue of purchasing HP ink that he was unable to use.

## VI.  FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

34.   Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 33, inclusive, set forth above.

35.   Defendant HP issued written warranties to Plaintiffs and the Class wherein Defendant warranted that its printer cartridges would be free of defects in materials and workmanship during the warranty period.

36.   Plaintiffs and the Class purchased HP printer cartridges from HP and/or HP-authorized retailers.  Plaintiffs relied on representations made by HP in its website, labels and marketing materials.  In particular, Plaintiffs relied on HP's claim that its printer cartridges would be free of defects in materials in workmanship for the duration of the warranty period.  Plaintiffs expected to get full use of the ink contained in the HP printer cartridges they purchased under this warranty.

37.   Plaintiffs and the Class have performed all conditions, covenants and promises required to be performed on their part in accordance with the warranties.

38.   As unsophisticated consumers, Plaintiffs and the Class are relieved of any notice requirement, and HP, who has superior knowledge of its technology, is estopped from asserting lack of notice as a defense.

39.   At all times, HP had knowledge of the deceptive and misleading nature of the printers and cartridges equipped with "smart chip" technology because HP developed this

technology. Therefore, notification to HP would serve no purpose, and HP is estopped from asserting lack of notice as a defense.

40.     Notwithstanding the fact that notice is not required in these circumstances, by letter of November 7, 2005, Plaintiffs' counsel provided notice to Defendant and requested that it "refund, replace, and correct the defective inkjet printers and printer cartridges sold to plaintiffs and other similarly situated class members." Despite this opportunity to cure the breaches of warranty, Defendant has refused to do so.

41.     Defendant has breached its warranty obligations with the use of a concealed shut down date in its cartridges that renders the cartridge unusable without regard to the level of ink therein. A cartridge that contains useable ink but is nevertheless inoperable is defective and breaches the HP warranty.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## VII. SECOND CAUSE OF ACTION

### (Breach of Implied Warranty)

42.     Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 33, and 35 through 41, set forth above.

43.     Defendant had direct dealings with Plaintiffs and the Class through its vast marketing efforts and the interactive features of the "smart chip" technology and "SureSupply" campaign. As a result of the direct dealings with Defendant, Plaintiffs and the Class purchased HP inkjet printers and cartridges from HP and/or HP-authorized retailers. Plaintiffs and the Class relied on HP's promotional materials, which touted HP printer cartridges and the "smart chips" contained therein as consumer-friendly products that would help save money. Plaintiffs also relied on HP's reputation and brand name in selecting HP printers and cartridges. Plaintiffs believed HP would exercise skill and judgment to furnish printers and cartridges suitable for the purpose for which they are intended.

44.     Defendant impliedly warranted that their inkjet printers and cartridges were fit for the purpose for which they were intended, and free of defects. Plaintiffs and the Class are the intended beneficiaries of Defendant's implied warranties.

45.    Plaintiffs and the Class have performed all conditions, covenants and promises required to be performed on their part in accordance with the warranties.

46.    Defendant breached the warranties by undertaking the wrongful acts herein alleged.

47.    As a result of Defendant's breach of the warranty, Plaintiffs and the Class have suffered economic losses and other general, consequential and specific damages, including the amount paid to purchase printer cartridge ink that they were unable to use, according to proof.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## VIII.  THIRD CAUSE OF ACTION

### (Unjust Enrichment)

48.    Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 33, inclusive, set forth above.

49.    As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

50.    Specifically, Defendant's use of the "smart chip" to call for replacement of printer cartridges prior to depletion of ink, the use of a pre-determined shut down date, and the linking of the end of warranty period to the depletion of ink has resulted in Plaintiffs and the Class not getting full use of the ink in their printer cartridges and being misled into purchasing unnecessary replacement cartridges.  This has resulted in Defendant's wrongful receipt of profits and injury to Plaintiffs and the Class.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## IX.  FOURTH CAUSE OF ACTION

### (Violations of California Civil Code § 1750 et seq.)

51.    Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 33, inclusive, set forth above.

52.    The Consumers Legal Remedies Act, California Civil Code Section 1750 et seq. (hereinafter "CLRA") was designed and enacted to protect consumers from unfair and deceptive

/ / /

---

business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code Section 1770.

