**E-Filed 7/25/2008**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: HP INKJET PRINTER LITIGATION | Case Number C 05-3580 JF<br><br>ORDER[1] DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF |

# I. BACKGROUND

Hewlett-Packard Co. ("HP") manufactures printing supplies and inkjet printers. Plaintiffs Nicklos Ciolino ("Ciolino") and Daniel Feder ("Feder") both own HP printers that use "smart chip" technology.[2] According to HP, "smart chip" technology monitors the amount of ink remaining in a cartridge and alerts printer owners when a new cartridge should be obtained.

---

[1] This disposition is not designated for publication and may not be cited.

[2] Ciolino owns a HP PSC 2510 Photosmart printer. Feder did not identify the printer model he owns.

On March 31, 2006, after their pervious pleading had been dismissed for lack of standing, Plaintiffs filed the operative Second Consolidated and Amended Class Action Complaint ("SAC"), alleging that: HP engaged in unfair and deceptive conduct in connection with the "smart chip" technology in its ink cartridges. According to Plaintiffs, the "smart chips" are programmed to indicate prematurely that replacement is needed, when in fact "hundreds of additional pages" of ink remain. The "smart chip" technology allegedly also renders cartridges unusable on a concealed, built-in "expiration date," which is the earlier of thirty months after installation or thirty months after a factory-set "install-by" date, regardless of the amount of usable ink remaining. Plaintiffs claim that HP's "SureSupply" marketing campaign falsely promises consumers an easy way to maintain adequate printer supplies that saves time and money while failing to disclose the premature ink warnings and built-in expiration dates. Plaintiffs allege that "HP has deliberately withheld from its consumers information about the true functioning of the smart chip . . . ."; that they have suffered economic harm because they discarded usable printer cartridges based on premature low-ink warnings; that they relied on specific terms of HP's express warranty that were breached by HP; and that they relied on HP's promotional material in purchasing HP printer cartridges.

Plaintiffs assert six claims for relief: (1) breach of express warranty; (2) breach of implied warranty; (3) unjust enrichment; (4) violations of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; (5) violations of the California False Advertising Act ("FAA"), California Business & Professions Code § 17500 *et seq.*; and (6) violations of the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*

On April 21, 2006, HP moved to dismiss the SAC in part on the basis that Plaintiffs lack standing to allege claims arising from the alleged "expiration date" feature of the "smart chip" technology. The Court granted that motion without prejudice. Plaintiffs have not sought leave to amend the complaint.

On July 20, 2007, Plaintiffs moved for class certification. On September 21, 2007, HP

2

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

1 moved for summary judgment. Shortly after filing their opposition to the summary judgment
2 motion, Plaintiffs asked HP to stipulate to the addition of a new named Plaintiff. HP refused,
3 and on November 8, 2007, Plaintiffs filed a formal motion to add an additional plaintiff.
4 Plaintiffs also moved to continue the hearing on the summary judgment and class certification
5 motions until discovery regarding their proposal to add a new plaintiff was completed. In the
6 interest of judicial economy, the Court rescheduled the hearing on the three motions to January 4,
7 2008, at which time it heard oral argument. For the reasons set forth below, all of the pending
8 motions will be denied.

### III. DISCUSSION

1. Motion for Summary Judgment

HP contends that summary judgment should be granted because Plaintiffs lack standing to assert their claims and because Plaintiffs have not adduced evidence sufficient to establish the claims asserted against HP. For the most part, HP attacks the credibility and specificity of Plaintiffs' deposition testimony.

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). With respect to evaluating evidence submitted on a motion for summary judgment, the Ninth Circuit has explained:

> [T]he court may not weigh evidence or judge witness credibility. However, that an issue is factual does not necessarily preclude summary judgment. If the moving party shows that there is an absence of evidence to support the plaintiff's case, the nonmoving party bears the burden of producing evidence sufficient to sustain a jury verdict on those issues for which it bears the burden at trial. . . . This rule does not direct courts to resolve questions of credibility or conflicting inferences. What it requires courts to do is assess whether the jury, drawing all inferences in favor of the nonmoving party, could reasonably render a verdict in favor of the nonmoving party in light of the substantive law.

