Niall P. McCarthy (SBN 160175)
nmccarthy@cpmlegal.com
Justin T. Berger (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & MCCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Brian S. Kabateck (SBN 152054)
bsk@kbklawyers.com
Richard L. Kellner (SBN 171416)
rlk@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Steven N. Berk *(admitted pro hac vice)*
steven@berklawdc.com
**BERK LAW PLLC**
1225 15th Street. N.W.
Washington D.C. 20005
Telephone: (202) 232-7550
Facsimile: (202) 232-7556

*Counsel for Plaintiffs and the Settlement Class
and On Behalf of the Proposed Settlement Class*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **In Re: HP Inkjet Printer Litigation** | Master File No.: C053580 JF (PVT) |
| | **PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPORTING DECLARATIONS AND EVIDENCE FILED CONCURRENTLY HEREWITH** |
| This Document Relates To: All Actions | Date: October 1, 2010 |
| | Time: 9:00 A.M. |
| | Courtroom: 3, 5th Floor |
| | Judge: Hon. Jeremy Fogel |

1

## TABLE OF CONTENTS

2   NOTICE OF MOTION AND MOTION .................................................................................... ivv

3   MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

4   I.    INTRODUCTION.......................................................................................................... 1

5   II.   THE LITIGATION OF THE ACTIONS ....................................................................... 4

6         A.    The *Ciolino* Action.......................................................................................... 5

7         B.    The *Rich* Action .............................................................................................. 7

8         C.    The *Blennis* Action.......................................................................................... 9

9   III.  THE SETTLEMENT NEGOTIATIONS...................................................................... 10

10        A.    Injunctive Relief............................................................................................... 11

11        B.    E-Credits............................................................................................................ 12

12        C.    Other Aspects of the Settlement....................................................................... 13

13  IV.   THE CASES SHOULD BE CONSOLIDATED FOR SETTLEMENT PURPOSES........ 14

14  V.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT ........................ 15

15        A.    The Proposed Settlement Merits Preliminary Approval ......................................... 17

16        B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23 ................. 18

17        C.    The Court Should Order Dissemination Of The Proposed Class Notice ................ 22

18        D.    The Court Should Set A Schedule For Final Approval........................................... 24

19  VI.   CONCLUSION ............................................................................................................. 24

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Acosta v. Trans Union*, 243 F.R.D. 377 (C.D. Cal. 2007) ................................................................ 16

4

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................... 18, 21

5

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ............................................................................ 20

6

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975) ...................................................................... 18, 21

7

8

*Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, at \*2 (N.D. Cal. Oct. 15, 2009) ............. 16

9

*Churchill Village, LLC v. General Electric Co.*, 361 F.3d 566 (9th Cir. 2004) .............................. 16

10

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................................... 16

11

*De La Fuente v. Stokely- Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983) ....................................... 19

12

*Dukes v. Wal-Mart, Inc.*, 603 F.3d 571 (9th Cir. 2010) ........................................................... 18, 20

13

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) .................................................................... 23

14

*Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009) .................................................... 23

15

*General Tel Co. v. Falcon*, 457 U.S. 147 (1982) ............................................................................. 21

16

*Hanlon v. Chrysler Corp.* 150 F.3d 1011 (9th Cir. 1998) .................................................... 17, 18, 20

17

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .......................................................... 20

18

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ..................................... 16

19

*In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302 (E.D. Pa. 1980) ................... 19

20

*In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139 (S.D.N.Y. 2008) .............. 23

21

*In re M.L. Stern Overtime Litig.*, 2009 WL 995864, at \*3 (S.D. Cal. 2009) .................................. 16

22

*In re Pacific Enterprises Securities Litig.*, 47 F.3d 373 (9th Cir. 1995) .......................................... 16

23

*In re United Energy Corp. Solar Power Modules Tax Shelter Investors Securities Litigation*,
122 F.R.D. 251 (C.D. Cal. 1988) ............................................................................................ 20

24

25

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................................ 17

26

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ................................................................. 19, 21

27

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. III. 1992) ...................................... 20

28

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985) ........................................................ 20

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .............................................................. 23

*Smith v. University of Washington Law School*, 2 F.Supp.2d 1324 (W.D. Wa. 1998) .................. 20

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................ 16

*Todd v. Retail Concepts, Inc.*, No. 07-0788, 2008 WL 3981593, at *2 (M.D. Tenn. Aug. 22, 2008) .................................................................................................................... 23

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................. 5, 7

Cal. Bus. & Prof. Code § 17500 .................................................................................. 5

Cal. Civ. Code § 1750 ................................................................................................ 5

**Rules**

Fed. R. Civ. P. 23 ......................................................................... iv, 3, 16, 18, 21, 22, 23

Fed. R. Civ. P. 42 ...................................................................................................... iv

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ....... 16, 22

Manual for Complex Litigation, § 21.632                                                      16, 18

1

**NOTICE OF MOTION AND MOTION**

2      TO THE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD

3   HEREIN:

4      PLEASE TAKE NOTICE THAT on October 1, 2010, at 9:00 a.m., or as soon thereafter as

5   it may be heard, in Courtroom 3 of the above-entitled Court, Plaintiffs Daniel Feder, Nicklos

6   Ciolino, Carl K. Rich, David Duran, Jackie Blennis, and David Brickner ("Plaintiffs") will, and

7   hereby do, move for an order: (1) consolidating of three separate actions pending before this

8   Court (*In re: HP Inkjet Printer Litigation*, Case No. C05-3580 JF ("*Ciolino*"); *Rich v. Hewlett-*

9   *Packard Co.*, Case No. C06-03361 JF ("*Rich*"); and *Blennis v. Hewlett-Packard Co.*, Case No.

10  C07-00333 JF ("*Blennis*")) for settlement purposes; (2) granting preliminary approval of the

11  proposed Stipulation of Settlement between them and Defendant Hewlett-Packard Company

12  ("HP"); (3) directing notice to the class; and (3) scheduling a fairness hearing to finally approve

13  the proposed class action settlement following the fairness hearing.

14     For the reasons set forth in greater detail in the accompanying Memorandum of Points and

15  Authorities, the Court should consolidate the *Ciolino*, *Rich*, and *Blennis* actions for settlement

16  purposes because these actions involve overlapping products, claims, legal theories, and settlement

17  class members, and these cases otherwise meet the requirements for consolidation set forth in Rule

18  42(a) of the Federal Rules of Civil Procedure. It would be more efficient for the Court, settlement

19  class members, and the parties to consolidate their filings in one action rather than duplicating the

20  same notices, objections, appearances, motions, and other filings in all three cases.

21     In addition, Plaintiffs respectfully submit that this Court should:

22     1.      Conditionally certify for settlement purposes only and authorize Plaintiffs to

23  represent a settlement class consisting of all individual or entity end-users who purchased or

24  received as a gift in the United States from September 6, 2001, to September 1, 2010, one or more

25  of the HP inkjet printers identified in Exhibit F to the Stipulation of Settlement (the "Settlement

26  Class"), because the proposed settlement class satisfies the requirements of Rules 23(a), (b), and

27  (e) of the Federal Rules of Civil Procedure;

28

PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT: Master File No. C05-3580 JF (PVT)

iv

1      2.    Preliminarily find that the proposed settlement reflected in the Stipulation of

2 Settlement is fair, reasonable, and in the best interests of the proposed Settlement Class, and that it

3 warrants notifying the Settlement Class of the terms of the proposed settlement and of their rights

4 in connection with the proposed settlement;

5      3.    Approve as to form and content the long form "NOTICE OF SETTLEMENT"

6 ("Long Form Notice") and the summary "Notice of Proposed Class Action Settlement"

7 ("Summary Notice"), substantially in the form set forth at Exhibits B and E to the Stipulation of

8 Settlement;

9      4.    Direct that the Long Form Notice and Summary Notice be disseminated in the

10 manner described in Part III (paragraph 30) of the Stipulation of Settlement;

11      5.    Establish deadlines for requests for exclusion from the Settlement Class and the

12 filing of objections to the proposed settlement;

13      6.    Set the hearing on the final approval of the proposed settlement and its terms for

14 January 14, 2011; and

15      7.    Prohibit the initiation or continuation of claims against HP by Plaintiffs and/or

16 members of the Settlement Class, whose claims are released as set forth in the Stipulation of

17 Settlement.

18      This Motion is based on this Notice of Motion; the attached Memorandum of Points and

19 Authorities; the Declarations of Niall McCarthy and Cameron Azari; all supporting exhibits,

20 settlement papers (including the Stipulation of Settlement and the proposed Long-Form Notice

21 and Summary Notice, Preliminary Approval Order, and Final Order and Judgment), and other

22 documents; the pleadings, orders, transcripts, and other papers on file in this matter; and any

23 further evidence and arguments as may be presented at the hearing of this matter.

