Niall P. McCarthy (SBN 160175)
nmccarthy@cpmlegal.com
Justin T. Berger (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Brian S. Kabateck (SBN 152054)
bsk@kbklawyers.com
Richard L. Kellner (SBN 171416)
rlk@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Steven N. Berk *(admitted pro hac vice)*
steven@berklawdc.com
**BERK LAW PLLC**
1225 15th Street, N.W.
Washington D.C. 20005
Telephone: (202) 232-7550
Facsimile: (202) 232-7556

*Counsel for Plaintiffs and the Settlement Class
and On Behalf of the Proposed Settlement Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **In Re: HP Inkjet Printer Litigation** | Master File No.: C053580 JF (PVT) |
| | **Judge: Hon. Jeremy Fogel**<br>**DECLARATION OF NIALL P. McCARTHY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| This Document Relates To:<br>All Actions | Date: October 1, 2010<br>Time: 9:00 A.M.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Jeremy Fogel |

DECLARATION OF NIALL P. McCARTHY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT; Master File No.: C053590 JF (PVT)

I, Niall P. McCarthy, declare:

1. I am a partner in the law firm Cotchett, Pitre & McCarthy, Co-Lead Counsel for the class action Plaintiffs in this proceeding. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the matters stated below.

2. I am an attorney admitted to practice before all courts of the State of California, the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States Court of Appeals for the Ninth Circuit, the United States Supreme Court, and several bankruptcy courts.

3. I make this declaration in support of Plaintiffs' Motion for Consolidation of Cases and for Preliminary Approval of Class Action Settlement.

## BACKGROUND AND EXPERIENCE OF CO-LEAD COUNSEL

4. I am a graduate of the University of California at Davis, and Santa Clara University School of Law. Since 1992, I have practiced with Cotchett, Pitre & McCarthy ("CPM"), focusing on class action litigation and consumer protection cases.

5. CPM is experienced in handling complex litigation, and has a long history of successful class action results. In addition to this case, CPM has served as lead and/or trial counsel in numerous notable federal and state consumer class actions, including: In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation (C.D. Cal., Case No. 8:10ML2151 JVS (FMOx), MDL 2151) (current Co-Lead Counsel); In re: Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation (N.D. Cal., Case No. M:05-CV-01699-CRB, MDL 1699); In re Homestore Sec. Litig. (C.D. Cal., Master File No. 01-CV-11115 RSWL); California State Teachers' Retirement System v. AOL Time Warner (Los Angeles Superior Court, Case No. CGC-03-422609); California State Teachers' Retirement System v. Qwest Communications International Inc. (San Francisco Superior Court, Case No. CV 415546); In re Natural Gas Anti-trust Cases I, II, III, IV, and V (Price Indexing Cases) (San Diego Superior Court, JCCP Nos. 4221, 4224, 4226, and 4228); Old

Republic Litigation (San Francisco Superior Court No. 993507); In re Household Litigation (N.D. Cal. Case No. C-02-1240 CW); In re AXA Wage and Hour Litigation (N.D. Cal. Case No. C-06-4291 JSW); and In re Wachovia Wage and Hour Litigation (C.D. Cal., MDL No. 07-1807 DOC).

6. In conjunction with my work at CPM, I am also active in many educational and legal groups. I am a past President of the San Mateo County Barristers, I have served as chairman of the Business Litigation Section of the San Mateo County Bar Association, and am currently a Vice President for the Consumer Attorneys of California. I have been an MCLE panelist on many topics, including courtroom conduct, complex litigation, class actions, financial abuse, fundamentals of business litigation, Business and Professions Code 17200, predatory lending, qui tam actions, discovery for trial, and taking effective depositions. I have also received various awards and recognitions for my work on behalf of clients.

7. My firm is highly experienced and well-regarded in many areas of complex litigation, and is comprised of excellent attorneys and staff. Attached hereto as **Exhibit A** is a true and correct copy of the Cotchett, Pitre & McCarthy current firm resume.

**PROCEDURAL HISTORY AND SETTLEMENT**

8. This settlement involves three separate yet intertwined class actions that were brought with respect to HP inkjet printers: the *Ciolino*, *Rich*, and *Blennis* actions.

