THEODORE H. FRANK (SBN 196332)
      tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848

Attorney for Objectors Theodore H. Frank and Kimberly Schratwieser

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re HP Inkjet Printer Litigation | Case No. C-05-3580 JF (PVT) |
| | **<u>CLASS ACTION</u>** |
| Theodore H. Frank, Kimberly Schratwieser, and Adrian Monza, | **OBJECTION TO PROPOSED SETTLEMENT** |
| *Objectors.* | Judge:     Jeremy Fogel<br>Date:      January 28, 2010<br>Time:      9:00 a.m.<br>Courtroom: 3 – Fifth Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ...............................................................................................1

ARGUMENT........................................................................................................2

I.     The Objectors Are Members Of The Class. ................................................2

II.    This Pre-Certification Settlement Merits High Scrutiny. ...........................4

III.   The "E-Credits" Are Coupons.....................................................................5

IV.   The Coupon Settlement Is Problematic. .....................................................6

V.    The "Injunctive Relief" Is Worthless To The Class As A Matter Of Law.10

VI.   The Settlement Cannot Be Approved Because Neither The Parties Nor The Class Notice Have Disclosed The Effect Of The Waiver. .......................12

VII.  The Fee Request And The "Clear Sailing" Provision Suggest A Failure To Meet Rule 23(a)(4)...................................................................................14

VIII. The Fee Request Is Excessive Under 28 U.S.C. § 1712(a). .....................14

IX.   The Court Should Discount Attempts By The Settling Parties To Infer Class Approval From A Low Number Of Objections..............................17

CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

## **Cases**

*Acosta v. Trans Union, LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007)................................................................6

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*,
    52 F.R.D. 373 (D. Kan. 1971) ...............................................................19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................4

*Bloyed v. General Motors Corp.*,
    881 S.W.2d 422, 431 (Tex. Ct. App. 1994)..............................................10

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..........................................................................15-17

*Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA,
    2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) ....................................15,17

*Diaz v. Trust Territory of Pacific Islands*,
    876 F.2d 1401 (9th Cir. 1989)..................................................................4

*Dunleavy v. Nadler*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................4

*Ellis v. Edward D. Jones & Co.*,
    527 F. Supp. 2d 439 (W.D. Pa. 2007)......................................................18

*Figueroa v. Sharper Image Corp.*,
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................6, 10

*Fleury v. Richemont North Am., Inc.*,
    No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008)..............5

*Grant v. Bethlehem Steel Corp.*,
    823 F.2d 20 (2d Cir. 1987).......................................................................4

*Grove v. Principal Mut. Life Ins. Co.*,
    200 F.R.D. 434 (S.D. Iowa 2001)...........................................................17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................4, 11-12, 14

*In re Apple Inc. Securities Litigation,*
 No. C-06-5208-JF (N.D. Cal.)...................................................... 3-4

*In re Classmates.com Consolidated Litig.,*
 No. C 09-45 RAJ (W.D. Wash.).......................................................15-16

*In re Corrugated Container Antitrust Litig.,*
 643 F.2d 195 (5th Cir. 1981) ....................................................18

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
 174 F.R.D. 332 (D.N.J. 1997) ...................................................12-13

*In re General Motors Corp. Engine Interchange Litigation,*
 594 F.2d 1106 (7th Cir. 1979)...................................................18

*In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,*
 55 F.3d 768 (3rd Cir. 1995)..............................................6, 10, 12, 17-19

*In re HP Laserjet Printer Litigation,*
 Case No. CV 07-0667 AG (C.D. Cal.) ....................................16

*In re Mexico Money Transfer Litig.,*
 267 F.3d 743 (7th Cir. 2001) ....................................................6

*In re Washington Public Power Supply Sys. Lit.,*
 19 F.3d 1291 (9th Cir. 1994) ....................................................4

*Kearns v. Ford Motor Co.,* No. CV 05-5644,
 2005 WL 3967998 (N.D. Cal. Nov. 21, 2005)...........................6

*Kirchoff v. Flynn,*
 786 F.2d 320 (7th Cir. 1986) ....................................................15

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,*
 834 F.2d 677 (7th Cir. 1987) ....................................................18

*Mirfasihi v. Fleet Mortgage Corp.,*
 356 F.3d 781 (7th Cir. 2004) ...............................................4, 12

*Molski v. Gleich,*
 318 F.3d 937 (9th Cir. 2003) ....................................................4

*Nachsin v. AOL,*
 No. 10-55129 (9th Cir.)..............................................................16

*Petruzzi's, Inc. v. Darling-Delaware Co.*,
    880 F. Supp. 292 (M.D. Pa. 1995)................................................................18

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ......................................................................12

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................14

*Silber v. Mabon*,
    957 F.2d 697 (9th Cir. 1992) .........................................................................4

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ....................................................................15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................14

*Strong v. BellSouth Telecommunications, Inc.*,
    137 F.3d 844 (5th Cir. 1998) ..................................................................16-17

*Synfuel Tech. v. DHL Indus., Inc.*,
    463 F.3d 646 (7th Cir. 2006) ....................................................5-6, 10, 11

