THEODORE H. FRANK (SBN 196332)
        tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848

Attorney for Objectors Theodore H. Frank and Kimberly Schratwieser

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re HP Inkjet Printer Litigation | Case No. C-05-3580 JF (PVT) |
| ———————————————— | **<u>CLASS ACTION</u>** |
| Theodore H. Frank and Kimberly Schratwieser, | **OPPOSITION TO MOTION FOR FINAL APPROVAL AND REPLY IN SUPPORT OF OBJECTION TO PROPOSED SETTLEMENT** |
| *Objectors.* | Judge:          Jeremy Fogel |
| | Date:           January 28, 2010 |
| | Time:           9:00 a.m. |
| | Courtroom:  3 – Fifth Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ...............................................................................................1

ARGUMENT.......................................................................................................3

I.     The "E-Credits" Are Worthless Coupons That
       Benefit HP More Than The Class. ...........................................................3

II.    The "Injunctive Relief" Is Worthless To The Class As A Matter Of Law. .5

       A.    *Hanlon* Endorses Retrospective, Not Prospective, Injunctive Relief. ...5

       B.    The Rosenfeld Report Thus Does Not Support Plaintiffs' Claims. .......7

             1.  The Rosenfeld Report Is Riddled With Basic Math Errors, Is Internally
                 Inconsistent, And Makes Questionable Assumptions Plucked Out
                 Of Thin Air. ...................................................................8

             2.  The Rosenfeld Report Thus Flunks *Daubert*. ....................................11

             3.  The Rosenfeld Report Also Flunks *Mercury Interactive*. ...................12

III.   The Notice, As Interpreted By The Settling Parties, Actually Confused
       The Class, And Is Thus Insufficient. .......................................................13

IV.    The Fee Request Is Excessive Under 28 U.S.C. § 1712(a). .....................14

V.     Defendants Still Have Not Addressed The Issue Of Pending Parallel
       Actions. ...................................................................................................14

VI.    The *Ad Hominem* Attacks On Frank And The Center For Class Action
       Fairness Are Legally Irrelevant; Many Are Also False. ...........................15

       A.    Schratwieser Is Not A Professional Objector. ...................................16

       B.    The Attacks On Frank Are Legally Irrelevant And Often False. ........16

CONCLUSION ...............................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Bolger v. Bell Atl. Corp.*,
2 F.3d 1304 (3d Cir. 1993).................................................................6

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)........................................................................11

*Browning v. Yahoo Inc.*,
2007 WL 4105971 (N.D. Cal.) (not for citation) ...........................4

*Champagne Metals v. Ken-Mac Metals, Inc.*,
458 F.3d 1073 (10th Cir. 2006) ......................................................11

*Concord Boat v. Brunswick*,
207 F.3d 1039 (8th Cir. 2000)....................................................11-12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)................................................... 2, 7-8, 11-12

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...........................1, 3-6, 18

*First State Orthopaedics v. Concentra, Inc.*,
534 F. Supp. 2d 500 (E.D. Pa. 2007).......................................... 6-7

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)........................................................................11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................... 5-6, 17

*Image Tech. Services, Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) ......................................................10

*In re Apple Inc. Securities Litigation*,
No. C-06-5208-JF (N.D. Cal.)......................................................16

*In re Brand Name Prescription Drugs Antitrust Litigation*,
1999 U.S. Dist. Lexis 550 (N.D. Ill. Jan. 19, 1999),
*aff'd on other grounds*, 186 F.3d 781 (7th Cir. 1999)...................11

*In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995)...............................1, 3-4, 7, 18

*In re HP Laserjet Printer Litigation*,
 Case No. CV 07-0667 AG (C.D. Cal.) .................................................1-2, 13

*In re Mercury Interactive Corp. Sec. Lit.*,
 618 F.3d 988 (9th Cir. 2010).........................................2, 7, 12-13

*Kumho Tire v. Carmichael*,
 526 U.S. 139 (1999)...................................................................11

*Lonardo v. Travelers Indem. Co.*,
 706 F. Supp. 2d 766 (N.D. Ohio 2010)..................................15, 17

*Robinson v. McNeil Consumer Healthcare*,
 615 F.3d 861 (7th Cir. 2010)..........................................................9

*Synfuel Tech. v. DHL Indus., Inc.*,
 463 F.3d 646 (7th Cir. 2006)...........................................1, 3-8, 18

*Thorogood v. Sears Roebuck & Co.*,
 627 F.3d 289 (7th Cir. 2010)........................................................17

*True v. American Honda Motor Co.*, No. CV 07-287,
 2010 WL 707338 (C.D. Cal. Feb. 26, 2010)...........................1, 3-6, 8, 15, 18

*United States v. Posado*,
 57 F.3d 428 (5th Cir. 1995).........................................................11

*Weisgram v. Marley Co.*,
 528 U.S. 440 (2000)...................................................................11

*Zimmerman v. Oregon Dep't. of Justice*,
 170 F.3d 1169 (9th Cir. 1999)........................................................7

**Rules and Statutes**

26 U.S.C. §501(c)(3)....................................................................18

28 U.S.C. § 1711 note § 2(a)(3)(A) ...............................................14

28 U.S.C. § 1712...........................................................................14

28 U.S.C. § 1712(a) ................................................................14, 19

28 U.S.C. § 1712(b) .....................................................................14

Fed. R. Civ. Proc. 11.....................................................................16

