John W. Davis, CA Bar # 200113
john@johnwdavis.com
LAW OFFICE OF JOHN W. DAVIS
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.4870
Facsimile: 619.342.7170

Steven F. Helfand, CA Bar # 206667
steven@stevenhelfand.com
HELFAND LAW OFFICES
582 Market Street, Suite 1400
San Francisco, CA 94104
Telephone: 415.397.0007
Facsimile: 415.397.0009

Attorneys for Objectors
Lisa Kahle and Sarah McDonald

**Filed**

FEB 0 4 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: HP INKJET PRINTER LITIGATION | Master File No. C05-3580 JF |
| | **OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR** |
| This Document Relates To:<br><br>All Actions | Date: January 28, 2011<br>Time: 9:00 a.m.<br>Judge: Hon. Jeremy Fogel<br>Courtroom: 3 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 28, 2011, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 3 of the above-entitled court located at 280 S. First Street, San Jose, CA 95113, class members Lisa Kahle and Sarah McDonald ("Objectors"), by and through their undersigned counsel, intend to appear and be heard to discuss the following objections. Lisa Kahle has submitted a declaration evidencing her membership in the designated class. Due to the 2010 year-end holidays, Sarah McDonald was unable to complete her declaration but will submit one shortly. Ms. McDonald purchased an HP Office Jet 6500 E709A on May 15, 2009. The serial number for the printer is MY91U2110P056S.

The proposed settlement is woefully inadequate in that *inter alia* it forces class members who were defrauded by Defendant Hewlett-Packard Company ("HP") to continue to do business with HP.

## I. THE PROPOSED "RELIEF" IS A COUPON SETTLEMENT OF THE TYPE MUCH DERIDED BY THE JUDICIARY, ACADEMIC SCHOLARS, AND THE CLASS MEMBERS THESE SETTLEMENTS PURPORT TO SERVE.

The benefit offered by the proposed settlement is illusory in that it is provided solely in the form of a credit for the purchase of goods or services from HP. Given the abuse class members have already suffered at the hands of HP, they are certainly reluctant to engage in further dealings with HP.

In light of the dubious value of the "benefit" offered to class members and the restrictions placed on transferability and redemption (further discussed below), the redemption rate in this case is virtually guaranteed to be miniscule. The low redemption rates which typically accompany these "in-kind" settlements make a mockery of the concept that class members should receive value for settling their claims. This abuse is particularly troubling when, as in the instant case, class attorneys are paid in cash while class members receive "e-credits" of dubious value.

Settlements offering defendants' products in lieu of cash restitution have been criticized both in the courts, *Bloyed v. General Motors Corp*, 881 S.W.2d 422, 435 (Tex. App. 1994), aff'd 916 S.W.2d 949 (Tex. 1996), and in the press. *See* "Class Actions' Big Winners: The Lawyers,"

The Washington Post, May 25, 1997; "Going to the Head of the Class Action Settlement," The Washington Post, April 9, 1996; and "The Latest Class Action Scam," The Wall Street Journal, December 27, 1995, at 11. Accordingly, "in-kind compensation" is subject to higher scrutiny by the trial court. *See, e.g., Synfuel Techs., Inc. v. DHL Express*, 463 F. 3d 646, 648 (7th Cir. 2006).

Indeed, Congress specifically addressed the issue of coupon settlements with the Class Action Fairess Act ("CAFA"), 28 U.S.C. Sections 1332(d), 1453, and 1711-1715. Prior to the enactment of CAFA, attorneys' fees could be based on the value "of the entire common fund created for the class, even if some [class] members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants." *Williams v. MGM-Pathe Commc'n Co.*, 129 F. 3d 1026, 1027 (9th Cir. 1997). However, in the post-CAFA world, this analysis no longer applies to coupon settlements. CAFA requires that where the benefit is a coupon, any portion of fees attributable to the award of the coupons "shall be based on the value to class members of the coupons that are redeemed" rather than the theoretical value of the coupons available for redemption. 28 U.S.C. §1712(a).

This Court should determine the actual value of the settlement prior to granting or denying final approval. The settling parties have failed to produce sufficient evidence in this regard. Not only is the final claims rate unavailable, the Court has not even been presented a reasonable approximation of the claims rate. Accordingly, the Court does not have the information it needs to evaluate the settlement's reasonableness.

