1

2                 IN THE UNITED STATES DISTRICT COURT

3            FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                         SAN JOSE DIVISION

5

   IN RE HP INKJET PRINTER       )  CV-05-3580-JF
6  LITIGATION                    )
                                 )  SAN JOSE, CALIFORNIA
7                                )
                                 )
8                                )  JANUARY 28, 2011
                                 )
9                                )
                                 )  PAGES 1-31
10                               )
   _____ )
11

12                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JEREMY FOGEL
13               UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16

17  FOR THE PLAINTIFF:  BERK LAW, LCC
                        BY:  STEVEN BERK
18                      1225 FIFTEENTH STREET, NW
                        WASHINGTON, DC 20005
19

20  FOR THE DEFENDANT:  GIBSON DUNN & CRUTCHER, LLP
                        BY: SAMUEL LIVERSIDGE
21                      333 SOUTH GRAND AVENUE
                        LOS ANGELES, CA 90071
22

23          (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25  OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                             CERTIFICATE NUMBER 13185

```
1    FOR THE PLAINTIFF:  COTCHETT, PITRE & MCCARTHY
                             BY:  NIALL MCCARTHY
2                                 JUSTIN BERGER
                             840 MALCOLM ROAD
3                            SUITE 200
                             BURLINGAME, CA 94010
4

5    OBJECTOR:        CENTER FOR CLASS ACTION FAIRNESS
     SCHRATWIESER   BY:  THEODORE FRANK
6                     1718 M. STREET NW
                      NO. 236
7                     WASHINGTON, DC 20036

8

9    OBJECTOR:        HELFAND LAW OFFICES
     KAHLE            BY:  STEVEN HELFAND
10   MCDONALD         582 MARKET STREET
                      SUITE 1400
11                    SAN FRANCISCO, CA 94104

12

13   OBJECTOR:        ATTORNEY AT LAW
     COLBURN          BY:  STEVE MILLER
14                    1625 LARIMER STREET
                      DENVER, CO 80202
15

16

17

18

19

20

21

22

23

24

25
```

