John W. Davis, CA Bar # 200113
john@johnwdavis.com
LAW OFFICE OF JOHN W. DAVIS
501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone: 619.400.4870
Facsimile: 619.342.7170

Steven F. Helfand, CA Bar # 206667
steven@stevenhelfand.com
HELFAND LAW OFFICES
582 Market Street, Suite 1400
San Francisco, CA  94104
Telephone:  415.397.0007
Facsimile:  415.397.0009

Attorneys for Objectors
Lisa Kahle and Sarah McDonald

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:  HP INKJET PRINTER LITIGATION | Master File No. C05-3580 JF  **MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**  Date:  June 17, 2011  Time:  9:00 a.m.  Courtroom:  3 – Fifth Floor  Judge:  Hon. Jeremy Fogel |
| This Document Relates To:  All Actions | |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 17, 2011, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Objectors Lisa Kahle and Sarah McDonald ("Objectors"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 54 for an award of attorneys' fees and reimbursement of expenses.

An award of fees is appropriate. Objectors beneficially contributed to the proceedings because their objections were a catalyst for improvement to the settlement. In this regard, objections to the proposed settlement were successful since the Court refused to award substantial and unjust attorneys' fees to lead class members. Objectors played an important role by giving the District Court access to information on the settlement's merits. In this regard, Objectors served as a highly useful vehicle for class members, for the court, and for the public generally.

This Motion is based upon this Motion, the Memorandum of Points and Authorities in support, the Declaration of John W. Davis, the Declaration of Steven F. Helfand, the pleadings and other papers filed in this action, all items which may be judicially noticed, and any oral argument as may be presented at the hearing of this Motion.

Objectors seek an award of $35,340.00 in attorneys' fees as set forth in the declarations filed herewith. Additionally, a multiplier between 1.1 and 2.0 is sought based on the contingent nature of the representation, the preclusion of other employment, and public policy grounds.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **INTRODUCTION**

1. Objectors and absent class members Lisa Kahle, and Sarah McDonald, et al. (collectively "Objectors"), ask that this Court affirm the long-standing judicial policy acknowledging the important role that objectors play in ensuring that the class action approval process functions properly, and that objectors' counsel are entitled to an award of reasonable attorneys' fees for their efforts in making the process function properly.

### II. **FACTUAL AND PROCEDURAL HISTORY**

2. The Court preliminarily approved the settlement on October 1, 2010. The Proposed Settlement offered members of the class electronic credits ("e-credits") for HP printer products, subject to satisfying eligibility requirements. The e-credits are valued at $2, $5, or $6 depending on the underlying claim – subject to a $5,000,000.00 cap on aggregate claims. Additionally, HP agreed to discontinue the use of certain pop-up advertisements, and make further disclosures regarding "underprinting" and cartridge expiration. As part of the negotiated settlement, Defendant Hewlett-Packard ("HP") agreed to pay attorneys' fees and costs not to exceed $2,900,000.00.

3. The deadline to submit claims expired on February 15, 2011. As of March 10, 2011, the settlement administrator had received 122,410 claims for 202,176 printers. Based on these claims, the administrator has approved $1,465,629.00 in e-credits. Settlement Administrator's Decl.. ¶ 4.

4. The Court granted the parties' motion for final approval of the settlement on March 29, 2011. In so doing, the Court found that the settlement was fair, adequate, and reasonable. However, with regard to the e-credits, the Court recognized Objectors' concerns, stating:

> In many ways, the e-credits are indistinguishable from a marketing technique HP might employ to attract consumers to its commercial website. While Plaintiffs observe correctly that class members using HP printers continue to incur costs for ink and other products sold at HP.com, the nontransferable e-credits are of value only to those class members who continue to use HP printers and who do not have access to a less expensive supply of ink cartridges.

Order re Plaintiffs' Application for Attorneys' Fees, Reimbursement of Costs and Expenses, and Approval of Class Representative Stipends. [Doc. 287, p. 9.]   Moreover, with regard to the proposed injunctive relief, the Court found, "while injunctive relief is of *some* value to the class, Plaintiffs provide little support for their generous estimate of the economic value of such relief." *Id.* At 10.

