NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000/ Fax: (650) 697-0577

BRIAN S. KABATECK (SBN 152054)
bsk@kbklawyers.com
RICHARD L. KELLNER (SBN 171416)
rlk@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000 / Fax: (213) 217-5010

STEVEN N. BERK (*admitted pro hac vice*)
steven@berklawdc.com
**BERK LAW PLLC**
1225 15th Street, N.W.
Washington D.C. 20005
Tel: (202) 232-7550 / Fax: (202) 232-7556

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiffs and the Settlement Class and
On Behalf of the Proposed Settlement Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **In Re: HP Inkjet Printer Litigation** | Master File No. C053580 JF (PVT) |
| | **PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES** |
| This Document Relates To:<br>All Actions | **MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPORTING DECLARATIONS AND EVIDENCE FILED CONCURRENTLY HEREWITH** |
| | Date: TBD<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Jeremy Fogel |

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

## TABLE OF CONTENTS

NOTICE OF MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT
OF COSTS AND EXPENSES ..................................................................................1

APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES ....................3

I.      INTRODUCTION ................................................................................3

II.     FACTUAL BACKGROUND AND LITIGATION HISTORY .........................4

        A.      Litigation Milestones ...............................................................4

                1.      Consolidation of Proceedings ...........................................4

                        a.      The *Ciolino* Action ............................................5

                        b.      The *Rich* Action ................................................7

                        c.      The *Blennis* Action ...........................................9

                2.      The Parties' Exchange of Information ...........................10

                3.      Settlement Negotiations and Mediations .......................11

        B.      Key Settlement Terms ...........................................................11

                1.      Injunctive Relief ...........................................................12

                2.      E-Credits ......................................................................13

                3.      Other Aspects of the Settlement ...................................13

                4.      The Reaction of the Class ..............................................14

III.    LEGAL STANDARD .......................................................................14

IV.     ARGUMENT ..................................................................................16

        A.      Under Section 1712(b), Attorneys' Fees of $1.5 Million Are
                Reasonable ...........................................................................16

        B.      Class Counsel Incurred Reasonable Attorneys' Fees Litigating
                This Case ...............................................................................16

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

C.      The *Kerr* Factors Support the Request.......................................................18

IV.    **CONCLUSION** .................................................................................................23

1

## TABLE OF AUTHORITIES

2

3

**CASES**

4

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
  150 F.3d 1011, 1029 ..................................................................................19

5

*Hensley v. Eckerhart* (1983)
  461 U.S. 424 .....................................................................................16, 19

6

7

*In re Bluetooth Headset Prods. Liab. Litig.* (C.D. Cal. July 31, 2012)
  2012 U.S. Dist. LEXIS 168324 ..........................................................16, 19, 22

8

9

*Kerr v. Screen Actors Guild, Inc.* (9th Cir. 1975)
  526 F.2d 67 ............................................................................16, 19, 23

10

*Kim v. Space Pencil, Inc.* (N.D. Cal. Nov. 28, 2012)
  2012 U.S. Dist. LEXIS 169922 ..............................................................20

11

12

*Officers for Justice v. Civil Service Commission of San Francisco* (9th Cir. 1982)
  688 F.2d 615 ...........................................................................................19

13

14

*Staton v. Boeing Co.* (9th Cir. 2003)
  327 F.3d 938 .........................................................................................15

15

16

*White v. Experian Info. Solutions, Inc.* (C.D. Cal. July 15, 2011)
  2011 U.S. Dist. LEXIS 79044 .................................................................20

17

18

**STATUTES**

19

28 U.S.C. § 1712(b) ....................................................................................15

20

Cal. Bus. & Prof. Code § 17200 ......................................................................5

21

Cal. Bus. & Prof. Code § 17500 ......................................................................5

22

Cal. Civ. Code § 1750.....................................................................................5

23

24

25

26

27

28

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

iii

## NOTICE OF MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES

**TO THE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on _____, 2014 at 9:00 a.m., or as soon thereafter as it may be heard, in Courtroom ___ of the above-entitled Court, Plaintiffs Daniel Feder, Nicklos Ciolino, Carl K. Rich, David Duran, Jackie Blennis, and David Brickner ("Plaintiffs") will, and hereby do, move for an order:

    (1)    Approving an award of attorneys' fees to Class Counsel in the amount of $1,500,000; and

    (2)    Approving an award of reimbursed expenses to Class Counsel in the amount of $596,990.70.

For the reasons set forth in greater detail in the accompanying Memorandum of Points and Authorities, the Court should grant Plaintiffs' Motion for Order Granting Plaintiffs' Application for Attorneys' Fees and Reimbursement of Costs and Expenses and for Approval of Class Representatives' Stipends.

This Motion is based on this Notice of Motion; the attached Memorandum of Points and Authorities; the Declaration of Samuel G. Liversidge; the original Declaration of Niall P. McCarthy (Dkt. No. 262); the Supplemental Declaration of Niall P. McCarthy; all supporting exhibits, settlement papers (including the Stipulation of Settlement and the Long-Form Notice and Summary Notice, Preliminary Approval Order), and other documents; the pleadings, orders, transcripts, and other papers on file in this matter; and any further evidence and arguments as may

/ / /

/ / /

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES;** Master File No. C053580 JF (PVT)

1   be presented at the hearing of this matter.

2

3   Respectfully submitted,

4   Dated:  January 7, 2014                    **COTCHETT, PITRE & McCARTHY, LLP**

5                                              By:      */s/ Justin T. Berger*
                                                        NIALL P. McCARTHY
6                                                       JUSTIN T. BERGER
                                                        840 Malcolm Road
7                                                       Burlingame, California  94010
                                                        Telephone:     (650) 697-6000
8                                                       Facsimile:      (650) 692-3606
                                                        nmccarthy@cpmlegal.com
9                                                       jberger@cpmlegal.com

10

11                                             *Counsel for Plaintiffs and the Settlement Class and On*
                                               *Behalf of the Proposed Settlement Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**                     2
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)

**APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs Daniel Feder, Nicklos Ciolino, Carl K. Rich, David Duran, Jackie Blennis, and David Brickner ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Motion for Order Granting Plaintiffs' Application for Attorneys' Fees and Reimbursement of Costs and Expenses and for Approval of Class Representatives' Stipends ("Application").  The first of these consolidated cases was filed over eight years ago.

This Application pertains to the global settlement reached in three separate actions pending before this Court: *In re: HP Inkjet Printer Litigation*, Case No. C05-3580 JF ("*Ciolino*"); *Rich v. Hewlett-Packard Co.*, Case No. C06-03361 JF ("*Rich*"); and *Blennis v. Hewlett-Packard Co.*, Case No. C07-00333 JF ("*Blennis*"), which settlement received preliminary approval by this Court on October 1, 2010 [*Ciolino* Dkt. Nos. 259, 260] ("Preliminary Approval Order").