53.     The CLRA applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services for personal, family or household use.

54.     At all relevant times, Plaintiffs and members of the Class were "consumers" as that term is defined in Civil Code Section 1761(d).

55.     The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code Section 1761.

56.     Defendant's practices in connection with the marketing and sale of its printers and printer cartridges violate the CLRA in at least the following respects:

> a.     In violation of Section 1770(a)(5), Defendant has represented that HP cartridges have characteristics that they do not have;
>
> b.     In violation of Section 1770(a)(9), Defendant has advertised HP cartridges with an intent not to sell them as advertised; and
>
> c.     In violation of Section 1770(a)(15), Defendant represented that printer cartridge replacement was needed when it was not.

57.     Defendant's failure to disclose and knowing concealment of the true function, design and operation of the "smart chip" technology and the true ink level in printer cartridges are omissions and concealments of material fact that constitute unfair and/or deceptive business practices in violation of Civil Code Section 1770(a).

58.     Defendant's violations of the CLRA present a continuing threat to members of the public in that Defendant is continuing to engage in the practices alleged herein, and will not cease until an injunction is issued by this Court.

59.     Plaintiffs have provided Defendant with notice and opportunity to cure its violations.  Defendant has refused to do so.  Plaintiffs seek actual and punitive damages pursuant to Civil Code Section 1780(a)(4).

60.     Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to Civil Code Section 1780(d).

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## X.  FIFTH CAUSE OF ACTION

### (Violations of California Business & Professions Code § 17500 *et seq.*)

61.     Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 33, 35 through 41, 43 through 47, 49 through 50, and 52 through 59, inclusive, set forth above.

62.     Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of their goods and services, and other practices, as set forth above, which are not as advertised or as otherwise represented, constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, under California Business & Professions Code Section 17500.  These advertisements and practices have deceived, and are likely to deceive, the consuming public, in violation of those sections.

63.     Plaintiffs and the Class have been deceived and injured by Defendant's false and misleading advertising.  Plaintiffs and the Class received low-ink warnings which they believed to be true based on Defendant's false advertising.  In reliance on the low-ink messages, Plaintiffs and the Class discarded cartridges that still contained useable amounts of ink and purchased replacement cartridges before they became necessary.  Rather than save money as advertised by HP, Plaintiffs and the Class incurred extra costs because of the "smart chip" and SureSupply software.

64.     Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiffs, the Class, and the public.

65.     Plaintiffs and the Class are entitled to injunctive relief, enjoining Defendant to cease and desist from engaging in the practices described herein.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

/ / /

---

## XI.  SIXTH CAUSE OF ACTION

### (Violations of California Business & Professions Code § 17200 *et seq.*)

66.     Plaintiffs incorporate and reallege, as though fully set forth herein, paragraphs 1 through 33, 35 through 41, 43 through 47, 49 through 50, and 52 through 59, and 62 through 65, inclusive, set forth above.

67.     Defendant has engaged in unfair competition within the meaning of California Business & Professions Code Section 17200 *et seq.* because Defendant's conduct is fraudulent, unfair and illegal as herein alleged.  Defendant's conduct was substantially injurious to Plaintiffs.

68.     Defendant's wrongful business acts constituted, and constitute, a continuing course of conduct of unfair competition because Defendant is selling its products and marketing them in a manner that is likely to deceive the public.  Plaintiffs suffered actual and monetary injury because they were deprived of the ability to use all of the ink in their printer cartridges and purchased replacement cartridges that were unnecessary.

69.     Defendant's business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that HP cartridges are empty of ink when this is not true and that the warranty period has ended when in fact it has not.  Consumers are further injured when their printer cartridges shut down as a result of the concealed and predetermined shut down date.

70.     Defendant's business practices are unlawful because the conduct constitutes a breach of warranty, false marketing and advertising, as well as the other causes of action herein alleged.

71.     The practices are fraudulent because they are likely to deceive consumers into believing that their cartridges are empty and can cause damage to the printer, and that the warranty period on their cartridges has expired.

72.     Plaintiffs have standing to pursue this claim because Plaintiffs have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged

/ / /

herein.  Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiffs, the Class, and the public.