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995). Thus, "on a motion for summary judgment, a district court may not weigh evidence to determine its truth, rather, the court's role is limited to determining whether there is a genuine issue for trial." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has come forth with such evidence, to avoid summary judgment the non-moving party must present evidence such that a reasonable trier of fact could return a verdict in its favor. *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1011 (9th Cir. 2007) *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). "A party's own deposition testimony and a sworn declaration are enough; no additional evidence is required." *Robins v. Centinela State Prison*, 19 Fed. Appx. 549, 550 (9th Cir. 2001). The Court must take the testimony of the non-moving party as true. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, conclusory allegations are insufficient to satisfy the non-moving party's burden. *Hall v. Mueller*, 84 Fed. Appx. 814, 816 (9th Cir. 2003).

        a.    Standing

"Standing is a necessary element of federal-court jurisdiction." *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998) (citations omitted). In a class action, the focus is on whether the person invoking federal jurisdiction "personally has suffered some actual or threatened injury," *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982), and not on whether a class member allegedly has been harmed. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by others, unidentified members of the class to which they belong and which the purport to represent.") (citations omitted). The three-pronged test for standing under Article III first requires that a plaintiff establish "'injury in fact' - invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). Second, there must be a "causal connection between the injury and the conduct complained of." *Id*. Finally, it "must

4

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

be 'likely,' as opposed to merely speculative,'" that the injury will be redressed by a favorable decision. *Id*. at 561.  HP contends that it entitled to summary judgment because Ciolino cannot prove causation, and Feder cannot prove either injury or causation.

HP contends that Ciolino does not have standing because he cannot prove that he ever received a "low on ink" ("LOI") warning.  However, at his deposition Ciolino testified that he received LOI warnings on several occasions.   It appears that HP's argument is based on the fact that Ciolino: (1) could not remember the precise wording of the LOI message he received; and did not recognize the message shown to him by opposing counsel at the deposition.  HP's arguments go to the credibility of the evidence.  A reasonable jury could find that Ciolino in fact received an LOI message notwithstanding his failure to recall the warning verbatim.

As to Feder, HP asserts that Feder: (1) presently does not own the inkjet printer he allegedly purchased; (2) has no proof of purchase evidencing that he ever owned an HP inkjet printer; (3) has no receipts for the purchase of any of the replacement ink cartridges he allegedly purchased upon receiving a LOI message; and (4) cannot remember either the model number of the printer or the replacement ink cartridges he allegedly purchased.  Based on these admissions, HP argues that "the parties will never know what [Feder's low on ink] message said.  Without this evidence, Mr. Feder cannot demonstrate injury and causation . . . ."[3]  Motion for Summary Judgment at 14.

At his deposition, Feder testified that he owned an HP inkjet printer that generated LOI

---

[3] Citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992),  and *Trinton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995), HP also asserts that without discovery of Feder's printer it will not be able defend against Feder's claims.  The cases are inapposite.  *Triton* and *Unigard* involved strict product liability claims and the circumstances in those cases required the plaintiffs to produce physical evidence of the defect in the manufacture of plaintiff's own product in order to demonstrate causation of the injury.  In the instant case, Plaintiffs' claims arise from HP's design of an entire series of inkjet printers and cartridges.  "It is well settled that design defect may be shown by circumstantial evidence in the event the product itself is destroyed."  *Hughes Tool Co. v. Max Hinrichs Seed Co.*, 112 Cal. App. 3d 194, 201 (1980).  There is no authority suggesting that HP is entitled to summary judgment simply because Feder no longer owns his printer.

5
Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

1  messages and that he responded to those messages by discarding ink cartridges that allegedly still
2  contained "substantial" amounts of ink.  Although Feder could not recall the precise language of
3  the LOI warnings, he offered testimony about their general substance and his understanding that
4  the LOI warnings were directing him to replace his ink cartridge.  While the evidence is weak, a
5  reasonable jury could find that Feder has suffered a cognizable injury.

      b.  Warranty Claims

HP also seeks summary judgment on Plaintiff's warranty claims because the claims previously were dismissed and Plaintiffs have not amended their complaint.  However, the order of June 6, 2006 dismissed Plaintiffs' warranty claims only to the extent that the claims were based on allegations concerning the alleged built-in expiration date feature.  The SAC also contains allegations that HP: (1) breached an express warranty that the cartridges would be free from defects in materials and workmanship during the warranty period, *see* SAC ¶ 36; and (2) breached express and implied warranties that the smart chip would save consumers money, *Id.* at ¶ 43.  These claims have not been dismissed.