24 DATED: August 24, 2010          Respectfully submitted,

25

26               By:       */s/ Niall P. McCarthy*
                            Niall P. McCarthy
                            COTCHETT, PITRE & McCARTHY

27

28                           *Counsel for Plaintiffs and the Settlement Class and*
                           *On Behalf of the Proposed Settlement Class*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs Daniel Feder, Nicklos Ciolino, Carl K. Rich, David Duran, Jackie Blennis, and David Brickner ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their motion for an order consolidating the three separate actions entitled *In re: HP Inkjet Printer Litigation*, Case No. C05-3580 JF ("*Ciolino*"); *Rich v. Hewlett-Packard Co.*, Case No. C06-03361 JF ("*Rich*"); and *Blennis v. Hewlett-Packard Co.*, Case No. C07-00333 JF ("*Blennis*") for purposes of settlement, and for an order preliminarily approving the proposed settlement of these actions against defendant Hewlett-Packard Company ("HP").

For several years the parties have heavily litigated the *Ciolino*, *Rich*, and *Blennis* actions and have conducted extensive pretrial discovery (including the depositions of 17 witnesses, the production of more than 250,000 pages of documents, and more than 100 written discovery requests). Nonetheless, through extended settlement negotiations before Ret. Judge James Warren (and several other respected mediators), Plaintiffs have successfully negotiated a class settlement that provides the classes with meaningful relief in the form of enhanced disclosures that significantly reduce any prospective harm that Plaintiffs have alleged the class and other consumers (both now and in the foreseeable future) would sustain because they do not know certain important details of HP's inkjet technology.

There are two facets of this proposed settlement. First, as further detailed below, at their essence these class actions were brought because Plaintiffs alleged that HP did not disclose important details of its inkjet printer technology to consumers. Thus, a significant component of this settlement is to provide class members with additional information regarding certain features of HP inkjet printers. This settlement enhances disclosure. It thus directly addresses, and resolves, the core issue in these cases. With enhanced disclosure, millions of HP inkjet printer owners, now and in the future, will be empowered to better manage their use of ink and ultimately save money. Specifically, HP agrees to discontinue the use of certain pop-up messaging that includes the graphic image of an ink gauge, ruler, or container of ink, and to make certain changes to the disclosures on its website and to the packaging, manuals and/or user interfaces for HP

small-format inkjet printers.  These changes include the following:

(1) HP will incorporate disclosures into its website, user manuals, and/or user interfaces explaining that HP's low-on-ink messages (the technology at issue in *Ciolino*) are based on estimated ink levels and that actual ink levels may vary, and that the user does not have to replace a print cartridge when a low-on-ink message is received but rather may continue printing until the user is not satisfied with the print quality of the printed material or, if applicable, when the user reaches a "replace cartridge" message.

(2) HP will incorporate on its website and/or user manuals disclosures regarding "underprinting"—the inkjet technology at issue in the *Rich* action, whereby certain HP color inkjet printers may, in certain circumstances depending on the printer settings and customer inputs, use a combination of inks from the tri-color (or other, non-black color) and black inkjet cartridges to produce black text and images.  These disclosures will include a description of what underprinting is, why it is used, and some of the options for disabling or minimizing the use of underprinting.  HP also will include disclosures regarding page yields including a summary of HP's ISO testing for page yields and an explanation that actual yield varies depending on the content of printed pages and other factors.

(3) HP will incorporate disclosures into its website and/or product packaging regarding ink expiration—the technology at issue in the *Blennis* action, whereby HP may use built-in dates on which certain inkjet cartridges will stop working—including an explanation of the inkjet printers and cartridges that are subject to ink expiration, why HP employs ink expiration dates for certain printer models and how that date is determined, and how ink expiration works.

Accordingly, the benefits of this settlement will be felt far beyond the monetary relief provided.

Second, the proposed Settlement Class may receive direct monetary relief if they satisfy the eligibility requirements set forth in the Stipulation of Settlement.  The monetary relief component of this settlement provides that every member of the Settlement Class may be eligible to receive an electronic credit to purchase printer products from HP for *each printer* that is included within the class definition below.  The class members must affirmatively apply for these e-credits using an online claim form, and there is an overall cap of $5,000,000 for this class benefit.  Plaintiffs and class counsel anticipate that class members will be receiving the full, or close to the full, monetary benefits available under this settlement.  The e-credits are the equivalent of cash and can be used for the purchase of products that class members actually use— HP printers and printer-related products including ink cartridges.  Accordingly, the relief to the class is not comparable to "coupon" settlements.

PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; Master File No. C05-3580 JF (PVT)

2

1        The parties have negotiated a comprehensive notice program that will maximize the

2    likelihood that class members will be provided with notice of the proposed settlement. The

3    information provided will prevent future damage to the class from the challenged HP practices by

4    providing easy to understand and user friendly examples of the changes to HP's business

5    practices. The notice program includes the sending of e-mail notice to the e-mail addresses

6    contained in HP's product registration database that class members have previously provided to

7    HP through product registration or other customer contact (except for class members who have

8    previously withheld their consent to being contacted by HP), and publication notice in PARADE

9    magazine, USA WEEKEND, PEOPLE and CIO magazine, and in banner advertisements on

10   YAHOO.COM and other websites through 24/7 REAL MEDIA NETWORK. An experienced class

11   action claims administrator has assisted in the design of this notice program, and a notice expert

12   has reviewed the notice plan and concluded that it is the most effective practicable notice program

13   possible and that it complies with Rule 23 and the Due Process Clause. (Declaration of Cameron

14   Azari ("Azari Decl."), ¶ 10.)

15       Class Counsel are experienced class action attorneys, and they also strongly believe that

16   the Stipulation of Settlement is fair, reasonable, and adequate and represents a significant recovery

17   based on the risks of establishing class certification and liability and damages at trial on the claims

18   as set forth in the respective complaints in the three actions. (Declaration of Niall McCarthy

19   ("McCarthy Decl."), ¶¶ 44-50.) Indeed, given the present posture of this action, the proposed

20   settlement most assuredly passes the standard for an acceptable class action settlement.