9. The *Ciolino* action claims that certain HP inkjet printers used "low on ink" messaging technology to indicate that replacement of a cartridge is needed when the cartridge is not empty and is capable of additional printing, and that this technology confused customers into prematurely replacing their inkjet cartridges.

10. The *Rich* action claims that certain HP color inkjet printers used color ink in addition to black ink when printing black text and images without disclosing this to consumers and without providing consumers with the option of disabling this feature, that HP misrepresented and/or failed to disclose the actual page yield for the products at issue (including the true basis for the page yield and cost per page information provided to consumers), and that HP failed to disclose its use of color ink when printing black in connection with stating its page yields.

11. The *Blennis* action claims that HP designed certain inkjet printers and cartridges to shut down on an undisclosed expiration date, and that at this point consumers are prevented from using any ink remaining in the expired cartridge and from using all of the printer's functions until the expired cartridge is replaced.

12. The litigation of each action has been prolonged and comprehensive, allowing all parties to thoroughly and intelligently assess the risks of future litigation and the benefits of a negotiated compromise.

13. On September 6, 2005, plaintiff Nicklos Ciolino commenced an action against HP in this Court that challenged the "low on ink" ("LOI") warnings deployed on several lines of HP inkjet printers as misleading and deceptive based on the following claims and alleged facts and practices: (1) that HP programmed "Smart Chips" or used other LOI messaging technology in its inkjet printers and cartridges to indicate that replacement of a cartridge is needed when the cartridge is not empty and is capable of additional printing; (2) that HP's LOI messages, gauges, warnings, or indicators were deceptive and misled and confused consumers into prematurely replacing their inkjet cartridges; (3) that HP's "SureSupply" program and related marketing materials were deceptive and misled consumers; (4) that plaintiffs and class members were deprived of the ability to use all of the ink in their HP inkjet print cartridges; and (5) that plaintiffs and class members purchasing the HP inkjet printers and cartridges at issue did not get the full value of what they paid for and were promised.

14. The operative complaint in the *Ciolino* action (the Second Amended Complaint) asserts claims for alleged violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*, "UCL"), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), and claims for unjust enrichment, breach of express warranty, and breach of implied warranty on behalf of a nationwide class of consumers.

15. HP aggressively defended the lawsuit with a number of arguments, including that the low-on-ink messages were straightforward and did not tell or require consumers to replace

1  their inkjet cartridges. Rather, HP argued, the messages informed consumers that they were low-
2  on-ink, and that they should consider having a replacement cartridge available for when print
3  quality was no longer acceptable to them.

4        16.     In bridging the gap toward settlement, both sides made significant but rational
5  compromises. Plaintiffs accepted that not all of the low-on-ink messages were deceptive or
6  misleading, and asserted that the most confusing of the low on ink warnings were those with
7  graphic images showing near empty cartridges. HP agreed to eliminate those warnings in a series
8  of business practice changes.

9        17.     Significant damages were not appropriate or attainable in this case for several
10  reasons. First, although plaintiffs were confident they could establish that HP's "low on ink"
11  warnings were inaccurate, no warning actually and explicitly directs the consumer to "throw out
12  your cartridge," nor does the activation of the warning shut down the cartridge prematurely.
13  Moreover, it would be difficult if not impossible to determine how much ink remains in a cartridge
14  when discarded by a consumer (particularly many years after the fact). Accordingly, a case to
15  obtain individual damages would be speculative and would more than likely not succeed. Thus,
16  Plaintiffs agreed that any cash (or cash-like relief) must be a small percentage of the total
17  compensation provided to the class, and, even then, consumers seeking to take advantage of these
18  funds must demonstrate they actually relied on the warnings and reasonably believed they were
19  required to "toss out" cartridges.