*Thorogood v. Sears Roebuck & Co.*, No. 10-2407,
    2010 WL 4283637 (7th Cir. Nov. 2, 2010)..................................................13

*True v. American Honda Motor Co.*, No. CV 07-287,
    2010 WL 707338 (C.D. Cal. 2010) (Feb. 26, 2010) ................5-6, 10, 11, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................15

*Weinberger v. Great Northern Nekoosa Corp.*,
    925 F. 2d 518 (1st Cir. 1991) ......................................................................14

*Williams v. MGM-Pathe Communications Co.*,
    129 F.3d 1026 (9th Cir. 1997)................................................................16-17

**Rules and Statutes**

15 U.S.C. § 77z-1(a)(6)...........................................................................16

15 U.S.C. § 78u-4(a)(6) ..........................................................................16

28 U.S.C. § 1711 note § 2(a)(3)(A) ...................................................16

28 U.S.C. § 1712.......................................................................................2

28 U.S.C. § 1712(a) .........................................................................14-16

28 U.S.C. § 1712(d) .................................................................................9

Fed. R. Civ. Proc. 23(a)(4)...............................................................1, 14

Fed. R. Civ. Proc. 23(c)(2) ....................................................................13

Fed. R. Civ. Proc. 23(e) ...................................................................1, 14

Fed. R. Civ. Proc. 23(e)(1) ....................................................................13

Fed. R. Civ. Proc. 23(e)(2) .............................................................1, 13

Fed. R. Civ. Proc. 23(e)(5) ......................................................................3

Fed. R. Civ. Proc. 23(h) ........................................................................16

Rev. Proc. 92-59, 1992-2 C.B. 411 .........................................................3

**Other Authorities**

Advisory Committee, Notes on 2003 Amendments to Rule 23(h)........................16

Easterbrook, Gregg,"Should game outcomes be reversed?",
    ESPN.com (Aug. 17, 2010).......................................................16

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in
    Class Action Litigation: Theoretical and Empirical Issues*,
    57 VAND. L. REV. 1529 (2004)................................................18-19

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2008) § 21.71........16

Koppel, Nathan, *Proposed Facebook Settlement Comes Under Fire,* WALL ST. J.
    (Mar. 2, 2010)...........................................................................16

Leslie, Christopher R., *The Need to Study Coupon Settlements in Class Action
    Litigation*, 18 GEO. J. LEGAL ETHICS 1395 (2005) .........................................5

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and*

*Class Action Settlements*, 59 FLA. L. REV. 71 (2007)............................17-18

Silver, Charles, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TULANE L. REV. 1809 (2000).........................................................15

Tharn, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443 (2005) ...................................................... 7-8

Zahorsky, Rachel M., "Unsettling Advocate," *ABA Journal* (April 2010).............3

**INTRODUCTION**

The parties have proposed a $5 million coupon settlement for a one-hundred-million-member class—providing at most five cents per class member. The vast majority of the class receives no meaningful relief: extrapolating from the data provided by class counsel on the rate of coupon claims to date, it appears that under 230,000 class members will even claim coupons, and a smaller number will redeem them.  Class counsel have put their interest in recovering disproportionate attorneys' fees ahead of the interests of the members of a nationwide class.   Class members Theodore H. Frank and Kimberly Schratwieser thus object to this settlement, which fails to meet the standards of Fed. R. Civ. Proc. 23(e) and 23(a)(4).

Class counsel negotiated a proposed settlement with Hewlett Packard that will require the proposed nationwide class to waive an extraordinarily broad array of claims related to their HP inkjet products (far broader than the claims at issue in this case) in exchange for essentially valueless coupons.

The plaintiffs attempt to hang their hat on prospective injunctive relief, but the parties make no effort to quantify it.  Nor can they: the prospective relief is valueless as a matter of law because it does not compensate for past harms, and has no provision prohibiting HP from raising prices to extract any future consumer benefit.

In essence, the settlement provides only illusory benefits to the proposed class of 100 million members and at best serves as a marketing program for class members to continue doing business with HP. The settlement is thus inadequate, and should be rejected.

An independent reason to reject the settlement is the excessive attorneys' fees of $2.9 million proposed for class counsel, more than twice the value of the coupons the proposed class is likely to receive.  The clear sailing agreement contained in the proposed settlement (¶¶ 44-45) coupled with the excessive attorneys' fees demonstrate a violation of Fed. Rule of Civ. Proc. 23(a)(4) and 23(e)(2).  Because class counsel have not acted adequately to protect the interests of the proposed class, and instead have put their

interests first in receiving fees of $2.9 million, the settlement should be rejected.  At a minimum, the fee award should comply with 28 U.S.C. § 1712, and be tied to the value of redeemed coupons.

These objections also serve as notice that counsel Theodore H. Frank intends to appear at the January 28 fairness hearing on behalf of the Frank Objectors, and reserves the right to cross-examine any witnesses presented in support of the settlement.