Fed. R. Civ. Proc. 23 ................................................................................17

Fed. R. Civ. Proc. 23(a)(4) ..............................................................3, 13, 19

Fed. R. Civ. Proc. 23(b)(2) ........................................................................7

Fed. R. Civ. Proc. 23(e) ..................................................................3, 4, 19

Fed. R. Civ. Proc. 23(e)(5) ......................................................................16

Fed. R. Civ. Proc. 23(h) ...................................................................2, 12-13

N.D. Cal. Local Rule 3-4(e) ......................................................................4

N.D. Cal. Local Rule 11-6 .......................................................................16

U.S. Const. Amendment I .........................................................................18

## Other Authorities

Ben-Shahar, Omri and Schneider, Carl E.,
    "The Failure of Mandated Disclosure,"
    U. CHI. L. & ECON. OLIN WORKING PAPER NO. 516 (2010) ...........................9

Craswell, Richard, "Taking Information Seriously: Misrepresentation and
    Nondisclosure in Contract Law and Elsewhere,"
    92 VA. L. REV. 565 (2006) .................................................................9

David, Larry, "The Non-Fat Yogurt," *Seinfeld* (NBC Nov. 4, 1993) ......................6

Geistfeld, Mark, "Inadequate Product Warnings and Causation,"
    30 U. MICH. J.L. REFORM 309 (1997) ............................................9

Latin, Howard, "'Good' Warnings, Bad Products, and Cognitive Limitations,"
    41 UCLA L. REV. 1193 (1994) ......................................................9

Paredes, Troy A., "Information Overload and its Consequences for Securities
    Regulation," 81 WASH. U. L.Q. 417 (2003) ....................................9

Weiss, Debra Cassens, "Chief Justice Roberts Admits He Doesn't Read the
    Computer Fine Print," ABAJournal.com (Oct. 20, 2010) ..................9

**INTRODUCTION**

There is an apocryphal saying about legal argumentation: "If the law is against you, pound the facts; if the facts are against you, pound the law; if both the facts and the law are against you, pound the table."  Here, the parties have proposed a settlement that consists of "e-credits" that lead class counsel Steven Berk admits in a trial-lawyer newsletter are "indistinguishable from coupons" and "worthless."  The settlement cannot be approved because of the directly-on-point precedents of *Synfuel Tech. v. DHL Indus., Inc.*, 463 F.3d 646 (7th Cir. 2006); *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007); and *True v. American Honda Motor Co.,* No. CV 07-287, 2010 WL 707338 (C.D. Cal. Feb. 26, 2010). So the parties' briefs effectively ignore all four cases, and plaintiffs instead engage in table-pounding: a sanctionably baseless and legally irrelevant *ad hominem* attack against the objectors.

Ironically, given that this is a lawsuit over allegedly confusing disclosures by HP, the parties are now claiming that the hundreds of class members who objected to the settlement by the procedures outlined in the notice given to the class have waived their objections. If the parties are going to adhere to that untenable position, this Court should hold that the class notice was constitutionally inadequate by failing to give class members fair opportunity to object, and require new notice to be given; in the alternative, the court should require the settling parties to file with the court the hundreds of objections that class members sent to the settlement administrator as they were instructed to do in the class notice.

The plaintiffs further fail to disclose that lead plaintiff James C. Young in the companion *Laserjet* case objected to the settlement that bears his name, stating under oath that he did not know the status of the litigation, that he was the lead plaintiff, or that his signature would mean his approval of a settlement that did so little for the class. *See* Declaration of Theodore H. Frank Exhibit 1 (Young objection). In *Laserjet*, class counsel is asking the court to ignore the Young objection over the same technicality because

Young followed the instructions in the class notice. Are some of the hundreds of undisclosed objections in this case also from the lead plaintiffs? Do the lead plaintiffs in this case even know that they are the lead plaintiffs or do they also believe, like Young, that they were tricked into signing onto the settlement? The Schratwieser objectors attempted to find out by requesting the depositions of the lead plaintiffs, but class counsel refused—and was so adamant that the five lead plaintiffs in *Inkjet* and *Laserjet* not be deposed that he dropped deposition requests for Ms. Schratwieser and Mr. Frank, even as the latter two offered dates when they would be available. Frank Decl. ¶ 6. The court can appropriately draw an adverse inference from the failure of class counsel to produce the lead plaintiffs for deposition or disclose the hundreds of objections to the Court; this provides an independent reason to reject the settlement.

The plaintiffs seek to justify their fee request by submitting a junk-science expert report purporting to claim that the injunctive relief is worth millions of dollars. The Rosenfeld Report reaches that result by baselessly speculating (1) that the injunctive relief will influence consumer decisions; and (2) if the injunctive relief influences consumer decisions, HP will not raise its prices. Dr. Rosenfeld provides no evidence to support either assumption: his report consists entirely of impermissible bootstrapping, and thus flunks *Daubert*. Moreover, his calculation of the value of injunctive relief fails to apply the correct legal standard. It cannot be considered in support of the settlement or the fee request.

Ironically, even as the plaintiffs ask the court to disregard hundreds of objections on the technicality that class members made the mistake of believing the class notice that the parties issued, the plaintiffs impermissibly introduce new evidence to support their excessive fee request after objections were due from the class, notwithstanding the clear requirement of *In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988 (9th Cir. 2010) that material in support of a fee request be submitted *before* objections are due. Fed. R. Civ. Proc. 23(h). This provides a second independent ground for striking the Rosenfeld Report.