Notwithstanding the absence of evidence concerning the "actual value," here even the stated value of $5,000,000.00 is suspect. First, the $5,000,000.00 cap is arbitrary and no evidence has been presented that the benefit offered will be commensurate with released claims. If there is no reasonable approximation of the number of claims to be filed, there is absolutely no way to know whether individual class members will receive an amount that is adequate to compensate them for claims they are releasing. Second, the benefit offered is per printer, not per ink cartridge. As such, a class member who purchased one ink cartridge for his or her printer is eligible for the same benefit as some who has purchased a thousand ink cartridges for a single printer. Under the terms of the proposed settlement, heavy volume users are subsidizing, to their detriment, class

members who went through a smaller number of ink cartridges. This disparate treatment of class members is unfair and results in the smallest benefit going to the class members with the greatest damages.

Finally, as referenced above, regardless of whether the Court is inclined to approve the settlement's substance in the absence of claims data, it must, according to CAFA, wait to see how many "e-credits" are actually used by class members before awarding attorneys' fees. Additionally, the Court should require publication of the final claims rate in the interest of tracking the efficacy of this type of settlement.

## II. THE DUBIOUS VALUE OF THE PROPOSED SETTLEMENT IS UNDERSCORED BY NON-TRANSFERABILITY AND OTHER RESTRICTIONS PLACED ON THE "BENEFIT"

The distribution of coupons often requires the purchase of specific goods or services which the class members may not want. Such is the case here. Where settling parties insist on in-kind compensation, class members are far better served if the in-kind benefit is transferable to persons or entities, e.g., coupon brokers, willing to pay cash for them.[1]

Under the terms of the proposed settlement, "e-credits" are only transferrable to a class member's immediate family.[2] This non-transferability eliminates the opportunity for the creation of a secondary market, which would give an incentive for class members who are unlikely to use the benefit to submit claims and then sell that benefit for cash at whatever price the market allows. The parties' refusal to make the credits transferable will dramatically reduce the claims submission rate. *See, e g.*, James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445 (2005) (providing evidence showing that in the absence of a secondary market, redemption rates typically are 1-3%).

Indeed, transferability generally is regarded as a critical component of any non-cash settlement, and several courts have rejected non-cash settlements that did not allow for the growth

---

[1] Dickerson, T.A. and Mechmann, B.V. (Fall/Winter 2000). Consumer Class Actions and Coupon Settlements: Are Consumers Being Shortchanged? *Advancing The Consumer Interest*, Vol. 12, No. 2.

[2] Stipulation of Settlement, p. 18, ¶ 42

of a secondary market. *See, e.g., In re Gen'l Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ["*In re GM Trucks*"], 55 F.3d 768, 809-10 (3d Cir. 1995) (rejecting settlement vouchers as worthless where there was little chance of a secondary market developing); *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 27 (D. Conn. 1997) (rejecting settlement in part because "the coupons in this case are not transferable to third parties and thus have no cash value"); *see also Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 298 (M.D. Pa. 1995) (rejecting settlement that created obstacles to the growth of a secondary market).[3]

The proposed settlement provides a benefit that few class members desire – particularly in light of consumers' past difficulties with HP. Cash convertibility, even at a discount, would be preferable to non-cash redeemable credits. For example, in *Langford v. Bombay Palace Restaurants*, 1991 US Dist LEXIS 4730 (S.D.N.Y. 1991), settlement coupons could be redeemed for cash at 30% of their face value. Similarly, in *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1300 (1995), the certificates for the purchase of a new Mercedes were redeemable at one half face value after three years.

The proposed settlement offers a benefit that class members may not want but fails to provide a mechanism for cash redemption or transferability. Accordingly, it is inadequate to compensate class members who shall be required to release valuable claims.

In addition to the non-transferability of the proposed "e-credits," the settling parties have imposed a multitude of other restrictions on the redemption of "e-credits" which are designed to act as barriers to redemption and which further erode any value attributable to the credits. For example, "e-credits" are only valid for six months from the date of issuance.[4] As such, anyone

---

[3] Consumer groups and others have described transferability as an essential characteristic of any non-cash settlement. *See, e.g.*, Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 LAW & CONTEMP. PROBS. 97, 126 (1997) ("Severe restrictions on transferability usually counsel against approval except in unusual circumstances, because such restrictions reduce coupon utilization and discriminate, within the class, between members who have a use for the product and ones who do not."); National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, p.21 (2006) (stating that non-cash relief "should have some form of guaranteed cash value" or in the alternative, should be saleable on a secondary market).