2

1    SAN JOSE, CALIFORNIA          JANUARY 28, 2011

2                    P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE COURT:  THEN THE LAST MATTER, AND I

6    KNOW WE HAVE A NUMBER OF PEOPLE HERE ON IT, THE HP

7    INKJET PRINTER LITIGATION.

8              MR. BERK:  GOOD MORNING, YOUR HONOR.

9              THE COURT:  GO AHEAD.  I NEED EVERYONE'S

10   APPEARANCES.

11             MR. BERK:  STEVEN BERK ON BEHALF OF THE

12   PLAINTIFF.

13             MR. MCCARTHY:  NIALL MCCARTHY ON BEHALF

14   OF PLAINTIFFS.

15             MR. BERGER:  JUSTIN BERGER ON BEHALF OF

16   PLAINTIFFS.

17             MR. LIVERSIDGE:  GOOD MORNING,

18   YOUR HONOR.  SAM LIVERSIDGE ON BEHALF OF

19   HEWLETT-PACKARD COMPANY.

20             MR. CORBEL:  CHRIS CORBEL ALSO ON BEHALF

21   OF HEWLETT-PACKARD COMPANY.

22             MR. FRANK:  THEODORE FRANK ON BEHALF OF

23   THE SCHRATWIESER OBJECTORS.

24             MR. HELFAND:  GOOD MORNING, YOUR HONOR.

25   STEVEN HELFAND ON BEHALF OF OBJECTOR LISA KAHLE AND

1    SARAH MCDONALD.

2              MR. MILLER:  AND ONE MORE, YOUR HONOR.

3              THE COURT:  OH, I'M SORRY, SIR.

4              MR. MILLER:  STEVE MILLER ON BEHALF OF

5    ACTOR DEBORAH COLBURN.

6              THE COURT:  THANK YOU.

7              THERE WAS ANOTHER OBJECTION BY

8    LORI SINGER MEYER WHO INDICATED SHE COULD NOT BE

9    PRESENT BUT WHOSE OBJECTION IS BEFORE THE COURT.

10             SO LET ME ADDRESS A COUPLE OF THINGS.

11   FIRST OF ALL, WITH REGARD TO THE ABILITY OF PEOPLE

12   TO OPT OUT, IF SOMEONE COULD JUST WALK ME THROUGH

13   EXACTLY WHERE WE ARE WITH THAT.

14             IS THAT OVER AND DONE WITH OR IS THAT

15   SOMETHING THAT COULD STILL HAPPEN IF THE COURT

16   APPROVES THE MATTER?  AND HOW MANY OPT OUTS HAVE

17   THERE BEEN?

18             WHAT CAN YOU TELL ME ABOUT THAT.

19             MR. LIVERSIDGE:  YOUR HONOR, THE OPT OUT

20   DEADLINE HAS PASSED AND THERE WERE 810 OPT OUTS.

21             THE COURT:  OUT OF HOW MANY NOTICES?

22             MR. LIVERSIDGE:  E-MAIL NOTICES WERE SENT

23   OUT TO 13,387,000.  WE ALSO DID PUBLICATION NOTICE.

24             WE ARE IN A BIT OF A WORLD WHERE WE DON'T

25   KNOW EXACTLY HOW MANY PEOPLE ARE IN THE CLASS

                                                        4

1   BECAUSE PEOPLE COULD BUY MULTIPLE PRINTERS.  WE

2   KNOW IN TERMS OF UNITS WHAT WE ARE LOOKING AT.

3            THE COURT:  SO THE OPT OUT RATE WAS VERY

4   SMALL.

5            MR. LIVERSIDGE:  VERY SMALL, YOUR HONOR.

6            THE COURT:  ALL RIGHT.

7            I GUESS ANOTHER QUESTION, THIS IS SORT OF

8   BROUGHT TO MIND BY THE OBJECTION THAT MS. MEYER

9   FILED.  SHE INDICATED THAT THE ISSUE WHETHER THERE

10  SHOULD BE A NATIONWIDE CLASS IS A MATTER THE COURT

11  TOOK UP AND IT WAS LITIGATED AND THE COURT

12  DETERMINED THERE SHOULDN'T BE A NATIONWIDE CLASS.

13           NONETHELESS, SETTLEMENT IS A NATIONWIDE

14  SETTLEMENT.  AND HER OBJECTION WAS THAT THERE'S AN

15  INHERENT UNFAIRNESS IN THAT.

16           I GUESS I WOULD LIKE A LITTLE BIT OF

17  THOUGHT FROM ALL OF THE SETTLING PARTIES ON THAT

18  BECAUSE IT CONCERNS ME.

19           ONE OF THE CONCERNS I HAD WAS BECAUSE OF

20  DIFFERENT CONSUMER PROTECTION LAWS IN DIFFERENT

21  STATES THAT A NATIONWIDE SETTLEMENT MIGHT BE

22  PROBLEMATIC, AND YET THAT'S WHAT I'M BEING ASKED TO

23  APPROVE.

24           SO WHAT ABOUT THE RIGHTS OF FOLKS IN

25  OTHER STATES WHO HAVE BEEN BROUGHT INTO THIS

5

1    SETTLEMENT?

2              MR. LIVERSIDGE:  YOUR HONOR, I WILL JUST

3    MAKE A COUPLE OF COMMENTS ON THAT.

4              I THINK THE COURT'S DECISION DENYING THE

5    NATIONWIDE CLASS WAS ON MANAGEABILITY GROUNDS.  I

6    THINK THE NINTH CIRCUIT HAS MADE PRETTY CLEAR THAT

7    THAT IS NOT AN ISSUE THAT'S PHASED WHEN YOU'RE

8    DOING A SETTLED CLASS.

9              SO I DON'T THINK ANYTHING THAT THE COURT