5.      Nevertheless, in light of the strengths of Plaintiffs' claims, and the risks associated with continuing to litigate these claims, the Court found the substantive settlement terms were fair, adequate, and reasonable pursuant to Fed. R. Civ. P. 23(e)(1)(C).  However, the Court found Plaintiffs' attorneys' fee request to be excessive based on the Court's determination that the ultimate value of the settlement (accounting for both e-credits and injunctive relief) was approximately $1.5 million.  In light of this valuation, the Court awarded Plaintiffs $1,500,000 in fees plus $596, 990.70 in expenses, stating: ". . . , the extent to which an attorneys' fee award exceeds the value of the settlement to the class is problematic, particularly given the 'coupon' nature of the settlement."   Order re Plaintiffs' Application for Attorneys' Fees, Reimbursement of Costs and Expenses, and Approval of Class Representative Stipends.  [Doc. 287, p. 15.]  This reduction in fees represents a savings of $803,009.30 from Plaintiffs' fee request of $2,303,009.30.

### III.  OBJECTORS WERE BENEFICIAL TO THE COURT'S EVALUATION OF THE PROPOSED SETTLEMENT

6.       Objectors beneficially contributed to the proceedings because their objections were a catalyst for improvement to the settlement.

7.      Objectors were successful in bringing deficiencies in the proposed settlement to the Court's attention, which ultimately resulted in a reduction of the amount of attorneys' fees paid to class counsel.  The Court found *inter alia*, "The objectors' concerns about the e-credits are valid. The fact that the credits are nontransferable, redeemable only at HP.com, and cannot be used with other coupons or discounts significantly reduces their cash value. In many ways, the e-credits are indistinguishable from a marketing technique HP might employ to attract consumers to its

commercial website." *Id.* at 9, line 21-25.

8.  Lead Plaintiffs had sought $2,303,009.30 in attorneys' fees. Based on the Court's evaluation of the value of the settlement in light of Objectors' briefing, the court reduced that amount by $803,009.30.

9.  In this regard, objections to the proposed settlement were <u>*successful*</u> since their participation resulted in substantial improvements to the settlement. Moreover, Objectors created an adversarial and critical context which benefitted this Court in its review of the settlement and led to the Court's refusal to award lead plaintiffs excessive fees, while absent class members were limited to recovering e-credits which are non-transferrable and require class members to do further business with Defendant. Thus, Objectors further aided the Court in addressing a patent conflict of interest or, at a minimum, an appearance of impropriety.

10. In addition to the substantive improvements meant to address Objectors' concerns as discussed above, Objectors played an important role by giving the District Court access to information on the settlement's merits. In this regard, Objectors served as a highly useful vehicle for class members, for the Court, and for the public generally by:

- Raising pertinent questions about the terms or effects, intended or unintended, of the proposed settlement;
- Providing an *adversarial context* in which the Court could consider the settlement and class counsel's fee request. In this regard, Objectors prepared written objections and attended oral argument;
- *Sharpening the debate* regarding the reasonableness of the settlement and/or fee by acting in the role of devil's advocate, clarifying issues, and requiring lead counsel and the settling defendant to *more fully brief the issues.*

## A. <u>OBJECTORS HAVE TIMELY SUBMITTED THEIR FEE PETITION</u>

11. This petition is timely pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure which provides in relevant part that, "Unless otherwise provided by statute or order of the Court,

the motion [for attorney's fees] must be filed and served no later than 14 days after entry of judgment...." *Weyant v. Okst,* 198 F.3d 311, 314 (2d Cir.1999); *Arroyo Lopez v. Nuttall,* 25 F.Supp.2d 407, 410 (S.D.N.Y.1998) (Chin, J.); *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 (11th Cir. Fla. 2006). Here, judgment was entered on March 29, 2011, and thus, the instant fee petition is timely.

B. **SUBSTANTIAL LEGAL AUTHORITY SUPPORTS AN AWARD OF FEES TO OBJECTORS**

12. Numerous courts have held that efforts by objectors, *even if unsuccessful,* provide an adversarial context that fosters reasoned scrutiny of class action settlements and attorneys' fee requests. Courts have recognized that objectors "are entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *See also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 546 (5th Cir. 1980).[1] *See also, In re Westinghouse Securities Litigation*, 219 F.Supp.2d 657, 660 (E.D. Penn. 2002) quoting *In re Horizon/CMS Healthcare Corp. Securities Litigation,* 3 F.Supp.2d 1208, 1214 (D.N.M.1998) (citing *Gottlieb v. Barry,* 43 F.3d 474, 491 (10th Cir. 1994), and *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 854 (10th Cir.1993). *See also Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 288 (7th Cir. 2002); *Shaw v. Toshiba America Information Syst. Inc.,* 91 F.Supp.2d 942, 973-74 (E.D.Tex. 2000); *In re Domestic Air Transp. Antitrust Litigation,* 148 F.R.D. 297, 359 (N.D. Ga. 1993).