By Order dated March 29, 2011, the Court determined that Stipulation of Settlement was fair, reasonable, and adequate and should receive final approval, and granted attorneys' fees to class counsel in the amount of $1,500,000 (reduced from the requested $2,303,009.30), costs in the amount of $596,990.70, and incentive payments of $1,000 to each class representative.  (Dkt. Nos. 286, 287.)

On May 15, 2013, a split panel of the Ninth Circuit reversed this Court's award of attorneys' fees on technical grounds in a lengthy 2-1 decision, and remanded for further consideration.  *In Re: HP Inkjet Printer Litig.*, 716 F.3d 1173 (2013).  Judge Marsha S. Berzon dissented.

The majority's reversal was limited to the issue of the method for calculating the fee.  The majority clarified that under § 1712(b) of CAFA, "[a] district court may . . . award lodestar fees to compensate class counsel for any non-coupon relief they obtain, such as injunctive relief." *Id.* at 1187.  In accordance with the majority opinion, Class Counsel[1] hereby re-apply for attorneys'

---

[1]  Cotchett, Pitre & McCarthy, LLP; Kabateck Brown Kellner, LLP; Berk Law PLLC; Chavez & Gertler LLP; Cuneo, Waldman & Gilbert, LLC; Edelson & Associates, LLC; The Garcia Law Firm; Law Offices of Michael D. Liberty; Law Offices of Scott E. Shapiro, P.C.; McNicholas & McNicholas, LLP; Pearson, Simon, Soter, Warshaw & Penny, LLP; and Seeger Weiss, LLP.

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES;** Master File No. C053580 JF (PVT)                               3

1    fees, on a purely lodestar basis, with a cross-check based on the value of injunctive relief obtained

2    for the Class.

3         Plaintiffs request this Court approve $1.5 million in attorneys' fees, supported only on the

4    injunctive relief achieved for the class.  As the Declaration of Samuel G. Liversidge makes clear,

5    that relief puts forth a range of important business practice changes that, if the settlement is

6    approved without further appeal, will be of value to current and new inkjet owners.  These

7    changes will be available to millions of class members.  Indeed this Court has already ruled that

8    the injunctive relief offered the class, although difficult to calculate precisely, has significant

9    value.  That value is a cross check against a lodestar of over $7 million, of which Class Counsel

10   seek only a small fraction:  20%.  Class Counsel seek no attorneys' fees based on the value of the

11   e-credits obtained for the Class as part of the Settlement.[2]

12   **II.    FACTUAL BACKGROUND AND LITIGATION HISTORY**

13        **A.    Litigation Milestones**

14             **1.    Consolidation of Proceedings**

15        By way of the Preliminary Approval Order [*Ciolino* Dkt. Nos. 259, 260], this Court

16   related and consolidated three separate yet intertwined class actions relating to HP inkjet printers

17   and specifically the interplay between those printers and inkjet replacement cartridges:  the

18   *Ciolino*, *Rich*, and *Blennis* actions.  The three cases were related and consolidated for purposes of

19   effecting this settlement and providing efficient notice to the settlement class.

20        The *Ciolino* action claims that certain HP inkjet printers used "low on ink" messaging

21   technology in a manner that was deceptive and misleading.  Plaintiffs allege that these messages

22   prematurely advised consumers that they were low on ink and required a replacement cartridge

23   when in fact the cartridge may have had sufficient amounts of ink remaining.

24        The *Rich* action claims that certain HP color inkjet printers used color ink in addition to

25   black ink when printing black text and images without disclosing this to consumers and without

26   providing consumers with the option of disabling this feature.  Moreover, Plaintiffs allege that HP

27   ─────────────────
     [2]  The appeal has caused a 3 year delay from when claim forms were submitted to when the e-
28   credits can be redeemed, which will likely drive down the redemption rate.

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

misrepresented and/or failed to disclose the actual page yield for the products at issue (including the true basis for the page yield and cost per page information provided to consumers).  Finally, Plaintiffs' claims assert that HP failed to disclose its use of color ink when printing black in connection with stating its page yields.

The *Blennis* action claims that HP designed certain inkjet printers and cartridges to shut down on an undisclosed expiration date, thereby preventing consumers from using any ink remaining in the expired cartridge and taking advantage of other printer's functions until replacement of the expired cartridge.[3]

### a.   The *Ciolino* Action

On September 6, 2005, Plaintiff Nicklos Ciolino commenced an action against HP in this Court [*Ciolino* Dkt. No. 1] that challenged the "low on ink" ("LOI") warnings deployed on several lines of HP inkjet printers as misleading and deceptive based on the following alleged facts, claims and practices:  (1)  HP programmed "Smart Chips" or used other LOI messaging technology in its inkjet printers and cartridges to indicate that replacement cartridges were needed despite the fact that the cartridge was often not empty and is capable of additional printing; (2)  HP's LOI messages, gauges, warnings, or indicators were deceptive designed leading consumers to prematurely replace their inkjet cartridges; (3)  HP's "SureSupply" program and related marketing materials  were linked to the deceptive low on ink warnings to facilitate the premature purchase of replacement ink.; (4) Plaintiffs and class members were deprived of the ability to use all of the ink in their HP inkjet print cartridges; and (5) Plaintiffs and class members purchasing the HP inkjet printers and cartridges at issue did not get the full value of what they paid for and were promised.

The operative complaint in the *Ciolino* action (the Second Amended Complaint [*Ciolino* Dkt. No. 36]) asserts claims for alleged violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*, "UCL"), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*), California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750

---

[3]  The *Blennis* group is only a small percentage of the class.

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

5

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

1  *et seq*.), and claims for unjust enrichment, breach of express warranty, and breach of implied

2  warranty on behalf of a nationwide class of consumers.

3       HP aggressively defended the lawsuit on both factual and legal grounds.  Factually, HP

4  maintained that the low-on-ink messages were hardly confusing and instead straightforward and

5  accurate because they did not explicitly require consumers to replace their inkjet cartridges and

6  instead clearly advised consumers the warning was premised on estimates.  Moreover, HP

7  highlighted the fact that these messages merely advised consumers that they were low-on-ink, and

8  that they should consider having a replacement cartridge available for when print quality was no

9  longer acceptable to them.

10       In bridging the gap toward settlement, both sides made significant but rational

11  compromises informed by significant discovery including the review of tens of thousands of

12  pages of documents and scores of depositions.  (McCarthy Decl. [Dkt. No. 262] ¶ 8.)  Plaintiffs

13  accepted that not all of the low-on-ink messages were deceptive or misleading.  However,

14  Plaintiffs maintained that the most confusing of the low on ink warnings were those with graphic

15  images showing near empty cartridges.  (*Id*.)  While not agreeing with Plaintiffs' position, HP

16  agreed to eliminate those warning in a series of business practice changes.