73.    Plaintiffs and the Class are entitled to relief, including full restitution for the printer cartridge ink they purchased but were unable to use and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business acts or practices, and enjoining Defendant to cease and desist from engaging in the practices described herein.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## XII.  PRAYER FOR RELIEF

### On the First Cause of Action Only

1.    For an injunction ordering Defendant to cease and desist in the use of a concealed and built-in shut down date;

### On the Third Cause of Action Only

2.    For restitution and disgorgement;

### On the Second, Fourth, Fifth, and Sixth Causes of Action Only

3.    For compensatory damages for the printer cartridge ink that Plaintiffs and the Class purchased but were unable to use;

4.    For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

5.    For an injunction ordering Defendant to provide informative disclosures and education to the public regarding the "smart chip" technology;

6.    For special damages according to proof on certain causes of action;

7.    Prejudgment interest at the maximum rate;

### On All Causes of Action

8.    Certification of the proposed Class and notice thereto to be paid by Defendant;

9.    Costs of the proceedings herein;

10.    Reasonable attorneys' fees as allowed by statute; and

/ / /

11.     All such other and further relief as the Court deems just and proper.

Dated: March 31, 2006

**COTCHETT, PITRE, SIMON & McCARTHY
McNICHOLAS & McNICHOLAS, LLP
SHELLER, LUDWIG & BADEY
LAW OFFICES OF MICHAEL D. LIBERTY
THE GARCIA LAW FIRM
CHAVEZ & GERTLER LLP
CUNEO, WALDMAN & GILBERT, LLC
SEEGER WEISS LLP
EDELSON & ASSOCIATES, LLC
LAW OFFICES OF SCOTT E. SHAPIRO, P.C.**

By: _____

BRUCE L. SIMON
*Co-Lead Counsel for Plaintiffs and the Class*

1

## XIII.  DEMAND FOR JURY TRIAL

2      Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury

3  trial on the claims so triable.

4

5  Dated: March 31, 2006              **COTCHETT, PITRE, SIMON & McCARTHY**
                                   **McNICHOLAS & McNICHOLAS, LLP**
6                                  **SHELLER, LUDWIG & BADEY**
                                   **LAW OFFICES OF MICHAEL D. LIBERTY**
7                                  **THE GARCIA LAW FIRM**
                                   **CHAVEZ & GERTLER LLP**
8                                  **CUNEO, WALDMAN & GILBERT, LLC**
                                   **SEEGER WEISS LLP**
9                                  **EDELSON & ASSOCIATES, LLC**
                                   **LAW OFFICES OF SCOTT E. SHAPIRO, P.C.**

10

11

12   By: _____
                                       BRUCE L. SIMON
13                                     *Co-Lead Counsel for Plaintiffs and the Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A



» Return to original page

# HP Inkjet Supplies - Limited Warranty for HP Inkjet Print Cartridge Printheads, and Ink Supplies

This warranty applies to HP print cartridges, printheads, and ink supplies.

**NOTE:** This warranty supersedes all previous warranties.

## What this warranty covers 

Each HP print cartridge, printhead, and ink supply is warranted to be free from defects in materials and workmanship during the period of the warranty. This warranty pertains to any HP ink cartridge when used in its designated HP or authorized OEM printing device. Refer to the printing device manual for the proper print cartridge, printhead, or ink supply selection.

## How long the coverage lasts

The coverage lasts until the HP ink is depleted or the "end of warranty" date has been reached, whichever occurs first. The "end of warranty" date may be found on the print cartridge, printhead, or ink supply.

Some products also have warranteed usage limits:

- HP 10 and 11 printheads:
    - Black: 530 cc

    - Color: 200 cc

- HP 14 printheads:
    - Black: 550 cc

    - Color: 400 cc

- HP 80, 81, 83 printheads used in HP Designjet 1000 series printers: 700 cc

- HP 80, 81, 83 printheads used in HP Designjet 5000 series printers: 1000 cc

- HP 84 printheads: 200 cc

- HP 85 printheads:
    - Black: 530 cc

    - Color: 200 cc

## What HP will do 

HP will, at HP's option, either ᵢce products under warranty that prove tc defective or refund the purchase price.

## What the warranty does not cover

This warranty does not cover HP ink products that have been refilled, remanufactured, refurbished, misused, tampered with, or products receiving a printer generated expiration message.