To make out a claim for breach of express warranty, a plaintiff must show that the seller: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Rodarte v. Philipmorris*, No. 03-0353FMC, 2003 WL 23341208 at *7 (C.D. Cal. June 23, 2003). "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App.3d 135, 142 (Cal. Ct. App. 2d Dist. 1986); *see also Long v. Hewlett-Packard Co.*, No. 06-02816 JW, 2006 WL 4877691 at *4 (N.D. Cal. 2006).

HP argues that Plaintiffs cannot sustain their express warranty claims because they cannot identify either the warranties or the false and misleading marketing and advertising statements underlying their claims. However, in response to an interrogatory, Ciolino stated:

6

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

> My decision to purchase an HP printer and HP cartridges was influenced by HP's representations of marketing, including advertising and statements in newspapers, television and ads and HP newsgrams that were e-mailed to me. Although I do not recall all of the specific representations, I recall that they had a consistent theme about HP making good products and products with features that are good for customers.

At his deposition, Feder made the following statements:

> Q: Can you identify any statement or representation by HP that you saw or heard in connection with the purchase of the printer?
> A: No
>
> . . .
> All I remember is that it was – you know it was an HP printer and, you know – I mean, I read HP advertising materials over the years, and so it was part of my consideration. And also, I had a good experience with my LaserJet printers, for the most part. So that all kind of factored in.
>
> . . .
> Q: Okay. How about as to any HP Inkjet cartridge that you purchased; can you remember any specific statements or representations by HP in connection with any such purchase?
> A: You know, I'm sure that I received the warranty when I made the purchase. I don't – it's not my practice to sit down and read the warranties word for word.

It is evident from both Plaintiffs' written and oral testimony that each relied upon some form of express warranty. While neither Plaintiff has identified the precise language of the statements upon which he relied, recitation of the precise language is not an element of an express warranty claim. Again, while Plaintiffs' evidence is weak, it is sufficient to survive summary judgment.

With respect to Plaintiffs' implied warranty claim, HP argues simply that "Plaintiffs' implied warranty of fitness claim fails because their lawsuit has nothing to do with whether their printers were fit for the particular purpose of printing – they clearly were as both plaintiffs were able to operate their respective printers and documents." Motion for Summary Judgment at 22. Plaintiffs respond that the printers were not fit for their intended purpose of utilizing all of the usable ink contained in the cartridges. Opposition at 18. Evaluation of Plaintiffs' implied warranty claim thus turns on how the particular purpose of the printer is defined.

"A particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business

7

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

1  whereas the ordinary purposes for which goods are used by those envisaged in the concept of
2  merchantability and go to the uses which are customarily made of the goods in question." *Amer.*
3  *Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (Cal. Ct. App. 2d Dist.
4  1995). Plaintiffs have a viable argument that the ordinary and expected use of HP's printers is to
5  provide full use of ink cartridges. Because a jury presented with the parties' competing
6  arguments regarding the printer's ordinary purpose might accept Plaintiffs' view, HP's
7  conclusory assertions with respect to its printers is insufficient to warrant summary judgment.

8              c.    UCL, CLRA and False Advertising Claims

9      HP's arguments with Plaintiffs' UCL, CLRA and false advertising claims are similar to
10 those with respect to the warranty claims. HP contends that it is entitled to summary judgment
11 because Plaintiffs cannot identify specifically the false and misleading LOI messages and
12 advertising and marketing statements upon which they relied. As discussed above, the Court
13 concludes that Plaintiffs have described sufficiently the communications at issue.