21       Accordingly, Plaintiffs and their counsel respectfully request that this Court review the

22   parties' Stipulation of Settlement (McCarthy Decl., Ex. B) and other materials provided, and enter

23   an order:

24       1.    Granting preliminary approval of the proposed settlement;

25       2.    Conditionally certifying for settlement purposes the proposed settlement class of all

26   individuals and entity end-users who purchased or received as a gift in the United States from

27   September 6, 2001, to September 1, 2010, one or more of the HP inkjet printer models identified

28   on Exhibit F to the Stipulation of Settlement;

1       3.     Appointing Daniel Feder, Nicklos Ciolino, Carl K. Rich, David Duran, Jackie

2 Blennis, and David Brickner as Settlement Class Representatives and their counsel, the law firms

3 of Cotchett, Pitre & McCarthy; Kabateck Brown Kellner, LLP; Berk Law PLLC; Chavez &

4 Gertler LLP; Cuneo, Waldman & Gilbert, LLC; Edelson & Associates, LLC; The Garcia Law

5 Firm; Law Offices of Michael D. Liberty; Law Offices of Scott E. Shapiro, P.C.; McNicholas &

6 McNicholas, LLP; Pearson, Simon, Warshaw & Penny, LLP; ShubLaw, LLC; and Seeger Weiss,

7 LLP, as Class Counsel;

8       4.     Directing that notice be given to settlement class members as proposed, including

9 by e-mail to their last known e-mail addresses, to the extent such e-mail address information exists

10 in HP's registration database, is a valid e-mail address, and the settlement class member has not

11 withheld his/her consent to being contacted by HP via e-mail; and

12       5.     Setting a hearing date and briefing schedule for final settlement approval and Class

13 Counsel's fee and expense application.

14  **II.**    **THE LITIGATION OF THE ACTIONS**

15       This settlement involves three separate yet intertwined class actions that were brought with

16 respect to HP inkjet printers: the *Ciolino*, *Rich*, and *Blennis* actions.

17       The *Ciolino* action claims that certain HP inkjet printers used "low on ink" messaging

18 technology to indicate that replacement of a cartridge is needed when the cartridge is not empty

19 and is capable of additional printing, and that this technology confused customers into prematurely

20 replacing their inkjet cartridges.

21       The *Rich* action claims that certain HP color inkjet printers used color ink in addition to

22 black ink when printing black text and images without disclosing this to consumers and without

23 providing consumers with the option of disabling this feature, that HP misrepresented and/or

24 failed to disclose the actual page yield for the products at issue (including the true basis for the

25 page yield and cost per page information provided to consumers), and that HP failed to disclose its

26 use of color ink when printing black in connection with stating its page yields.

27       The *Blennis* action claims that HP designed certain inkjet printers and cartridges to shut

28 down on an undisclosed expiration date, and that at this point consumers are prevented from using

1    any ink remaining in the expired cartridge and from using all of the printer's functions until the

2    expired cartridge is replaced.

3         HP denies all of these claims. And, as described below, the litigation of each action has

4    been prolonged and comprehensive, allowing all parties to thoroughly and intelligently assess the

5    risks of future litigation and the benefits of a negotiated compromise.

6    **A.**      **The *Ciolino* Action**

7         On September 6, 2005, plaintiff Nicklos Ciolino commenced an action against HP in this

8    Court that challenged the "low on ink" ("LOI") warnings deployed on several lines of HP inkjet

9    printers as misleading and deceptive based on the following claims and alleged facts and practices:

10   (1) that HP programmed "Smart Chips" or used other LOI messaging technology in its inkjet

11   printers and cartridges to indicate that replacement of a cartridge is needed when the cartridge is

12   not empty and is capable of additional printing; (2) that HP's LOI messages, gauges, warnings, or

13   indicators were deceptive and misled and confused consumers into prematurely replacing their

14   inkjet cartridges; (3) that HP's "SureSupply" program and related marketing materials were

15   deceptive and misled consumers; (4) that plaintiffs and class members were deprived of the ability

16   to use all of the ink in their HP inkjet print cartridges; and (5) that plaintiffs and class members

17   purchasing the HP inkjet printers and cartridges at issue did not get the full value of what they

18   paid for and were promised.

19         The operative complaint in the *Ciolino* action (the Second Amended Complaint) asserts

20   claims for alleged violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §

21   17200 *et seq.*, "UCL"), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et*

22   *seq.*), California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), and claims for

23   unjust enrichment, breach of express warranty, and breach of implied warranty on behalf of a

24   nationwide class of consumers.

25         HP aggressively defended the lawsuit with a number of arguments, including that the low-

26   on-ink messages were straightforward and did not tell or require consumers to replace their inkjet

27   cartridges. Rather, the messages informed consumers that they were low-on-ink, and that they

28

1   should consider having a replacement cartridge available for when print quality was no longer
2   acceptable to them.

3        In bridging the gap toward settlement, both sides made significant but rational
4   compromises.  Plaintiffs accepted that not all of the low-on-ink messages were deceptive or
5   misleading, and asserted that the most confusing of the low on ink warnings were those with
6   graphic images showing near empty cartridges.  HP agreed to eliminate those warning in a series
7   of business practice changes.

8        Significant damages were not appropriate or attainable in this case for several reasons.
9   First, although plaintiffs were confident they could establish that HP's "low on ink" warnings were
10  inaccurate, no warning actually and explicitly directs the consumer to "throw out your cartridge,"
11  nor does the activation of the warning shut down the cartridge prematurely.  Moreover, it would be
12  difficult if not impossible to determine how much ink remains in a cartridge when discarded by a
13  consumer (particularly many years after the fact).  Accordingly, a case to obtain individual
14  damages would be highly speculative and would more than likely not succeed.  Thus, Plaintiffs
15  agreed that any cash (or cash-like relief) must be a small percentage of the total compensation
16  provided to the class, and, even then, consumers seeking to take advantage of these funds must
17  demonstrate they actually relied on the warnings and reasonably believed they were required to
18  "toss out" cartridges.

19       Further complicating the litigation and increasing the risk substantially of ultimately
20  succeeding was this Court's decision denying nationwide class certification on July 25, 2008.
21  Although that decision rested on "manageability" grounds, it did limit plaintiffs to moving
22  forward on their second attempt at class certification with a California-only state class.  Moreover,
23  the court's companion decision on the same date, albeit denying HP's Motion for Summary
24  Judgment, included a discussion of plaintiffs' substantive claims that was skeptical of plaintiffs'
25  class claims and raised some doubt as to whether even a statewide class would be approved.  In
26  effect, strident negotiation was the best opportunity to assure that the millions of members in the
27  class would receive some relief.

28

1   **B.     The *Rich* Action**

2          On May 22, 2006, plaintiff Carl K. Rich commenced an action against HP in this Court

3   based on the following claims and alleged facts and practices: (1) that HP failed to disclose that

4   its color inkjet printers use color ink in addition to black ink when printing black text and images

5   (this technology is referred to as "underprinting"); (2) that HP failed to provide consumers of HP

6   color inkjet printers with the option of printing black text and images using ink from the black

7   print cartridge only; (3) that HP published and made representations regarding the page yield

8   specifications for its inkjet printers and cartridges but misrepresented and/or failed to disclose the

9   actual page yield customers would receive for the products at issue, including the true basis for the

10  page yield and cost per page information provided to consumers; and (4) that HP failed to disclose

11  its use of color ink when printing black in connection with stating its page yields for color inkjet

12  printers and cartridges, thereby increasing the actual costs of printing black text and images. The

13  operative complaint in the *Rich* action (the Second Amended Complaint) asserts claims for alleged

14  violations of the UCL, unjust enrichment, and fraudulent concealment on behalf of a nationwide

15  class of consumers.

16         Plaintiff Rich's original complaint was amended twice. The First Amended Complaint

17  was filed on September 29, 2006, to add causes of action for breach of express warranty and

18  breach of the covenant of good faith and fair dealing (in addition to the claims discussed above).