20        18.     Further complicating the litigation and increasing the risk substantially of
21  ultimately succeeding was this Court's decision denying nationwide class certification on July 25,
22  2008. Although that decision rested on "manageability" grounds, it did limit plaintiffs to moving
23  forward on their second attempt at class certification with a California-only state class. Moreover,
24  the court's companion decision on the same date, albeit denying HP's Motion for Summary
25  Judgment, included a discussion of plaintiffs' substantive claims that was skeptical of plaintiffs'
26  class claims and raised some doubt as to whether even a statewide class would be approved. In
27  effect, strident negotiation was the best opportunity to assure that the millions of members in the

DECLARATION OF NIALL P. McCARTHY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT: Master File No.: C053590 JF (PVT)

4

1 class would receive some relief.

2     19. On May 22, 2006, plaintiff Carl K. Rich commenced an action against HP in this Court based on the following claims and alleged facts and practices: (1) that HP failed to disclose that its color inkjet printers use color ink in addition to black ink when printing black text and images (this technology is referred to as "underprinting"); (2) that HP failed to provide consumers of HP color inkjet printers with the option of printing black text and images using ink from the black print cartridge only; (3) that HP published and made representations regarding the page yield specifications for its inkjet printers and cartridges but misrepresented and/or failed to disclose the actual page yield customers would receive for the products at issue, including the true basis for the page yield and cost per page information provided to consumers; and (4) that HP failed to disclose its use of color ink when printing black in connection with stating its page yields for color inkjet printers and cartridges, thereby increasing the actual costs of printing black text and images. The operative complaint in the *Rich* action (the Second Amended Complaint) asserts claims for alleged violations of the UCL, unjust enrichment, and fraudulent concealment on behalf of a nationwide class of consumers.

    20. Plaintiff Rich's original complaint was amended twice. The First Amended Complaint was filed on September 29, 2006, to add causes of action for breach of express warranty and breach of the covenant of good faith and fair dealing (in addition to the claims discussed above). The Second Amended Complaint was filed on January 12, 2007, following the Court's order of December 4, 2006 granting HP's Motion to Dismiss. Based on this order, plaintiffs dropped their claims for breach of contract, breach of express and implied warranty, and breach of the covenant of good faith and fair dealing. The Second Amended Complaint (which HP answered on February 28, 2007) also introduced an additional plaintiff and proposed class representative (David Duran, a resident of California) and maintained claims based on unjust enrichment, fraudulent concealment, and violations of the UCL. In the Second Amended Complaint, Plaintiffs Rich and Duran allege that HP designed its color inkjet printers to use color ink—in addition to the significantly less expensive black ink—when printing black and white

1 images and text, in order to force its customers to prematurely deplete their color ink cartridges and therefore prematurely purchase the expensive color inkjet cartridges.

21. On June 23, 2009, Plaintiffs filed a motion to certify two classes—a damages class consisting solely of California consumers, and a proposed nationwide class for injunctive relief only. On December 7, 2009, HP filed its Opposition to Plaintiffs' motion for class certification, and simultaneously filed a Motion for Summary Judgment, where it argued, *inter alia*, that: (1) plaintiffs cannot establish that HP had an affirmative duty to disclose the allegedly concealed information, and each of their claims fails as a result; (2) plaintiffs cannot establish that HP caused them any harm, or that the allegedly concealed information was material to their purchase decisions, thus entitling HP to summary judgment on plaintiffs' fraudulent concealment and UCL claims; and (3) plaintiffs' purported "claim" for unjust enrichment fails because it necessarily depends on, and falls with, their other fraud-based claims. In light of the parties' extensive settlement discussions, neither plaintiffs' Motion for Class Certification nor HP's Motion for Summary Judgment has been heard, and this Court took them off calendar for administrative reasons on March 8, 2010, pending the parties' settlement discussions.

22. As with the *Ciolino* action, in bridging the gap toward settlement of the *Rich* action, both sides made significant but rational compromises. Plaintiffs accepted that underprinting is a legitimate and common technology that increases print quality. HP agreed to provide additional disclosures to consumers regarding the use of underprinting, its pros and cons, and measures that can be used to disable it.