## ARGUMENT

## I.   The Objectors Are Members Of The Class.

Theodore H. Frank (business address 1718 M Street NW, No. 236, Washington, DC 20036 (703-203-3848)) received as a gift an HP Officejet Pro L7580 All-in-One on August 3, 2008, Serial Number MY7A36303H.  This is an "Affected Model" in the *Rich* and *Biennis* classes. He received no notice of the settlement, and learned of the case and his membership in the class when Ms. Schratwieser contacted him about filing an objection.  On November 24, 2010, Frank attempted to file a claim. It took Frank twenty minutes to file a claim form for the *Rich* class for a $2 e-credit; the settlement website software would not provide him a claim form for the *Biennis* class because the website script generating the form was incompatible with his Google Chrome browser. As of December 30, 2010, Frank has received no response to his November 24, 2010 email to the claims administrator regarding the *Biennis* claim; nor has the problem with the website been fixed.  Mr. Frank is unlikely to use his $2 e-credit.  *See* Declaration of Theodore H. Frank (attached).

Kimberly Schratwieser (1318 N Poplar Avenue, Round Lake, IL 60073 (847-740-8091)) purchased a HP Officejet Pro 8500 Premiere All-in-One Printer-A909n in 2009. This is an "Affected Model" in the *Rich* and *Biennis* classes. Ms. Schratwieser has not filed a claim because she finds it cheaper to purchase HP ink from Staples (where she receives credits for recycling old ink cartridges) than from HP.com, and the e-credits will be worthless to her.

The putative settlement class includes "all individual or entity end-users who purchased or received as a gift in the United States an Affected Model from September 6, 2001, to September 1, 2010." Settlement ¶ II.26. The objectors therefore have standing to object. Fed. R. Civ. Proc. 23(e)(5).

The objectors are represented by the Center for Class Action Fairness, founded by legal academic and attorney Theodore H. Frank in 2009. The Center is a non-profit public-interest law firm that represents consumers *pro bono*. A number of "professional objectors" are for-profit attorneys that attempt to or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. But this is not the business model of the Center for Class Action Fairness. While the Center focuses on bringing objections to unfair class action settlements, it makes no effort to engage in *quid pro quo* settlements to extort attorneys, and has never settled an objection. The Center seeks attorneys' fees only in cases where its objections have resulted in material pecuniary gains for the class, and then only through court-ordered awards; because the Center is a non-profit, tax law prohibits such fees from being the Center's primary source of revenue. Rev. Proc. 92-59, 1992-2 C.B. 411. The Center analyzes complaints from consumers aggrieved by class action settlement notices to determine whether a settlement is objectionable under the law because it favors attorneys over class members; as a non-profit with limited resources, it must restrict itself to objecting only to the most egregiously bad settlements. The Center's litigation on behalf of consumers has been covered by *Forbes*, the *National Law Journal*, and the *Wall Street Journal*, among others. *See, e.g.,* Rachel M. Zahorsky, "Unsettling Advocate," *ABA Journal* (April 2010) ("'What Ted is doing is something very necessary: being there to protect classes from potentially collusive settlements between businesses and lawyers,' says Todd Zywicki, a George Mason University law professor."). The Center has previously represented class members before this Court. *In re Apple Inc. Securities Litigation*, No. C-06-5208-JF (N.D. Cal.)

1  (parties modify preliminarily approved settlement to add $2.5 million to $14 million

2  settlement fund in response to Center objection).

3  **II.     This Pre-Certification Settlement Merits High Scrutiny.**

4  A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant*

5  *v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987); *cf. also In re Washington Public*

6  *Power Supply Sys. Lit.,* 19 F.3d 1291, 1302 (9th Cir. 1994). "Because class actions are

7  rife with potential conflicts of interest between class counsel and class members, district

8  judges presiding over such actions are expected to give careful scrutiny to the terms of

9  proposed settlements in order to make sure that class counsel are behaving as honest

10 fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781,

11 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect

12 the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir.

13 1992). *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir.

14 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary

15 duty toward the absent class members").

16 Where a court is confronted with a settlement-only class certification, the court

17 must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521

18 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "Settlements

19 that take place prior to formal class certification require a higher standard of fairness."

20 *Molski*, 318 F.3d at 953 (*quoting Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

21 *Accord Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998) ("Several Circuits

22 have held that settlement approval that takes place prior to formal class certification

23 requires a higher standard of fairness …[because of] the dangers of collusion between

24 class counsel and defendant…when the settlement is not negotiated by a court-designated

25 class representative….Because settlement class actions present unique due process

26 concerns for absent class members we agree with our sister circuits…and adopt this

27 standard as our own.").

28

1   The settlement at issue is a pre-certification settlement: it resolves claims for a
2   nationwide class that the court previously refused to certify.  Per Ninth Circuit precedent,
3   this Court has a special duty to make sure the settlement is more than fair to the absent
4   proposed class of 100 million members.

5   **III.    The "E-Credits" Are Coupons.**

6   Under the settlement, class members are entitled to "e-credits," discounts of small
7   amounts on products purchased at HP's online store.  The e-credits in this settlement can
8   be used only once, Settlement ¶ 42(d), so if a class member has had multiple e-credits
9   combined per ¶ 42(e) and does not use the full amount, he loses the remaining portion of
10  the e-credit.  The e-credit can only be used within six months of its issuance, cannot be
11  used with other coupons (including other e-credits), and is only transferrable to members
12  of a class member's immediate family.  *Id.* ¶ 42(a), (b), (c), (f). And according to the
13  Notice of the Settlement, HP reserves to itself the right to determine on which products
14  the e-credits may be used at some future date. Final Notice of Settlement at 5 (FAQ ¶ 9).