1    The settlement fails to meet the standards of Rule 23(e) and Rule 23(a)(4) and must

2    be rejected.

3

4    **ARGUMENT**

5

6    **I.    The "E-Credits" Are Worthless Coupons That Benefit HP More Than The**

7    **Class.**

8    The parties do nothing to address the multiple cases that demonstrate that the

9    settlement is impermissible because it is structured as a coupon settlement that works as a

10   profitable marketing program for the defendant. *Synfuel Technologies v. DHL Express*

11   *(USA)*, 463 F.3d 646 (7th Cir. 2006); *In re General Motors Corp. Pickup Truck Fuel Tank*

12   *Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995); *True v. American Honda Motor Co.,* No.

13   CV 07-287, 2010 WL 707338 (C.D. Cal. Feb. 26, 2010); *Figueroa v. Sharper Image*

14   *Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007). Instead, they ignore those cases entirely

15   (plaintiffs cite *Synfuel* once) and pretend that the Schratwieser objectors are merely asking

16   for the settlement to be "better."  Not so. The Schratwieser objectors posit the narrower

17   contention that class counsel and the defendant cannot agree to a settlement that provides

18   more benefits to them than to the class.

19   Indeed, class counsel has the gall to tell the court that "All three objections are

20   based on the fundamental misconception that this Settlement is, at essence, a 'coupon'

21   settlement. It is not."  Pl. Mot. for Final Approval at 15. When lead class counsel Steven

22   Berk is writing about this case to fellow trial lawyers, however, he whistles a different

23   tune. In *The Class Action Newsletter* of the AAJ (formerly the Association of Trial

24   Lawyers of America), Berk writes that an "e-credit" is "a new term for the much maligned

25   coupon" and headline writers will call it "[w]orthless"; he goes on to say that "it's these

26   settlements that give [trial lawyers] all a bad name" and asks his fellow class action

27   attorneys to make bad settlements like these "the exception. Not the rule. Because, if they

28

are the rule, our credibility will continue to erode, and the courts, legislatures and eventually the public, will put us out of business." Frank Decl. Exhibit 2 at 3-4.

Unfortunately for class counsel, Rule 23(e) does not have an exception for "exceptions"; *all* settlements must be "fair, adequate, and reasonable," not just enough of them for class counsel to maintain credibility with the public. Class counsel's "need to be paid" (Frank Decl. Ex. 2 at 3) for a losing case is not grounds to negotiate a settlement that does not satisfy Rule 23(e) by putting the attorneys' interests ahead of the class's.

Class counsel trumpets the "several institutional class members (such as schools), who stand to receive thousands, or tens-of-thousands of dollars in e-credits." Pl. Mot. for Final Approval at 15 n. 3. This argument is brazen: one of the objections that class counsel has not disclosed to the court comes from just such an institutional class member who protests that the settlement is worthless to that institution because it requires the impossible task of using $70,000 in e-credits in 35,000 separate purchase orders before the six-month expiration date. Frank. Decl. Ex. 3.

Defendants rely on *Browning v. Yahoo Inc.*, 2007 WL 4105971 (N.D. Cal.) to argue that the coupons are worthwhile because "the settlement class consists of consumers who previously purchased similar products." Def. Statement at 6. But these are not coupons for "similar products"; these are coupons for similar products *at defendant's on-line store*. As the initial Schratwieser objection showed and the settling parties do not even attempt to rebut, this is worthless to consumers who will face higher prices, even using the coupons, at HP.com than they would face shopping elsewhere.[1]

*Synfuel*, *General Motors*, *True*, and *Figueroa* each require this settlement to be rejected, especially in a post-CAFA environment, and the settling parties provide no argument to the contrary.

---

[1] In any event, even if *Browning* were applicable, the case—which unpersuasively ignores the *Synfuel* and *General Motors* precedents—is designated "not for citation" and cannot be relied upon in this court. N.D. Cal. Local Rule 3-4(e). It is telling that this is the best case HP could find to support this untenable settlement.

## II.     The "Injunctive Relief" Is Worthless To The Class As A Matter Of Law.

This is a consumer fraud case, and as such, prospective injunctive relief is not a benefit to the class. No changes in future HP disclosures will benefit consumers who were already misled by previous HP statements. *True*, 2010 WL 707338 at *19 ("No changes to future advertising by Honda will benefit those who already were misled by Honda's representations regarding fuel economy"). *Cf. also Figueroa*, 517 F. Supp. 2d at 1306, 1316, 1328-29 (rejecting coupon settlement despite settling parties' claim that prospective injunctive relief requiring changes in advertising would benefit the class).

### A.     *Hanlon* Endorses Retrospective, Not Prospective, Injunctive Relief.

"The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654. The defendants do not even mention *Synfuel*; plaintiffs simply pooh-pooh it by stating that *Synfuel* is a Seventh Circuit case without denying that *Synfuel* requires the rejection of the settlement in this case.

Plaintiffs fail to identify any reason to disregard the persuasive *Synfuel* decision; they do not argue that it was incorrectly reasoned or decided. Rather, they ask this court to follow *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). But *Hanlon* is not inconsistent with *Synfuel*. In *Hanlon,* the class **did** receive injunctive relief that addressed their past injuries. *Hanlon* was a case alleging a product defect, and class members received "a redesigned improved replacement latch to be installed free of charge."  The class members here receive nothing—unless they happen by coincidence to overlap with future purchasers of HP products.