[4] Stipulation of Settlement, p. 18, ¶ 42(f)

who does not require a new HP product within six months is unable to obtain a benefit. Moreover, "e-credits" from different printers cannot be combined.[5] Taken together with the six month limitation, it is virtually assured that most home users will only be able to obtain a benefit for one of their printers (i.e. they are not likely to buy multiple HP products during the six month period following issuance of the credits). Additionally, "e-credits" may not be used in combination with other rebates or coupons for HP products, and only one credit may be used per purchase order.[6] The settling parties have placed so many restrictions on redemption that the "actual value" of the settlement is certain to be miniscule.

To make matters even more confusing for class members, the settling parties do not disclose to class members what specific products are eligible for purchase using "e-credits."[7] Accordingly, class members have no way of knowing if the proposed "e-credits" have value because class members do not know if they will be able to apply "e-credits" to a product they actually need or want. As such, class members do not possess sufficient information to decide whether to participate in the settlement or opt-out. The notice to class members is deficient in this regard.

Finally, further restricting class members' ability to redeem "e-credits" is the requirement that any product to which a class member wishes to apply a credit must be purchased only through www.shopping.hp.com.[8] This final restriction is an unreasonable restraint on class members' ability to seek out the best price available in the marketplace. Class members have no assurance that prices at www.shopping.hp.com will not be substantially higher than those of resellers such as Amazon.com, thereby further eviscerating any value the "e-credits" may have.

---

[5] Stipulation of Settlement, p. 18, ¶ 42(e)
[6] Notice of Settlement, p. 5, ¶ 9
[7] Notice of Settlement, p. 5, ¶ 9 ("The specific products eligible for purchase will be determined at a later date.")
[8] Stipulation of Settlement, p. 18, ¶ 42(g)

## III. THE RELEASE IS OVERLY BROAD

The Ninth Circuit has cautioned that the relief offered to class members must be commensurate with released claims, particularly in light of broad release provisions. *Molski v. Gleich*, 318 F.3d 937, 942 (9th Cir. 2003). Accordingly, given the broad release provided by the proposed settlement agreement, this Court should, prior to approving this settlement, carefully scrutinize released claims and the compensation (or lack thereof) being offered to class members for releasing these claims.

## IV. ATTORNEYS' FEES ARE EXCESSIVE

The class relief is inadequate in light of class counsel's requested $2.9 million fee. That the parties agreed to pay class counsel $2,900,000.00 in attorneys' fees when the class will receive no monetary compensation further cements the inadequacy of the class relief. The amount of requested attorneys' fees is an important factor in assessing the reasonableness of the class relief, since every dollar that goes to class counsel is a dollar less that is available to compensate class members:

> Although under the terms of [a] settlement agreement, attorneys' fees technically derive from the defendant rather than out of the class recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class recovery.

*Apple Computer v. Superior Court*, 126 Cal. App. 4th 1253, 1269 (2005) (quoting *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 33-37 (2000)); *see also Lealao*, 82 Cal. App. 4th at 37 ("The value of the benefit a settling defendant is willing to confer on the class . . . will . . . invariably be influenced by the amount of fees it would be obliged, or estimates it would be obliged to pay class counsel . . . .").

The parties' agreed-upon $2.9 million attorneys' fee raises even greater suspicions about the adequacy of the class relief than in a typical settlement. First, the parties' negotiation of a "clear sailing provision," whereby HP agrees not to challenge class counsel's request for $2.9

million in attorneys' fees[9] triggers heightened scrutiny of the settlement's fairness because of the risk that class counsel may have bargained away valuable relief for the class "in exchange for red carpet treatment on fees." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524-25 (1st Cir. 1991).

Second, the proposed attorneys' fee is distinct from the class relief, which decouples class counsel's interest from that of the class. Because class counsel will get paid regardless of whether class members actually submit claims, class counsel only has an incentive to create an appearance of valuable relief, so as to justify their attorney fee, but no incentive to ensure that the class actually obtains any relief. *See Polar Int'l Brokerage Group v. Reeve*, 187 F.R.D. 108, 119-20 (S.D.N.Y. 1999); *see also* Judge Thomas A. Dickerson, *Consumer Class Actions and Coupon Settlements: Are Consumers Being Shortchanged?*, ADVANCING THE CONSUMER INTEREST at 6 (Sept. 2000) ("Considering the low redemption rate of coupon settlements, defendants may be willing to pay inordinately high cash fees to class counsel in return for support in promoting a non-cash settlement in which the class receives near worthless coupons.").