10   RULED WOULD PRECLUDE THIS NATIONWIDE CERTIFICATION.

11             I THINK I WOULD ALSO POINT OUT THAT, YOU

12   KNOW, ONE OF THE THINGS THAT WE THINK HAS BEEN

13   ACHIEVED HERE IS A RESULT FOR CONSUMERS OUTSIDE OF

14   CALIFORNIA WHERE WE WERE GOING FORWARD WITH A

15   LITIGATED CASE HERE, THEY WOULD BE OUT OF LUCK

16   UNLESS, YOU KNOW, PLAINTIFFS WERE TO GO

17   STATE-BY-STATE.

18             SO WE THINK THAT'S SOMETHING THAT'S

19   BROUGHT THROUGH THE SETTLEMENT HERE, BUT I DON'T

20   THINK THERE'S ANYTHING IN THE LAW THAT PREVENTS US

21   FROM NOW MOVING FORWARD WITH THIS NATIONWIDE

22   SETTLEMENT CLASS.

23             THE COURT:  OKAY.  ANYONE ELSE?

24             MR. MCCARTHY:  ONE OTHER OBSERVATION,

25   YOUR HONOR.

1          AS OF THIS MORNING, WE HAVE ABOUT A

2     150,000 SEPARATE COMPUTERS WITH CLAIMS REPRESENTING

3     ABOUT A 110,000 DIFFERENT CLAIMANTS, AND A GREAT

4     NUMBER OF THOSE ARE FROM OUTSIDE OF STATE.

5          SO WE HAVE A VERY HIGH PARTICIPATION RATE

6     FROM OUTSIDE OF CALIFORNIA ON THE CLAIMS.  I DON'T

7     HAVE THE EXACT BREAKDOWN OF NON-CALIFORNIA, BUT WE

8     CAN CERTAINLY SUBMIT IT TO THE COURT.

9          THE COURT:  OKAY.

10          THEN LET ME ADDRESS TO THE OBJECTORS

11     THIS:  I THINK ON THEIR FACE THE OBJECTIONS ARE

12     WORTH THINKING ABOUT BECAUSE COUPON SETTLEMENTS

13     HAVE BEEN INCREASINGLY DISCOURAGED, AND I REALIZE

14     WE ARE TALKING ABOUT E-CREDITS HERE AND NOT

15     COUPONS, BUT I THINK THERE'S SOMETHING TO BE SAID

16     FOR THE ARGUMENT THAT E-CREDITS ARE TODAY'S

17     COUPONS, AT LEAST FOR THE COMPUTER BUSINESS.

18          AND THE INDIVIDUAL CLASS MEMBER'S

19     RECOVERY IS PRETTY SMALL.  I THINK THAT'S ALL TRUE.

20     BUT THE -- IF THE RECOVERY THAT THEY WOULD HAVE HAD

21     IF THE CASE HAD GONE TO TRIAL OR SHOULD HAVE HAD IS

22     ALSO VERY SMALL BECAUSE IT'S NOT A VERY BIG CASE IN

23     THE FIRST PLACE.

24          THAT'S SOMETHING THE COURT HAS TO LOOK

25     AT.  AND NONE OF THE OBJECTIONS REALLY ADDRESS THE

7

1    MERITS OF THE CLAIMS.

2              AND THE COURT HAD I DON'T KNOW HOW MANY

3    MOTIONS ON THIS -- THESE VARIOUS CASES, BUT THERE

4    WERE A LOT.  I MEAN, IT WAS SOMEWHERE BETWEEN 5 AND

5    10 I THINK WHERE THE COURT -- THEY WEREN'T MERITS

6    MOTIONS, BUT THEY WERE PLACES WHERE THE COURT HAD

7    AN OPPORTUNITY TO EVALUATE THE STRENGTH OF THE

8    CLAIMS.

9              AND THE COURT'S VIEW CONSISTENTLY HAS

10   BEEN THAT WHILE CLAIMS WERE STATED, THE COURT WOULD

11   HAVE DISMISSED THE ACTION OTHERWISE.  THE CLAIMS

12   ARE NOT PARTICULARLY STRONG, AND IT'S SIMPLY

13   BECAUSE THE WHOLE IDEA THAT A CONSUMER WOULD BE

14   DAMAGED BY A FALSE LOW INK WARNING IS A PROBLEMATIC

15   CONCEPT.

16             I THINK TO BE VERY PERSONAL ABOUT IT,

17   WHAT I DO IS I KEEP A LOT OF EXTRA PRINT CARTRIDGES

18   IN MY HOUSE AND I USE THE CARTRIDGES UNTIL I RUN

19   OUT.  I DON'T PAY ATTENTION TO THE LOW INK WARNING

20   BECAUSE I THE KNOW IT'S NOT ACCURATE.

21             SO THE NOTION THERE WERE MILLIONS OR

22   BILLIONS OF DOLLARS OF DAMAGES FROM THESE THINGS OR

23   THERE WAS SOME KIND OF FRAUD IS CERTAINLY ONE THAT

24   REASONABLE MINDS WOULD CERTAINLY DIFFER ABOUT.

25             BUT IF YOU LOOK AT THE CASE THAT'S NOT

1    PARTICULARLY STRONG ON THE MERITS AND THE FACT THAT

2    YOU DON'T HAVE A PARTICULARLY RICH SETTLEMENT

3    DOESN'T MEAN AS MUCH.

4           SO I WOULD LIKE TO HEAR FROM THE

5    OBJECTORS ABOUT THAT.

6           MR. FRANK:  THANK YOU, YOUR HONOR.

7           TED FRANK.

8           I DON'T THINK OUR OBJECTION TURNS ON THE

9    QUESTION OF WHETHER THE CASE COULD BE STRONGER.  WE

10   ARE NOT HERE SAYING THE SETTLEMENT COULD BE BETTER

11   OR THIS CASE IS WORTH .07 CENTS A CLASS RATHER THAN

12   .05 CENTS A CLASS MEMBER, AND THAT'S NOT OUR CLAIM.