13. Likewise, in *Maywalt v. Parker & Parsley Petroleum Co.*, the court awarded a fee to an objector to a settlement even where the settlement was approved because the debate instigated by the objector shed light and provided greater certainty to the court's conclusions. *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F.Supp. 1422, 1439 (S.D.N.Y. 1994) *affirmed*, 67 F.3d

---

[1] The conclusion in *White* that an objector is also entitled to an allowance for attorneys' fees and expenses was embraced by the Third Circuit in *In re Cendant Corp. PRIDES Litigation,* 243 F.3d 722, 743 (3d Cir. 2001) (concluding that attorneys' fees were appropriate for objector, represented by counsel, that successfully appealed attorneys' fee award for class counsel).

1072 (2d Cir. 1995). The *Maywalt* Court noted:

> The arguments and documentation presented by those supporting the Proposed Settlement in response to objections raised by Olick [objector] have shed additional light and served to provide greater certainty to the Court's conclusion that the Proposed Settlement is fair, reasonable and adequate. Without Olick's efforts, the degree of certainty for all concerned would have been lessened somewhat. Accordingly, Olick will be awarded fees and expenses …

14. Similarly, in *In re Independent Energy Holdings PLC Securities Litigation*, Judge Scheindlin affirmed a fee award to objector's counsel even though the court concluded that it "would likely have reached the same result [concerning the reduction in Lead Counsel's fee request] with or without the objectors' comments." *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 21322 (S.D.N.Y. 2003). Indeed, notwithstanding this conclusion, Judge Scheindlin noted that that the "objectors certainly assisted the Court in making an appropriate fee award." *Id*.

**C.    THE AMOUNT OF FEES SOUGHT BY OBJECTORS IS REASONABLE**

15. Objectors have a lodestar of $ $35,340.00 in attorneys' fees as set forth in the declarations of John W. Davis and Steven F. Helfand filed herewith. Additionally, a multiplier between 1.5 and 2.0 is sought based on the contingent nature of the representation, the preclusion of other employment, and public policy grounds.

16. Objectors' counsel handle numerous complex business litigation matters and have substantive experience in class action litigation. This matter was handled on a purely contingent basis. As a result of this engagement, Objectors' counsel were precluded from accepting other legal matters.

**D.    OBJECTORS' COUNSEL SHOULD BE AWARDED A MULTIPLIER**

17. Objectors' counsel should be afforded a reasonable multiplier on their lodestar. An upward adjustment to the basic lodestar is appropriate in this case, in which all of the work has been done on a contingent basis with no guarantee that counsel would ever receive compensation for their time and effort.

18. The economic rationale for fee enhancement in contingency cases has been explained as

follows: "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." Richard A. Posner, *Economic Analysis of Law* (4th ed. 1992) pp. 534, 567. "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."[2]; *see also* Rules Prof. Conduct, rule 4-200(B)(9) [recognizing the contingent nature of attorney representation as an appropriate component in considering whether a fee is reasonable]; ABA Model Code Prof. Responsibility, DR 2-106(B)(8) [same]; ABA Model Rules Prof. Conduct, rule 1.5(a)(8).)

19.     Such fee enhancements are intended to compensate for the risk of loss generally in contingency cases as a class.  In cases involving enforcement of constitutional, statutory and other important rights, but little or no damages, such fee enhancements may make such cases economically feasible to competent private attorneys.  "[M]ost lawyers of this quality do seem to consider the prospects of success and the fee recoverable before adding to their crowded calendars a case in which payment is contingent."[3]

20.     The risks inhering in prosecuting an objection to a class action settlement are very high. The risks far outstrip those faced by attorneys who prosecute typical contingent cases.  A settlement that has been given preliminary approval and for which notice has issued has enormous inertia.  There is, with few exceptions, a strong presumption in favor of approval of proposed settlements. The settlement usually has not only the strong support of the principal litigants and their sophisticated counsel, but also the favor of the trial court ruling on final approval. *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhousecoopers*, 212 F.R.D. 400, 412 (E.D. Wis. 2002).  Consequently, settlements are approved in the vast majority of cases in which there

---

[2]  John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)
[3] Leubsdorf, *supra,* 90 Yale L.J., at p. 501.

are objections. Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 105 (2007) ("Courts have approved proposed settlements in over 90% of the cases in which class members filed objections."). Objections that result in a substantive change to a settlement are therefore rare. Indeed, the risk function faced by objectors' counsel is essentially the inverse of that faced by other contingent-fee counsel who have a greater than 90% chance of settling their case before a trial on the merits.[4] At the same time, filing and prosecuting competent objections is costly, relative to the potential benefit to any individual class member. Leslie, 59 Fla. L. Rev. at 97-101.