17       As a result of careful discovery and expert analysis, it was determined that significant

18  individual damages would not be attainable for several reasons.  First, despite Plaintiffs'

19  confidence in their ability to establish that HP's "low on ink" warnings were inaccurate , no

20  warning actually and explicitly directs the consumer to "throw out your cartridge," and

21  immediately replace it with a new cartridge.  And even if Plaintiffs could convince the Court to

22  award individual damages, it would be extremely difficult to determine how much ink remains in

23  a cartridge when discarded by a consumer (particularly many years after the fact).  Accordingly,

24  proving actual damages would necessarily require significant speculation.  Thus, Plaintiffs agreed

25  that under the facts of this case it would be fair and reasonable that any cash (or cash-like relief)

26  would be only a part of the total compensation provided to the class.  (McCarthy Decl. [Dkt. No.

27  262] ¶ 8.)  And given the limited nature of available funds, consumers seeking to take advantage

28

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES;** Master File No. C053580 JF (PVT)

1   of these funds must demonstrate they actually relied on the warnings and reasonably believed

2   they were required to "toss out" cartridges.

3          Further complicating the litigation and increasing the risk substantially of ultimately

4   succeeding was this Court's decision <u>denying</u> nationwide class certification on July 25, 2008

5   (*Ciolino* Dkt. No. 170.)  Although that decision rested on "manageability" grounds, it did limit

6   Plaintiffs to moving forward on their second attempt at class certification with only a California-

7   only state class.  Moreover, the court's companion decision on the same date, albeit denying HP's

8   Motion for Summary Judgment, included a skeptical discussion of Plaintiffs' substantive claims

9   and raised doubt as to whether the Court would even approve a statewide class.

10         Plaintiffs continued to aggressively litigate their claims despite long odds but in doing so

11  recognized that that strident negotiation was the best opportunity to assure that the millions of

12  members in the class would receive some relief.  (McCarthy Decl. [Dkt. No. 262] ¶ 8.)

13                      **b.**      **The *Rich* Action**

14         On May 22, 2006, Plaintiff Carl K. Rich commenced an action against HP in this Court

15  [*Rich* Dkt. No. 1] based on the following claims and alleged facts and practices:  (1) HP failed to

16  disclose that its color inkjet printers use color ink in addition to black ink when printing black text

17  and images (this technology is referred to as "underprinting");  (2)  HP failed to provide

18  consumers of HP color inkjet printers with the option of printing black text and images using ink

19  from the black print cartridge only;  (3) HP published and made representations regarding the page

20  yield specifications for its inkjet printers and cartridges but misrepresented and/or failed to

21  disclose the actual page yield customers would receive for the products at issue, including the true

22  basis for the page yield and cost per page information provided to consumers;  and (4) HP failed to

23  disclose its use of color ink when printing black in connection with stating its page yields for

24  color inkjet printers and cartridges, thereby increasing the actual costs of printing black text and

25  images.  The operative complaint in the *Rich* action (the Second Amended Complaint [*Rich* Dkt.

26  No. 33]) asserts claims for alleged violations of the UCL, unjust enrichment, and fraudulent

27  concealment on behalf of a nationwide class of consumers.

28

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

1    Plaintiff Rich's original complaint was amended twice.  The First Amended Complaint

2    was filed on September 29, 2006 [*Rich* Dkt. No. 123], to add causes of action for breach of

3    express warranty and breach of the covenant of good faith and fair dealing (in addition to the

4    claims discussed above).  The Second Amended Complaint was filed on January 12, 2007 [*Rich*

5    Dkt. No. 33], following the Court's order of December 4, 2006 [*Rich* Dkt. No. 38] granting HP's

6    Motion to Dismiss.  Based on this order, Plaintiffs dropped their claims for breach of contract,

7    breach of express and implied warranty, and breach of the covenant of good faith and fair dealing.

8    The Second Amended Complaint (which HP answered on February 28, 2007 [*Rich* Dkt. No. 38])

9    also introduced an additional plaintiff and proposed class representative (David Duran, a resident

10   of California) and maintained claims based on unjust enrichment, fraudulent concealment, and

11   violations of the UCL.  In the Second Amended Complaint, Plaintiffs Rich and Duran allege that

12   HP designed its color inkjet printers to use color ink—in addition to the significantly less

13   expensive black ink—when printing black and white images and text, in order to force its

14   customers to prematurely deplete their color ink cartridges and therefore prematurely purchase the

15   expensive color inkjet cartridges.

16   On June 23, 2009, Plaintiffs filed a motion to certify two classes [*Rich* Dkt. No. 62] —a

17   damages class consisting solely of California consumers, and a proposed nationwide class for

18   injunctive relief only.  On December 7, 2009, HP filed its Opposition to Plaintiffs' motion for

19   class certification [*Rich* Dkt. Nos. 80-93 ], and simultaneously filed a Motion for Summary

20   Judgment, where it argued, *inter alia*, that:  (1) Plaintiffs cannot establish that HP had an

21   affirmative duty to disclose the allegedly concealed information, and each of their claims fails as a

22   result; (2) Plaintiffs cannot establish that HP caused them any harm, or that the allegedly

23   concealed information was material to their purchase decisions, thus entitling HP to summary

24   judgment on Plaintiffs' fraudulent concealment and UCL claims; and (3) Plaintiffs' purported

25   "claim" for unjust enrichment fails because it necessarily depends on, and falls with, their other

26   fraud-based claims.  In light of the parties' extensive settlement discussions, neither Plaintiffs'

27   Motion for Class Certification nor HP's Motion for Summary Judgment has been heard, and this

28

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)

8

1   Court took them off calendar for administrative reasons on March 8, 2010, pending the parties'

2   settlement discussions.

3       As with the *Ciolino* action, in bridging the gap toward settlement of the *Rich* action, both

4   sides made significant but rational compromises.  Plaintiffs accepted that underprinting is a

5   legitimate and common technology that increases print quality.  HP agreed to provide additional

6   disclosures to consumers regarding the use of underprinting, its pros and cons, and measures that

7   can be used to disable it.

8       Moreover, as with the *Ciolino* action, significant individual monetary damages were not

9   appropriate or attainable in *Rich* for several reasons.  First, although Plaintiffs were confident they

10   could establish that underprinting caused consumers to use color ink when they would not have

11   expected to, it would be difficult if not impossible to determine how much color ink is actually

12   expended by consumers due to underprinting.  Furthermore, it would be difficult to establish that

13   had consumers known about underprinting, they would have chosen to disable it, and thereby

14   sacrifice the benefit of increased print quality due to underprinting.  Accordingly, a case to obtain

15   individual damages would be highly speculative and would more than likely not succeed.  Thus,

16   Plaintiffs agreed that any cash (or cash-like relief) must be a small percentage of the total

17   compensation provided to the class.  (McCarthy Decl. [Dkt. No. 262] ¶ 8.)