## How to make a claim, or return an HP Inkjet product

If a problem with an HP Inkjet product occurs, visit the retailer, call the regional customer support phone number listed on the product insert, or click the "contact hp" link at the top of this page.

## How State, Province, or Country Laws apply

This warranty gives you specific legal rights. You may have other rights that vary from state to state, province to province, or country to country.

TO THE EXTENT ALLOWED BY LOCAL LAW, THE ABOVE WARRANTIES ARE EXCLUSIVE AND NO OTHER WARRANTY, WHETHER WRITTEN OR ORAL, IS EXPRESSED OR IMPLIED AND HEWLETT-PACKARD SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES OR CONDITION OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR SATISFACTORY QUALITY. TO THE EXTENT ALLOWED BY LOCAL LAW, THE REMEDIES IN THIS WARRANTY STATEMENT ARE YOUR SOLE AND EXCLUSIVE REMEDIES. IN NO EVENT SHALL HEWLETT-PACKARD BE LIABLE FOR ANY INCIDENTAL, DIRECT, CONSEQUENTIAL, SPECIAL, OR INDIRECT DAMAGES, OR LOST PROFITS FROM ANY BREACH OF THIS WARRANTY OR OTHERWISE. SOME COUNTRIES, STATES OR PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

**Quick find your product**

Enter a product number 
(e.g. Deskjet 990cse, Pavilion 7955)

How do I find my product number?

» Return to original page

Privacy statement                    Using this site means you agree to its terms                    Feedback to Webmaste
© 2005 Hewlett-Packard Development Company, L.P.

# Exhibit B



**hp**

SureSupply™
Smarter, simpler online print
supply ordering.



## HP SureSupply overview

HP SureSupply is a free, user-friendly tool enabled through Smart printing technology that provides you with an easy way to manage and purchase HP genuine printing supplies through your preferred reseller, retailer, HP's Small & Medium Business Online Store or hpshopping.com.

SureSupply alerts you automatically via e-mail, text message or pager when your HP printers are low on print supplies. To make re-ordering easy, SureSupply gives you direct access to your preferred supplier's website where the needed supplies are pre-selected in your online shopping cart, ready for check-out.

## Program benefits

- You'll receive proactive notification when print supplies are needed—before you run out.

- It pre-populates your preferred supplier's online shopping cart with needed supplies—so you don't have to search for part numbers.

- Enables you to order other products at the same time you order your genuine HP supplies.

- It lets you manage print supplies more efficiently, reducing printer downtime, and leaving more time to focus on other activities.

- It eliminates the need for large stockpiles of print supplies, so you can reduce your home printing expenses or your company's capital expenditures.

- Gives you a choice of purchase options:
  - Conveniently order online from your preferred reseller, retailer, HP's Small & Medium Business Online Store or hpshopping.com
  - Locate a nearby retail location for quick purchase when you can't wait

- It's free and won't change your current pricing.

## It's easy.

**Get set up.**
Many HP printer models are pre-equipped or can easily be equipped to notify you when supplies are low. In addition, SureSupply is compatible in both direct- and network-connected printing environments. Note: if your computer is directly connected to your printer, you have a direct connect configuration. Any configuration where the printer is not connected directly to the computer is a network connection.

**Receive the alert.**
You'll be notified when print supplies are running low, then go to a pre-order page customized with your printer's stats where the needed supplies are pre-selected. So there's no more need to look up part numbers or check printer compatibility.

**Click to order.**
Follow the prompts to your shopping cart, which is already filled with the supplies you need. You can even shop for other supplies while you're at it.

(continued)

## What printers work with SureSupply?

As mentioned earlier, SureSupply is compatible in both direct- and network-connected HP printing environments and many new printers require no additional configuration to enable SureSupply.

Currently, SureSupply supports select HP mono and color LaserJet, business inkjet, photosmart and consumer deskjet printers.

To see if your printer is SureSupply-enabled, please visit the SureSupply website at www.hp.com/go/suresupply.