14         2.   Class Certification

15     A party seeking class certification must demonstrate the existence of the four threshold
16 requirements set forth in Rule 23(a) of the Federal Rules of Civil Procedure: (1) the class is so
17 numerous that joinder of all members is impracticable; (2) there are questions of law or fact
18 common to the class; (3) the claims or defenses of the representative party are typical of the
19 claims or defenses of the class; and (4) the representative party will fairly and adequately protect
20 the interests of the class. *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir.
21 2000). In addition, the party seeking class certification must show that the action meets the
22 requirements of at least one of the three subdivisions of Rule 23(b). *Id.*

23     Rule 23(b)(1) requires that prosecution of separate actions by individual members of the
24 class would create a risk of inconsistent adjudications or of adjudications that would impair the
25 interests of others. Rule 23(b)(2) requires that: "the party opposing the class has acted or refused
26 to act on grounds generally applicable to the class, thereby making appropriate final injunctive
27 relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(3)
28

requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

HP contends that the named Plaintiffs do not meet the typicality, adequacy and commonality requirements, and that the proposed class does not meet the general requirements of Rule 23(b)(2) and Rule 23(b)(3). Because the Court agrees with HP that the class should not be certified under either Rule 23(b)(2) or Rule 23(b)(3), Plaintiffs' motion for class certification will be denied.

          a.     Rule 23(b)(2)

Defendants contend that this action does not qualify for certification under Rule 23(b)(2) because plaintiffs primarily are seeking damages rather than injunctive relief. Plaintiffs argue that the mere fact that damages are sought "does not destroy Rule 23(b)(2) status." *Murray v. Local 2620*, 192 F.R.D. 629, 636 (N.D. Cal. 2000). While Plaintiffs are correct that "[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief but may include cases that also seek monetary damages," *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986), it also is well settled that where a plaintiff seeks both damages and certification under Rule 23(b)(2), he must show that the primary relief sought is injunctive. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2000). In determining the primary relief sought, courts examine the specific facts and circumstances involved, focusing on the plaintiff's intent in bringing the suit.

During discovery, HP asked each of the named Plaintiffs to "describe in detail the damage suffered and/or relief requested based on the claims raised in [the] Second Amended Complaint." Both Plaintiffs provided the same response:

> I am seeking the following categories of damages and relief: (1) compensatory damages; (2) general damages; (3) special damages; (4) disgorgement; (5) prejudgment interest; (6) costs of the proceeding herein; and (7) reasonable attorney fees. I believe that is this case is certified as a class action, the members of the class would also be entitled to the same damages and relief that I am seeking.

Opposition to Motion for Certification, exhibits F & G at Interrogatory No. 25. Notably, neither

9

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

1  Plaintiff made any reference to injunctive relief.  Similarly, the instant motion for class
2  certification focuses principally on the "actual and monetary injury" allegedly suffered by the
3  class.  Nowhere do Plaintiffs argue that their primary interest is in obtaining injunctive or
4  declaratory relief.

5                  b.        Rule 23(b)(3)

6        Plaintiffs also contend that a class action is the superior method of adjudication because
7  "as to each of the claims, common questions predominate over questions, if any, that affect only
8  individual members of the class."  Motion for Class Certification at 23.  However, Plaintiffs
9  appear to presume that California law should apply to all putative class members nationwide;
10 they  make no attempt to satisfy their burden of establishing that the application of California law
11 to the entire proposed class would be appropriate under Rule 23(b)(3).
12       "In determining superiority, courts must consider the four factors of Rule 23(b)(3): (A)
13 the interest of members of the class in individually controlling the prosecution or defense of
14 separate actions; (B) the extent and any litigation concerning the controversy already commenced
15 by or against members of the class; (C) the desirability or undesirability of concentrating the
16 litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the
17 management of a class action."   Fed. R. Civ. Pro. 23(b)(3); *see also Zinser*, 253 F.3d at 1190.
18 "[W]hen the complexities of class action treatment outweigh the benefits of considering common
19 issues in one trial, class action treatment is not the 'superior' method of adjudication."  *Zinzer*,
20 253 F.3d at 1193.
21       In the present case, Plaintiffs seek to represent the claims of a nationwide class without
22 addressing any of the complexities involved in doing so.  Plaintiffs do not discuss any of the
23 potential jurisdictional and due process limitations upon the application of California law to the
24 claims of non-resident class members.  *See  Norwest Mortgage, Inc. v. Superior Court of San*
25 *Diego*, 72 Cal App. 4th 214, 226 (Cal. Ct. App. 4th Dist. 1999) ("To apply its law
26 constitutionally to the claims of nonresident class members, the forum state must have a
27 significant contact or significant aggregation of contacts to the claims asserted by *each member*
28