19  The Second Amended Complaint was filed on January 12, 2007, following the Court's order of

20  December 4, 2006 granting HP's Motion to Dismiss. Based on this order, plaintiffs dropped their

21  claims for breach of contract, breach of express and implied warranty, and breach of the covenant

22  of good faith and fair dealing. The Second Amended Complaint (which HP answered on February

23  28, 2007) also introduced an additional plaintiff and proposed class representative (David Duran, a

24  resident of California) and maintained claims based on unjust enrichment, fraudulent concealment,

25  and violations of the UCL. In the Second Amended Complaint, Plaintiffs Rich and Duran allege

26  that HP designed its color inkjet printers to use color ink—in addition to the significantly less

27  expensive black ink—when printing black and white images and text, in order to force its

28

1  customers to prematurely deplete their color ink cartridges and therefore prematurely purchase the
2  expensive color inkjet cartridges.

3      On June 23, 2009, Plaintiffs filed a motion to certify two classes—a damages class
4  consisting solely of California consumers, and a proposed nationwide class for injunctive relief
5  only. On December 7, 2009, HP filed its Opposition to Plaintiffs' motion for class certification,
6  and simultaneously filed a Motion for Summary Judgment, where it argued, *inter alia*, that: (1)
7  plaintiffs cannot establish that HP had an affirmative duty to disclose the allegedly concealed
8  information, and each of their claims fails as a result; (2) plaintiffs cannot establish that HP caused
9  them any harm, or that the allegedly concealed information was material to their purchase
10 decisions, thus entitling HP to summary judgment on plaintiffs' fraudulent concealment and UCL
11 claims; and (3) plaintiffs' purported "claim" for unjust enrichment fails because it necessarily
12 depends on, and falls with, their other fraud-based claims. In light of the parties' extensive
13 settlement discussions, neither plaintiffs' Motion for Class Certification nor HP's Motion for
14 Summary Judgment has been heard, and this Court took them off calendar for administrative
15 reasons on March 8, 2010, pending the parties' settlement discussions.

16     As with the *Ciolino* action, in bridging the gap toward settlement of the *Rich* action, both
17 sides made significant but rational compromises. Plaintiffs accepted that underprinting is a
18 legitimate and common technology that increases print quality. HP agreed to provide additional
19 disclosures to consumers regarding the use of underprinting, its pros and cons, and measures that
20 can be used to disable it.

21     Moreover, as with the *Ciolino* action, significant damages were not appropriate or
22 attainable in this *Rich* matter for several reasons. First, although plaintiffs were confident they
23 could establish that underprinting caused consumers to use color ink when they would not have
24 expected to, it would be difficult if not impossible to determine how much color ink is actually
25 expended by consumers due to underprinting. Furthermore, it would be difficult to establish that
26 had consumers known about underprinting, they would have chosen to disable it, and thereby
27 sacrifice the benefit of increased print quality due to underprinting. Accordingly, a case to obtain
28 individual damages would be highly speculative and would more than likely not succeed. Thus,

1  plaintiffs agreed that any cash (or cash-like relief) must be a small percentage of the total
2  compensation provided to the class.

3  **C.    The _Blennis_ Action**

4  On January 17, 2007, Plaintiffs Jackie Blennis and David Brickner commenced an action
5  against HP in this Court based on the following claims and alleged facts and practices: (1) that HP
6  designed certain of its inkjet printers and inkjet cartridges to shut down on an undisclosed
7  expiration date, at which point consumers are prevented from using the ink that remains in the
8  expired cartridge and from using all of the printer's functions (including scanning or faxing
9  documents) until the expired cartridge is replaced; (2) that HP failed to disclose and/or actively
10 concealed information regarding its use of expiration dates in certain of its inkjet printers and
11 cartridges; and (3) that HP interfered with the right of plaintiffs and the class members to possess
12 and use all of the ink in the HP print cartridges that they purchased.

13 The original complaint in the _Blennis_ action asserts claims for alleged violations of the
14 UCL, fraudulent concealment, unjust enrichment, breach of express warranty, breach of implied
15 warranty, trespass, and conversion on behalf of a nationwide class of consumers. HP filed a
16 Motion to Dismiss the complaint. On March 25, 2008, the Court dismissed Plaintiff's claims for
17 express warranty, implied warranty, trespass to chattels and conversion. On May 8, 2008, HP
18 answered Plaintiffs' complaint. On December 8, 2009, Plaintiffs filed their Motion for Class
19 Certification, seeking to certify a class consisting of "All persons or entities in the United States
20 who own one or more models of Hewlett-Packard inkjet printers that use ink cartridges that have
21 an expiration date." In light of the parties' extensive settlement discussions, the Motion for Class
22 Certification has not yet been heard.

23 As with _Ciolino_ and _Rich_, significant damages were not appropriate or attainable in this
24 _Blennis_ matter for several reasons. First, although Plaintiffs were confident that they could
25 establish that HP employed expiration dates without properly disclosing those dates to consumers,
26 it would be difficult if not impossible to establish which consumers may have hit expiration dates
27 and how much ink, if any, may have remained in the cartridge at the time the expiration date was
28 hit. Furthermore, HP did provide some disclosures to consumers regarding ink expiration, and HP

1  believed that it had legitimate technical reasons for employing ink expiration dates in the limited

2  number of HP printer models where such expiration dates were employed. Accordingly, a case to

3  obtain individual damages would be highly speculative and would more than likely not succeed.

4  Thus, as in the *Ciolino* and *Rich* actions, Plaintiffs agreed that any cash (or cash-like relief) must

5  be a small percentage of the total compensation provided to the class.

6  **III.     THE SETTLEMENT NEGOTIATIONS**

7          Throughout the *Ciolino*, *Rich*, and *Blennis* actions, the counsel for the parties engaged in

8  multiple informal but comprehensive settlement discussions, giving due consideration to the

9  parties' respective positions. Plaintiffs' counsel in the course of the litigations had conducted an

10  extensive investigation into the facts and law relating to the matters alleged in their respective

11  complaints. The investigation included: (1) the depositions of 17 witnesses; (2) the production of

12  more than 250,000 pages of documents; (3) more than 100 written discovery requests; (4) the

13  inspection of several of the HP Inkjet printers at issue; (5) consultations with industry personnel;

14  (6) extensive work with experts and testing by those experts; (7) numerous interviews of witnesses

15  and putative members of the classes; (8) the evaluation of information provided by current or

16  former employees of HP (including the HP engineers with primary responsibility for the design of

17  some of the HP inkjet printer models at issue and matters related thereto); and (9) legal research as

18  to the sufficiency of the claims.

19          As a result of the foregoing investigation, Plaintiffs and their counsel obtained

20  comprehensive knowledge of HP's printer technology which extended to all three actions, and

21  received, examined, and analyzed information, documents, printers, components, and materials

22  that they deemed necessary and appropriate to enable them to enter into a settlement on a fully

23  informed basis. Settlement was ultimately reached as a result of extensive arm's length

24  negotiations between counsel for Plaintiffs in the *Ciolino*, *Rich*, and *Blennis* actions, on the one

25  hand, and counsel for HP, on the other hand, occurring over several years and multiple mediation

26  sessions with several highly respected and nationally-recognized mediators—the Honorable

27  Daniel Weinstein of JAMS (*Ciolino*), the Honorable James L. Warren of JAMS (in the *Ciolino*

28  and *Rich* actions), and Alexander S. Polsky, Esq., of JAMS (*Blennis*).

1       Accordingly, the parties have entered into a Stipulation of Settlement that provides class

2 members with sufficient information to make a reasoned decision regarding the future purchase of

3 HP inkjet printers, and some monetary compensation for the alleged damages sustained by the

4 *Ciolino*, *Rich*, and *Blennis* classes, as described below.

5 **A.**    **Injunctive Relief**

6       As discussed above, the *Ciolino*, *Rich*, and *Blennis* actions focus on alleged nondisclosure

7 of information about certain features of, and technology used in, HP's inkjet printers. The

8 injunctive relief provided to the Settlement Class addresses the core complaint in each case by

9 requiring HP to discontinue the use of certain pop-up messaging that includes the graphic image of

10 an ink gauge, ruler, or container of ink, and by requiring HP to disclose additional information

11 regarding the HP technology that forms the basis of the *Ciolino*, *Rich*, and *Blennis* actions on HP's

12 website (a location where HP customers already obtain information about and can purchase HP

13 printer products), and in the packaging, manuals, and/or user interfaces for HP inkjet printers.