23. Moreover, as with the *Ciolino* action, significant damages were not appropriate or attainable in this *Rich* matter for several reasons. First, although plaintiffs were confident they could establish that underprinting caused consumers to use color ink when they would not have expected to, it would be difficult if not impossible to determine how much color ink is actually expended by consumers due to underprinting. Furthermore, it would be difficult to establish that had consumers known about underprinting, they would have chosen to disable it, and thereby sacrifice the benefit of increased print quality due to underprinting. Accordingly, a case to obtain

DECLARATION OF NIALL P. McCARTHY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; Master File No.: C053590 JF (PVT)

6

1  individual damages would be speculative and would more than likely not succeed. Thus, plaintiffs
2  agreed that any cash (or cash-like relief) must be a small percentage of the total compensation
3  provided to the class.

4　　　　24.　　On January 17, 2007, Plaintiffs Jackie Blennis and David Brickner commenced an
5  action against HP in this Court based on the following claims and alleged facts and practices: (1)
6  that HP designed certain of its inkjet printers and inkjet cartridges to shut down on an undisclosed
7  expiration date, at which point consumers are prevented from using the ink that remains in the
8  expired cartridge and from using all of the printer's functions (including scanning or faxing
9  documents) until the expired cartridge is replaced; (2) that HP failed to disclose and/or actively
10  concealed information regarding its use of expiration dates in certain of its inkjet printers and
11  cartridges; and (3) that HP interfered with the right of plaintiffs and the class members to possess
12  and use all of the ink in the HP print cartridges that they purchased.

13　　　　25.　　The original complaint in the *Blennis* action asserts claims for alleged violations of
14  the UCL, fraudulent concealment, unjust enrichment, breach of express warranty, breach of
15  implied warranty, trespass, and conversion on behalf of a nationwide class of consumers. HP filed
16  a Motion to Dismiss the complaint. On March 25, 2008, the Court dismissed Plaintiff's claims for
17  express warranty, implied warranty, trespass to chattels and conversion. On May 8, 2008, HP
18  answered Plaintiffs' complaint. On December 8, 2009, Plaintiffs filed their Motion for Class
19  Certification, seeking to certify a class consisting of "All persons or entities in the United States
20  who own one or more models of Hewlett-Packard inkjet printers that use ink cartridges that have
21  an expiration date." In light of the parties' extensive settlement discussions, the Motion for Class
22  Certification has not yet been heard.

23　　　　26.　　As with *Ciolino* and *Rich*, significant damages were not appropriate or attainable in
24  this *Blennis* matter for several reasons. First, although Plaintiffs were confident that they could
25  establish that HP employed expiration dates without properly disclosing those dates to consumers,
26  it would be difficult if not impossible to establish which consumers may have hit expiration dates
27  and how much ink, if any, may have remained in the cartridge at the time the expiration date was

28

hit. Furthermore, HP did provide some disclosures to consumers regarding ink expiration, and HP believed that it had legitimate technical reasons for employing ink expiration dates in the limited number of HP printer models where such expiration dates were employed. Accordingly, a case to obtain individual damages would be speculative and would more than likely not succeed. Thus, as in the *Ciolino* and *Rich* actions, Plaintiffs agreed that any cash (or cash-like relief) must be a small percentage of the total compensation provided to the class.

27. Throughout the *Ciolino*, *Rich*, and *Blennis* actions, the counsel for the parties engaged in multiple informal but comprehensive settlement discussions, giving due consideration to the parties' respective positions. Plaintiffs' counsel in the course of the litigations had conducted an extensive investigation into the facts and law relating to the matters alleged in their respective complaints. The investigation included: (1) the depositions of 17 witnesses; (2) the production of more than 250,000 pages of documents; (3) more than 100 written discovery requests; (4) the inspection of several of the HP Inkjet printers at issue; (5) consultations with industry personnel; (6) extensive work with experts and testing by those experts; (7) numerous interviews of witnesses and putative members of the classes; (8) the evaluation of information provided by current or former employees of HP (including the HP engineers with primary responsibility for the design of some of the HP inkjet printer models at issue and matters related thereto); and (9) legal research as to the sufficiency of the claims.