15  Although the proposed settlement carefully avoids calling these e-credits
16  "coupons," they share the central characteristic of all coupons: recipients must purchase
17  another product in order to redeem value from the options.  *Synfuel Technologies v. DHL*
18  *Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006) ("a discount on a proposed purchase" is
19  a coupon); *Fleury v. Richemont North Am., Inc.*, No. C-05-4525 EMC, 2008 WL
20  3287154, at *2 (N.D. Cal. Aug. 6, 2008) (a coupon settlement is one where the relief
21  constitutes "a discount on another product or service offered by the defendant in the
22  lawsuit").  *Accord True v. American Honda Motor Co.,* No. CV 07-287, 2010 WL 707338
23  at *11 (C.D. Cal. 2010) (Feb. 26, 2010); Christopher R. Leslie, *The Need to Study Coupon*
24  *Settlements in Class Action Litigation*, 18 GEO. J. LEGAL ETHICS 1395, 1396 (2005).  The
25  e-credits are not fungible like cash; they are indistinguishable from coupons.  Indeed,
26  ¶ 42(b) of the Settlement states that the e-credits cannot be used in conjunction with
27  "other rebates or coupons"; the parties understood perfectly well that the e-credits were a
28  type of coupon.

## IV.    The Coupon Settlement Is Problematic.

Under the Class Action Fairness Act, courts must give heightened scrutiny to coupon settlements. *Synfuel Technologies,* 463 F.3d at 654; *True v. American Honda*, 2010 WL 707338 at *12; *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007); *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *1 (N.D. Cal. Nov. 21, 2005).

Coupon settlements are problematic because: (1) they often do not provide meaningful compensation to class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they often require class members to do future business with the defendant in order to receive compensation. *See Figueroa v. Sharper Image,* 517 F. Supp. 2d at 1302; *True*, 2010 WL 707338 at *12. As discussed below, these "e-credits" exhibit all three problems.

*First*, courts "have generally rejected the idea that the face value of coupons or rebates should be used for settlement valuation purposes." *True*, 2010 WL 707338 at *17. "Compensation in kind is worth less than cash of the same nominal value." *Id.* (*quoting Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390 (C.D. Cal. 2007) (*quoting In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001))). *See also In re GMC Pick-Up Litig.*, 55 F.3d 768, 807 (3d Cir. 1995). "Where a coupon or rebate is not freely transferable on the open market, as is the case here, it has even less value." *True*, 2010 WL 707338 at *17 (citing cases).

Redeemed coupons tend to be less valuable to shoppers than their face value.  To illustrate this, imagine a case where a grocery shopper values a can a soup at $1, but the soup is priced at $1.20.   The shopper normally would not buy the soup, and would perhaps buy other groceries instead.  But with a 25-cent coupon, the shopper is willing to purchase the soup.  Although the coupon has been used in the place of 25 cents cash, the shopper only values the coupon for the five-cent consumer surplus from purchase.

The problem is exacerbated because the e-credits are only available at the HP.com store, where claimants are at the mercy of whatever pricing HP happens to be offering at

the time a class member wants to redeem an e-credit.  Depending on the vagaries of the market, and on the pricing arrangements that Hewlett Packard have made with their distributors, a class member can just as easily conduct a general internet search for a product that he wants as going to HP's on-line store and checking the price offered.  If the price is lower elsewhere when the e-credit value is taken into account, then the class member has gained no value from the e-credit since he will be better off purchasing elsewhere.  And because the e-credits expire after six months, she may not get the opportunity to use her credit in an advantageous way.  This is especially problematic in this instance where Hewlett Packard will not reveal until some future point exactly which products are eligible for e-credit redemption.  Again, it appears that the value of the unused e-credit will simply revert back to Hewlett Packard's balance sheet.

For example, objector Ms. Schratwieser would prefer to purchase HP ink from Staples.  Even before shipping costs, she receives a $3 discount from Staples for recycling her ink cartridges there that she could not receive from HP.com.  Even if she were to go through the trouble of making a claim for her $8 e-credit (which may turn out to be substantially less if enough class members make claims and the value of the e-credit is reduced *pro rata*), when she purchases a single ink cartridge from HP.com, she will only save $5.00—and that assumes that she does not have to pay any additional shipping costs. (HP.com is currently offering free shipping on ink "for a limited time."  If that limited time ends before Ms. Schratwieser were to redeem her e-credit, her $5 savings might be exhausted by the shipping expense.)   Objector Mr. Frank similarly finds his e-credit worthless, because HP.com sells its ink for substantially more than competing vendors such as Amazon.com.  Frank Decl. ¶ 11 and Exhibit 2 and 3.