Plaintiffs try to shoehorn their irrelevant injunctive relief into the *Hanlon* paradigm by claiming that "the injunctive relief in this case turns a 'defective' product into a 'fixed' product."  This is fallacious: there is no claim that the product is defective. The claim is that HP is making misrepresentations. The proper analogy to this settlement would be if the *Hanlon* settlement, instead of installing a replacement latch, instead simply agreed that future vehicles would have a properly functioning latch (or, worse, agreed to disclose that

the latch did not work). That hypothetical settlement, analogous to this one and the rejected settlements in *Synfuel*, *True*, and *Figueroa*, is both inferior to the one the Ninth Circuit approved in *Hanlon* and does not support a claim of benefit to the class.

Two more hypothetical examples help demonstrate this point. Imagine the hypothetical consumer fraud class action *Seinfeld v. Kramer Non-Fat Yogurt* where a class sues a shop selling "non-fat yogurt" that turns out to be full of fat. *Cf.* Larry David, "The Non-Fat Yogurt," *Seinfeld* (NBC Nov. 4, 1993). If the parties settled for injunctive relief whereby the defendant agreed to correctly label their full-fat yogurt in the future, that would be of no benefit to the class for their ***previous*** injuries—even if, as here, there happened to be some overlap between the class members and the set of people who purchased non-fat yogurt in the future. The class members only benefit to the extent they make additional purchases from the defendant, and that benefit is presumably reflected in the price they pay for those new purchases.

Another example: imagine the hypothetical consumer fraud class action *Gatsby v. West Egg*, where the class sues over West Egg selling packages of a dozen eggs that only have ten eggs in them. If the parties settled with injunctive relief that required West Egg to include at least twelve eggs in every "dozen eggs" package, that again provides no benefit to the class for their ***previous*** injuries, even if, once again, there happened to be some overlap between the class members and the set of people who purchased West Eggs in the future. The lack of benefit becomes even more apparent if West raises its price for a "dozen" eggs from $2.00 to $2.40.

Defendants do not even attempt to address the cases the Schratwieser objectors cite. Rather, they rely on cases such as *Bolger v. Bell Atl. Corp.*, 2 F.3d 1304, 1311 (3d Cir. 1993) that are more like *Hanlon* than like *Synfuel*: to the extent the injunctive relief over corporate governance in *Bolger* benefits shareholder class members, that benefit is reflected through increases in the Bell Atlantic stock price, and compensates shareholders for past injuries. Defendants also rely upon *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500 (E.D. Pa. 2007), but a closer reading of that case supports rejection of

this settlement: "The circumstances of this settlement are distinguishable from [a settlement] comprised of restricted coupons which were 'essentially worthless' to many class members and were deemed 'in reality, a sophisticated marketing program benefitting the defendant.'" 534 F. Supp. 2d at 522 (*quoting and citing In re General Motors Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 807 (3d Cir. 1995)).

The Ninth Circuit creates a circuit split "only after the most painstaking inquiry." *Zimmerman v. Oregon Dep't. of Justice*, 170 F.3d 1169, 1184 (9th Cir. 1999). The settling parties have performed no inquiry on *Synfuel*, much less a "painstaking" one, and provide no reason to create a gratuitous circuit split. *Synfuel* thus controls, and demonstrates that the prospective injunctive relief has no value to the class.[2]

### B.   The Rosenfeld Report Thus Does Not Support Plaintiffs' Claims.

Thus, the Rosenfeld report submitted by plaintiffs does not support the settlement: it is based on the false legal premise that prospective injunctive relief involving the happenstance overlap of future purchasers with the class members is compensation to the class for past injury. Rosenfeld even includes $7.5 million for the value of injunctive relief for class members who happen to replace their existing printers with new HP printers, an inclusion that is unquestionably incorrect even under plaintiffs' legal theory of the value of injunctive relief!

But even if Rosenfeld did not make these basic legal errors, his report is defective both substantively under *Daubert* and procedurally under *In re Mercury Securities*, and cannot be considered.

---

[2] As the Schratwieser objectors stated in their brief, the plaintiffs' claim that the "primary objective" of the suits was injunctive relief (Docket No. 261 at 11) was already rejected by this Court when it denied Rule 23(b)(2) certification. Docket No. 170 at 9. The plaintiffs do not address this argument, and simply repeat their refuted claim.

### 1. The Rosenfeld Report Is Riddled With Basic Math Errors, Is Internally Inconsistent, And Makes Questionable Assumptions Plucked Out Of Thin Air.

The Rosenfeld report does not perform any economic analysis. Rather, it makes a series of assumptions about the prospective injunctive relief, and then performs a mathematical calculation based on those assumptions. Some of those assumptions are based on evidence, but two of the assumptions, each critical to Rosenfeld's conclusion that the value of the prospective injunctive relief is greater than zero, are entirely *ipse dixit* without any analysis, and both of these assumptions are severely questionable. And though all Dr. Rosenfeld's report does is math, he does not even do the math correctly. The Rosenfeld report is not internally consistent, is mistake-riddled, and is not remotely reliable.