## V. ADDITIONAL OBJECTIONS

Objectors adopt all *bona fide* objections filed by other objectors in this case not adverse to the positions expressed herein.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

---

[9] Stipulation of Settlement, p. 19, ¶ 45

## VI. CONCLUSION

For the foregoing reasons, Objectors respectfully request that the court withdraw its conditional approval of the Proposed Settlement and enter orders requiring further proceedings so as to effect substantial justice in this cause between the parties and the absent class members. Objectors hereby reserve the right to amend and refine their objections as more information is made available.

Respectfully submitted this 3rd day of January, 2011.

**LAW OFFICE OF JOHN W. DAVIS**

by: /s/ John W. Davis

| | |
|---|---|
| 1 | John W. Davis, CA Bar # 200113 |
| 2 | john@johnwdavis.com |
| | LAW OFFICE OF JOHN W. DAVIS |
| 3 | 501 W. Broadway, Suite 800 |
| | San Diego, CA 92101 |
| 4 | Telephone: 619.400.4870 |
| 5 | Facsimile: 619.342.7170 |
| 6 | Steven F. Helfand, CA Bar # 206667 |
| 7 | steven@stevenhelfand.com |
| | HELFAND LAW OFFICES |
| 8 | 582 Market Street, Suite 1400 |
| | San Francisco, CA 94104 |
| 9 | Telephone: 415.397.0007 |
| 10 | Facsimile: 415.397.0009 |
| 11 | Attorneys for Objector |
| 12 | Lisa Kahle |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re: HP INKJET PRINTER LITIGATION | Master File No. C05-3580 JF |
|---|---|
| | **DECLARATION OF LISA KAHLE RE CLASS MEMBERSHIP** |
| This Document Relates To:<br><br>All Actions | Date: January 28, 2011<br>Time: 9:00 a.m.<br>Judge: Hon. Jeremy Fogel<br>Courtroom: 3 |

Declaration of Lisa Kahle              Master File No. C05-3580 JF

I, Lisa Kahle, affirm the following:

1. I have personal knowledge of all facts set forth herein. If called to testify, I could and would competently testify thereto.

2. This declaration confirms and verifies that I am a class member in the above-captioned case.

3. I purchased an OfficeJet 6500 E709n, serial number TH02Q440PQ ("Printer") on or about August 7, 2010.

4. I purchased the Printer in the United States of America for my own use.

5. I am not an employee, director, officer, or agent of Hewlett-Packard Company or its subsidiaries and affiliated companies.

6. I am not a judge of the United States District Court for the Northern District of California ("Court"), nor a member of the immediate family or staff of any judge of the Court.

7. Any additional information required to verify my membership in the Class may be obtained from my counsel: John William Davis, 501 W. Broadway, Suite 800, San Diego, California 92101.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 30th day of December, 2010 in San Diego, California

_____
Lisa Kahle

Declaration of Lisa Kahle          Page 2          Master File No. C05-3580 JF

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Helfand Law Offices, 582 Market Street, Suite 1400, San Francisco, CA 94104. On January 3, 2011, I served the attached documents: via email.

**PARTIES/PERSONS SERVED:**

| | |
|---|---|
| HP Inkjet Setttlement Administrator<br>P.O. Box 5270<br>Portland, OR 97208-5270<br>Facsimile: 877.341.4607<br>Email:<br>Info@HPInkjetPrinterSettlement.com | Niall P. McCarthy<br>Justin T. Berger<br>COTCHETT, PITRE & McCARTHY<br>San Francisco Airport Office Center<br>840 Malcolm Rd., Suite 200<br>Burlingame, CA 94010<br>Email: jberger@cpmlegal.com |
| Brian S. Kabateck<br>Richard L. Kellner<br>Alfredo Torrijos<br>KABATECK BROWN KELLNER LLP<br>644 South Figueroa Street<br>Los Angeles, CA 90017<br>Email: at@kbklawyers.com | Samuel S. Liversidge<br>Christopher Chorba<br>Dhananjay S. Manthripragada<br>GIBSON, DUNN & CRUTHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>DManthripragada@gibsondunn.com |

I certify under penalty of perjury under the law of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 3, 2011, at San Francisco, California.

\\\

_Steven Franklyn Helfand_