13          OUR CLAIM IS THE SETTLEMENT IS STRUCTURED

14   IN SUCH A WAY THAT IT BENEFITS THE ATTORNEYS AND

15   THE DEFENDANTS AND NOT THE CLASS.

16          AND THAT IN AND OF ITSELF CREATES A

17   PROBLEM UNDER RULE 23(E), AND THAT'S A VERY

18   STRAIGHTFORWARD QUESTION OF APPLYING PRECEDENT FROM

19   SYNFUEL, IN RE GENERAL MOTORS, TRUE V. HONDA WHICH

20   I THINK IS AN EVEN EQUALLY MERITLESS CASE WHERE THE

21   CLAIM WAS THE DISCLOSURES THAT THE GOVERNMENT

22   REQUIRED REGARDING FUEL ECONOMY WEREN'T ACCURATE.

23          AND THERE THE CLASS MEMBERS GOT A $500

24   COUPON RATHER THAN A $700 COUPON.

25          AND FINALLY FIGUEROA V. SHARPER IMAGE.

9

1          AND THESE ARE ALL CASES JUST LIKE THIS

2     ONE WHERE IT'S A CONSUMER FRAUD SETTLEMENT

3     STRUCTURED IN SUCH A WAY THAT THERE WERE THESE

4     COUPONS THAT ACT AS A MARKETING PROGRAM FOR THE

5     DEFENDANT THAT INCREASED THE DEFENDANT'S PROFITS

6     WITH DISPROPORTIONATE ATTORNEYS FEES.

7          AND EVEN THOUGH THERE'S AN INJUNCTIVE

8     RELIEF ON A PERSPECTIVE BASIS, THE COURT THROWS THE

9     SETTLEMENTS OUT.  AND IN FACT THE TWO APPELLATE

10    COURTS REVIEWING THIS AND BOTH OF THESE CASES IN

11    THE APPEAL'S COURT WERE BEFORE CAFA WAS PASSED

12    SAYING YOU HAVE TO GIVE ADDITIONAL SCRUTINY TO

13    COUPON SETTLEMENTS, SAID IT'S AN ABUSE OF

14    DISCRETION TO APPROVE THESE.  AND IN NONE OF THE

15    BRIEFINGS DID THE PARTIES ADDRESS THESE CASES.

16          SO I THINK THIS IS A STRAIGHTFORWARD

17    APPLICATION OF THE PRECEDENT IN THAT REGARD.

18          THE COURT:  WHAT DO YOU DO WITH A WEAK

19    CASE THEN?

20          MR. FRANK:  WELL, CERTAINLY YOU CAN

21    SETTLE IT, BUT YOU SETTLE IT IN A WAY THAT ONE, THE

22    CLASS BENEFITS; AND TWO, THE CLASS BENEFITS MORE

23    THAN THE ATTORNEYS BENEFIT.

24          THE COURT:  WELL, BUT LET'S SAY THE

25    BENEFIT TO THE CLASS -- I MEAN, THE IDEA THAT

1    PEOPLE WOULD GET A BREAK ON FUTURE PURCHASES OF INK

2    CARTRIDGES DOES NOT STRIKE ME AS UNREASONABLE GIVEN

3    WHAT I HAVE ALWAYS SEEN AS THE PROBLEM OF THE CASE

4    ON THE MERITS TO BEGIN WITH.

5             SO WHAT ELSE CAN YOU DO IF YOU ARE

6    HEWLETT-PACKARD AND YOU WANT TO AVOID SPENDING

7    HUNDREDS OF THOUSANDS OF DOLLARS IN LITIGATION, IS

8    IT KEY THAT YOU JUST DON'T GIVE AS MUCH TO THE

9    LAWYERS, OR WHAT ELSE COULD ONE DO IN A SITUATION?

10            MR. FRANK:  THERE ARE MULTIPLE THINGS YOU

11   COULD DO.

12            ONE, YOU COULD MAKE THE COUPONS THESE

13   COUPONS FUNGIBLE BECAUSE THERE'S A BENEFIT TO THE

14   CLASS, THEY GET THE $7 COUPONS AND THEY COULD TRADE

15   THEM FOR $6 IN A SECONDARY MARKET.

16            TWO, WE HAVE A COMPLETE DISCONNECT

17   BETWEEN THE ATTORNEYS FEES AND THE COUPONS.  WE

18   HEARD THERE WERE 150,000 CLAIMS.  WELL, LET'S DO

19   THE MATH ON THAT, $2 TO $7 A CLAIM, YOU ARE TALKING

20   LESS THAN A MILLION DOLLARS TO THE CLASS AND ALMOST

21   $3 MILLION TO THE ATTORNEYS.  AND NOT JUST A

22   MILLION DOLLARS TO THE CLASS, BUT AS ALL THE

23   PRECEDENT SAYS, YOU CAN'T VALUE THESE COUPONS AT

24   FACE VALUE.

25            AND YOU ESPECIALLY CAN'T DO IT HERE WHERE

11

1   IT'S -- THEY ARE ONLY GOOD FOR SIX MONTHS, THEY ARE

2   NOT STACKABLE, THEY'RE ONLY GOOD AT HP.COM WHICH AS

3   MY DECLARATION SHOWS CHARGES HIGHER PRICES THAN

4   COMPETING VENDORS.

5            SO THE CLASS MEMBERS AREN'T EVEN GETTING

6   THE FULL VALUE OF THE COUPON.  IF I GET MY $2

7   COUPON, I CAN'T USE IT, OR IF I USE IT I'M PAYING

8   MORE FOR MY INK CARTILAGE THAN WHEN I BUY IT AT

9   AMAZON, AND THAT'S BEFORE ALL THE REBATES I GET

10  FROM AMAZON.

11           SO WE HAVE THAT FUNDAMENTAL DISCONNECT,

12  THAT FUNDAMENTAL PROBLEM.

13           THE COURT:  ALL RIGHT.

14           SO YOU ARE SAYING THERE'S NOT, EVEN GIVEN

15  THE RELATIVE WEAKNESS OF THE MERITS, THERE ARE

16  OTHER WAYS THIS COULD HAVE BEEN STRUCTURED THAT

17  WOULD HAVE BENEFITED THE CLASS MORE, THE RATIO

18  BENEFIT TO THE CLASS VERSUS BENEFIT TO THE

19  ATTORNEYS AND THE DEFENDANT COULD BE MADE BETTER.

20           THERE'S WAYS YOU COULD --

21           MR. FRANK:  I DON'T WANT TO, YOU KNOW,

22  SAY MAKE BETTER BECAUSE, YOU KNOW, THAT IMPLIES

23  LET'S BLUE LINE THIS AND TWEAKING.

24           I'M SAYING YOU CAN'T STRUCTURE THE

25  SETTLEMENT PERIOD IN SUCH A WAY THAT THE ATTORNEYS

                                                    12

1    BENEFIT MORE THAN THE CLASS DOES.

2              THE COURT:  I GOT THAT.

3              THE END RESULT, I MEAN, I DON'T KNOW HOW

4    YOU GET FROM HERE TO THERE WITHOUT, IN A SENSE,

5    BLUE LINING THE SETTLEMENT.  MAYBE YOU JUST DO IT

6    USING YOUR BLUE PENCIL A LOT, BUT YOU CAN'T EXPECT

7    THE DEFENDANT IN A CASE LIKE THIS TO PAY MORE THAN

8    THE CASE IS WORTH.

9              MR. FRANK:  I THINK THAT'S CORRECT, BUT

10   THIS IS NOT A CASE WHERE THE DEFENDANTS ARE REALLY

11   PAYING ANYTHING.

12             THIS IS A CASE WHERE THE DEFENDANTS ARE

13   ACTUALLY PROFITING.  I THINK THEY ARE GOING TO END

14   UP --

15             THE COURT:  ALL RIGHT.