21. Worse, even objectors who are unquestionably successful in convincing a trial court to reject a settlement entirely may well find themselves uncompensated. *See generally* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 462 (2003) (noting that objectors are unlikely to be compensated for "major victories" in which they "defeat a proposed settlement so thoroughly that the settlement is never revived."); *see also e.g.*, *Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal. App. 4th 387 (2005) (where plaintiff voluntarily dismissed case after objector defeated settlement approval and class certification, there was no source of payment of fees for successful objector's counsel).

22. On the other hand, trial courts are sometimes too reluctant to acknowledge the contributions of objectors when approving a settlement, even where the objectors have in fact provided beneficial adversarial analysis. *See, e.g.*, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) (noting that district court could not deny fees to objectors on the ground that the court had already privately considered the arguments they later advanced); *Rodriquez v. West*, 563 F.3d 948, 963 (9th Cir. 2009) (vacating district court orders denying fees to objectors).

23. Objecting to a class action settlement before a court requires knowledge and skills beyond those possessed by most lawyers not experienced in class action litigation, much less lay people. Leslie, *supra*, at 97-98. *See also generally* Brunet, *supra*, (arguing for policies that would

---

[4] Harry T. Edwards, *Alternative Dispute Resolution: Panacea or Anathema*, 99 Harv. L. Rev. 668 (1986).

encourage qualified lawyers to advise courts and act as external guardians of settlement fairness). Unfortunately, among lawyers who prosecute class actions and who therefore possess the type of experience required to object effectively, the prosecution of settlement objections is unpopular. Leslie, *supra*, 59 Fla. L. Rev. at 98-99; Brunet, *supra*, 2003 U. Chi. Legal F. at 411 ("[O]bjectors may be the least popular litigation participants in the history of civil procedure.")

24. Successfully objecting to a proposed settlement is not only unpopular, it is difficult. It requires the analysis of numerous case documents and the production of argument within a very short window of time between the publication of the notice and the filing deadlines, typically with no assistance from the proponents of the settlement. Brunet, *supra*, at 448 (objectors' counsel "have little time to collect their own information, formulate a coherent position, and formally object to the court."). That supports the award of a multiplier.

25. For all of these reasons, an objection that assists a court and has an effect upon the final approval should be well-compensated, given the overall difficulty and risk encountered in achieving that status. Objector's counsel undertook to make this objection on behalf of their clients knowing that it could have negative consequences for them. If such work is not compensated at a reasonable rate, few truly qualified lawyers will agree to take on objections, and the class action process will lose the benefit of adversarial context when it comes to evaluating and approving settlements.

26. Objectors' counsel believe that a multiplier between 1.5 and 2 is well within the bounds of reason given the risk and difficulty faced, and therefore ask that the Court award a multiplier of two on the basic lodestar.

### E. COUNSEL'S FEE MAY BE PAID FROM PLAINTIFFS' ATTORNEYS' FEE FUND, OR BY THE DEFENDANT, OR BOTH.

27. In this case, the relief to the class is in the form of e-credits on a claims-made basis. There is necessarily no class fund from which fees can be taken. In such a case, the fees are often awarded from the fund created by the cash fee award to class counsel, but there is also authority to order the fees to be paid by the defendant and by plaintiffs' counsel jointly. See, e.g., *Shaw*, 91

F.Supp.2d at 974 (finding that objector's counsels' fee should not be taken from the class fund, but rather borne by plaintiffs' counsel and the settling defendant, apportioned as they might agree); questioned but followed, *Great Neck Capital*, 212 F.R.D. at 416-17 (questioning courts' authority to require defendant to pay, but following *Shaw*).

### IV. CONCLUSION

28. Objectors' contributions to this litigation substantially increased the value of the settlement for class members. Based on the benefit provided to the class, and the Court, as discussed above, Objectors respectfully request that this Court grant their application for an award of attorneys' fees and costs.

Dated: April 12, 2011                                Respectfully submitted,

/s/  John W. Davis                            .
John W. Davis
Law Office of John W. Davis
501 W. Broadway, Ste. 800
San Diego, California  92101
Telephone:  (619) 400-4870
Facsimile:  (619) 342-7170

Attorney for Class Members
Lisa Kahle and Sarah McDonald