18                     **c.**      **The *Blennis* Action**

19       On January 17, 2007, Plaintiffs Jackie Blennis and David Brickner commenced an action

20   against HP in this Court [*Blennis* Dkt. No. 1] based on the following claims and alleged facts and

21   practices:  (1) that HP designed certain of its inkjet printers and inkjet cartridges to shut down on

22   an undisclosed expiration date, at which point consumers are prevented from using the ink that

23   remains in the expired cartridge and from using all of the printer's functions (including scanning

24   or faxing documents) until the expired cartridge is replaced; (2) that HP failed to disclose and/or

25   actively concealed information regarding its use of expiration dates in certain of its inkjet printers

26   and cartridges; and (3) that HP interfered with the right of Plaintiffs and the class members to

27   possess and use all of the ink in the HP print cartridges that they purchased.

28

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

9

The original complaint in the *Blennis* action asserts claims for alleged violations of the UCL, fraudulent concealment, unjust enrichment, breach of express warranty, breach of implied warranty, trespass, and conversion on behalf of a nationwide class of consumers.  HP filed a Motion to Dismiss the complaint [*Blennis* Dkt. No. 12].  On March 25, 2008, the Court dismissed Plaintiff's claims for express warranty, implied warranty, trespass to chattels and conversion [*Blennis* Dkt. No. 38].  On May 8, 2008, HP answered Plaintiffs' complaint [*Blennis* Dkt. No. 40].  On December 8, 2009, Plaintiffs filed their Motion for Class Certification [*Blennis* Dkt. No. 46], seeking to certify a class consisting of "All persons or entities in the United States who own one or more models of Hewlett-Packard inkjet printers that use ink cartridges that have an expiration date."  In light of the parties' extensive settlement discussions, the Motion for Class Certification has not yet been heard.

As with *Ciolino* and *Rich*, significant damages were not appropriate or attainable in *Blennis* for several reasons.  First, although Plaintiffs were confident that they could establish that HP employed expiration dates without properly disclosing those dates to consumers, it would be difficult if not impossible to establish which consumers may have hit expiration dates and how much ink, if any, may have remained in the cartridge at the time the expiration date was hit.  Furthermore, HP did provide some disclosures to consumers regarding ink expiration, and HP believed that it had legitimate technical reasons for employing ink expiration dates in the limited number of HP printer models where such expiration dates were employed.  Accordingly, a case to obtain individual damages would be highly speculative and would more than likely not succeed.  Thus, as in the *Ciolino* and *Rich* actions, Plaintiffs agreed that any cash (or cash-like relief) must be a small percentage of the total compensation provided to the class.  (McCarthy Decl. [Dkt. No. 262] ¶ 8.)

### 2.     The Parties' Exchange of Information

Plaintiffs' counsel has conducted an extensive investigation into the facts and law relating to the matters alleged in their respective complaints.  The investigation included:  (1) the depositions of approximately a dozen witnesses; (2) the production of more than hundreds of thousands of documents; (3) more than 100 written discovery requests; (4) the inspection of

1   several of the HP Inkjet printers at issue; (5) consultations with industry personnel; (6) extensive

2   work with experts including the design and implementation of independent testing; (7) numerous

3   interviews of witnesses and putative members of the classes; (8) the evaluation of information

4   provided by current or former employees of HP (including the HP engineers with primary

5   responsibility for the design of some of the HP inkjet printer models at issue and matters related

6   thereto); and (9) legal research as to the sufficiency of the claims.  As a result of the foregoing

7   investigation, Plaintiffs and their counsel obtained comprehensive knowledge of HP's printer

8   technology extending to all three actions.  (McCarthy Decl. [Dkt. No. 262] ¶ 9.)

9              **3.      Settlement Negotiations and Mediations**

10       Throughout the *Ciolino*, *Rich*, and *Blennis* actions, counsel for the parties engaged in

11   multiple informal but comprehensive settlement discussions, giving due consideration to the

12   parties' respective positions.  These discussions took place over several years.   Some sessions

13   were productive, others were short and simply reinforced the contrary positions of the parties.

14   (McCarthy Decl. [Dkt. No. 262] ¶ 10.)

15       Settlement was ultimately reached only after extensive arm's length negotiations between

16   counsel for Plaintiffs in the *Ciolino*, *Rich*, and *Blennis* actions, on the one hand, and counsel for

17   HP, on the other hand, occurring over several years and multiple mediation sessions with several

18   highly respected and nationally-recognized mediators—the Honorable Daniel Weinstein of JAMS

19   (*Ciolino*), the Honorable James L. Warren of JAMS (in the *Ciolino* and *Rich* actions), and

20   Alexander S. Polsky, Esq., of JAMS (*Blennis*).  (McCarthy Decl. [Dkt. No. 262] ¶ 10.)

21       The crux of the settlement eventually reached by the parties provides class members with

22   sufficient information to make a reasoned decision regarding the future purchase of HP inkjet

23   printers and replacement cartridges.  To a lesser extent, the settlement provides a limited amount

24   of monetary compensation for the alleged damages sustained by the *Ciolino*, *Rich*, and *Blennis*

25   classes, as described below.  (McCarthy Decl. [Dkt. No. 262] ¶ 10.)

26       **B.      Key Settlement Terms**

27       The signed settlement is attached as <u>Exhibit B</u> to the Declaration of Niall P. McCarthy

28   (filed in connection with the preliminary approval papers) [*Ciolino* Dkt. No. 253-2].  The

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

1   following are the key provisions:

2                          1.      **Injunctive Relief**

3          As discussed above, the *Ciolino*, *Rich*, and *Blennis* actions focus on alleged nondisclosure

4   of information about certain features of, and technology used in, HP's inkjet printers.  The

5   injunctive relief provided to the Settlement Class addresses the core complaint in each case by

6   requiring HP to discontinue the use of certain pop-up messages that include the graphic image of

7   an ink gauge, ruler, or container of ink, and by requiring HP to disclose additional information

8   regarding the HP technology that forms the basis of the *Ciolino*, *Rich*, and *Blennis* actions on

9   HP's website (a location where HP customers already obtain information about and can purchase

10  HP printer products), in the packaging of HP print cartridges, and/or in the user manuals and/or

11  user interfaces for HP inkjet printers.  Specifically, these changes and disclosures include the

12  following:

13          (1)     HP will incorporate disclosures into its website, specified user manuals,
                    and specified user interfaces explaining that HP's low-on-ink messages
14                  (the technology at issue in *Ciolino*) are based on estimated ink levels and
                    that actual ink levels may vary.  HP further will incorporate disclosures
15                  into its website and user manuals explaining that the user does not have to
                    replace a print cartridge when a low-on-ink message is received, but
16                  rather may continue printing until the user is not satisfied with the print
                    quality of the printed material or, if applicable, when the user reaches a
17                  "replace cartridge" message.