## Who's HP SureSupply for?

• Home/home office users

• Small-to-medium businesses

• Currently using SureSupply-enabled printers

• U.S. and Canada only

## Who will benefit from HP SureSupply?

Home/home office users—proactively manage print supplies and reduce home printing or capital expenses

Purchasing Managers—gain control of your inventory

Network Administrators—don't be interrupted by users every time the printer is out of ink or toner

Admins—don't have to rush-order print cartridges and hope they arrive in time

Finance or Business Managers—appreciate how SureSupply can help save your organization time and improve productivity

## Getting started with HP SureSupply

For questions, contact info@hpsuresupply.com or 1-866-HP-SUPPLY (1-866-477-8775).

To get started, contact your office products reseller account representative or retailer or HP.

© 2004 Hewlett-Packard Company Printed in U.S.A.
5982-1755ENUC, 11/2004

www.hp.com/go/suresupply



United States-English

| » HP Home | » Products & Services | » Support & Drivers | » Solutions | » How to Buy |

» Contact HP

Search: [                    ] ⊡
◉ SureSupply ○ All of HP US



# Welcome to SureSupply™.

» **SureSupply**

» Consumer website
» Commercial website
» Shop for supplies

» Reseller/retailer
  website



Print 24/7. Never run out of supplies. Save time. And money. How? With HP SureSupply, a free
tool that sends automatic alerts when HP printers are low on print supplies and makes the
reordering of new supplies a no-brainer. Plus it gives you the choice of ordering online from
retailers, resellers or HP.

Whether you have a small home office, you're a buyer for a commercial outfit or are a reseller or
retailer, everything you need to know about SureSupply is a click away.

» Consumer website (Home office or less than ten employees)
» Commercial website (Over ten employees)
» Shop for supplies

▣ **Printable version**

Privacy statement           Using this site means you accept its terms           Feedback to SureSupply
© 2005 Hewlett-Packard Development Company, L.P.

## Fact sheet



# HP SureSupply: Automated Supplies Ordering Technology for the Business Customer

### Overview

HP's SureSupply automated supplies ordering technology provides business customers with the ability to conveniently and easily reorder toner and ink cartridges for their HP LaserJet and HP Business Inkjet printing systems via the Internet. Leveraging HP's SMART Technology, SureSupply automatically tracks and manages customers' toner or ink level usage, and provides alerts via email or cell phone when toner or ink is low.  With a couple of clicks of a button, customers can access cartridge information, pricing and purchasing options that best meet their needs from the reseller of their choice.

### Highlights

- Alerts users when supplies run low
- Offers a list of all compatible HP supplies available for specific printing systems
- Offers business customers choices regarding how they want to purchase supplies
- Provides a convenient reordering mechanism to ensure supplies are always on hand
- Tracks, manages consumables so customers don't have to

### Specifications

The SureSupply system works in conjunction with the printer, supplies, software and the Internet.  In a few simples steps customers can conveniently and easily reorder supplies. Here's how it's done:

- Step One: The customer receives a reorder message on their computer screen when toner or ink volumes are around 25 percent. The customer simply clicks on the "Order Supplies" link to review their pre-selected choice, pricing and purchasing options.

- Step Two: The customer is presented with a list of compatible supplies for their printer, with the low supply already pre-selected. Customers confirm needed quantities, but can also order other compatible supplies

Hewlett-Packard Company
3000 Hanover Street
Palo Alto, CA 94304
www.hp.com

Editorial Contacts:
Lori Schwind, HP
+1 208 396 2981
lori.schwind@hp.com

Jennie McCann
Porter Novelli for HP
+1 415 975 3328
jennie.mccann@porternovelli.c
om

if desired.

- Step Three: The customer selects the reseller of their choice – either HP or a SureSupply resellers of their choice.

- Step Four: The customer is linked directly to their preferred reseller's shopping cart, where the needed supplies can be clicked to add to their shopping cart. They can then proceed to check out, if needed.

## Support

SureSupply technology is currently available with a wide variety of HP LaserJet, HP Color LaserJet, HP Business Inkjet, and HP DeskJet printers. For the most current listing, please visit www.hp.com/go/suresupply and click on "SureSupply-enabled printers".

###

© 2003 Hewlett-Packard Development Company, L.P. The information contained herein is subject to change without notice. The only warranties for HP products and services are set forth in the express warranty statements accompanying such products and services. Nothing herein should be construed as constituting an additional warranty. HP shall not be liable for technical or editorial errors or omissions contained herein.

08/2003