10

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

of the plaintiff class . . . ."). Nor do Plaintiffs address the potential choice of law problems that would arise should the Court certify a nationwide class. "Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws." *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997).

California applies a three step governmental interest test to choice of law questions. *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987). The Ninth Circuit has explained:

> [F]irst, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction; second, if the laws do not differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied; and third, if more than one jurisdiction has a legitimate interest, the court must focus on the comparative impairment of the interested jurisdictions, seeking to identify and apply the law of the state whose interest would be the more impaired.

*Abogados v. AT&T*, 223 F.3d 932, 934 (9th Cir. 2000). HP has submitted a detailed analysis of the variations in state consumer protection and deceptive trade practice laws. This analysis demonstrates the many differences among states with respect to, for example, statutes of limitations, scienter requirements, and calculation of damages. *See* Opposition to Motion for Certification, exhibits H & I. Other courts have recognized that such differences are material. *See, e.g.*, *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 352-55 (Tex. App. 2003) (noting the "substantial" conflicts in states' consumer protection laws); *In re Bridgeston/Firestone*, 288 F.3d 1012, 1017-18 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules."); *Osborne v. Subaru of America, Inc.*, 198 Cal. App.3d 646, 662-64 (Cal. Ct. App. 3d Dist. 1988). Based on the record before it, the Court concludes that the proposed nationwide class would be unmanageable.

3.   New Plaintiff

Under Rule 15, a plaintiff may amend the complaint once, as a matter or right, prior to the filing of a responsive pleading. Fed. R. Civ. Pro. 15(a). Once an answer or responsive

pleading has been filed, the plaintiff must obtain leave of court or the written consent of the defendant to amend the complaint. *Id*. The determination as to whether a party should be permitted to amend a pleading is left to the discretion of the court. *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1318 (9th Cir. 1982). Amendment may be denied where it would produce an undue delay in the litigation, prejudice the opposing party or result in futility for lack of merit. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). While "prejudice to the opposing party . . . carries the greatest weight" among the relevant factors, "a strong showing" on any one of the factors is sufficient to defeat a motion to amend under Rule 15. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). HP argues that Plaintiffs' request to amend the complaint to add a third named plaintiff should be denied because it would cause undue delay and prejudice by requiring HP to conduct costly discovery and also because the amendment would be futile. The futility of a proposed amendment, standing alone, may justify the denial of leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). A proposed amendment to a class allegation may be deemed futile where even with the amendment class certification should be denied. *See Paul v. WinCo Foods, Inc.*, No. CV 02-381-S-ESJ, 2007 WL 1381794 at *7 (D. Idaho Feb. 16, 2007).

   Plaintiffs seek to amend the SAC to add a class representative for the purpose of class certification. Plaintiffs have not shown how any of the substantial flaws in the present motion for class certification would be overcome by the addition of the proposed third plaintiff. Accordingly, because the amendment would be futile, Plaintiffs' motion to add a named Plaintiff will be denied.

### IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that HP's motion for summary judgment, and Plaintiffs' motions for class certification and leave to add a new plaintiff are DENIED.

DATED: July 25, 2008

_____
JEREMY FOGEL
United States District Judge

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)

1  This Order has been served upon the following persons:

2

3  Bruce Lee Simon, bsimon@cpsmlaw.com

   Kelly L Bulawsky, kbulawsky@cpsmlaw.com
4
   Philip L. Gregory, pgregory@cpsmlaw.com
5
   Sally J. Berens, sberens@gibsondunn.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

Case No. C 05-3580
ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, CLASS CERTIFICATION AND LEAVE TO ADD A NEW PLAINTIFF
(JFLC1)