14 Specifically, these changes and disclosures include the following:

15            (1)    HP will incorporate disclosures into its website, user manuals,
16                 and/or user interfaces explaining that HP's low-on-ink messages
                  (the technology at issue in *Ciolino*) are based on estimated ink
17                 levels and that actual ink levels may vary, and that the user does
                  not have to replace a print cartridge when a low-on-ink message is
18                 received but rather may continue printing until the user is not
                  satisfied with the print quality of the printed material or, if
19                 applicable, when the user reaches a "replace cartridge" message.

20            (2)    HP will incorporate on its website and/or user manuals disclosures
                  regarding "underprinting"—the inkjet technology at issue in the
21                 *Rich* action, whereby certain HP color inkjet printers may, in
                  certain circumstances depending on the printer settings and
22                 customer inputs, use a combination of inks from the tri-color (or
                  other, non-black color) and black inkjet cartridges to produce black
23                 text and images. These disclosures will include a description of
                  what underprinting is, why it is used, and some of the options for
24                 disabling or minimizing the use of underprinting. HP also will
                  include disclosures regarding page yields including a summary of
25                 HP's ISO testing for page yields and an explanation that actual
                  yield varies depending on the content of printed pages and other
26                 factors.

27            (3)    HP will incorporate disclosures into its website and/or product
                  packaging regarding ink expiration—the technology at issue in the
28                 *Blennis* action, whereby HP may use built-in dates on which
                  certain inkjet cartridges will stop working—including an
                  explanation of the inkjet printers and cartridges that are subject to

> ink expiration, why HP employs ink expiration dates for certain printer models and how that date is determined, and how ink expiration works.

Class counsel believes that these disclosures achieve the primary objective of the *Ciolino*, *Rich*, and *Blennis* actions.

**B.   E-Credits**

The parties also negotiated some direct monetary relief to the class members in the *Ciolino*, *Rich*, and *Blennis* actions. Given the current litigation posture of the cases, Plaintiffs and their counsel believe that the compensation is eminently fair and reasonable. In settlement of these three matters, HP has agreed to create a pool of up to $5,000,000 in monetary e-credits that can be used for the purchase of printers or printer supplies online at HP's website (www.shopping.hp.com). Each participating settlement class member in the *Ciolino* action will be eligible to receive up to $5.00 in e-credits for each *Ciolino* printer model purchased or received as a gift. Each participating settlement class member in the *Rich* action will be eligible to receive up to $2.00 in e-credits for each *Rich* printer model purchased or received as a gift. Each participating settlement class member in the *Blennis* action will be eligible to receive up to $6.00 in e-credits for each *Blennis* printer model purchased or received as a gift.[1]

The claims process is slightly different for the *Rich* class members as compared with the *Ciolino* and *Blennis* class members. With respect to each printer purchased or received as a gift in the *Rich* action, the class member need only provide proof of ownership (*e.g.*, the serial number or other proof) in order to obtain the e-credit of up to $2.00. No attestation or further proof of injury will be required to recover an e-credit for *Rich* class members.

With respect to each printer purchased or received as a gift in the *Ciolino* action, the class member must not only provide proof of ownership, but must also declare that they: (a) received a LOI Message; (b) believed that they were out of ink as a result of the LOI Message they received;

---

[1]   As described in the Stipulation of Settlement (paragraph 38), if the Settlement Class Members submit eligible claim forms exceeding the $5,000,000 cap, the settlement administrator shall determine each authorized Settlement Class Member's pro rata share based upon that member's claim form and the total number of valid claim forms received. Accordingly, the actual amount recoverable by each Settlement Class member will not be determined until after the claims period has ended and all claims forms have been received.

1   and (c) removed the inkjet cartridges upon receiving the LOI Message without using the remaining

2   ink.

3       Likewise, with respect to each printer purchased or received as a gift in the *Blennis* action,

4   the class member must not only provide proof of ownership, but must also declare that they

5   purchased an inkjet cartridge for their inkjet printer that reached the ink expiration date before the

6   cartridge had been fully used. Given the fact that *Ciolino* class members might not have received

7   a LOI Message, might not have believed they were out of ink as a result, or might not have

8   removed the inkjet cartridge without using the remaining ink, and that *Blennis* class members

9   might have fully used their inkjet cartridge before that cartridge reached the ink expiration date,

10  Plaintiffs and their counsel believe this additional condition is fair. To ease the burden for the

11  claims submission process, the claim form will be submitted electronically.

12  **C.    Other Aspects of the Settlement**

13      HP has agreed to pay for the class notice and administration (up to $950,000), and class

14  counsel was able to secure very comprehensive notice by utilizing the economies of scale of

15  having the notice combined for the *Ciolino*, *Rich*, and *Blennis* actions.[2]

16      The notice will be provided through the following means: (a) e-mail of the Long Form

17  Notice to the last known e-mail addresses of settlement class members, to the extent such e-mail

18  address information exists in HP's databases and the settlement class member has not withheld

19  his/her consent to be contacted by HP via e-mail; (b) publication notice including PARADE

20  magazine, USA WEEKEND, PEOPLE and CIO magazine; and (c) online "banner" advertisements on

21  YAHOO.COM and other websites through 24/7 REAL MEDIA NETWORK. Complete details of the

22  notice program are set forth in the declarations of Cameron Azari and Niall McCarthy, along with

23

24      [2]    In addition, class counsel and HP also are negotiating a settlement of cases pending in the
        United States District Court for the Central District of California asserting claims that certain HP
25      color laser printers stop printing when there is still enough toner in the cartridge to continue to
        print. *See Baggett v. Hewlett-Packard Co.*, C.D. Cal. Case No. SA CV 07-00667 (filed July 6,
26      2007, and assigned to Guilford, J.; summary judgment granted Sept. 29, 2009); *Young v. Hewlett-
        Packard Co.*, C.D. Cal. Case No. Case No. CV 09-00315 (filed Jan. 14, 2009, and assigned to
27      Guilford, J.; dismissed on Mar. 16, 2010). The parties have arranged to coordinate the publication
        and e-mail notices in the inkjet (*Ciolino*, *Rich*, and *Blennis*) and laser (*Baggett* and *Young*) cases in
28      order to achieve certain efficiencies.

1  the proposed content of the notice. Plaintiffs, class counsel, and the notice expert that they have

2  retained anticipate that this notice will reach approximately 75% of class members based on

3  conservative estimates. (Azari Decl., ¶ 10.)[3]

4        In addition, HP has agreed, subject to Court approval, to pay a stipend not to exceed

5  $1,000 to each named Plaintiff in the *Ciolino*, *Rich*, and *Blennis* actions. HP has also agreed,

6  subject to the Court's approval, to separately pay to Plaintiffs' counsel's attorneys' fees, costs, and

7  expenses in an amount not to exceed $2,900,000. The payment will be in lieu of statutory fees

8  that Plaintiffs and/or their attorneys might otherwise be entitled to recover on their claims,

9  including claims for injunctive relief, and this amount is inclusive of all fees and costs of class

10  counsel in the *Ciolino*, *Rich*, and *Blennis* actions. Plaintiffs' counsel negotiated attorneys' fees

11  after the class benefit was negotiated, and agreed to a fee that represents a fraction of the lodestar

12  hours actually worked on the *Ciolino, Rich, and Blennis* actions. (McCarthy Decl., ¶ 36)

13        Finally, in exchange for all of the aforementioned benefits provided by HP under the

14  settlement, Plaintiffs and members of the *Ciolino*, *Rich*, and *Blennis* classes will fully release HP

15  from all claims that relate to the *Ciolino*, *Rich*, and *Blennis* actions. (McCarthy Decl., Ex. B,

16  [Stipulation of Settlement, ¶¶ 21, 50-55].)