28. As a result of the foregoing investigation, Plaintiffs and their counsel obtained comprehensive knowledge of HP's printer technology which extended to all three actions, and received, examined, and analyzed information, documents, printers, components, and materials that they deemed necessary and appropriate to enable them to enter into a settlement on a fully informed basis. Settlement was ultimately reached as a result of extensive arm's length negotiations between counsel for Plaintiffs in the *Ciolino*, *Rich*, and *Blennis* actions, on the one hand, and counsel for HP, on the other hand, occurring over several years and multiple mediation sessions with several highly respected and nationally-recognized mediators—the Honorable Daniel Weinstein of JAMS (*Ciolino*), the Honorable James L. Warren of JAMS (in the *Ciolino*

DECLARATION OF NIALL P. McCARTHY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; Master File No.: C053590 JF (PVT)

8

1  and *Rich* actions), and Alexander S. Polsky, Esq., of JAMS (*Blennis*).

2      29.    Accordingly, the parties have entered into a Stipulation of Settlement that provides class members with sufficient information to make a reasoned decision regarding the future purchase of HP inkjet printers, and some monetary compensation for the alleged damages sustained by the *Ciolino*, *Rich*, and *Blennis* classes, as described below. A true and correct copy of the Stipulation of Settlement is attached hereto as **Exhibit B**.

    30.    As discussed above, the *Ciolino*, *Rich*, and *Blennis* actions focus on alleged nondisclosure of information about certain features of, and technology used in, HP's inkjet printers. The injunctive relief provided to the Settlement Class addresses the core complaint in each case by requiring HP to discontinue the use of certain pop-up messaging that includes the graphic image of an ink gauge, ruler, or container of ink, and by requiring HP to disclose additional information regarding the HP technology that forms the basis of the *Ciolino*, *Rich*, and *Blennis* actions on HP's website (a location where HP customers already obtain information about and can purchase HP printer products), and in the packaging, manuals, and/or user interfaces for HP inkjet printers. Class counsel believes that these disclosures achieve the primary objective of the *Ciolino*, *Rich*, and *Blennis* actions.

    31.    The parties also negotiated some direct monetary relief to the class members in the *Ciolino*, *Rich*, and *Blennis* actions. Given the current litigation posture of the cases, Plaintiffs and their counsel believe that the compensation is eminently fair and reasonable. In settlement of these three matters, HP has agreed to create a pool of up to $5,000,000 in monetary e-credits that can be used for the purchase of printers or printer supplies online at HP's website (www.shopping.hp.com). The claims process is slightly different for the *Rich* class members as compared with the *Ciolino* and *Blennis* class members. With respect to each printer purchased or received as a gift in the *Rich* action, the class member need only provide proof of ownership (*e.g.*, the serial number or other proof) in order to obtain the e-credit of up to $2.00. No attestation or further proof of injury will be required to recover an e-credit for *Rich* class members.

    32.    With respect to each printer purchased or received as a gift in the *Ciolino* action,

---

DECLARATION OF NIALL P. McCARTHY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; Master File No.: C053590 JF (PVT)    9

1  the class member must not only provide proof of ownership, but must also declare that they: (a) received a LOI Message; (b) believed that they were out of ink as a result of the LOI Message they received; and (c) removed the inkjet cartridges upon receiving the LOI Message without using the remaining ink.

33. Likewise, with respect to each printer purchased or received as a gift in the *Blennis* action, the class member must not only provide proof of ownership, but must also declare that they purchased an inkjet cartridge for their inkjet printer that reached the ink expiration date before the cartridge had been fully used. Given the fact that *Ciolino* class members might not have received a LOI Message, might not have believed they were out of ink as a result, or might not have removed the inkjet cartridge without using the remaining ink, and that *Blennis* class members might have fully used their inkjet cartridge before that cartridge reached the ink expiration date, Plaintiffs and their counsel believe this additional condition is fair. To ease the burden for the claims submission process, the claim form will be submitted electronically.