The problem is further exacerbated because the e-credits expire worthless after six months.  Not every class member who receives an e-credit will redeem their e-credit within the six-month period.  Coupon redemption rates are famously low.  *See* 28 U.S.C. § 1711 note § 2(a)(3)(A).  The rule of thumb is that a redemption rate for a coupon without a secondary market is between 1% and 3%.  *See generally* James Tharn & Brian

Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443 (2005).  One can expect the redemption rate of coupons actually claimed in this case to be higher, because the only people receiving coupons are the class members who made claims, but it is virtually guaranteed that class members will not receive $5 million worth of benefit from this settlement.

That said, even the claim rates are likely to be less than 1 percent. Given the time and effort it takes to find a printer's serial number, fill out an electronic claim form, print out a second claim form and submit a pdf of it, few class members will bother to file a claim. The response rate will be further lowered because the claims administrator has put in place barriers to making claims that will reduce the response rate, but increase the expense of administering the settlement. Frank Decl. ¶¶ 8-10.

According to the Declaration of class counsel Niall P. McCarthy, "As of November 23, 2010, 82,500 claims have been received." (Docket No. 253 at ¶ 6.)  The Court granted the parties Motion for Preliminary Approval of Settlement on October 1, 2010. At the current rate of under 1600 claims a day (assuming that all the claims are adjudged as valid), there will be under 230,000 claims by the February 15, 2011, deadline for class members to claim recovery under the proposed settlement. Generously assuming a five-dollar average claim (some class members such as Mr. Frank will receive only a $2 coupon), that implies that under $1.2 million in claims will be made on the coupon fund. (Though the alleged fraud relates to the purchase of ink cartridges, class membership is determined by the ownership of printers; a class member who was allegedly defrauded dozens of times is entitled to the same pittance of relief under the settlement as one who was allegedly defrauded once.)

Thus, most of the hundred-million class members[1] will receive nothing under this settlement. The briefing seeking preliminary approval and the class notice failed to disclose the size of the class: in Plaintiffs' Motion for Consolidation of Cases for Settlement Purposes and Preliminary Approval of Class Action Settlement, class counsel stated only that "[t]he proposed class meets the requirement of numerosity, in that it is comprised of over one million members." Docket No. 252 at 18.  While no one disputes numerosity, a settlement that provides an average of $5 of coupons to members of the class is a considerably different beast than one that provides an average of $0.05 of coupons to members of the class. This settlement would have generated additional objections (and might not have received preliminary approval) if the court and the class knew without digging deep within the docket that the average class member would receive five cents.  The settling parties have submitted no expert evidence claiming that the redemption rate will be unusually high in this case, or even high enough to redeem anywhere near $5 million of coupons.  *Cf.* 28 U.S.C. § 1712(d).

*Second*, the coupon settlement works out to be a source of profit for HP.  Because the e-credit can only be redeemed at the HP.com on-line store, HP realizes profits from vertical integration that it would not realize if a consumer instead purchased HP products from Staples.  Even with the discount from the e-credit coupon, HP almost certainly receives more revenue when a consumer purchases ink cartridges from HP.com than when HP sells the same ink cartridges at a wholesale price to Staples for resale.  The effect of the coupon is to drive profitable business to HP.com's vertically-integrated retail operation—and that is before one considers the benefits to HP.com marketing from

---

[1]   Cameron R. Azari, the Director of Epiq Legal Noticing, states, "While developing the Notice Plan, it was determined that HP has email addresses for a portion of the class. I understand that this partial list of Class member names and email addresses comprises approximately 13,500,000 (or approximately 13.5% of the class in terms of units)." (Docket No. 254 at ¶ 5.)  If 13.5 million inkjet printers sold constitute approximately 13.5 percent of the class, then the class size is approximately 100 million.

signing up (and receiving marketing information from) class-member consumers who had not previously shopped at HP.com.  Class members may purchase from HP.com "because they fe[el] beholden to use the [e-credits]," not because they would have otherwise. *In re GMC Pick-Up Litig.*, 55 F.3d at 808; *True*, 2010 WL 707338 at \*18.  This can be a "tremendous sales bonanza" to HP.  *True*, 2010 WL 707338 at \*18 (*quoting In re GMC Pick-Up Litig.*, 55 F.3d at 808 (*quoting Bloyed v. General Motors Corp.*, 881 S.W.2d 422, 431 (Tex. Ct. App. 1994))).

The third *Figueroa* problem obviously applies here: consumers have to do further business with HP to receive the benefits of the settlement, because the e-credits are not fungible and are only redeemable at HP.com.  This does a class member who no longer owns an HP printer any good, not least because such a class member is unable to make a claim if they did not retain the serial number of her printer.

**V.     The "Injunctive Relief" Is Worthless To The Class As A Matter Of Law.**

This is a damages-driven case.  The plaintiffs' claim that the "primary objective" of the suits was injunctive relief (Docket No. 261 at 11) was already rejected by this Court when it denied Rule 23(b)(2) certification.  Docket No. 170 at 9.

However, even if the plaintiffs could make a claim that this proposed class settlement's prospective injunctive relief was the suit's "primary objective," the relief provided by the injunctive portion of the settlement is illusory and does not render fair, reasonable, and adequate what has been seen above as a deficient coupon settlement. "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654.  In this case, only the coupon portion of the settlement could compensate for past injury by the class members, not the injunctive relief.