*First*, Rosenfeld makes a basic mathematical error. He assumes that 12 million HP inkjet printers are sold in a year. Rosenfeld Report at 4. But he calculates the number of printers sold in the "May 2010 to September 2010 purchase period"—a period of four months[3]—to be equal to 12 million, rather than 4 million. Rosenfeld Report at 5. This basic mathematical mistake results in the value of his calculated injunctive relief to be exaggerated by 34%, and demonstrates the failure of the Rosenfeld report to meet basic standards of *Daubert* reliability.[4]

*Second*, Rosenfeld's estimate of the "H" factor in his model is 0.2 to 0.8. This assumes that 20% to 80% of printer owners "would be alerted successfully by the web warnings mandated by the injunctive relief." But this range of figures is entirely invented;

---

[3] The class period ends September 1, 2010. Settlement ¶ II.26.

[4] Rosenfeld's calculation of the benefit from new printer purchases also erroneously adds a 5% growth factor in units sold, when that growth would by definition come from new customers, rather than from existing class members. But this mathematical error simply compounds the legal error of evaluating these purchases at all, because prospective benefit from class members' new purchases of printers is not a benefit attributable to the class. *Synfuel, supra*; *True, supra*.

no basis is provided for any number in this range. Rosenfeld cites no studies of how often consumers read the fine print in submenus on websites related to products they purchase. There is substantial reason to believe that that figure is much smaller than 20%— especially for the subset of consumers who are the ones actually fooled by the "low on ink" messages that are the subject of the litigation. There is an extensive law-and-economics literature, ignored by the Rosenfeld report, that consumers generally disregard fine-print warnings due to information overload. *See, e.g.,* Ben-Shahar, Omri and Schneider, Carl E., "The Failure of Mandated Disclosure," U. CHI. L. & ECON. OLIN WORKING PAPER No. 516 (2010); Troy A. Paredes, "Information Overload and its Consequences for Securities Regulation," 81 WASH. U. L.Q. 417 (2003); Howard Latin, "'Good' Warnings, Bad Products, and Cognitive Limitations," 41 UCLA L. REV. 1193 (1994); Richard Craswell, "Taking Information Seriously: Misrepresentation and Nondisclosure in Contract Law and Elsewhere," 92 VA. L. REV. 565 (2006); Mark Geistfeld, "Inadequate Product Warnings and Causation," 30 U. MICH. J.L. REFORM 309 (1997); *see also Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861 (7th Cir. 2010) (Posner, J.).

In October, Chief Justice John Roberts told a Buffalo audience he doesn't read the fine print when accessing computer websites. Debra Cassens Weiss, "Chief Justice Roberts Admits He Doesn't Read the Computer Fine Print," ABAJournal.com (Oct. 20, 2010). If someone as sophisticated as Chief Justice Roberts ignores website disclosures, the odds that the 2% of HP users who are misled by "Low on Ink" messages do read those disclosures (when they have no reason to access the HP website to begin with) is surely less than 20%.

If the Rosenfeld report had used a more realistic range of the effectiveness of the disclosures of 1% to 2% rather than his speculative 20% to 80%, his calculated value of the *prospective* injunctive relief (which, remember, is legally irrelevant in any event) would drop to under $1 million. The entirety of the value of Rosenfeld's calculation comes from his unsupported speculation on the success rate of the injunctive relief.

*Third*, Rosenfeld's model assumes that HP will not raise prices on its ink cartridges, and provides no offset to the supposed value of the prospective injunctive relief by calculating the additional cost to class members. The assumption is implicit: the report does not even consider the issue, though it was raised in the Schratwieser objection as a reason why the injunctive relief will not benefit the class. But there is no reason to believe that HP will not change its pricing if, as plaintiffs allege, its business model previously accounted for consumers discarding ink cartridges more frequently than they had to. According to Rosenfeld's own estimates, class members will purchase approximately 260 million ink cartridges over the next three years (approximately 350 million if one accepts the overestimate of printers sold between May 1 and September 1, 2010 resulting from Rosenfeld's mathematical error); if one includes Rosenfeld's estimates of future printer purchases by class members, that figure rises to approximately 320 million (or 410 million). If HP raises the price of its ink cartridges between *5 cents to 10 cents*—less than half a percent—then Rosenfeld's own estimate of the value of injunctive relief—between $15.9 million to $41.1 million—is swallowed up by the additional costs to the class from the price increase. And, as demonstrated above, Rosenfeld's own estimate of the value of injunctive relief is exaggerated tremendously by his mathematical errors and unrealistic speculation. Rosenfeld's model has assumed that the price increase for ink cartridges will be zero, but provides no economic reasoning to support the omission of this analysis, even though it was raised in the objection.

HP has a dominant market share of ink cartridges for HP printers that implies market power, and thus the ability to raise prices a few percent without losing market share. *Cf. Image Tech. Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997). Even if Rosenfeld were correct and class members would receive millions of dollars of ink through the injunctive relief, there is no reason to think that HP cannot raise its prices by more than enough to completely offset any class benefit, and perhaps even make the class worse off. Rosenfeld's speculative and unexplained assumption that the price increase will be zero is impermissible.

### 2.   The Rosenfeld Report Thus Flunks *Daubert*.

The fact that the Rosenfeld Report relies upon numbers and assumptions simply picked out of thin air disqualifies it from evidentiary consideration under a *Daubert* inquiry. "Evidentiary reliability, or trustworthiness, is demonstrated by a showing that the knowledge offered is 'more than speculative belief or unsupported speculation.'" *United States v. Posado*, 57 F.3d 428, 433 (5th Cir. 1995) (*quoting Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993)).