16             THANK YOU FOR YOUR INPUT ON THAT.

17             ANY OF THE OTHER OBJECTORS WANT TO BE

18   HEARD BEFORE I HEAR FROM PLAINTIFFS?

19             MR. MILLER:  GOOD MORNING, YOUR HONOR.

20   STEVE MILLER ON BEHALF OF DEBORAH COLBURN.

21             I'VE BEEN TRYING CASES FOR 30 YEARS AND

22   I'M PRIMARILY A PLAINTIFF'S CONTINGENT FEE LAWYER

23   AND EVERY NOW AND THEN I GET INVOLVED IN A CLASS

24   ACTION SITUATION.

25             IF I WERE THE PLAINTIFFS -- IF I WERE ON

1    A CONTINGENT FEE AND AT THE END OF THE DAY IT'S

2    DETERMINED THAT I HAVE A LOUSY CASE, A WEAK CASE,

3    IF I LOSE THAT CASE I GET ZERO AS THE ATTORNEY.

4              IF IT'S A LOUSY CASE, IT'S GOING TO BE A

5    SMALL SETTLEMENT AND MY CONTINGENT FEE IS GOING TO

6    BE SMALL AS WELL BECAUSE IT'S GOING TO BE A

7    PERCENTAGE OF THE RESULT ACHIEVED.

8              THAT'S NOT WHAT IS HAPPENING HERE.  THE

9    LAWYERS ARE BEING REWARDED ON A TIME BASIS FOR

10   BRINGING A LOUSY CASE.  HOWEVER, UNDER CAFA BECAUSE

11   OF THE COUPON ELEMENT, CAFA REQUIRES AT LEAST WITH

12   RESPECT TO THE COUPON ELEMENT, THAT THEIR FEE BE

13   CONTINGENT BASED ON THE VALUE OF THE REDEEMED

14   COUPONS.

15             BUT THEY GET AROUND THAT BY ARGUING THAT

16   THE EQUITABLE RELIEF IN THIS CASE, WHICH I THINK IS

17   LARGELY ELUSORY AS WELL, IS WHERE THEY GET TO HAVE

18   THEIR LOAD STAR, THE LOAD STAR APPROACH FOR THE

19   ATTORNEY'S FEES REQUESTED.

20             SO THE PROBLEM HERE IS, YOUR HONOR, THAT

21   LET'S ASSUME IT'S A LOUSY CASE, HEWLETT-PACKARD IS

22   BUYING OUT AS CHEAPLY AS THEY CAN BUT THEY ARE THE

23   PUTTING THE CARROT FOR THE ATTORNEY'S FEES.

24   THEY'RE REALLY JUST PAYING OFF LAWYERS TO GET RID

25   OF THE CASE AND THE LAWYER'S INCENTIVES IS TO GET

1    RID OF THE CASE BECAUSE THEY ARE GOING TO BE PAID A

2    LARGELY HIGH VALUE BASED ON THE LOAD STAR APPROACH.

3              AND I'M SAYING IF THE COURT DOESN'T THINK

4    THIS IS A VERY GOOD CASE, MAKE THE ATTORNEYS LIVE

5    WITH THAT RESULT.

6              AND WHAT COULD HAVE HAPPEN IS MAYBE, I

7    KNOW THE COURT CANNOT REARRANGE A SETTLEMENT THAT'S

8    PRESENTED TO THE COURT, YOU EITHER ACCEPT IT OR

9    REJECT IT, BUT MAYBE YOU REJECT IT AND GIVE HINTS

10   TO, YOU KNOW, HOW TO --

11             THE COURT:  GIVE SOME GUIDANCE.

12             MR. MILER:  -- TO IMPROVE IT.

13             WHAT'S HAPPENING HERE IS THE CLASS IS

14   BEING SOLD OUT AND THE LAWYERS FEES ARE BEING

15   PROTECTED AND IT WORKS TO THE ADVANTAGE OF HP THAT

16   WANTS TO GET RID OF THIS CASE WITHIN ECONOMIC

17   BOUNDS, AND IT WORKS TO THE ADVANTAGE OF THE CLASS

18   ATTORNEYS WHO GET PAID AT THE END OF THE DAY.

19             AND SO MAKE THE CLASS LAWYERS BEAR THEIR

20   SHARE OF RESPONSIBILITY OF THIS CASE AND NOT HAVE A

21   FEE BONUS FOR BRINGING A LOUSY CASE.

22             THE COURT:  OKAY.  THANK YOU.

23             ANYONE ELSE WANT TO BE HEARD?

24             MR. HELFAND:  GOOD MORNING, YOUR HONOR.

25             STEVEN HELFAND FOR LISA KAHLE AND

1    SARAH MCDONALD.

2              I NOTE PRELIMINARILY I CHECKED ON THE

3    DOCKET FOR THE CASE AND I DID NOT SEE OUR OBJECTION

4    THAT WE HAD FILED.  AND I NOTICED IN SOME OF THE

5    PAPERS THAT WERE FILED ON BEHALF OF THE SETTLING

6    PARTIES THAT THEY INDICATED ON THE PART OF THE

7    PLAINTIFFS THAT THERE WERE ONLY THREE OBJECTIONS.

8    I DON'T THINK THEY COUNTED OURS.

9              THE COURT:  OKAY.  WE WILL MAKE SURE

10   WE'VE GOT IT IN FRONT OF US BEFORE WE DO ANYTHING.

11             MR. HELFAND:  WOULD YOU LIKE ANOTHER

12   COPY?

13             THE COURT:  NO.  IF IT'S BEEN E-FILED,

14   WE'LL FIND IT.

15             MR. HELFAND:  WE DID NOT E-FILE IT, WE

16   MAILED IT IN.

17             THE COURT:  YOU MIGHT WANT TO GIVE THE

18   CLERK AN EXTRA COPY THEN, THAT MIGHT HAVE BEEN THE

19   PROBLEM.

20             ALL RIGHT.  GO AHEAD.

21             MR. HELFAND:  I WOULD JUST NOTE,

22   YOUR HONOR, THAT IN THIS CASE WHERE YOUR HONOR

23   SPECIFIED THAT IT CERTAINLY IS VERY IMPORTANT TO

24   CONSIDER ALL THE FACTORS IN TERMS OF THE STRENGTHS

25   AND WEAKNESSES OF THE CASE, THE PARTIES DIDN'T HAVE

16

1    TO STRUCTURE THE DEAL IN THE MANNER THAT IT WAS

2    STRUCTURED.

3           SO WHERE YOU HAVE THOSE INHERENT

4    LIMITATIONS IN TERMS OF TRANSFERABILITY WHERE YOU

5    COULD ONLY TRANSFER THEM TO IMMEDIATE FAMILY

6    MEMBERS, THAT'S A HUGE LIMITATION WHICH IMPACTS THE

7    VALUE IN THE REAL WORLD FOR CLASS MEMBERS TO GET

8    ANY VALUE OUT OF THE SETTLEMENT.

9           IN TERMS OF THE LIMITATION AND THE TIME

10   RESTRICTIONS ON THIS, THAT'S ALSO A HUGE

11   DISADVANTAGE FOR THE CLASS.

12          SO WHERE YOU HAVE A -- LET'S SAY IT'S A

13   WEAK CASE, THAT DOESN'T NECESSARILY EQUATE THAT YOU

14   NEED TO THEN PUT IN THOSE LIMITATIONS WHICH

15   SEVERELY CONSTRAIN THE CLASS FROM GETTING ANY VALUE

16   FROM THE ADMITTEDLY LIMITED BENEFIT WHICH IS BEING

17   OFFERED.

18          THE COURT:  YEAH.  I MEAN, ALL OF THE

19   OBJECTORS ARE SAYING THE SAME THING IN DIFFERENT