18          (2)     HP will incorporate on its website and in specified user manuals
                    disclosures regarding "underprinting"—the inkjet technology at issue in
19                  the *Rich* action, whereby certain HP color inkjet printers may, in certain
                    circumstances depending on the printer settings and customer inputs, use
20                  a combination of inks from the tri-color (or other, non-black color) and
                    black inkjet cartridges to produce black text and images.   These
21                  disclosures will include a description of what underprinting is, why it is
                    used, and some of the options for disabling or minimizing the use of
22                  underprinting.  HP also will include disclosures on its website and in user
                    manuals regarding page yields including a summary of HP's ISO testing
23                  for page yields and an explanation that actual yield varies depending on
                    the content of printed pages and other factors.
24
25          (3)     HP will incorporate disclosures into its website and print cartridge
                    packaging regarding ink expiration—the technology at issue in the
26                  *Blennis* action, whereby HP may use built-in dates on which certain inkjet
                    cartridges will stop working—including an explanation of the inkjet
27                  printers and cartridges that are subject to ink expiration, why HP employs
                    ink expiration dates for certain printer models and how that date is
28                  determined, and how ink expiration works.

Law Offices
COTCHETT, PITRE
& McCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**                    12
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)

1   Class counsel believes that these disclosures achieve the primary objective of the *Ciolino*, *Rich*,

2   and *Blennis* actions.

### 2.    E-Credits

4          The parties also negotiated some direct monetary relief to the class members in the

5   *Ciolino*, *Rich*, and *Blennis* actions.  Given the current litigation posture of the cases, Plaintiffs and

6   their counsel believe that the compensation is fair and reasonable, particularly in light of the

7   denial of class certification in *Ciolino*.  (McCarthy Decl. [Dkt. No. 262] ¶ 11.)  In settlement of

8   these three matters, HP has agreed to create a pool of up to $5,000,000 in monetary e-credits that

9   can be used for the purchase of printers or printer supplies online at HP's website

10  (www.shopping.hp.com).  (Dkt. No. 253-2 ¶ 38.)  Each participating settlement class member in

11  the *Ciolino* action will be eligible to receive up to $5.00 in e-credits for each *Ciolino* printer

12  model purchased or received as a gift.  (*Id.* ¶ 39.)  Each participating settlement class member in

13  the *Rich* action will be eligible to receive up to $2.00 in e-credits for each *Rich* printer model

14  purchased or received as a gift.  (*Id.* ¶ 40.)  Each participating settlement class member in the

15  *Blennis* action will be eligible to receive up to $6.00 in e-credits for each *Blennis* printer model

16  purchased or received as a gift.  (*Id.* ¶ 41.)

17         There were ultimately 53,147 credits approved for *Blennis* class members, worth a total

18  value of $318,882.00.  (*See* Danielson Decl. [Dkt. No. 285] ¶ 4.)  There were 148,479 credits

19  approved for *Ciolino* class members, worth a total of $742,395.00.  (*See id.*)  There were 202,176

20  credits approved for *Rich* class members, worth a total of $404,352.00.  (*See id.*)   Thus a grand

21  total of 404,802 credits were redeemed by 122,348 class members, worth a total of $1,465,629.00.

22  (*See id.*)

### 3.    Other Aspects of the Settlement

24         HP has agreed to pay for the class notice and administration (up to $950,000), (Dkt. No.

25  253-2 ¶ 59), and class counsel was able to secure very comprehensive notice by utilizing the

26  economies of scale of having the notice combined for the *Ciolino*, *Rich*, and *Blennis* actions.

27         In addition, HP has agreed, subject to Court approval, to pay a stipend not to exceed

28  $1,000 to each named Plaintiff in the *Ciolino*, *Rich*, and *Blennis* actions.  (*Id.* ¶ 47.)  HP originally

Law Offices
COTCHETT, PITRE
& McCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**        13
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)

1   agreed to separately pay to Plaintiffs' counsel the attorneys' fees, costs, and expenses awarded by

2   the Court, in an amount not to exceed $2,900,000.  (*Id.* ¶¶ 44-45.)  This amount was inclusive of

3   all fees and costs of class counsel in the *Ciolino*, *Rich*, and *Blennis* actions.

4        In its March 29, 2011 Order (Dkt. No. 287), this Court reduced the requested fee amount

5   from $2.3 million to $1.5 million.  Costs of $596,990.70 were approved.  Class Counsel now seek

6   that $1.5 million, based solely on the injunctive relief obtained.  The $1.5 million in attorneys'

7   fees represents approximately 20% of the lodestar hours actually worked on the *Ciolino, Rich,*

8   *and Blennis* actions.  (McCarthy Decl. [Dkt. No. 262] ¶ 12; Supp. McCarthy Decl. ¶ 3)

9        Finally, in exchange for all of the aforementioned benefits provided by HP under the

10  settlement, Plaintiffs and members of the *Ciolino*, *Rich*, and *Blennis* classes will fully release HP

11  from all claims that relate to the *Ciolino*, *Rich*, and *Blennis* actions.  (McCarthy Decl. [Dkt. No.

12  262], <u>Exhibit A</u>, [Stipulation of Settlement, ¶¶ 21, 50-55].)

### 4.   <u>The Reaction of the Class</u>

14       The reaction of the class was overwhelmingly positive.  Notices were sent to

15  approximately thirteen million people via email, and notice was published in various national

16  newspapers, magazines and online.  (Azari Decl. [Dkt. No. 270] ¶¶ 9-15.)  There were three

17  objections filed with the Court, representing five class members.  (*Id.* ¶ 24.)  There were 810 class

18  members who chose to opt out of the settlement.  (*Id.* ¶ 23.)

19       These numbers stand in stark contrast to the 403,802 approved credits claimed by 122,348

20  class members.  (Danielson Decl. [Dkt. No. 285] ¶ 4.)  This represents an overwhelmingly

21  positive reaction to the settlement by class members.

## III.   <u>LEGAL STANDARD</u>

23       As held by the majority opinion on appeal in this case, "§ 1712(b) [of CAFA] applies in

24  situations where a coupon settlement also provides for non-coupon relief, such as equitable or

25  injunctive relief."  *Feder v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173, 1183 (9th Cir.

26  2013).  Section 1712(b) states, in pertinent part:  "If a proposed settlement in a class action

27  provides for a recovery of coupons to class members, and a portion of the recovery of the coupons

28  is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)                                   14

1  shall be based upon the amount of time class counsel reasonably expended working on the

2  action." 28 U.S.C. § 1712(b).  "[T]he language of § 1712(b) is not permissive—if class counsel

3  wants to be paid 'any' fees, and the 'recovery of the coupons is not used to determine' those fees,

4  the entirety of the payment 'shall be' calculated 'based upon the amount of time class counsel

5  reasonably expended working on the action,' *i.e.*, using the lodestar method." *In re HP Inkjet*

6  *Printer Litig.*, 716 F.3d at 1183 (emphasis added).