17  **IV.    THE CASES SHOULD BE CONSOLIDATED FOR SETTLEMENT PURPOSES**

18        The *Ciolino*, *Rich*, and *Blennis* actions involve overlapping products, claims, theories, and

19  class members. For example, in each action the printer models at issue consist entirely of HP's

20  consumer inkjet printers, and indeed, in many instances, as demonstrated by the compilation of HP

21  inkjet printers listed in Exhibit F to the Stipulation of Settlement, the same inkjet printer could be

22  involved in multiple cases. (McCarthy Decl., Ex. B [Stipulation of Settlement, ¶¶ 33-35].) Thus,

23  a settlement class member under the Stipulation of Settlement could concurrently belong to

24  multiple class definitions as outlined in each of the operative complaints in *Ciolino*, *Rich*, and

25  *Blennis*, by virtue of their ownership of a single HP inkjet printer. Indeed, members of the

26  Settlement Class are eligible to receive settlement benefits under more than one case based on a

27

28     [3]   When combined with the notice provided in the settlement of the laser cases (*Baggett* and *Young*), this total reaches 80 %. (Azari Dec. ¶ 11.)

1  single printer purchase, and the relief provided to HP's customers pursuant to the Stipulation of

2  Settlement is similar for all three cases.

3        The consolidation of the three related HP inkjet cases also recognizes the similarity of

4  claims and theories asserted by each of the three cases. Each case asserted as its core that HP

5  violated the UCL. (*See* McCarthy Decl., Ex. B [Stipulation of Settlement, ¶ 21(a)(i)].)

6  Coordinated resolution of the *Ciolino*, *Rich*, and *Blennis* actions is also warranted by the factual

7  claims of each of the complaints involved, which are in essence claims about the quantity of

8  output, and the amount of usable ink or value received from the HP inkjet printer models and their

9  corresponding HP inkjet cartridges.

10       For all of these reasons, consolidation of what are essentially three overlapping classes into

11 one settlement class is practical, reasonable, efficient, and appropriate for the purposes of

12 settlement. The Court should consolidate the *Ciolino*, *Rich*, and *Blennis* actions so that the Court

13 can administer this settlement in one action rather than in three separate actions. Consolidation

14 also is more efficient for settlement class members. In fact, the economies of scale in the

15 comprehensive notice program would only be possible if these actions are settled jointly.

16       Accordingly, Plaintiffs request that the Court consolidate these related actions pursuant to

17 Rule 42(a) of the Federal Rules of Civil Procedure, which provides that "[i]f actions before the

18 court involve a common question of law or fact, the court may: (1) join for hearing or trial any or

19 all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid

20 unnecessary cost or delay." Here, each action asserts substantially the same claims against the

21 same defendant and raises substantially the same questions of law and fact. In order to promote

22 judicial efficiency and avoid any potential inconsistent adjudications should the Court require

23 modification of the notice or other terms of the settlement, the actions should be consolidated.

24 **V.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT**

25       Settlement of these cases will benefit millions of consumers by shifting longstanding

26 embedded business practices toward the benefit of consumers. With added disclosure and

27 transparency comes a more knowledgeable consumer who will have the opportunity to enjoy

28 greater value from their inkjet printers—and ultimately save money and work more efficiently.

1    The parties have worked diligently to reach this compromise. It is reasonable and provides
2    important relief to the class.

3         Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must
4    receive court approval. At the preliminary approval stage, a court must determine whether a
5    proposed settlement is "within the range of possible approval" and whether notice should be sent
6    to class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *In re Corrugated*
7    *Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *In re M.L. Stern Overtime Litig.*,
8    2009 WL 995864, at *3 (S.D. Cal. 2009); *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal.
9    2007) ("To determine whether preliminary approval is appropriate, the settlement need only be
10   potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final
11   Approval, after such time as any party has had a chance to object and/or opt out."). The proposed
12   settlement of these actions easily satisfies the standard for preliminary approval.

13        As a preliminary matter, settlements of complex class actions prior to trial are strongly
14   favored. *See, e.g., Churchill Village, LLC v. General Electric Co.*, 361 F.3d 566, 576 (9th Cir.
15   2004); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class*
16   *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[I]f the proposed settlement
17   appears to be the product of serious, informed, non-collusive negotiations, has no obvious
18   deficiencies, does not improperly grant preferential treatment to class representatives or segments
19   of the class, and falls within the range of possible approval, then the court should direct that notice
20   be given to the class members of a formal fairness hearing." *Chun-Hoon v. McKee Foods Corp.*,
21   2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009). The Court makes a preliminary determination
22   of the settlement's fairness, reasonableness and adequacy, pointing out any settlement terms that
23   are so unacceptable at the outset that a formal fairness hearing would be a waste of time. *See*
24   Manual for Complex Litigation, § 21.632; 4 Alba Conte & Herbert B. Newberg, *Newberg on*
25   *Class Actions* § 11.25 (4th ed. 2002).

26        In fact, the Ninth Circuit has repeatedly ruled that the courts "put a good deal of stock in
27   [class settlements that are] the product of arms-length, non-collusive, negotiated resolution."
28   *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Hanlon v. Chrysler Corp.*

1  150 F.3d 1011, 1027 (9th Cir. 1998). Here, the settlement was negotiated by reputable counsel, at

2  arms-length, before Hon. James Warren, a respected retired Judge. (McCarthy Decl., ¶ 28.)

3  Accordingly, the presumption for approval should be applied to this settlement.

4  **A.     The Proposed Settlement Merits Preliminary Approval**

5        Both procedurally and substantively, the proposed settlement warrants preliminary

6  approval. Procedurally, the settlement was negotiated at arm's length by experienced counsel on

7  both sides of the table, who are fully versed in class litigation, particularly with respect to

8  consumer class action litigation and specifically technology related claims and product defect

9  cases. (McCarthy Decl., ¶ 41.) Substantively, the settlement provides material and valuable class

10 wide relief, does not grant preferential treatment to class representatives, and does not provide

11 attorneys' fees at the expense of the class. (*Id.*)

12       Mandated in the settlement are changes in business practices that will be real and

13 substantial. Primarily, millions of consumers will enjoy enhanced disclosures explaining, and

14 making clearer, a range of critical information about the use of their inkjet printers and

15 replacement cartridges. For example this heightened disclosure regime will enable consumers to

16 better understand low on ink warnings and use those warnings to their advantage. Similarly,

17 consumers will have a better understanding of when they are using color ink in connection with

18 printing plain old black. Finally, consumers will better understand which inkjet printers and

19 cartridges are subject to ink expiration, why HP employs this technology, and how it works. This

20 is the type of injunctive relief that the *Ciolino, Rich, and Blennis* classes would have obtained only

21 if they had prevailed at trial and through appeal.

22       Finally, given the relative strengths of the parties' positions the direct compensation

23 portion of the settlement is fair and reasonable. Indeed, since virtually all class members use HP

24 products, the e-credit is something than can be used by virtually all class members. The

25 amounts—up to $5.00 for each *Ciolino* printer, up to $2.00 for each *Rich* printer, and up to $6.00

26 for each *Blennis* printer—are fair and reasonable, particularly when considering the risks and

27 uncertainties of further litigation and the likelihood that if the cases proceeded to judgment, class

28

1  members may ultimately receive nothing (no injunctive or monetary relief). (McCarthy Decl.,

2  ¶ 43.)