34. HP has agreed to pay for the class notice and administration (up to $950,000), and class counsel was able to secure very comprehensive notice by utilizing the economies of scale of having the notice combined for the *Ciolino*, *Rich*, and *Blennis* actions.[1]

35. The notice will be provided through the following means: (a) e-mail of the Long Form Notice (**Exhibit B, Attachment B**) to the last known e-mail addresses of settlement class members, to the extent such e-mail address information exists in HP's databases and the settlement class member has not withheld his/her consent to be contacted by HP via e-mail; (b)

---

[1] In addition, class counsel and HP also are negotiating a settlement of cases pending in the United States District Court for the Central District of California asserting claims that certain HP color laser printers stop printing when there is still enough toner in the cartridge to continue to print. *See Baggett v. Hewlett-Packard Co.*, C.D. Cal. Case No. SA CV 07-00667 (filed July 6, 2007, and assigned to Guilford, J.; summary judgment granted Sept. 29, 2009); *Young v. Hewlett-Packard Co.*, C.D. Cal. Case No. Case No. CV 09-00315 (filed Jan. 14, 2009, and assigned to Guilford, J.; dismissed on Mar. 16, 2010). The parties have arranged to coordinate the publication and e-mail notices in the inkjet (*Ciolino*, *Rich*, and *Blennis*) and laser (*Baggett* and *Young*) cases in order to achieve certain efficiencies.

DECLARATION OF NIALL P. McCARTHY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONSOLIDATION OF CASES FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; Master File No.: C053590 JF (PVT)     10

publication notice (**Exhibit B, Attachment E**) including PARADE magazine, USA WEEKEND, PEOPLE and CIO magazine; and (c) online "banner" advertisements on YAHOO.COM and other websites through 24/7 REAL MEDIA NETWORK. Plaintiffs, class counsel, and the notice expert that we have retained anticipate that this notice will reach approximately 75% of class members based on conservative estimates.

36. In addition, HP has agreed, subject to Court approval, to pay a stipend not to exceed $1,000 to each named Plaintiff in the *Ciolino*, *Rich*, and *Blennis* actions. HP has also agreed, subject to the Court's approval, to separately pay to Plaintiffs' counsel's attorneys' fees, costs, and expenses in an amount not to exceed $2,900,000. The payment will be in lieu of statutory fees that Plaintiffs and/or their attorneys might otherwise be entitled to recover on their claims, including claims for injunctive relief, and this amount is inclusive of all fees and costs of class counsel in the *Ciolino*, *Rich*, and *Blennis* actions. We negotiated attorneys' fees with counsel for HP only after the class benefit was negotiated. The agreed-upon fee represents only a fraction of the lodestar hours actually worked on the *Ciolino, Rich, and Blennis* actions by counsel for Plaintiffs.

## **CONSOLIDATION**

37. The *Ciolino*, *Rich*, and *Blennis* actions involve overlapping products, claims, theories, and class members. For example, in each action the printer models at issue consist entirely of HP's consumer inkjet printers, and indeed, in many instances, as demonstrated by the compilation of HP inkjet printers listed in Exhibit F to the Stipulation of Settlement, the same inkjet printer could be involved in multiple cases. Thus, a settlement class member under the Stipulation of Settlement could concurrently belong to multiple class definitions as outlined in each of the operative complaints in *Ciolino*, *Rich*, and *Blennis*, by virtue of their ownership of a single HP inkjet printer. Indeed, members of the Settlement Class are eligible to receive settlement benefits under more than one case based on a single printer purchase, and the relief provided to HP's customers pursuant to the Stipulation of Settlement is similar for all three cases.

38. The consolidation of the three related HP inkjet cases also recognizes the similarity

of claims and theories asserted by each of the three cases. Each case asserted as its core that HP violated the UCL. Coordinated resolution of the *Ciolino*, *Rich*, and *Blennis* actions is also warranted by the factual claims of each of the complaints involved, which are in essence claims about the quantity of output, and the amount of usable ink or value received from the HP inkjet printer models and their corresponding HP inkjet cartridges.

39. For all of these reasons, consolidation of what are essentially three overlapping classes into one settlement class is practical, reasonable, efficient, and appropriate for the purposes of settlement. Consolidation also is more efficient for settlement class members. In fact, the economies of scale in the comprehensive notice program would only be possible if these actions are settled jointly.

## **PRELIMINARY APPROVAL IS WARRANTED**

40. Settlement of these cases will benefit millions of consumers by shifting longstanding embedded business practices toward the benefit of consumers. With added disclosure and transparency comes a more knowledgeable consumer who will have the opportunity to enjoy greater value from their inkjet printers—and ultimately save money and work more efficiently. The parties have worked diligently to reach this compromise. It is reasonable and provides important relief to the class.