According to the parties, if the proposed settlement is approved, Hewlett Packard will agree to discontinue the use of certain pop-up messaging and to make certain changes to its disclosures.

The going-forward nature of this alleged injunctive relief provides no compensation for *past* harm. At best, such "relief" is an agreement to avoid in the future the alleged harm that class members have complained of. "No changes to future advertising by [HP] will benefit those who already were misled." *True*, 2010 WL 707338 at *19. *Accord Synfuel*, 463 F.3d at 654 ("It is future customers who are not plaintiffs in this suit who will reap most of the benefit from these changes.").

Imagine a class member who no longer owns an HP printer.  How much value would HP's disclosures in the future about printing practice be worth to him?  Nothing.

Notably, when courts have approved injunction-only settlements, there were material benefits to class members that this settlement does not have. For example, in *Hanlon v. Chrysler Corp.*, the parties agreed to a settlement whereby Chrysler would provide "a redesigned improved replacement latch to be installed free of charge." 150 F.3d 1011, 1018 (9th Cir. 1998).

There is a critical difference between the *Hanlon* class and the class here. In *Hanlon*, class members **owned** Chrysler minivans, a tangible good. Thus, the prospective relief, provided free of charge, improved the lot of the class members: before, they owned a defective vehicle that they had allegedly paid too much for; afterwards, they owned a fixed vehicle.

The prospective relief here, however, is completely different. This is a lawsuit over ink that has already been used by class members. The class members have already paid for and fully consumed the ink in the past.  Any improved knowledge about how to use HP printers and ink cartridges created by the prospective injunctive relief would not be provided "free of charge" as in *Hanlon*, but would be useful only if a class member purchased ink or printers from HP in the future.  The class member will need to **spend** money to make the injunctive relief valuable to him.

Moreover, these disclosures being blazoned as "injunctive relief" would be made by any prudent business looking to avoid further lawsuits regarding its business practices.

The parties have submitted no evidence as to the value of the injunctive relief included in the proposed settlement. Nor can they. Even for class members that plan to continue using HP printers and ink, the injunctive relief is only of value if HP voluntarily chooses not to raise its prices to fully reflect the additional expense of changing its business practices. Nothing in the settlement addresses HP's future pricing, and there is no reason to believe that HP will give consumers something for nothing when it is not required to.

The objectors are not claiming that injunctive relief is never appropriate in a class action settlement: they are simply claiming that the injunctive relief must *benefit* the class, as it did in *Hanlon*.  Here, the injunctive relief does no such thing. As such, the injunctive relief is irrelevant to the proposed nationwide class at issue in this proposed settlement, as well as valueless to that class.

## VI. The Settlement Cannot Be Approved Because Neither The Parties Nor The Class Notice Have Disclosed The Effect Of The Waiver.

The release that Hewlett Packard is asking proposed class members to make in exchange for the "benefits" class members will receive is extraordinarily broad—far broader than the claims brought in this lawsuit. Settlement ¶ 21.

It is noteworthy that the parties have failed to disclose whether there are other class actions with other legal theories pending at this time that will be extinguished by the settlement.  If such lawsuits are ongoing, HP should disclose those to the court, and the parties should give the court a fair valuation of the merits of those pending class actions. The district court has the duty to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that value. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F. 3d 781, 785 (7th Cir. 2004); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d at 806.

As this Court has already found, there are a multiplicity of possible suits against Hewlett Packard that could be brought by distinct classes representing each of the

individual states.  Docket No. 170 (Order Denying Summary Judgment) at 11 (*citing In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997) ("Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.")).

As Judge Posner recently wrote, "The judge who presides over a class action and must approve any settlement is charged with responsibility for preventing the class lawyers from selling out the class, but it is a responsibility difficult to discharge when the judge confronts a phalanx of colluding counsel. The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the class." *Thorogood v. Sears Roebuck & Co.*, No. 10-2407, 2010 WL 4283637 (7th Cir. Nov. 2, 2010) (internal citation omitted).

For this Court to allow Class Counsel and Hewlett Packard to mandate that 100 million class members waive a multiplicity of claims that can only be speculated about at this time, and that might garner the interest not only of other claimants, but state governments as well, would be impermissible.  The parties have not performed the required analysis to inform class members or the court of the fair value of the pending claims. Perhaps there are no such other class actions, or perhaps any other pending class actions are meritless, in which case this particular part of the objection is moot (though it remains curious why the release is so much broader than the complaint). But that is within the knowledge of the parties, and they have not met their burden to make that showing. Until they do, the parties have not met the burden of demonstrating that the settlement is fair, reasonable, or adequate under Fed. R. Civ. Proc. 23(e)(2), and have not met the requirement of providing the "best notice practicable." Fed. R. Civ. Proc. 23(c)(2), (e)(1).

**VII.    The Fee Request And The "Clear Sailing" Provision Suggest A Failure To Meet Rule 23(a)(4).**

Class counsel are requesting $2.9 million in fees for a settlement that is likely to provide only about $1 million in benefit to the class.  This is exactly backwards.