Moreover, a flimsy economic model riddled with mathematical errors and internal inconsistencies would not pass muster in peer-reviewed economic literature, and, after *Daubert* and *Kumho Tire*, it does not pass muster in federal court, either. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 139 (1999); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1079-80 (10th Cir. 2006) (admissible expert evidence must contain internally consistent explanations for conclusions).

Simply claiming one's expertise and then asserting a conclusion without performing the economic analysis that experts in the field would perform precludes admission of proposed expert evidence—even if the testifying expert is a Nobel Prize winner. *In re Brand Name Prescription Drugs Antitrust Litigation*, 1999 U.S. Dist. Lexis 550 (N.D. Ill. Jan. 19, 1999) (excluding testimony of Nobel Prize-winning economist Robert Lucas when opinions not based on evidence), *aff'd on other grounds*, 186 F.3d 781 (7th Cir. 1999); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Expert testimony that is speculative is not competent proof and contributes "nothing to a 'legally sufficient evidentiary basis.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 445, 454 (2000) (*citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)). "Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Group Ltd.*, 509 U.S. at 242. *Accord*

*Concord Boat v. Brunswick*, 207 F.3d 1039, 1057 (8th Cir. 2000) ("Because of the deficiencies in the foundation of the opinion, the expert's resulting conclusions were 'mere speculation'" and inadmissible).

The formula and calculations in the Rosenfeld Report are dependent upon the unfounded speculation that "20% to 80%" of the 2% of class members confused by "low on ink" messages will cease to be confused and change their ink-purchasing behavior when there are obscure disclosures in the fine print of the HP website. Without this unfounded speculation, the value of the injunctive relief under the Rosenfeld Report, even under the legally erroneous understanding of injunctive relief benefiting the class for past injuries, drops to zero.

The Rosenfeld Report is not admissible evidence and *Daubert* requires its exclusion.

### 3.    The Rosenfeld Report Also Flunks *Mercury Interactive*.

Under Fed. R. Civ. Proc 23(h), class counsel is required to submit their basis for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988 (9th Cir. 2010).

Here, class counsel did not submit the Rosenfeld Report with the August 26 motion for preliminary approval or with their November 29 motion for fees, but waited until the late evening of January 14—the Friday night before the Martin Luther King Day holiday and over a week after objections were due, to submit this defective evidence in support of their fee request.

The Rosenfeld Report is incompetent evidence because it flunks *Daubert*, and is legally irrelevant because it calculates the value of injunctive relief that does not compensate the class for the injuries sued upon. But it is also procedurally improper because of *Mercury Interactive*. The Schratwieser objectors have been potentially prejudiced by the late date of the submission: had class counsel submitted the report in a timely fashion, the Schratwieser objectors would have had time to retain a Ph.D.

economist to more fully rebut the Rosenfeld Report and to depose Rosenfeld. Frank Decl. ¶ 7. The failure of the class counsel to comply with Rule 23(h) and *Mercury Interactive* is an independent reason to exclude the Rosenfeld Report.

## III.    The Notice, As Interpreted By The Settling Parties, Actually Confused The Class, And Is Thus Insufficient.

Ironically, even as plaintiffs bring a class action for consumer fraud over communications that admittedly affected only 2% of the class (Rosenfeld Report at 4), they issued a notice that confused over 99% of the objectors.  The class notice "FAQ" told objectors to email their objections to the settlement administrator and the settling parties' lead attorneys. But now the settling parties are taking the position that class members who followed the instructions in the class notice but did not formally file their objections with the Court have waived their objections. Over 400 objectors are being tossed under the bus by the settling parties. Def. Statement in Support of Final Approval at 9.

This is of special concern because the parties have taken the unusual step of hiding these hundreds of objections from the court. In the related pending *Laserjet* settlement, the hidden objections include an objection from one of the lead plaintiffs. Frank Decl. ¶ 2 and Ex. 1. If the same thing is true in this case, there would be obvious Rule 23(a)(4) problems. The Court should insist that the settling parties disclose the objections filed with the settlement administrator.

Other objectors have complained that the settlement notice was ambiguous. Docket No. 277. The settlement notice was sufficiently confusing that experienced attorneys filed their objections with the settlement administrator, not once thinking that their doing so waived valuable legal rights. *See, e.g.*, Frank Decl. Ex. 3. (It is not surprising that they did so; it is frequently the case that class action settlements ask objectors to file their objections with the settlement administrator. Frank Decl. ¶ 5.)  As such, the settlement notice failed to comply with constitutional and Ninth Circuit requirements of due process. Before the court can approve any settlement, the parties must cure the defective notice

either by issuing new notice, or by treating the over 450 objections filed with the settlement administrator as appropriately filed with this Court.

The Schratwieser objectors cited numerous cases demonstrating that the silence of class members cannot be interpreted as support for the settlement. The settling parties ignore that argument entirely, and simply assert, contrary to evidence and case law, that the silence of class members is support for the settlement. The fact that the parties feel they need to try to hide hundreds of objections from this court by creating a confusing technical bar to objecting demonstrates otherwise.