20   WAYS WHICH IS THAT THE CLASS REALLY ISN'T GETTING

21   MUCH IN PROPORTION TO WHAT THE LAWYERS ARE GETTING.

22          MR. HELFAND:  CORRECT.  AND WE MAKE THAT

23   ARGUMENT.

24          I DON'T WANT TO TAKE TOO MUCH OF YOUR

25   TIME, SO WITH THAT I WOULD JUST SUBMIT, YOUR HONOR.

17

1          THE COURT:  THANK YOU.

2          LET ME GIVE PLAINTIFF'S COUNSEL AN

3     OPPORTUNITY TO RESPOND NOW.

4          MR. MCCARTHY:  THANK YOU, YOUR HONOR.

5     NIALL MCCARTHY.

6          I'M GOING TO ADDRESS SOME OF THE TOPICS

7     RAISED, THEN I WILL TURN IT OVER TO MY COLLEAGUE

8     MR. BERK.

9          I THINK THE CORE PROBLEM IS THE OBJECTORS

10    HAVE A FANCIFUL VIEW OF CLASS ACTIONS THAT WHEN YOU

11    FILE THEM THE DEFENDANTS BACK UP THE MONEY TRUCK

12    AND THEY JUST PAY YOU WHAT YOU NEED.

13         THE REAL -- AND BY THE WAY, THEY ARE

14    TALKING ABOUT THIS CASE LIKE IT'S SOME TYPE OF DUMP

15    AND RUN.  WE HAVE BEEN WORKING ON THIS CASE FOR

16    FIVE AND A HALF YEARS.

17         THIS IS NOT A CASE THAT WE FILED AND WE

18    PURSUED SETTLEMENT IMMEDIATELY.  WE HAVE BEEN HERE

19    FIVE AND A HALF YEARS.  ON THE FIRST TWO CASES

20    CIOLINO AND RICH, THERE'S ALMOST 400 ENTRIES ON THE

21    DOCKET.

22         SETTLEMENTS ARE A FUNCTION OF LEVERAGE.

23    IN THIS CASE AS THE EXTENSIVE DISCOVERY UNFOLDED,

24    THE FACTS DID NOT GO AS WE HAD HOPED.  WE HAD A

25    RULE 12 MOTION WHERE WE LOST MANY OF OUR CLAIMS.

1    WE HAD A SUMMARY JUDGEMENT MOTION WHERE THE COURT

2    MADE VERY CLEAR YOU FELT OUR EVIDENCE WAS WEAK.

3    AND THEN WE HAD A CLASS CERTIFICATION MOTION FOR

4    THE CLASS WAS A NATIONWIDE BASIS.

5         ALL OF THAT DIMINISHED OUR LEVERAGE AND

6    ADDED TO THE DEFENDANT'S LEVERAGE.  SO WHAT DID WE

7    DO?  WE PACKAGED A SETTLEMENT THAT WE THINK IS

8    EXTREMELY FAIR ON THE DATE THE SETTLEMENT WAS

9    REACHED, NOT ON THE DATE THE COMPLAINT WAS FILED.

10         BECAUSE AS I READ THE OBJECTIONS WHAT WAS

11   STRIKING TO ME WAS WHAT THE COURT POINTED OUT, NO

12   ONE IS TALKING ABOUT THE MERITS.

13         IN MR. MILLER'S OBJECTION, HE HASN'T EVEN

14   MENTIONED HP UNTIL PAGE 9.  HE'S TALKING ABOUT THE

15   FUNCTION OF OBJECTORS AND THE ROLE OF CLASS

16   ACTIONS, AND THE PROBLEM IS THAT THE OBJECTORS

17   AREN'T ABLE AT ALL, DUE TO THEIR OWN IDEOLOGY OR

18   ECONOMIC MOTIVES, TO SEE THE OTHER SIDE.  THEY HAVE

19   A TOTAL INABILITY TO VALUE THE CASE.

20         NOW I HAVE BEEN DOING CLASS ACTIONS FOR

21   19 YEARS.  I'VE TRIED CLASS ACTIONS.  I'M ONE OF

22   THE FEW ATTORNEYS THAT I WOULD SUGGEST PROBABLY

23   KNOW MORE ABOUT THIS WITH PRIOR CLASS ACTION, I'VE

24   DONE MORE ON THIS CLASS ACTION, WITH THE EXCEPTION

25   OF MR. LIVERSIDGE.

19

1          SO WE DON'T TAKE CASES AND FILE THEM IN

2     ANOTHER COURTROOM, WE WORK CASES UP.  WE DID A

3     TREMENDOUS AMOUNT OF WORK ON THIS CASE.  AT THE END

4     OF THE DAY WHAT HAPPENED WAS THE FACTS CUT THEIR

5     WAY.  WE DID HAVE TO DEAL WITH THAT.

6          SO A SETTLEMENT MUST BE EVALUATED IN

7     LIGHT OF THE FACTORS OF THE CASE.

8          ON THE FEES, THERE'S INNUENDO THAT WELL,

9     THE ATTORNEYS ARE MAKING OUT HERE, THE ATTORNEYS

10    ARE SELLING OUT THE CLASS.

11         ONE, THEY DON'T TALK ABOUT THE VALUE OF

12    THE INJUNCTIVE RELIEF WHICH MR. BERK IS GOING TO

13    DO.

14         BUT MORE IMPORTANTLY, NOT ONE OF THEM

15    MENTIONS IN FIVE AND A HALF YEARS IN THIS CASE, THE

16    LOAD STAR IS FRANKLY $7 MILLION.  THE FEES ARE

17    ABOUT 2.3, $600,000 OF THAT REQUEST IS A COST

18    REIMBURSEMENT FOR EXPERTS, FOR DEPOSITIONS.

19         SO THE ATTORNEYS ARE NOT DOING WELL IN

20    THIS CASE.  NOT THAT THE ATTORNEYS ECONOMIC WELL

21    BEING IS A CONSIDERATION, IT'S NOT; HOWEVER, THE

22    INSINUATION IS THAT WHILE LAWYERS ARE GETTING

23    RICHER THE CLASS GETS NOTHING.

24         THE LAWYERS AREN'T GETTING RICHER, THE

25    LAWYERS ARE DOING EXTREMELY POOR.

1          THE COURT:  WHAT ABOUT THE INTERPLAY

2     BETWEEN THE FEES AND THE RATE OF RETURN ON THE

3     E-CREDITS?

4          MR. MCCARTHY:  WELL, UNDER CAFA IF THE

5     COUPONS AND THE COUPONS ALONE WERE THE RESOLUTION,

6     YOU LOOK AT THE RATE OF RETURN.  THE RATE OF

7     RETURN, NUMBER ONE, TODAY IT'S ABOUT $1.2 MILLION

8     IN CLAIMS.

9          NUMBER TWO, IT'S OPEN UNTIL

10    FEBRUARY 15TH.  AND TYPICALLY WE DO SEE A SPIKE AT

11    THE END.  WE'VE ISSUED TWO REPORTS ON THAT, A

12    NUMBER OF CLAIMS, I DID A DECLARATION LATE

13    NOVEMBER.  WE ASKED THE CLAIMS ADMINISTRATOR TO

14    FILE ONE TODAY.

15         BUT THERE WILL BE ADDITIONAL CLAIMS

16    COMING IN.  BUT WHEN YOU FACTOR IN THE INJUNCTIVE

17    RELIEF WHICH ELIMINATES WHAT WE FELT WAS THE MOST

18    OBJECTIONABLE WHICH WAS THE VISUAL IMAGE, IF THE

19    COURT WILL RECALL FROM THE SUMMARY JUDGEMENT STAGE,

20    THAT'S WHAT WE FOUND MOST OBJECTIONABLE HERE.

21    THAT'S WHAT'S GOING TO BE REMOVED.

22         I ALSO THINK IT'S INTERESTING IN ONE OF

23    THE OBJECTIONS, MR. CANNATA, THE GENTLEMAN WHO IS

24    NOT HERE, HIS OBJECTION WAS THAT THE INJUNCTIVE