7       The majority opinion further explains that § 1712(c), in contrast to § 1712(b), establishes

8  this general rule:

9  > If a settlement gives coupon and equitable relief and the district court sets
   > attorneys' fees based on the value of the entire settlement, and not solely
10 > on the basis of injunctive relief, then the district court must use the value
   > of the coupons redeemed when determining the value of the coupons part
11 > of the settlement.

12 *In re HP Inkjet Printer Litig.*, 716 F.3d at 1184.

13       Thus, if attorneys' fees are sought solely on the basis of obtaining injunctive relief, a

14 lodestar approach must be used.  If attorneys' fees are sought based on the entire settlement, the

15 value of the coupons must be considered.  *See id.*  The majority opinion described these

16 alternatives in detail, but did not direct this Court to use any particular approach.  *See id.* at 1187

17 n.19 ("We leave open the question how best to award attorneys' fees under § 1712.").

18       In this renewed motion for fees, Class Counsel seek fees based solely on the basis of

19 injunctive relief obtained in the settlement.  Accordingly, the lodestar approach applies.  *See id.* at

20 1184; *see also* 28 U.S.C. § 1712(b)(2).

21       The lodestar approach "involves multiplying the number of hours the prevailing party

22 reasonably expended on the litigation by a reasonably hourly rate, and, if circumstances warrant,

23 adjusting the lodestar to account for other factors which are not subsumed within it."  *Staton v.*

24 *Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003); *see also In re HP Inkjet Printer Litig.*, 716 F.3d at

25 1183 ("Section 1712(b)(2) further confirms that a court may, in its discretion, apply an

26 appropriate multiplier to any lodestar amount it awards under subsection (b)(1) for obtaining non-

27 coupon relief.") (footnote omitted).

28

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)

The factors that may be used to adjust the lodestar include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  The majority opinion in the Ninth Circuit emphasized the eighth of these *Kerr* factors, stating:  "Even under the lodestar method, the district court must adjust the amount of any fees award 'to account for the degree of success class counsel attained.'"   *In re HP Inkjet Printer Litig.*, 716 F.3d at 1186 n. 18 (citing *In re Bluetooth*, 654 F.3d at 944; *Hensley*, 461 U.S. at 436).

## IV.   ARGUMENT

### A.   Under Section 1712(b), Attorneys' Fees of $1.5 Million Are Reasonable

Pursuant to the majority opinion's interpretation of § 1712 of CAFA, Class Counsel seek an award of attorneys' fees based solely on the value of the injunctive relief obtained for the Class pursuant to this settlement.  Accordingly, § 1712(b) applies, and the Court is required to analyze Class Counsel's request under the lodestar approach.  *In re HP Inkjet Printer Litig.*, 716 F.3d at 1186.  As detailed in the following sections, under a lodestar approach, Class Counsel's request for $1.5 million in fees is eminently reasonable.  The $1.5 million request represents only 20% of Class Counsel's total lodestar.

### B.   Class Counsel Incurred Reasonable Attorneys' Fees Litigating This Case

As of the initial Application for Attorneys' Fees (October 7, 2010), Class Counsel had incurred fees in the amount of $7,109,247.09 for more than 17,000 hours of time worked on the litigation.  (McCarthy Decl. [Doc No. 262] ¶ 23.)  In the ensuing three years on appeal, Class Counsel have incurred additional fees in the amount of approximately $304,472.[4]  (Supp. McCarthy Decl. ¶ 3.)  By way of this Motion, Class Counsel seek reimbursement of fees in the

---

[4]   For purposes of efficiency, Class Counsel limited involvement in the appeal process to two firms.

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES;** Master File No. C053580 JF (PVT)

16

1  amount of only $1,500,000.  This means that more than ***5.9 million in fees will go un-***

2  ***reimbursed*** and that Class Counsel will recover only 20% of their fees.  To put these numbers in

3  further perspective, out of every five hours Class Counsel worked on this litigation, they will be

4  paid for only one.

5  The number of hours that Class Counsel spent litigating this case is reasonable.  Each of

6  the firms involved in the litigation made every effort to prevent the duplication of work or

7  inefficiencies that might have resulted from having multiple firms working on the case.

8  (McCarthy Decl. [Dkt. No. 262] ¶ 15.)  Class Counsel carefully coordinated discovery efforts and

9  motion practice to ensure that they were working efficiently and productively, and held many

10  conference calls to discuss strategy and new developments in the case, share knowledge they had

11  obtained from documents and depositions, and keep one another informed about the status of

12  various projects.  (*Id.* ¶ 15.)

13  The work Class Counsel did was meaningful.  Since 2005, Class Counsel undertook

14  substantial investigation, fact-gathering, and formal discovery, including the following:

15  • Reviewing hundreds of thousands of pages of documents;

16  • Taking and defending more than a dozen depositions;

17  • Propounding and responding to substantial written discovery:

18  o Serving more than 100 written discovery requests;

19  o Responding to more than a dozen sets of discovery and 434 individual

20  written discovery requests;

21  • Conducting a forensic inspection of several of the HP Inkjet printers at issue;

22  • Participating in extensive consultations with industry personnel;

23  • Handling numerous interviews of witnesses and putative class members;

24  • Performing extensive work with experts and testing by the experts, including with

25  Dr. Michael A. Kamins, Michael G. Ueltzen, CPA and C. Thomas Avedisian;

26  Evaluation of information provided by current or former employees of HP

27  (including the HP engineers with primary responsibility for the design of some of

28  the HP inkjet printer models at issue and matters related thereto); and

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

17

1          •      Conducting substantial legal research.

2    (McCarthy Decl. [Dkt. No. 262] ¶ 16.)

3          Class Counsel expended many hours working on dispositive motions.  Notably, Class

4    Counsel was required to oppose three separate motions to dismiss, as well as a motion for

5    summary judgment.  Class Counsel was also responsible for filing two motions for class

6    certification – including a motion to certify a nationwide class and a motion to certify a California

7    class.  (*Id.* ¶ 17.)

8          Counsel participated in a number of mediation sessions (see Section II(A)(4)(a)).  Counsel

9    for the parties engaged in many more years of arm's length settlement negotiations, and the terms

10   of the settlement that was ultimately reached were heavily negotiated. (McCarthy Decl. [Dkt. No.

11   262] ¶ 18.)  Class Counsel successfully moved for preliminary approval of the settlement. (*Id.* ¶

12   18.)  Class Counsel have responded to Class members' questions about the status of the litigation

13   and the settlement, and will continue to do so.  (*Id.* ¶ 18.)