3  **B.      The Proposed Settlement Class Satisfies the Requirements of Rule 23**

4         Before granting preliminary approval of a settlement, the Court must determine that the

5  proposed settlement class is a proper class for settlement purposes. *See generally* Fed. R. Civ. P.

6  23(e); Manual for Complex Litigation (4th ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windsor,*

7  521 U.S. 591, 620 (1997). Rule 23(e) governs the issue of class certification, whether the

8  proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a

9  class for litigation purposes, except manageability, apply to certification for settlement purposes.

10  *Amchem Prods.*, 521 U.S. at 620. Courts routinely and properly certify classes for settlement

11  purposes only and the proposed certification of the class is entirely consistent with the applicable

12  authorities. *Id.* at 619-29.

13         1. Numerosity. The proposed class meets the requirement of numerosity, in that it is

14  comprised of over one million members. *Hanlon*, 150 F.3d at 1019 ("The prerequisite of

15  numerosity is discharged if the class is so large that joinder of all members is impracticable.").

16         2. Commonality. The second prerequisite to class certification is the existence of

17  questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has

18  made clear that in the litigation context, the commonality requirement is to be "construed

19  permissively." *Dukes v. Wal-Mart, Inc.*, 603 F.3d 571, 559-600 (9th Cir. 2010). Commonality

20  can be established by showing "that the class is united by a common interest." *See Blackie v.*

21  *Barrack*, 524 F.2d 891, 901 (9th Cir.1975) (holding that "slight differences in class members'

22  positions" will not defeat commonality). The existence of "shared legal issues" will satisfy the

23  commonality requirement, even if there are "divergent factual predicates." *Dukes*, 603 F.3d at

24  559. Because the test of commonality is qualitative rather than quantitative, "one significant issue

25  common to the class may be sufficient to warrant certification." *Id.*

26         Here, the questions of fact and law which are common include the following:

27              (a)    whether the relevant LOI warnings at issue in the *Ciolino* action
                       were inaccurate and misleading;

28              (b)    whether HP knew that these warnings were inaccurate and
                       misleading;

(c) whether HP failed to disclose or concealed the inaccuracies in its LOI sensors;

(d) whether HP warranted the accuracy of its LOI technology in its common material to class members;

(e) whether HP's concealments and/or failure to disclose would have been material to any reasonable person who purchase the product;

(f) whether HP was unjustly enriched by its conduct;

(g) whether class members are entitled to monetary recovery including restitution, disgorgement or profits and/or punitive damages, and the proper nature, extent, and measure of such relief;

(h) whether class members are entitled to injunctive relief to prevent HP from continuing to engage in its deceptive and harmful practices;

(i) whether the printers at issue in the *Rich* action use color ink when printing black and white images and text;

(j) whether HP disclosed that the printers at issue in the *Rich* action deplete color ink when printing black images and text;

(k) whether HP was required to disclose that the printers at issue in the Rich action deplete color ink when printing black images and text;

(l) whether HP's failure to disclose that the printers deplete color ink when printing black images and text was likely to deceive members of the public;

(m) whether the printer cartridges at issue in the *Blennis* action "expire" on a certain date;

(n) whether HP disclosed to consumers that the printer cartridges "expire" on a certain dates;

(o) whether the printer cartridges "expire" even if a significant amount of usable ink remains in the cartridges;

(p) whether the subject printers cease all operations until the "expired" cartridge is replaced; and

(q) whether HP was required to disclose that its cartridges "expire," even with usable ink remaining.

3. Typicality. The third prerequisite of typicality is also satisfied. A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely- Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Slight factual distinctions between the named plaintiff and the claims of absent class members do not undermine typicality. *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302, 304 (E.D. Pa. 1980). Rather, courts focus on the defendants' conduct and the plaintiff's legal theory. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Under the rule's permissive standards, representative claims are

1     'typical' if they are reasonably coextensive with those of absent class members; they need not be

2     substantially identical." *Hanlon*, 150 F.3d at 1020.

3           When it is alleged that the same unlawful conduct was directed at or affected both the

4     named Plaintiffs and the classes sought to be represented, the typicality requirement is usually

5     satisfied, irrespective of varying fact patterns which underlie individual claims. *Smith v.*

6     *University of Washington Law School*, 2 F.Supp.2d 1324, 1342 (W.D. Wa. 1998) ("Typicality

7     turns on the defendant's actions toward the plaintiff class, not particularized defenses against

8     individual class members."). Furthermore, the test for typicality is whether other members have

9     the same or similar injury, whether the action is based on conduct which is not unique to the

10     named plaintiffs, and whether other class members have been injured by the same course of

11     conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v.*

12     *Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The typicality requirement is construed liberally.

13     *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Accordingly,

14     differences that may exist in the amount of injury suffered by each class members do not render

15     plaintiffs' claims atypical. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

16           Here, proposed settlement class representatives Feder, Ciolino, Rich, Duran, Blennis, and

17     Brickner are typical of the classes they seek to represent. All six owned class printers and their

18     claims are "reasonably coextensive with those of absent class members." *Dukes*, 603 F.3d at 613.

19     Neither Feder, Ciolino, Rich, Duran, Blennis, nor Brickner has any conflicts of interest with the

20     proposed class, and they are represented by qualified and competent counsel. (McCarthy Decl., ¶¶

21     4-7.)

22           4. <u>Adequacy</u>. The Named Plaintiffs will fairly and adequately protect the interests of the

23     class for purposes of this settlement. The adequacy requirement has two prongs: "(1) That the

24     representative parties' attorney be qualified, experienced, and generally able to conduct the

25     litigation; and (2) that the suit not be collusive and plaintiff's interests not be antagonistic to the

26     class." *In re United Energy Corp. Solar Power Modules Tax Shelter Investors Securities*

27     *Litigation*, 122 F.R.D. 251, 257 (C.D. Cal. 1988).

28

1    Both prongs are met here. First, Plaintiffs in the various actions have retained counsel who

2  are qualified and experienced to litigate this action. The Court appointed co-lead class counsel

3  early in these actions, and the Court appointed a Plaintiffs' Executive Committee of attorneys

4  highly experienced in consumer class actions and complex litigation. Second, the Named

5  Plaintiffs and Class Members do not have antagonistic interests. On the contrary, the Named

6  Plaintiffs and Class Members are united in their common interest in pursuing claims against HP.

7  Moreover, as discussed herein, this settlement was reached after vigorous litigation and arms-

8  length negotiations.

9    5. Rule 23(b). Finally, once the four prerequisites of Rule 23(a) are met, "the potential

10  class must also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.2d at 1017; *see also*

11  *General Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982). Here, the classes satisfy not only Rule

12  23(b)(2) in that injunctive relief is being provided respecting the class as a whole, but also Rule

13  23(b)(3).

14    Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to

15  the members of the class predominate over any questions affecting only individual members, and

16  [...] a class action is superior to other available methods for the fair and efficient adjudication of

17  the controversy." These requirements are satisfied here.

18    The questions of law and fact common to all class members are set forth above. These

19  common issues predominate over any individual issues such as the nature and extent of damages.

20  *Blackie*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does

21  not defeat class action treatment."). Indeed, in the context of settlement issues regarding

22  manageability (such as the calculation) are irrelevant. *Amchem Prods.*, 521 U.S. at 620 (where a

23  district court is confronted with a settlement-only class certification, the court need not inquire

24  whether the case, if tried, would present manageability problems because the point is that there

25  will be no trial).