41. The settlement was negotiated at arm's length by experienced counsel on both sides of the table, who are fully versed in class litigation, particularly with respect to consumer class action litigation and specifically technology related claims and product defect cases. Substantively, the settlement provides material and valuable class wide relief, does not grant preferential treatment to class representatives, and does not provide attorneys' fees at the expense of the class.

42. Mandated in the settlement are changes in business practices that will be real and substantial. Primarily, millions of consumers will enjoy enhanced disclosures explaining, and making clearer, a range of critical information about the use of their inkjet printers and replacement cartridges. For example this heightened disclosure regime will enable consumers to

1  better understand low on ink warnings and use those warnings to their advantage. Similarly,
2  consumers will have a better understanding of when they are using color ink in connection with
3  printing plain old black. Finally, consumers will better understand which inkjet printers and
4  cartridges are subject to ink expiration, why HP employs this technology, and how it works. This
5  is the type of injunctive relief that the *Ciolino, Rich, and Blennis* classes would have obtained only
6  if they had prevailed at trial and through appeal.

7  43. Finally, given the relative strengths of the parties' positions the direct
8  compensation portion of the settlement is fair and reasonable. Indeed, since virtually all class
9  members use HP products, the e-credit is something than can be used by virtually all class
10 members. The amounts—up to $5.00 for each *Ciolino* printer, up to $2.00 for each *Rich* printer,
11 and up to $6.00 for each *Blennis* printer—are fair and reasonable, particularly when considering
12 the risks and uncertainties of further litigation and the likelihood that if the cases proceeded to
13 judgment, class members may ultimately receive nothing (no injunctive or monetary relief).

14 44. As Plaintiffs' Co-Lead counsel, based on my review of the relevant law and the
15 facts of this case, along with my significant experience in class action litigation, I feel that
16 Plaintiffs have a solid case. There are, however, several heavily disputed legal and factual issues
17 on which Plaintiffs would have to prevail in order to succeed in this case, and which justify a
18 discount of Plaintiffs' claims for purposes of settlement. In spite of this, I believe we have
19 achieved a settlement with substantial benefits in a case with a high degree of risk, and without
20 any assurance of compensation. As Co-Lead counsel, my firm alone has expended thousands of
21 hours of attorney and staff time litigating these matters over the past five years. This Settlement
22 will provide real monetary and non-monetary benefits to all Class Members.

23 45. In my opinion, the settlement reached with Defendants is fair, reasonable, and
24 adequate. I personally participated in settlement negotiations with Defendants, all of which were
25 at arm's-length. As discussed above, the parties reached settlement only after several formal
26 mediation sessions, and countless hours of contentious settlement negotiations spread over a
27 period of several years. Experienced counsel for Plaintiffs and Defendants negotiated the

1  settlement, with intermittent guidance from highly experienced mediators.

2  46.  Further justifying settlement at this point is the fact that absent settlement, full resolution of this action would likely still be years away, and would require significant expenditure of resources by counsel, close and time-consuming management by the Court, full rounds of discovery, substantial motion practice, a lengthy trial or trials, and appeals. Plaintiffs and class members have already been waiting for years for resolution of their claims, and would likely be waiting for several more without this settlement.

47.  As supported by this declaration and the attached CPM resume, I and my firm have the experience and resources required to more than adequately serve the interests of the class.

48.  There are no conflicts between the interests of the Settlement Class Representative Plaintiffs and the Class.

49.  All of the procedures for providing notice to the Class of the proposed Settlement terms, and affording opportunities to submit claims, object to, or opt out of the Settlement are customary, fair, and adequate.

50.  For all of the reasons contained herein, and based on the combined experience of my own firm with that of my Co-Lead counsel and other class counsel, it is my opinion that this Settlement is fair and reasonable, and warrants the Court's preliminary approval.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed at Burlingame, California, on August 25, 2010.

                                                       */s/ Niall P. McCarthy*
                                                       Niall P. McCarthy