A court should give a settlement "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon*, 150 F.3d at 1021 (9th Cir. 1998).  The problem is exacerbated here because of the "clear sailing" arrangement in the settlement: putting their own fees ahead of the interests of the class, class counsel negotiated a provision protecting their fees from challenge by the defendant. Settlement ¶ 44. Such a provision invites additional scrutiny of the settlement. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F. 2d 518, 524 (1st Cir. 1991); *cf. also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 n. 5 (9th Cir. 2009).   After all, such a concession from the defendant to benefit the class counsel almost certainly comes at the expense of the class. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

This is a fee-driven settlement: the attorneys are requesting fees at least double the amount they are likely to recover for the class.  It is unclear whether the lack of recovery for class members is because class counsel tacitly colluded with the defendant or because class counsel simply recklessly disregarded their obligation to negotiate a settlement that was likely to provide meaningful recovery to their clients.  But in either situation, the attorneys have failed to meet the standard of Fed. R. Civ. Proc. 23(a)(4), and the settlement fails to meet the standard of Fed. R. Civ. Proc. 23(e).

**VIII.  The Fee Request Is Excessive Under 28 U.S.C. § 1712(a).**

Because this is a coupon settlement where the injunctive relief is valueless to the class, attorneys' fees "shall be based on the value to class members of the coupons that are

redeemed" rather than the theoretical value of the coupons available for redemption.  28 U.S.C. §1712(a).  Even if all $5 million in coupons were redeemed, the $2.9 million fee request—58% of class recovery—would be excessive.  *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (appropriate benchmark for fees is 25% of recovery).  Because the redemption rate will be below $5 million, the fee award should be even lower.

"The lodestar amount is particularly inappropriate where, as here, the benefit achieved for the class is small and the lodestar award large." *True*, 2010 WL 707338, *citing Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009).  Attorneys' fees should be based on a percentage of the recovery.  "The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains.  This interest-alignment device is not perfect. . . .  But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 Tulane L. Rev. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach.").  The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  In contrast, the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* Both public policy and the clear language of § 1712(a) require fees to be based on actual class recovery.

In the pending case of *In re Classmates.com Consolidated Litig.*, No. C 09-45 RAJ (W.D. Wash.) ($1.05 million fee request for $117,000 pecuniary recovery from a fictional $9.5 million "fund"), the very same class counsel in this case argued that *Boeing Co. v.*

*Van Gemert*, 444 U.S. 472 (1980) and *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) require a district court to base fees on the total amount available to the class.[2] This is incorrect. *First*, both of these decisions were superseded by intervening changes in the law. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23(h) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest ***actually paid*** to the class" (emphasis added)) (*citing* 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6)).   Because the settlement involved "coupons" for future Classmates.com memberships, the Class Action Fairness Act requires fees to be based on actual class recovery: attorneys' fees "shall be based on the value to class members of the coupons that are redeemed" rather than the theoretical value of the coupons available for redemption.  28 U.S.C. § 1712(a).  *See also* Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004) ("the fee awards should be based only on the benefits actually delivered"); 28 U.S.C. § 1711 note § 2(a)(3)(A) (Congress enacted Class Action Fairness Act out of concern over abuses of the class action device that "harmed" class members, "such as where … counsel are awarded large fees, while leaving class members with coupons ***or other awards of little or no value***." (emphasis added)). *Second*, both *Boeing* and *Williams* are inapplicable to this case because they only apply to cases where there is a *common fund*. There is no common fund here: if class members do not redeem $5 million worth of coupons, the remainder reverts to HP. *Strong*

---

[2]     As *Classmates.com* helps demonstrate, class counsel in this case, Kabateck Brown Kellner, has a pattern and practice of questionable settlements that benefit the attorneys at the expense of the class; a number of these settlements have drawn scrutiny from the popular press.  *See* Gregg Easterbrook, "Should game outcomes be reversed?", ESPN.com (Aug. 17, 2010) (describing *Classmates.com* settlement as "Lawsuit of the Year" for "taking the cake" in "shafting the plaintiffs"); Nathan Koppel, *Proposed Facebook Settlement Comes Under Fire,* Wall St. J. (Mar. 2, 2010) (examining Kabateck Brown Kellner $0 settlement in *Nachsin v. AOL* (pending in the Ninth Circuit in Docket No. 10-55129)).  The settlement at bar is parallel to a similarly attorney-friendly coupon settlement involving HP and Kabateck Brown Kellner, *In re HP Laserjet Printer Litigation*, Case No. CV 07-0667 AG (C.D. Cal.).

1  *v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 852-53 (5th Cir. 1998); *Create-A-*

2  *Card*, 2009 WL 3073920. Thus, the *Boeing* rule and *Williams* rule, already nonsensical

3  public policy, would not apply even if they were still good law.

4      In the event that the court approves the settlement notwithstanding all of its

5  problems, the fee request should be limited to 25% of the value of the redeemed coupons.