## IV.   The Fee Request Is Excessive Under 28 U.S.C. § 1712(a).

In their objection, the Schratwieser objectors argue that the fee request is excessive under 28 U.S.C. § 1712(a). Class counsel does not dispute this, but argues that 28 U.S.C. § 1712(b) applies. This is wrong. Section 1712(b) can only apply if there is meaningful injunctive relief that actually benefits the class for past injury. Otherwise, settling parties could completely evade § 1712(a) by agreeing to completely meaningless injunctive relief such as "The defendant will write 'I will not defraud the class' one hundred times on a chalkboard."  As demonstrated above, the injunctive relief does not compensate the class for past injury, and cannot be considered in the § 1712 inquiry; any other holding would result in a nonsensical reading of the statute that defeats the stated congressional intent of deterring abusive coupon settlements such as this one. 28 U.S.C. § 1711 note § 2(a)(3)(A).

## V.   Defendants Still Have Not Addressed The Issue Of Pending Parallel Actions.

The Schratwieser objectors made a contingent objection based upon the failure of the parties to disclose whether there were pending parallel actions in the class notice. Class counsel belatedly represents that they are unaware of any such pending actions, but the defendants are suspiciously silent on the question, simply defending the scope of the release without any discussion of whether there are parallel class actions that would be

1    wiped out by the settlement. It is hard not to draw an adverse inference from the silence,

2    as HP has unique knowledge what other class actions are pending.

3

4    **VI.    The *Ad Hominem* Attacks On Frank And The Center For Class Action**

5    **Fairness Are Legally Irrelevant; Many Are Also False.**

6        Class counsel engages in an extraordinary series of personal attacks on the

7    Schratwieser objectors. Class counsel insinuates that Frank has done something improper

8    because Frank "fail[ed] to disclose" certain aspects of his law-review articles or

9    organization's Form 990. Pl. Mot. for Final Approval at 23-24. Frank's objection also

10   "failed to disclose" that he stands 5-foot-10 in stocking feet, went to high school in New

11   Orleans, and that he owns a Toyota Prius; he "failed to disclose" these facts because, like

12   the claims class counsel make about him, they are utterly irrelevant to this litigation. It is

13   ironic that class counsel quotes the language "long on ideology and short on law," because

14   not once does their multiple-page-long attack on the Schratwieser objectors cite a single

15   case explaining why any of the allegations they make have any relevance in determining

16   the fairness, adequacy, or reasonableness of a coupon settlement where the benefits to the

17   attorneys and the defendant exceeds the benefits to the class.[5]  Nor can they: "Plaintiffs

18   attack many of the Objectors' counsel because they have represented objectors in other

19   actions in the past. This has no greater bearing on the merits of the objections raised than

20   a plaintiff's counsel's experience in filing class action suits speaks to the merits of claims

21   he brings." *True*, 2010 WL 207338 at *22. A canned attack on objectors for filing

22

---

23   [5] The "long on ideology and short on law" quote comes from a discussion of a single

24   public-policy argument the Center for Class Action Fairness made in *Lonardo v.*

     *Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010), a case where the court

25   found that the Center's objection contributed to an additional $2 million in recovery for

     the class and awarded attorneys' fees to the Center. Given that the Center did not make

26   that particular public-policy argument in this case, and the parties admit that the Center

     has cited law in its objections in this case, the relevance of this *ad hominem* attack is far

27   from clear.  The $2 million in cash CCAF won for the class in *Lonardo* is $2 million more

28   than the cash won by class counsel in this settlement.

"obviously 'canned' objections" (Pl. Mot. for Final Approval at 22) is irrelevant when the Schratwieser/Frank objection is plainly tailored to the facts and law of this settlement. Worse, many of the allegations class counsel make are false. The court should consider sanctions under Fed. R. Civ. Proc. 11 and N.D. Cal. Local Rule 11-6.

### A.    Schratwieser Is Not A Professional Objector.

This is Kimberly Schratwieser's first objection to a class action settlement. Under Fed. R. Civ. Proc. 23(e)(5), "**any** class member" may object to a settlement (emphasis added). There is not an exception for class members who retain attorneys whose opinions class counsel wish to veto. Ms. Schratwieser chose to retain an attorney who had experience with class action objections. Was she supposed to retain a divorce attorney instead?

### B.    The Attacks On Frank Are Legally Irrelevant And Often False.

Class counsel complains that Frank has engaged in other class action objections, and lists eleven cases where he has made objections. McCarthy Decl. Ex. 3. (One of those cases lists a docket number where not only was there no objection by Frank, but there was no class action settlement in that court.) But in the ten cases listed in Exhibit 3 where Frank or the Center for Class Action Fairness made an objection, Frank/CCAF won six (with either the court rejecting settlement approval or the parties agreeing to modify the settlement to add at least $2 million in pecuniary benefits to the class or both), with one loss and three currently pending on appeal or at the district court. Frank Decl. ¶ 9.[6] And

---

[6] Plaintiffs' claim that Frank is "admittedly unconcerned with the benefits of class action settlements to consumers" (Mot. for Final Approval at 22) is entirely fictional, and sanctionable under Fed. R. Civ. Proc. 11 and N.D. Cal. Loc. R. 11-6. As this court is well aware from the *Apple Inc. Securities Litigation* case currently pending, CCAF's objections have been entirely targeted to maximizing the benefits of class action settlements to consumers and shareholders. And plaintiffs provide no evidence to support the "admittedly" adverb in their baseless attack. The opposite is true: as the Form 990 attached to the McCarthy Declaration expressly states, CCAF's purpose is to provide "*pro bono* representation of consumers" to "increase net awards to members of class action settlements through objections to settlements producing excessive attorney fees." McCarthy Decl. Ex. 4 at 34; Frank Decl. ¶ 16.