25    RELIEF ISN'T LONG ENOUGH.  AND THESE COUNSEL WERE

1    SAYING THE INJUNCTIVE RELIEF IS VALUELESS.  HE'S

2    APPARENTLY THINKS IT HAS GREAT VALUE BECAUSE HE WAS

3    OBJECTING IT'S ONLY IN PLACE FOR THREE YEARS.

4            SO AMONG THE OBJECTORS THERE'S A WIDE

5    VARIANCE.

6            WE COVERED MUCH OF THIS IN THE PAPERS.

7    I'M GOING LET MR. BERK TALK ABOUT THE INJUNCTIVE

8    RELIEF.  MY FUNDAMENTAL CONCERN IS THAT THE

9    OBJECTIONS ARE TOTALLY DIVORCED FROM --

10           THE COURT:  THEY DON'T ADDRESS THE MERITS

11   OF THE CASE AND THEY DON'T, IN YOUR PERSPECTIVE,

12   ADDRESS THE VALUE OF THE INJUNCTION.

13           MR. MCCARTHY:  AND MR. BERK WILL SPEAK TO

14   THE INJUNCTION.

15           THE COURT:  GO AHEAD.

16           MR. BERK:  GOOD MORNING, YOUR HONOR.

17   STEVEN BERK.

18           YOU MAY HAVE REMEMBERED I THINK MAYBE TWO

19   OR THREE YEARS AGO I WAS HERE PRESENTING ARGUMENTS

20   ON CLASS CERTIFICATION.  SO I'VE TAKEN MY LUMPS IN

21   THIS COURTROOM.

22           BUT DURING THAT PRESENTATION WE SHOWED

23   THE COURT THE LOW INK WARNINGS THAT SHOW ABOUT THIS

24   MUCH INK, THIS MUCH BEING FOR THE RECORD ABOUT A

25   MILLIMETER, AND THE COURT LOOKED AT THOSE AND SAID

1    THOSE DO SEEM TO BE SOMEWHAT DECEPTIVE PARTICULARLY

2    IF HP IS NOT SURE THOSE WARNINGS AREN'T ACCURATE.

3            SO AS MUCH AS OUR CASE HAS BEEN MALIGNED,

4    TODAY THERE WAS A KERNEL OF SUBSTANCE, THERE WAS

5    SOME STRENGTH TO THE CASE.

6            THE COURT:  JUST SO THE RECORD IS CLEAR,

7    AND IT'S VERY HARD BECAUSE SO MANY OF US USE HP

8    COMPUTERS, IT'S HARD NOT TO PERSONALIZE IT.

9            THE PROBLEM FROM MY PERSPECTIVE IN TERMS

10   OF THE MERITS OF THE CASE WASN'T THAT THE PICTURES

11   WERE MISLEADING, I THINK MY OWN EXPERIENCE AND THAT

12   THEY OFTEN ARE, IT'S THAT TO USE THE VERNACULAR, SO

13   WHAT?  YOU JUST DON'T PAY ANY ATTENTION TO THE

14   PICTURES AND YOU KEEP EXTRA INK CARTRIDGES AROUND.

15           SO THE DIFFICULTY FROM MY PERSPECTIVE HAS

16   ALWAYS BEEN IT'S JUST -- IT DOESN'T STRIKE ME AS

17   THE MOST AWFUL FRAUD I EVER SAW.

18           MR. BERK:  WELL, YOUR HONOR --

19           THE COURT:  I DON'T WANT TO GET INTO

20   ARGUMENT ON THE MERITS BECAUSE WE HAVE A SETTLEMENT

21   HERE.

22           I'M JUST SAYING IN THINKING ABOUT THIS IT

23   WASN'T THAT THERE WASN'T SOMETHING MISLEADING AS TO

24   THE PICTURES, BUT PARTICULARLY ONCE HP STARTED

25   PUTTING ON THE BOXES, INK LEVELS MAY VARY, THEN

23

1    CONSUMERS REALLY WOULD HAVE A HARD TIME SAYING,

2    WELL, WE RELIED ON THIS, WE BOUGHT EXTRA INK

3    CARTRIDGES AND THERE WAS SOME SORT OF HIGHWAY

4    ROBBERY GOING ON.  I DON'T MEAN TO DUMP ON YOUR

5    CASE, BUT I THINK THAT WAS THE PROBLEM.

6              MR. BERK:  YOUR HONOR, AND I ABSOLUTELY

7    AGREE WITH YOU --

8              THE COURT:  YEAH.

9              MR. BERK:  BUT IT'S A MATTER OF DEGREE.

10             THERE'S 13 MILLION, POTENTIALLY 13

11   MILLION CLASS MEMBERS.  AND WHILE THE COURT FIGURED

12   IT OUT AND PERHAPS EVERYONE IN THIS COURTROOM

13   FIGURED IT OUT, THERE WERE SOME PEOPLE THAT DIDN'T

14   FIGURE IT OUT.

15             AND THERE'S A VERY GOOD DECLARATION BY

16   JONATHAN FULLERTON WHICH WAS ATTACHED TO OUR PAPERS

17   AND ATTACHED TO MR. LIVERSIDGE'S PAPERS THAT SORT

18   OF WENT THROUGH THE STATISTICS OF HOW MANY PEOPLE

19   MAY WELL RELY ON THESE WARNINGS.  MY MOTHER MAY

20   RELY.  PEOPLE WHO ARE UNSOPHISTICATED WITH RESPECT

21   TO THE COMPUTERS AND PRINTERS.

22             SO THOSE ARE THE PEOPLE WE ARE TRYING TO

23   HELP.  AND IT MAY NOT BE A LOT, BUT TWO PERCENT IS

24   A NUMBER WE'VE THROWN AROUND, AND TWO PERCENT OF 13

25   MILLION IS STILL A FAIR AMOUNT OF PEOPLE.

24

1           SO WE THINK WE'VE DONE SOMETHING POSITIVE

2     HERE, WE REALLY DO.  IF WE'VE DONE SOMETHING

3     POSITIVE FOR 100,000 PEOPLE OR 150,000 PEOPLE OR

4     400,000 PEOPLE, THAT'S SOMETHING WE SHOULDN'T

5     CHANGE THAT, AND WHAT I'VE HEARD THE OBJECTORS SAY

6     TODAY IS IT COULD BE BETTER, IT COULD BE BETTER.

7           AS THE COURT KNOWS THAT'S NOT THE

8     STANDARD OF COURSE, SOMEBODY COULD COME IN AT THE

9     END OF THE DAY AND THEY COULD DO BETTER.

10          LET ME GET TO THE CRUX OF IT WHICH IS THE

11    VALUE OF THE RELIEF HERE.  I THINK WE TALKED ABOUT

12    THE VALUE OF THE E-CREDITS AND COUPONS.

13          LET ME SAY ANYTHING ABOUT THE E-CREDITS

14    OR COUPONS WHICH HAVE A BAD NAME UNDER CAFA.  IN

15    THE TRUE V. HONDA CASE I BELIEVE IT WAS A 500 OR

16    THOUSAND DOLLAR CREDIT ON A NEW CAR A 20 OR $30,000

17    CAR.  IN THE GM CASE, ALSO CITED BY MR. FRANK, IT

18    WAS A CREDIT ON A BRAND NEW CAR.

19          SO YOU ARE LOOKING AT A SMALL, MAYBE A

20    LARGER COUPON OR LARGER E-CREDIT BUT FOR SOMETHING

21    THAT'S INCREDIBLY EXPENSIVE, WHEREAS HERE THE

22    CREDITS OR THE COUPONS ARE FOR -- YOU CAN USE THEM

23    TO BUY PAPER, YOU CAN USE THEM TO BUY PRINTER

24    SUPPLIES, YOU CAN USE THEM FOR CARTRIDGES.  IT MAY

25    NOT GET YOU ALL THE WAY THERE BUT IT COULD GET YOU

1   60 OR 70 PERCENT THERE.