14         Finally, Class Counsel have spent an additional three years—675 hours, representing

15   $304,522 in attorney time, and $8,209 in out-of-pocket costs—attempting to defend final approval

16   of the settlement, attorneys' fees, and costs, on appeal.  (Supp. McCarthy Decl. ¶ 3.)  The appeal

17   presented a novel issue of first impression that ultimately generated a lengthy split decision.

18   Counsel have performed this work entirely on a contingency basis and have not been

19   compensated for their time. (McCarthy Decl. [Dkt. No. 262] ¶ 18.)

20         **C.      The *Kerr* Factors Support the Request**

21         The Ninth Circuit's majority opinion in this case confirmed that under "Section

22   1712(b)(2) . . . a court may, in its discretion, apply an appropriate multiplier to any lodestar

23   amount it awards under subsection (b)(1) for obtaining non-coupon relief."  *In re HP Inkjet*

24   *Printer Litig.*, 716 F.3d at 1183 (footnote omitted).

25         The factors that may be used to adjust the lodestar include:

26              (1) the time and labor required, (2) the novelty and difficulty of the
                questions involved, (3) the skill requisite to perform the legal service
27              properly, (4) the preclusion of other employment by the attorney due to
                acceptance of the case, (5) the customary fee, (6) whether the fee is fixed
28              or contingent, (7) time limitations imposed by the client or the

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

18

circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Under well-settled Ninth Circuit law, the Court may adjust the unadorned lodestar of $7,413,769 either up or down, depending on the *Kerr* factors. *See Kerr v. Screen Actors Guild, Inc.*, 526 F.2d at 70. At least 10 of the 12 *Kerr* factors support an upward adjustment in this case. *See Kerr*, 526 F.2d at 70. Nonetheless, Class Counsel seek only a fraction of their lodestar. The only *Kerr* factor that could potentially justify a significant downward adjustment of the lodestar in this case is "the amount involved and the results obtained." *Id.; see also In re HP Inkjet Printer Litig.*, 716 F.3d at 1186 n. 18 (citing *In re Bluetooth*, 654 F.3d at 944; *Hensley*, 461 U.S. at 436) ( "Even under the lodestar method, the district court must adjust the amount of any fees award "to account for the degree of success class counsel attained.").

As the Court previously determined, the results obtained for the Class justify a downward adjustment of the lodestar to a total of $1,500,000. This downward adjustment is more than sufficient, in light of the injunctive relief obtained by Class Counsel for the Class.

The significant injunctive relief provided to the class addressed the core complaints in each case. The settlement requires HP to: (1) discontinue the use of certain pop-up messaging that includes the graphic image of an ink gauge, ruler, or container of ink; (2) disclose additional information regarding the HP technology that forms the basis of the *Ciolino*, *Rich*, and *Blennis* actions on HP's website; and (3) disclose additional information in the packaging, manuals, and/or user interfaces for HP inkjet printers. The injunctive relief prevents HP from engaging in what Plaintiffs alleged were the most deceptive and misleading conduct from the complaints.

There is no way to place a precise dollar value on this injunctive relief. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation because **there is no way to gauge the net value of the settlement or any percentage thereof**.") (emphasis added); *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("ultimately, the district court's determination is nothing more than an amalgam of delicate

Law Offices
COTCHETT, PITRE
& McCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)

19

1    balancing, gross approximations and rough justice") (quotation and citation omitted).

2            However, as described in the Liversidge Declaration, the injunctive relief is significant,

3    and will affect a wide swath of HP's products.  The injunctive relief represents a success, as it

4    approaches all the injunctive relief that Plaintiffs could have achieved had the case gone to trial.

5    In cases where the injunctive relief obtained through a class settlement is equivalent to what

6    would have been achieved through trial, other District Courts have awarded significant

7    multipliers.  For example, in *White v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS

8    79044, 16-17 (C.D. Cal. July 15, 2011) (overruled on other grounds), the District Court for the

9    Central District of California awarded a 1.9 multiplier, because "[the settlement] achieved

10   virtually everything that Plaintiffs could have achieved had they prevailed on their claims for

11   injunctive relief after full litigation."  *See also Kim v. Space Pencil, Inc.*, 2012 U.S. Dist. LEXIS

12   169922 (N.D. Cal. Nov. 28, 2012) (awarding a 1.18 multiplier because "the settlement prevents

13   Defendant from engaging in the conduct that was the subject of the suit . . .").

14           As articulated in the Liversidge Declaration, the injunctive relief contemplated includes

15   material changes to disclosures in connection with:  1) owners' manuals; 2) product websites; and

16   3) pop up warnings.  These changes will be available to millions of class members.

17           More specifically, if the Settlement is approved and there are no further appeals, HP will

18   promptly make the following changes:

19           (a)    HP will discontinue the use of Pop-Up LOI Messages that include the graphic

20                  image of an ink gauge, ruler, or container of ink.

21           (b)    Where HP uses graphic images in the Toolbox to communicate ink level

22                  information, HP will include language indicating that the ink level information is

23                  an estimate only and that actual ink levels may vary.

24           (c)    HP's Pop-Up LOI Messages at the low-on-ink trigger points will use language

25                  indicating that the cartridge is low on ink, without stating that a precise level of ink

26                  remains, and that HP recommends that the customer have a replacement cartridge

27                  available when print quality is no longer acceptable.

28

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**                    20
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)

(d)    HP will incorporate disclosures into its website explaining that HP's LOI Messages are based on estimated ink levels and that actual ink levels may vary. HP will further explain that the user does not have to replace a print cartridge when a LOI Message is received, but rather may continue printing until the user is not satisfied with the print quality of the printed material or, if applicable, when the user reaches a "replace cartridge" message. In particular, HP will explain that it provides ink level warnings, indicators, and estimates for planning purposes only, so that users know to have a replacement ink cartridge available if print quality becomes unacceptable. Where applicable, HP also will explain that LOI warnings will not prevent printing, and that users may simply press "enter" to clear the message and continue printing.

(e)    Going forward for newly introduced HP color inkjet printer models that utilize LOI Messages, HP will incorporate disclosures into its user manuals explaining that HP's LOI Messages are based on estimated ink levels and that actual ink levels may vary. HP will further explain that the user does not have to replace a print cartridge when a LOI Message is received, but rather may continue printing until the user is not satisfied with the print quality of the printed material or, if applicable, when the user reaches a "replace cartridge" message.

(f)    HP will incorporate on its website disclosures regarding Underprinting, including a description of what Underprinting is, why it is used, and some of the options for disabling or minimizing the use of Underprinting. For example, HP will explain how to use "draft mode" and other options for conserving ink during the printing process (and the corresponding trade-offs in terms of lower print quality). HP also will explain how ink is used generally in the printing process.