26    Additionally, a class action is clearly superior to other available methods for the fair and

27  efficient adjudication of the controversy because joinder of all class members would be

28  impracticable. Fed. R. Civ. P. 23(b)(3). Furthermore, because the damages suffered by individual

1   members of the settlement class may be relatively small, the expenses and burden of individual

2   litigation would make it impossible for all settlement class members to individually redress the

3   harm done to them. *Id.*

4        In short, the Settlement Class is suitable for certification, and the Court should certify the

5   Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval to the

6   settlement.[4]

7   **C.      The Court Should Order Dissemination Of The Proposed Class Notice**

8        Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all

9   class members who would be bound by a proposed settlement, voluntary dismissal, or

10   compromise." Rule 23(e) requires that notice of a proposed settlement inform class members of

11   the following: (1) the nature of the pending litigation; (2) the general terms of the proposed

12   settlement; (3) that complete information is available from the court files; and (4) that any class

13   member may appear and he heard at the fairness hearing. *Newberg on Class Actions* § 8.32, at

14   262-68. The notice must also indicate an opportunity to opt out, that the judgment will bind all

15   class members who do not opt out, and that any member who does not opt out may appear through

16   counsel. Fed. R. Civ. P. 23(c)(2).

17        Here, Plaintiffs request approval of the proposed Long Form Notice and Summary Notice.

18   (McCarthy Decl., Ex. B, Attachments B & E; *see also* Azari Dec., Attachment B.) The Long

19   Form Notice and Summary Notice meet all of the requirements of Rule 23(e): they identify the

20   Plaintiffs and the Defendant, and describe the lawsuit and the settlement classes in a

21   straightforward manner; succinctly describe the essential terms of the proposed settlement, and

22   identify all parties against whose claims are being released; provide class members with

23   information on how to opt-out of the Settlement Class and provide all applicable deadlines for

24   such action; and inform settlement class members that if they do not exclude themselves from the

25   Settlement Class, and the settlement is approved, they will be bound by the resulting judgment. In

26   addition, the notices instruct settlement class members to contact class counsel to obtain more

27

28      [4]      HP has agreed not to contest class certification solely for purposes of this settlement.
(McCarthy Decl., Ex. B [Stipulation of Settlement, ¶¶ 78-79].)

1  detailed information and provides information regarding counsel's fee and expense application. In

2  short, the notice will provide the necessary information for settlement class members to make an

3  informed decision regarding the proposed settlement.

4       As a general rule, due process requires individualized notice where the names and

5  addresses of class members "may be ascertained through reasonable effort," *Eisen v. Carlisle and*

6  *Jacquelin*, 417 U.S. 156, 173, 177 (1974), and "is appropriate, for example, if class members are

7  required to take action—such as filing claims—to participate in the judgment, or if the court

8  orders a settlement opt-out opportunity under Rule 23(e)(3)." See Fed. R. Civ. P. 23(e)(1), 2003

9  Committee Note. As the Courts have repeatedly held, notice by direct mail or e-mail and

10  publication are often the "best practicable" notice under the circumstances. *Silber v. Mabon*, 18

11  F.3d 1449, 1453-54 (9th Cir. 1994).

12       Here, the proposed settlement provides for a combination of notice by e-mail (to the last

13  known e-mail addresses of settlement class members, to the extent such e-mail address

14  information exists in HP's databases and the class member has not withheld his/her consent to be

15  contacted by HP via e-mail) and a comprehensive notice program involving publication in

16  PARADE magazine, USA WEEKEND, PEOPLE and CIO magazine, and in banner advertisements on

17  YAHOO.COM and other websites through 24/7 REAL MEDIA NETWORK. (Azari Decl. ¶¶ 12-16.)

18  The notice plan will reach approximately 75% of its target audience based on conservative

19  estimates. (*Id.* ¶ 10.)[5] The comprehensive notice program here more than sufficiently satisfies all

20  due process requirements. *See, e.g., Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 256-57

21  (E.D.N.Y. 2009) (court approved plan disseminating notice by email, internet posting, and

22  publication); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 145 (S.D.N.Y.

23  2008) (same); *see also Todd v. Retail Concepts, Inc.*, No. 07-0788, 2008 WL 3981593, at *2

24  (M.D. Tenn. Aug. 22, 2008) (court approved plan disseminating notice by email, in-store posting,

25  and website posting).

26

27  [5]     As discussed above, the effectiveness of this notice plan will be augmented by the

28  concurrent notice plan to be implemented in the LaserJet Printer Settlement in the United States
District Court for the Central District of California. (Azari Decl. ¶ 19.)

## D.   The Court Should Set A Schedule For Final Approval

The next steps in the settlement approval process are to notify the class of the proposed settlement, allow settlement class members an opportunity to file any objections or opt outs and hold a final approval hearing.  The parties respectfully propose the following schedule:

| | |
|---|---|
| Deadline to disseminate Class Notice | 30 days after Preliminary Approval Order |
| Deadline to file fee application papers | November 3, 2010 |
| Deadline for settlement class members to opt-out | December 8, 2010 |
| Deadline for settlement class members to file comments supporting or objecting to the settlement and/or attorneys' fees | December 8, 2010 |
| Deadline for the parties' responses to any objections | December 23, 2010 |
| Deadline to file final approval papers | December 23, 2010 |
| Final settlement approval hearing | January 14, 2011 |
| Deadline for Class Members to file claim forms | February 1, 2011 |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs Feder, Ciolino, Rich, Duran, Blennis and Brickner and their counsel respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement, certifying the settlement class, appointing Plaintiffs as Class Representatives and their attorneys as Class Counsel, directing dissemination of class notice, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

DATED:  August 25, 2010                    Respectfully submitted,

By:       */s/ Niall P. McCarthy*
                   Niall P. McCarthy

*Counsel for Plaintiffs and the Settlement Class and On Behalf of the Proposed Settlement Class*

Niall P. McCarthy
Justin T. Berger
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
nmccarthy@cpmlegal.com
jberger@cpmlegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brian S. Kabateck
Richard L. Kellner
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010
bsk@kbklawyers.com
rlk@kbklawyers.com

Steven N. Berk
BERK LAW PLLC
1225 15th Street, N.W.
Washington D.C. 20005
Telephone: (202) 232-7550
Facsimile: (202) 232-7556
steven@berklawdc.com

Mark Andrew Chavez
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA 93941
Telephone: (415) 381-5599
Facsimile: (415) 381-5572
mark@chavezgertler.com

Jon Cuneo
CUNEO, WALDMAN & GILBERT LLC
317 Massachusetts Avenue
Suite 300
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Marc Howard Edelson
EDELSON & ASSOCIATES LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735
medelson@edelson-law.com

Stephen Garcia
THE GARCIA LAW FIRM
1 World Trade Center #1950
Long Beach, CA 90831-1950
Telephone: (562) 216-5270
Facsimile: (562) 216-5271
sgarcia@lawgarcia.com

Michael D. Liberty
LAW OFFICES OF MICHAEL D. LIBERTY
1290 Howard Avenue, Suite 303
Burlingame, CA 94010
Telephone: (650) 685-8085
Facsimile: (650) 685-8086
mdlaw@pacbell.net

Scott E. Shapiro
LAW OFFICE OF SCOTT E. SHAPIRO, PC
9701 West Pico Boulevard, Suite 110
Los Angeles, CA 90035
Telephone: (310) 720-5501
Facsimile: (310) 388-4612
scott.e.shapiro.esq@gmail.com

John Patrick McNicholas, IV
McNICHOLAS & McNICHOLAS LLP
10866 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90024
Telephone: (310) 474-1582
Facsimile: (310) 475-7871
pmc@mcnicholaslaw.com

Bruce Simon
PEARSON, SIMON, WARSHAW & PENNY LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

Jonathan Shub
SHUBLAW LLC
1818 Market Street, 13th Floor
Philadelphia, PA 19106
Telephone: (610) 453-6551
Facsimile: (215) 569-1606
jshub@shublaw.com

David R. Buchanan
SEEGER WEISS LLP
One William Street
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
dbuchanan@seegerweiss.com