6  **IX.   The Court Should Discount Attempts By The Settling Parties To Infer Class**

7        **Approval From A Low Number Of Objections.**

8      In any given consumer class action settlement, no matter how egregiously bad for

9  the class, only a small percentage of class members will object. The natural predominant

10  response is apathy, because objectors—unless they can obtain *pro bono* counsel—must

11  spend time and effort, and perhaps money on counsel, to attempt to improve the

12  settlement for millions of fellow class members with little potential gain for themselves

13  over a settlement that is worth only a few dollars in coupons. One can expect class

14  counsel to argue that this natural tendency to free-ride is acquiescence or evidence of

15  support for the settlement. This is wrong. Silence is simply *not* consent:

16  > There may be many reasons why class members in this case didn't register
17  > their concerns about the settlement: lack of interest, time, information, etc.
> Like the Third Circuit in the *General Motors* case, the Court is unwilling to
18  > automatically equate class silence with a showing of "overwhelming" support
> for the settlement. Therefore, the fact that statistically few people bothered to
19  > opt-out or file an objection ultimately counts little in the Court's overall
> fairness analysis.
20

21  *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001), *citing In re*

22  *GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 789 (3d Cir. 1995).

23  "Silence may be a function of ignorance about the settlement terms or may reflect an

24  insufficient amount of time to object.  But most likely, silence is a rational response to any

25  proposed settlement even if that settlement is inadequate.  For individual class members,

26  objecting does not appear to be cost-beneficial.  Objecting entails costs, and the stakes for

27  individual class members are often low."  Christopher R. Leslie, *The Significance of*

28

*Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

There is usually little hope that opt-outs can recover for their claims—the entire purpose of class actions is to aggregate claims that would be uneconomical to bring individually. "Almost by definition, most class members have too little at stake to warrant opting out of the class litigation and filing an individual lawsuit. Thus, opting out is probably not a viable option even though a proposed settlement is unfair or inadequate." Leslie, *supra*, 59 FLA. L. REV. at 109. Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual.

"[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.*, 55 F.3d at 812, *citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981); *cf. Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a whole supports the proposed settlement . . . .'"). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, as in a consumer fraud class action such as this where the maximum recovery was a few dollars in coupons, the rate of response is famously low. Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and*

*Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004).

As such, the Court should draw the adverse inference that a majority of the class objects to the settlement. *Cf. also In re GMC Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously").

The judge must act as a guardian for *all* class members—whether or not they have jumped through the hoops of formally objecting. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The settlement's proponents have the burden to show the proposed settlement and the proposed fee award is fundamentally fair, adequate, and reasonable, and class counsel have simply not carried this burden.

**CONCLUSION**

Calling coupons "e-credits" does not protect a settlement from the scrutiny required of a coupon settlement. This settlement is a coupon settlement that provides a maximum average benefit of five cents per class member, and suffers from all of the problems that lead courts to criticize coupon settlements. Nor can the prospective injunctive relief compensate for the lack of meaningful class benefit for alleged harms in the past and a waiver of claims that go far beyond those made in the complaint. The settlement is a fee-driven settlement for the benefit of class counsel, and must be rejected under Rules 23(a)(4) and 23(e).

If the settlement is nevertheless approved, any fee award must comply with 28 U.S.C. § 1712(a), and be based on the actual redemption rate of coupons; as such, the $2.9 million fee request is exorbitantly excessive.


Dated: December 30, 2010

                                        Respectfully submitted,

                                        /s/ Theodore H. Frank
                                        Theodore H. Frank
                                        **CENTER FOR CLASS ACTION
                                        FAIRNESS**
                                        1718 M Street NW
                                        No. 236
                                        Washington, DC 20036
                                        (703) 203-3848
                                        Attorney for Objectors Theodore H.
                                        Frank and Kimberly Schratwieser

1

2                                   PROOF OF SERVICE

3

4        I declare that:

5        I am employed in the District of Columbia.  I am over the age of 18 years; my

6    office mailing address is 1718 M Street NW, No. 236, Washington, DC 20036.

7        On December 30, 2010, I served the attached:

8        OBJECTION TO PROPOSED SETTLEMENT

9    _X_    By electronic mail in that I e-mailed a PDF of this brief to the following attorneys.

10       NIALL P. McCARTHY                     BRIAN S. KABATECK
11       JUSTIN T. BERGER                      RICHARD L. KELLNER
         COTCHETT, PITRE & McCARTHY            ALFREDO TORRIJOS
12       San Francisco Airport Office Center   KABATECK BROWN KELLNER
13       840 Malcolm Road, Suite 200           LLP
         Burlingame, California  94010         644 South Figueroa Street
14       E-mail:  jberger@cpmlegal.com         Los Angeles, California  90017
15                                             E-mail:  at@kbklawyers.com

16       Samuel G. Liversidge
17       Christopher Chorba
         Dhananjay S. Manthripragada
18       GIBSON, DUNN & CRUTCHER LLP
19       333 South Grand Avenue
         Los Angeles, California  90071
20       E-mail:
21       DManthripragada@gibsondunn.com

22

23       I declare under penalty of perjury that the foregoing is true and correct.

24       Executed on December 30, 2010.

25

26                                   /s/ Theodore H. Frank
                                     Theodore H. Frank
27

28

Case No. C-05-3580 JF (PVT)            21