Exhibit 3 even omits another case where CCAF objected and the court rejected the proposed settlement. *Id.* ¶¶ 10, 12.[7] CCAF's track record of success in class action objections provides no reason to discount its objection in this case.

Class counsel asserts, without any evidence, that Frank's goal "is to do away with class actions altogether." Mot. for Final Approval at 22. This is false. Frank believes that properly administered class actions can, in the appropriate circumstances, be indispensable procedural mechanisms to permit aggrieved plaintiffs to vindicate legal rights through aggregation. This belief is strong enough that Frank's personalized license plate on his 2004 Toyota Prius reads "FRCP 23." Frank Decl. ¶ 14 and Ex. 4. But Frank also believes that "the structure of class actions under Rule 23 of the federal rules gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant reward to class members" and that there is "danger of collusion between class action lawyers and defendants' lawyers." *Thorogood v. Sears*, 627 F.3d 289, 293-94 (7th Cir. 2010) (citing long list of authority for both propositions); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Thus, Frank began a public-interest litigation organization to provide *pro bono* representation to consumers and shareholders aggrieved by class action attorneys that negotiate settlements that benefit themselves at the expense

---

[7] All of these cases are identified on CCAF's website, which also includes the vast majority of CCAF's filings. Frank Decl. ¶ 12. It is unclear why class counsel is insinuating that there is something revelatory about their inaccurate list.

of their putative clients.[8] Class counsel complains that this understanding, widely held by judges and academic authorities, combined with Frank's desire to fight this problem *pro bono* on behalf of class members who need legal representation, makes CCAF's objections "political," but they fail to explain why, even if that conclusion followed, it would have any legal relevance. It is a facially obvious violation of the First Amendment to disadvantage a litigant because of his political views.[9]

## CONCLUSION

Calling coupons "e-credits" does not protect a settlement from the scrutiny required of a coupon settlement. The four leading coupon case precedents—*Synfuel*, *General Motors*, *Figueroa*, and *True*—each require rejection of this settlement, but the parties

---

[8] CCAF was established in 2009 as one of several not-for-profit programs at Donors Trust, Inc. ("DT"), a charitable and educational foundation exempt from taxation under 26 U.S.C. §501(c)(3). The CCAF program at DT is a comparatively small program for DT, each of which is separately funded and administered. The CCAF program has no access to any DT funds other than those amounts specifically designated for CCAF; likewise, other programs have no access to funds contributed for CCAF. All DT funds are specifically designated for one or more DT programs and grantees. Only amounts raised specifically for the CCAF program are available to support CCAF. The fact DT provided a grant to Georgetown University (McCarthy Decl. Ex. 4 at 42) or any other DT grantee or program is completely irrelevant to CCAF or this litigation. DT makes substantial grants to many organizations and programs, all of which are publicly disclosed on DT's annual tax return. DT retained Frank as an independent contractor to manage the program, litigate in the public interest, and represent class members *pro bono*. Frank's objection did not "disclose" this relationship because the fully tax-compliant organizational structure of CCAF is of no more relevance to the fairness of the pending settlement than class counsel's partnership structure. Nothing in the objection filed on December 30 was false or misleading, materially or otherwise. Frank Decl. ¶¶ 15-18.

[9] Plaintiffs complain that Donors Trust has affiliations with conservative organizations. The Court should rest assured that CCAF has no qualms about taking money from donors affiliated with liberal organizations, and would be thrilled if the Tides Center or Open Society Institute made a charitable donation to CCAF to promote the cause of helping consumers achieve fair, adequate, and reasonable class action settlements.

1    have made no attempt to distinguish this case from those precedents, instead choosing to

2    make baseless and irrelevant *ad hominem* attacks on the objectors.

3        The prospective injunctive relief cannot compensate for the lack of meaningful

4    class benefit for alleged harms in the past. The sandbagged expert report bases its

5    conclusions on faulty legal premises and unsupported speculation; it cannot be used as an

6    evidentiary basis to bootstrap a finding that there is valuable injunctive relief. The

7    settlement is a fee-driven settlement for the benefit of class counsel, and must be rejected

8    under Rules 23(a)(4) and 23(e).

9        Class notice was actually confusing, and constitutionally deficient unless the parties

10   correct the problem by filing with the court the hundreds of objections from class

11   members actually confused by the notice's ambiguities.

12       If the settlement is nevertheless approved, any fee award must comply with 28

13   U.S.C. § 1712(a), and be based on the actual redemption rate of coupons; as such, the

14   $2.9 million fee request is exorbitantly excessive.

15       The Court should consider the possibility of sanctions on class counsel for their

16   abusive and false personal attacks on the Schratwieser objectors and their counsel.

17   Dated: January 21, 2010

18

19                                              Respectfully submitted,

20                                              /s/ Theodore H. Frank

21                                              Theodore H. Frank
                                                **CENTER FOR CLASS ACTION**
22                                              **FAIRNESS**
                                                1718 M Street NW
23                                              No. 236
                                                Washington, DC 20036
24                                              (703) 203-3848
25                                              Attorney for Objectors Theodore H.
26                                              Frank and Kimberly Schratwieser

27

28