2          SO TO SUGGEST THAT THEY'RE THE SAME AS

3   THE $1,000 FOR A NEW CAR WHICH WOULD BE MAYBE

4   1/30TH OF THE COST WE ARE TALKING ABOUT, 60 OR

5   70 PERCENT --

6          THE COURT: OKAY. TALK TO ME A LITTLE

7   BIT ABOUT THE INJUNCTION.

8          MR. BERK: SO THERE'S THAT VALUE THERE.

9   I APOLOGIZE FOR GOING ON.

10         THE SECOND PART IS THE INJUNCTIVE RELIEF.

11  WHAT WE'RE GOING TO DO IS TWO-FOLD.

12         WE ARE SORT OF PROUD OF THIS. WE ARE

13  GOING TO GET RID OF THOSE VISUAL WARNINGS, HP IS

14  GOING TO GET RID OF THOSE VISUAL WARNINGS BECAUSE

15  THEY ARE INACCURATE.

16         AND THAT'S AN IMPORTANT THING BECAUSE

17  THAT'S SOMETHING THE COURT RECOGNIZED, THAT'S

18  SOMETHING FOCUS GROUPS RECOGNIZED, SOMETHING OUR

19  EXPERT TALKED ABOUT IS SOMEBODY WILL SEE A VISUAL

20  AND THEY WILL FORGET THE WORDS. AND THAT'S GOING

21  TO BE GONE UNTIL, FOR AT LEAST THREE YEARS AND

22  UNTIL HP COMES UP WITH TECHNOLOGY THAT'S A LITTLE

23  BIT MORE ACCURATE, SO THAT'S VERY IMPORTANT.

24         THE SECOND THING WE ARE GOING TO BE ABLE

25  TO DO IS WE ARE GOING TO BE ABLE TO HAVE ADDITIONAL

1    WARNINGS BOTH IN MANUALS, BOTH ON THE WEBSITE, AND

2    OTHER AREAS WHERE HP IS NOT ONLY GOING TO EXPLAIN

3    WHAT THEY'VE BEEN EXPLAINING, BUT THEY'RE

4    AFFIRMATIVELY GOING TO SAY, DO NOT DISCARD YOUR

5    CARTRIDGES ON THE LOW INK WARNING, MAKING IT

6    CRYSTAL CLEAR PEOPLE SHOULDN'T DO THAT.

7              SOME PEOPLE MIGHT SAY NO ONE LOOKS AT

8    THOSE WARNINGS, IT'S FINE PRINT.  IT'S NOT FINE

9    PRINT, YOUR HONOR.  IT'S SOMETHING HP WILL DO AS AN

10   ADD ON, SOMETHING SPECIAL, SOMETHING DIFFERENT, AND

11   IF PEOPLE HAVE QUESTIONS THEY'LL GO ON TO THE

12   WEBSITE AND SEE THAT.

13             WE THINK THAT HAS VALUE.  DOES IT HAVE

14   HUNDREDS AND MILLIONS OF DOLLARS WORTH OF VALUE?

15   NO, WE DON'T SAY THAT.

16             WE HAD AN EXPERT REPORT OR A REPORT BY AN

17   ECONOMIST WHO TRIED TO VALUE THAT SOMEWHAT

18   CONSERVATIVELY AND CAME UP WITH A NUMBER BETWEEN

19   $14 AND $41 MILLION.

20             IT'S A TOUGH NUMBER TO FIGURE OUT BECAUSE

21   YOU ARE TRYING FIGURE OUT WHAT PEOPLE'S

22   EXPECTATIONS ARE AND WHAT THEIR CONDUCT IS GOING TO

23   BE.

24             BUT YOUR HONOR, IT HAS VALUE.  IT HAS

25   VALUE TO TAKE THOSE DISCLOSURES AND ENHANCE THEM.

1    IT HAS VALUE SO THAT PEOPLE KNOW, THE TWO PERCENT

2    OF PEOPLE THAT MAY NOT BE GETTING IT WILL HAMMER IT

3    HOME AND SAY, DON'T DO THIS.

4              SO WE THINK AT THE END OF THE DAY WELL,

5    GOSH, WE STARTED THIS CASE FIVE AND A HALF YEARS

6    AGO, I WISH WE WOULD HAVE GOTTEN MORE.  WE WENT

7    DOWN EVERY RABBIT HOLE.  WE LOOKED HERE AND WE

8    LOOKED THERE.

9              I WANT TO READ THIS VERY BRIEFLY.  THIS

10   IS FROM MR. MILLER'S OBJECTIONS.  HE SAYS, "IT'S

11   OBVIOUS THERE ARE MONUMENTAL PROBLEMS WITH THE

12   PRINTER CARTRIDGE.  THERE'S STRONG EVIDENCE THE

13   DEFECT OF THE PRINTER CARTRIDGES SUBJECT TO THIS

14   LITIGATION ARE A SHAM AND HAVE BEEN ENGINEERED TO

15   CAUSE A GROWTH IN SALES."

16             WELL, THERE'S NO EVIDENCE OF THAT.  AND

17   YOUR HONOR, I LOOKED THROUGH THAT EVIDENCE I WENT

18   TO PORTLAND, OREGON FOR SIX MONTHS AND DID

19   DEPOSITIONS.  WE LOOKED THROUGH HUNDREDS OF

20   THOUSANDS OF DOCUMENTS LOOKING FOR THAT KIND OF

21   EVIDENCE AND IT WASN'T THERE.

22             SO OUR CASE GOT SMALLER BUT AT THE END OF

23   THE DAY I THINK THE SETTLEMENT IS EMINENTLY FAIR

24   AND EMINENTLY REASONABLE.

25             THE COURT:  THANK YOU.

1          I NEED TO BRING THIS TO A CLOSE.  IT'S

2     BEEN HELPFUL.  YES, MR. FRANK, YOU HAVE 30 SECONDS.

3          MR. FRANK:  VERY QUICKLY.

4          I HEARD THE OBJECTORS DIDN'T ADDRESS THE

5     INJUNCTIVE RELIEF.  WE EXTENSIVELY BRIEFED THAT.

6     WE CITED CASES AND WE DEMONSTRATED THE EXPERT

7     REPORT.  SO TO SAY WE DIDN'T ADDRESS THE INJUNCTIVE

8     RELIEF --

9          THE COURT:  I THINK EVERYTHING WAS

10    ADDRESSED AND THE PAPERS ARE QUITE THOROUGH.

11         I THINK THE THINGS I TRIED TO FOCUS ON

12    REALLY WAS THE ONE THING I THOUGHT WAS NOT

13    ADDRESSED AS WELL AS IT MIGHT HAVE BEEN IN SOME OF

14    THE OBJECTIONS WAS THE ISSUE OF THE MERITS.

15         BECAUSE I THINK THIS IS, WITH ALL RESPECT

16    TO PLAINTIFF'S COUNSEL AND I APPRECIATE THEIR

17    CANDOR HERE THIS MORNING, THIS IS NOT THE CASE THEY

18    THOUGHT IT WAS WHEN THEY FILED IT FIVE YEARS AGO.

19         THERE'S CERTAINLY SOMETHING TO IT TO

20    SURVIVE SUMMARY JUDGEMENT BUT IT'S NOT THE CASE

21    THEY THOUGHT IT WAS.  AND I THINK THAT HAS TO BE

22    KEPT IN MIND AS WE EVALUATE THIS.

23         I THINK THERE ARE A NUMBER OF

24    COMPLEXITIES THAT THE COURT HAS TO WORK THROUGH

25    UNDER CAFA, THE COUPON ASPECT OF IT.  THE COURT

1    DOES HAVE TO ASSESS THE VALUE OF THE INJUNCTIVE

2    RELIEF TO MAKE A CONCLUSION ABOUT THAT AND LOOK AT

3    FEES AND THE RELATIVE BENEFIT TO THE CLASS AND TO

4    THE LAWYERS.

5             I WILL DO ALL OF THAT AND I WILL GET

6    SOMETHING OUT TO YOU SOON.

7             MR. BERK:  THANK YOU, YOUR HONOR.

8             MR. LIVERSIDGE:  THANK YOU, YOUR HONOR.

9             THE COURT:  WE WILL TAKE A TEN-MINUTE

10   RECESS.

11            (WHEREUPON A RECESS WAS TAKEN.)

12            (WHEREUPON, THE PROCEEDINGS IN THIS

13   MATTER WERE CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                        **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22                    _____
                      SUMMER A. FISHER, CSR, CRR
23                    CERTIFICATE NUMBER 13185

24

25