(g)    Going forward for newly introduced HP color inkjet printer models that use Underprinting, HP will incorporate into its user manuals disclosures regarding Underprinting and the available options to disable or minimize the use of the color inkjet cartridge, including the "Print in Grayscale"/"Black print cartridge only"

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES;** Master File No. C053580 JF (PVT)

21

option and "Draft" mode.

(h)     HP will incorporate on its website disclosures regarding Page Yields, including a summary of HP's ISO testing for Page Yields and an explanation that actual yield varies depending on the content of printed pages and other factors. In particular, HP will explain how it measures page yields on its inkjet printers.  HP also will explain how ink is used generally in the printing process and it will provide tips for saving money on printing (such as "print preview," "draft mode," printing in black and white only, and other options).

(i)     Going forward for newly introduced HP color inkjet printer models, HP will incorporate into its user manuals disclosures regarding Page Yields, including a link to its website regarding Page Yields.

(j)     HP will incorporate disclosures into its website regarding Ink Expiration, the inkjet printers and cartridges that are subject to Ink Expiration, why HP employs Ink Expiration dates for certain printer models, and how Ink Expiration works. This will include an explanation of how to determine the ink expiration date.

(k)     HP will include on the cartridge packaging for those inkjet cartridges that utilize Ink Expiration dates without an override feature a disclosure indicating that there is an Ink Expiration date and how that date is determined.

HP is thus changing the business practices complained of in these cases, by either discontinuing the practice or providing significant additional disclosures.  This widespread dissemination of information will surely provide more information to customers regarding uses of ink and HP's business practices.  These changes, while impossible to precisely value, are surely evidence of the settlement's degree of success.

Accordingly, while the eighth *Kerr* factor may support a downward adjustment of the lodestar, it does not support more than the 80% adjustment that has already been made.[5]  This is

---

[5] Indeed, even in *In re Bluetooth Headset Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 168324 (C.D. Cal. July 31, 2012), on remand, the District Court granted attorneys' fees of **25%** of the lodestar, despite heavy criticism of the value of the settlement.  *See id.* at *27 n.4 ("Even the injunctive relief is basic and less than was originally sought.").

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES;** Master File No. C053580 JF (PVT)

1    especially true given that **10 of the 12** other *Kerr* factors support an upward adjustment of the

2    lodestar.

3    **IV.    CONCLUSION**

4         For the foregoing reasons, Plaintiffs respectfully request that this Court approve their

5    application for attorneys' fees in the amount of $1,500,000.  Plaintiffs further request that the

6    Court approve reimbursement of costs and expenses in the amount of $596,990.70, and stipends

7    of $1,000 to each of the Class Representative for their time and efforts on behalf of the Class.

8    Mr. Frank did not challenge the Court's award of costs and expenses, or Class Representative

9    stipends, on appeal.  Plaintiffs incorporate their prior arguments regarding costs, expenses, and

10   Class Representative stipends, by reference.  (*See* Dkt. No. 261 at 18-20.)

11

12   Respectfully submitted,

13   Dated: January 7, 2014              **COTCHETT, PITRE & McCARTHY, LLP**

14                                   By:     */s/ Justin T. Berger*
                                         NIALL P. McCARTHY
15                                       JUSTIN T. BERGER
                                         840 Malcolm Road
16                                       Burlingame, CA  94010
                                         Telephone:    (650) 697-6000
17                                       Facsimile:     (650) 697-0577
                                         nmccarthy@cpmlegal.com
18                                       jberger@cpmlegal.com

19                                       Brian S. Kabateck
                                         Richard L. Kellner
20                                       **KABATECK BROWN KELLNER LLP**
                                         644 South Figueroa Street
21                                       Los Angeles, CA  90017
                                         Telephone:    (213) 217-5000
22                                       Facsimile:     (213) 217-5010
                                         bsk@kbklawyers.com
23                                       rlk@kbklawyers.com

24                                       Steven N. Berk
                                         **BERK LAW PLLC**
25                                       1225 15th Street, N.W.
                                         Washington D.C.  20005
26                                       Telephone:    (202) 232-7550
                                         Facsimile:     (202) 232-7556
27                                       steven@berklawdc.com

28

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)                              23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark Andrew Chavez
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA  93941
Telephone:     (415) 381-5599
Facsimile:     (415) 381-5572
mark@chavezgertler.com

Jon Cuneo
**CUNEO, WALDMAN & GILBERT LLC**
317 Massachusetts Avenue, Suite 300
Washington, D.C.  20002
Telephone:     (202) 789-3960
Facsimile:     (202) 789-1813
jonc@cuneolaw.com

Marc Howard Edelson
**EDELSON & ASSOCIATES LLC**
45 West Court Street
Doylestown, PA  18901
Telephone:     (215) 230-8043
Facsimile:     (215) 230-8735
medelson@edelson-law.com

Stephen Garcia
**THE GARCIA LAW FIRM**
1 World Trade Center #1950
Long Beach, CA  90831
Telephone:     (562) 216-5270
Facsimile:     (562) 216-5271
sgarcia@lawgarcia.com

Michael D. Liberty
**LAW OFFICES OF MICHAEL D. LIBERTY**
1290 Howard Avenue, Suite 303
Burlingame, CA  94010
Telephone:     (650) 685-8085
Facsimile:     (650) 685-8086
mdlaw@pacbell.net

Scott E. Shapiro
**LAW OFFICE OF SCOTT E. SHAPIRO, PC**
9701 West Pico Boulevard, Suite 110
Los Angeles, CA  90035
Telephone:     (310) 720-5501
Facsimile:     (310) 388-4612
scott.e.shapiro.esq@gmail.com

John Patrick McNicholas, IV
**McNICHOLAS & McNICHOLAS LLP**
10866 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90024
Telephone:     (310) 474-1582
Facsimile:     (310) 475-7871
pmc@mcnicholaslaw.com

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'**
**APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND**
**EXPENSES;** Master File No. C053580 JF (PVT)

24

Bruce Simon
**PEARSON, SIMON, WARSHAW &
PENNY LLP**
44 Montgomery Street, Suite 2450
San Francisco, CA  94104
Telephone:      (415) 433-9000
Facsimile:       (415) 433-9008

Jonathan Shub
**SHUBLAW LLC**
1818 Market Street, 13th Floor
Philadelphia, PA  19106
Telephone:      (610) 453-6551
Facsimile:       (215) 569-1606
jshub@shublaw.com

David R. Buchanan
**SEEGER WEISS LLP**
One William Street
New York, NY  10004
Telephone:      (212) 584-0700
Facsimile:       (212) 584-0799
dbuchanan@seegerweiss.com

*Counsel for Plaintiffs and the Settlement Class and
On Behalf of the Proposed Settlement Class*

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR ORDER GRANTING PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES;** Master File No. C053580 JF (PVT)                                  25