NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000/ Fax: (650) 697-0577

BRIAN S. KABATECK (SBN 152054)
bsk@kbklawyers.com
RICHARD L. KELLNER (SBN 171416)
rlk@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000 / Fax: (213) 217-5010

STEVEN N. BERK (*admitted pro hac vice*)
steven@berklawdc.com
**BERK LAW PLLC**
1225 15th Street, N.W.
Washington D.C. 20005
Tel: (202) 232-7550 / Fax: (202) 232-7556

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiffs and the Settlement Class and
On Behalf of the Proposed Settlement Class*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **In Re: HP Inkjet Printer Litigation**<br><br>This Document Relates To:<br>All Actions | Master File No. C053580 JF (PVT)<br><br>**PLAINTIFFS' RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPORTING DECLARATIONS AND EVIDENCE FILED CONCURRENTLY HEREWITH**<br><br>Date: TBD<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Jeremy Fogel |

# TABLE OF CONTENTS

NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ...................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES..................................................................2

    I.     INTRODUCTION...........................................................................................................2

    II.    KEY ASPECTS OF THE SETTLEMENT....................................................................2

    III.   THE SETTLEMENT SATISFIES THE STANDARDS FOR JUDICIAL APPROVAL....................................................................................................................4

          A.    The Ninth Circuit Did Not Question Any of the Court's Conclusions Regarding the Fairness, Adequacy, and Reasonableness of the Settlement ....................................................................4

          B.    The *Hanlon* Standards for Final Approval Are Met ....................................5

                1.    The Strength of the Plaintiffs' Cases Supports a Finding of Fairness .......................................................................................6

                2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation Support Final Approval ......................................6

                3.    The Risk of Maintaining Class Action Status Supports a Finding of Fairness .................................................................................6

                4.    The Amount Offered In Settlement Also Supports Final Approval .................................................................................................7

                5.    The Extent of Discovery Completed and the Stage of the Proceedings Also Favor Final Approval .............................................7

                6.    The Experience and Views of Counsel Support Final Approval .................................................................................................8

                7.    The Absence of a Governmental Participant Supports Final Approval .................................................................................................8

                8.    The Reaction of the Class Members to the Proposed Settlement Warrants Final Approval ...............................................8

/ / /

      C.     The Settlement is Non-Collusive ................................................................. 8

           1.     The First Warning Sign Was Not Present in this Case, and Was Adequately Addressed by the Court ......................................... 9

           2.     The Second Warning Sign – Existence of a Clear Sailing Agreement – Was Explicitly Considered by the Court, and Has Now Been Removed in its Entirety ......................................... 10

           3.     There is no "Reversion"; this is not a Common Fund Settlement ................................................................................... 11

IV.    CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Class Plaintiffs v. City of Seattle* (9th Cir. 1992)
  955 F.2d 1268 ................................................................................................................5

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
  150 F.3d 1011 ............................................................................................... 5, 6, 7, 8

*Hensley v. Eckerhart* (1983)
  461 U.S. 424 ................................................................................................................10

*In re Heritage Bond Litig.* (9th Cir. 2008)
  546 F.3d 667 ................................................................................................................5

**STATUTES**

Fed. R. Civ. P. 23 ................................................................................................................5

1 | **NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

2 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3 | PLEASE TAKE NOTICE that on _____, 2014 at 9:00 a.m., or as soon

4 | thereafter as it may be heard, in Courtroom 3 of the above-entitled Court, Plaintiffs Daniel Feder,

5 | Nicklos Ciolino, Carl K. Rich, David Duran, Jackie Blennis, and David Brickner ("Plaintiffs")

6 | will, and hereby do, move for an order finally approving the proposed class action settlement.

7 | This Motion is based on this Notice of Motion; the attached Memorandum of Points and

8 | Authorities; the Declarations of Niall McCarthy (Dkt. No. 272), Cameron Azari, and the

9 | Honorable James L. Warren (Ret.); all supporting exhibits, settlement papers, and other

10 | documents; the pleadings, orders, transcripts, and other papers on file in this matter; and any

11 | further evidence and arguments as may be presented at the hearing of this matter.

13 | Respectfully submitted,

14 | Dated: January 7, 2014     **COTCHETT, PITRE & McCARTHY, LLP**

15 |                            By:    */s/ Justin T. Berger*
16 |                                   NIALL P. McCARTHY
                                       JUSTIN T. BERGER
17 |                                   840 Malcolm Road
                                       Burlingame, California  94010
18 |                                   Telephone:    (650) 697-6000
                                       Facsimile:    (650) 692-3606
19 |                                   nmccarthy@cpmlegal.com
                                       jberger@cpmlegal.com
20 |
21 |                            *Counsel for Plaintiffs and the Settlement Class and On
                                Behalf of the Proposed Settlement Class*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Daniel Feder, Nicklos Ciolino, Carl K. Rich, David Duran, Jackie Blennis, and David Brickner ("Plaintiffs") respectfully seek final approval of this consolidated class action settlement (the "Settlement") with defendant Hewlett-Packard Company ("HP").

By Order dated March 29, 2011, the Court determined that the Stipulation of Settlement was fair, reasonable, and adequate and should receive final approval. (Dkt. No. 286.) Objector Theodore Frank appealed the Court's Order, arguing that: (1) the Settlement was collusive; (2) the class notice was confusing; and (3) the attorneys' fees award of $1,500,000 was excessive.

On May 15, 2013, a split panel of the Ninth Circuit reversed the Court's final approval Order on the narrow basis that the Court's analysis of the requested attorneys' fees was not fully consistent with CAFA, and remanded for further consideration. *In Re: HP Inkjet Printer Litig.*, 716 F.3d 1173 (2013). Judge Marsha S. Berzon dissented. The majority did not opine on whether the amount awarded by the Court was excessive, only that the Court's approach did not comply with CAFA. Nor did the Ninth Circuit address any of Mr. Frank's other objections to the Settlement.

By this Renewed Motion for Final Approval, Plaintiffs again seek approval of the Settlement on the same bases upon which the Court granted approval nearly three years ago. The Parties have made one minor amendment to the Settlement, removing the purported "clear sailing provision" to which Frank objected.

As it did nearly three years ago, the Settlement warrants final approval by this Court, and meets the Ninth Circuit's standards for final approval. Accordingly, Plaintiffs respectfully request that the Court again approve the Settlement in its entirety, and allow the Class Members to finally receive the benefits of the Settlement negotiated over three years ago.

## II. KEY ASPECTS OF THE SETTLEMENT

The Court is familiar with the long history of these cases, and Plaintiffs will not fully repeat that history here; Plaintiffs further incorporate herein the extensive background description contained in the original Motion for Final Approval. (*See* Dkt. No. 271 at 1-8.)

1    The Settlement was ultimately reached as a result of extensive arm's length negotiations
2 between counsel for Plaintiffs in *In re: HP Inkjet Printer Litigation*, Case No. C05-3580 JF
3 ("*Ciolino*"), *Rich v. Hewlett-Packard Co.*, Case No. C06-03361 JF ("*Rich*"), and *Blennis v.
4 Hewlett-Packard Co.*, Case No. C07-00333 JF ("*Blennis*"), on the one hand, and counsel for HP,
5 on the other hand, occurring over several years and multiple mediation sessions with several
6 highly respected and nationally-recognized mediators—the Honorable Daniel Weinstein of JAMS
7 (*Ciolino*), the Honorable James L. Warren of JAMS (in the *Ciolino* and *Rich* actions), and
8 Alexander S. Polsky, Esq., of JAMS (*Blennis*). (*See* McCarthy Decl. (Dkt. No. 272) ¶ 27.)

9    The Settlement provides for injunctive relief and e-credits. All three of the actions focus
10 on alleged nondisclosure of information about certain practices in connection with certain HP's
11 inkjet printers and print cartridges. The injunctive relief provided to the Settlement Class
12 addresses the core complaint in each case by requiring HP to: (1) discontinue the use of certain
13 pop-up messages that include the graphic image of an ink gauge, ruler, or container of ink, (2)
14 disclose additional information regarding the HP practices that form the basis of the *Ciolino*,
15 *Rich*, and *Blennis* actions on HP's website; and (3) disclose additional information in the
16 packaging of HP print cartridges, and/or in the user manuals and/or user interfaces for HP inkjet
17 printers. (*See* Dkt. No. 253-2 ¶¶ 33-35.) These disclosures thus achieve the primary objective of
18 the *Ciolino*, *Rich*, and *Blennis* actions.

19    The parties also negotiated financial relief to the class members in the *Ciolino*, *Rich*, and
20 *Blennis* actions in the form of e-credits of up to $5.00 for each *Ciolino* inkjet printer, up to $2.00
21 for each *Rich* inkjet printer, and up to $6.00 for each *Blennis* inkjet printer. (Dkt. No. 253 ¶¶ 38-
22 42.) The e-credits can be used for the purchase of printers or printer supplies online at HP's
23 website (www.shopping.hp.com). (*Id.*)

24    After remand of the case from the Ninth Circuit, the Parties agreed to a slight amendment
25 to the Settlement Agreement to remove the following sentence from paragraph 44 of the
26 Stipulation of Settlement: "HP does not oppose, and will not encourage or assist a third party in
27 opposing, Class Counsel's request for attorneys' fees, costs and expenses up to Two Million Nine
28 Hundred Thousand Dollars ($2,900,000.00), nor does HP contest the reasonableness of the

amount." (*See* Supplemental McCarthy Decl., Ex. A (Amendment to Stipulation of Settlement).) In all other respects, the Stipulation of Settlement remains unchanged.

Although the Ninth Circuit Court of Appeals reversed and remanded this Court's Order approving the parties' settlement, that decision was based on its narrow finding that the Court's analysis of the attorneys' fees award did not comport with CAFA. *See In re HP Printer Litigation*, 716 F.3d 1173, 1187 (9th Cir. 2013). The Ninth Circuit's decision did not address any other issues raised by the Objector Ted Frank, including his argument that the Settlement was collusive due to the "clear sailing provision" of paragraph 44. As the Court previously found, the record fully supports that the Stipulation of Settlement was the product of the Parties' extensive negotiations in good faith and at arm's length, which included multiple mediation sessions with three experienced and respected mediators. Nonetheless, given the extensive attention drawn by Mr. Frank to the second sentence of paragraph 44, the Parties after remand agreed in good faith to amend the Stipulation of Settlement to remove this clause and resubmit the settlement, as amended, to the Court.

The Amendment does not impact the rights of any class members, and accordingly, renewed Class Notice is unnecessary.

### III. THE SETTLEMENT SATISFIES THE STANDARDS FOR JUDICIAL APPROVAL

#### A. The Ninth Circuit Did Not Question Any of the Court's Conclusions Regarding the Fairness, Adequacy, and Reasonableness of the Settlement

Nothing in the Ninth Circuit's opinion requires this Court to revisit its prior conclusion that the Settlement is fair, adequate, and reasonable. The Court correctly ruled that "the objectors uniformly fail" to address the strength of the Plaintiffs' case. (March 29, 2011 Order at 11:19.) It also correctly stated that "as the Court has observed repeatedly over the course of the litigation, even assuming that Plaintiffs could prove that HP's 'low-on-ink' warnings were inaccurate or misleading, the task of determining whether the warnings actually confused consumers or resulted in the unwarranted disposal of a significant amount of ink involves a great deal of speculation." (*Id.* at 11:19-23.) The Court continued, "there is no reason to believe that the posture of any of the cases would improve through further litigation." (*Id.* at 11:27-28.)

The Court correctly found the settlement to be "arrived at as a result of arms-length, non-collusive negotiations, and the value of the settlement is reasonable in light of the evident weakness of the case and the modest value of Plaintiffs' claims." (*Id.* at 12:26-28.) The Court based these findings on extensive knowledge of the case, the declarations of counsel, the declaration of the Hon. James L. Warren who served as mediator, the reaction of class members, the value of Plaintiffs' claims, and the strength of Plaintiffs' case. (*See id.*) The Court also considered the risks associated with litigation, the question of whether a class could be certified and maintained through trial, and the views of experienced class action counsel from both parties. (*See id.* at 11-12.) After considering the arguments made by objectors (including Mr. Frank) and considering the factors required by this circuit, the Court correctly concluded that the settlement "taken as a whole" was "fair, adequate and free from collusion." (*Id.* at 6:27-7:4.) *See also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992), *Hanlon v. Chrysler Corp.* 150 F.3d 1011 (9th Cir. 1998) and *In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008).

None of these conclusions were questioned, or even mentioned, by the Ninth Circuit. Accordingly, there is no reason to revisit any of the Court's prior conclusions regarding the fairness and adequacy of the Settlement. Additionally, as the Court previously determined, the requirements of Rule 23 are satisfied. *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019. Neither objectors, nor the Ninth Circuit, took any issue with the Court's prior finding that the requirements of Rule 23 are met.

### B. The *Hanlon* Standards for Final Approval Are Met

The Court's prior final approval determination is fully supported. In determining the fairness of a proposed settlement, the Court is guided by the following factors identified by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998):

> Assessing a settlement proposal requires the district court to balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement. To survive appellate review, the district court must show it has explored comprehensively all factors

(citations omitted).

Each of those factors supports the Court's prior conclusion.

### 1. The Strength of the Plaintiffs' Cases Supports a Finding of Fairness

The first *Hanlon* factor – the strength of Plaintiffs' case – supports a finding of fairness. Disputed legal and factual issues on which Plaintiffs would have to prevail in order to succeed in any of the three consolidated cases were plentiful. Indeed, Plaintiffs have already suffered several unfavorable rulings on the merits. For example, the Court's decision on July 25, 2008, denying HP's Motion for Summary Judgment, included a discussion of Plaintiffs' substantive claims that was skeptical of Plaintiffs' class claims and raised some doubt as to whether even a statewide class would be approved. And, at the hearing on the motion for final approval of the settlement, this Court explained that there were substantial weaknesses in Plaintiffs' claims, and that the objectors failed to address these issues. (Tr. of Hearing, Jan. 28, 2011, at 7:10-9:3.)

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Support Final Approval

The second *Hanlon* factor – the risk, expense, complexity, and likely duration of further litigation – unquestionably supports final approval. To put it simply: the first of these cases was filed **over eight years ago**, and Plaintiffs did not achieve certification of any of the three classes. The myriad factual and legal obstacles facing Plaintiffs not only pose great risk of losing altogether, but also pose a great risk of spending several more years, thousands of attorney time, hundreds of thousands of dollars in costs, and vast resources of the Court, on an uncertain outcome. Accordingly, in light of the risk of proceeding with complex and costly litigation, the settlement is fair and reasonable.

### 3. The Risk of Maintaining Class Action Status Supports a Finding of Fairness

The next *Hanlon* factor – the risk of maintaining class action status – also supports a finding of fairness. Certifying a class, and maintaining that certification, would be exceedingly difficult. Indeed, in the *Ciolino* action, this Court **denied nationwide class certification** on July 25, 2008. In briefing completed prior to this Settlement, HP vigorously contested certification of

a California-only class, on multiple grounds.

In the *Rich* action, on June 23, 2009, Plaintiffs filed a motion to certify two classes – a damages class consisting solely of California consumers, and a proposed nationwide class for injunctive relief only. On December 7, 2009, HP filed its Opposition to Plaintiffs' motion for class certification, in which it raised multiple arguments that would have been difficult to overcome. Plaintiffs would face the same challenges to class certification in the *Blennis* action.

### 4. The Amount Offered In Settlement Also Supports Final Approval

The injunctive relief provided through the settlement Class addresses the core complaint in each of these actions by requiring additional disclosures regarding inkjet printing processes. As noted above, at the last hearing, this Court specifically recognized the significant risks to the class in recovering no damages. (Tr. of Hearing, Jan. 28, 2011, at 7:10-9:3 ("But if you look at the case that's not particularly strong on the merits and the fact that you don't have a particularly rich settlement doesn't mean as much").) But if the settlement is approved, class members will still obtain more than $1 million in e-credits.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings Also Favor Final Approval

The next *Hanlon* factor – the extent of discovery completed and the stage of the proceedings – also favors final approval. As discussed above, each of the three consolidated cases is procedurally advanced. Motions to dismiss, motions for class certification, and motions for summary judgment were all either decided or briefed prior to settlement. Moreover, the parties engaged in significant amounts of discovery and investigation, including: (1) the depositions of 17 witnesses; (2) the production of more than 250,000 pages of documents; (3) more than 100 written discovery requests; (4) the inspection of several of the HP Inkjet printers at issue; (5) consultations with industry personnel; (6) extensive work with experts and testing by those experts; (7) numerous interviews of witnesses and putative members of the classes; and (8) the evaluation of information provided by current or former employees of HP (including the HP engineers with primary responsibility for the design of some of the HP inkjet printer models at issue and matters related thereto). (*See* McCarthy Decl. (Dkt. #272) ¶ 26.)

### 6. The Experience and Views of Counsel Support Final Approval

The next *Hanlon* factor – the experience and views of counsel – also supports final approval of the Settlement. Both Class Counsel and counsel for HP are experienced in class-action litigation and other complex litigation, acted in good faith, and both have represented their clients' best interests in reaching the Settlement. (*See* McCarthy Decl. (Dkt. #272) ¶¶ 32.) After careful and thorough consideration, experienced Class Counsel have concluded that the Settlement is fair, adequate, and reasonable and in the best interests of the Class as a whole. (*See* McCarthy Decl. (Dkt. #272) ¶ 32.)

### 7. The Absence of a Governmental Participant Supports Final Approval

The parties notified the relevant state and federal governmental officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no governmental entity raised any objections or concerns about the settlement.

### 8. The Reaction of the Class Members to the Proposed Settlement Warrants Final Approval

The final applicable *Hanlon* factor – the reaction of the class members to the proposed settlement – further supports final approval. Over 13 million class members received e-mail notice, plus millions of others received publication notice. (*See* Azari Decl. (Dkt. No. 270)) ¶ 11.) Only three filed objections with the Court per the instructions in the notice. (*Id.* ¶ 24.) Only 810, a miniscule fraction of those who received e-mail notice, have excluded themselves. (*Id.* ¶ 23.) A total of 403,802 e-credits were validly claimed by class members. (*See* Danielson Decl. (Dkt. No. 285) ¶ 4.) The opt-outs and objections are thus less than a quarter of 1% of the claims. Accordingly, the claim and exclusion rate show that the class largely favors the settlement.

## C. The Settlement is Non-Collusive

On appeal at the Ninth Circuit, relying primarily on the Ninth Circuit's decision in *Bluetooth*, Mr. Frank contended that the settlement agreement at issue here was collusive. The Ninth Circuit did not implicitly or explicitly address any of his allegations of collusion, and for good reason. As a result of the **potential** for collusion, which exists in any class action settlement, the Ninth Circuit requires district courts to carefully scrutinize those settlements and awards of attorneys' fees to ensure that the interests and rights of absent class members are

protected. This Court did just that.

Unlike the district court in *Bluetooth*, which simply awarded the attorneys' fee amount that the defendant had agreed to pay, here the Court refused to award the attorneys' fee amount agreed to by the parties. (March 29, 2011 Order (Dkt. #287) at 13-15.) Instead, this Court independently analyzed the requested fee, and reduced it based on a comparison with the benefits to the class. (*Id.*)

This Court thus anticipated this Court's subsequent ruling in *Bluetooth*, that "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Bluetooth*, 654 F.3d at 948.

The Ninth Circuit held in *Bluetooth* (after the Court's Final Approval ruling in this case) that there **can be signs of potential** collusion even where collusion is absent from the face of an agreement. *Bluetooth*, 654 F.3d at 947. The Court specifically identified three warning signs of collusion: (1) counsel receiving a "disproportionate distribution of the settlement, or when the class receives no monetary distribution"; (2) parties negotiating a clear sailing agreement with respect to attorneys' fees; and (3) when the parties arrange for fees to revert back to defendants instead of being added to the class fund. Notably, the Ninth Circuit did not make a determination that the settlement in *Bluetooth* was collusive, nor did this Court find that the settlement in that case was unfair. *Bluetooth*, 654 F.3d at 950 ("we express no opinion on the ultimate fairness of what the parties have negotiated").

None of the three warning signs identified by the Ninth Circuit in *Bluetooth* justify revisiting this Court's prior ruling.

### 1. The First Warning Sign Was Not Present in this Case, and Was Adequately Addressed by the Court

The first warning sign exists "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947 (quoting cases). This warning sign was adequately

addressed by the Court in the prior Order, by explicitly considering whether counsel would receive a disproportionate distribution of the settlement and reducing the award of attorneys' fees to be commensurate with the amount of relief provided to the class. (March 29, 2011 Order at 13-15.) On remand, Class Counsel seek only the amount previously approved by the Court, which now equals only 20% of their lodestar. Indeed, even in *Bluetooth*, on remand the District Court granted attorneys' fees of 25% of the lodestar, despite heavy criticism of the value of the settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 168324, at *27 n.4 (C.D. Cal. July 31, 2012) ("Even the injunctive relief is basic and less than was originally sought.").

### 2. The Second Warning Sign – Existence of a Clear Sailing Agreement – Was Explicitly Considered by the Court, and Has Now Been Removed in its Entirety

The second "warning sign" identified in *Bluetooth*, the existence of a clear sailing agreement, also was factored in by the Court in the March 29, 2011 Order, which explicitly noted that while "courts in this circuit regularly have afforded a presumption of fairness to non-collusive settlement, the same deference is not appropriate in considering the fairness of an award of attorneys' fees." (March 29, 2011 Order (Dkt. #287) at 13:14-16.) Based on this principle, this Court closely scrutinized the value of the e-credits and injunctive relief to the class, and reduced the attorneys' fees award by $800,000. *Id.* This is precisely what the Ninth Circuit subsequently guided district courts to do when confronted with a clear-sailing provision. As stated in *Bluetooth*, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Bluetooth*, 654 F.3d at 948.[1]

---

[1] Further, the court in *Bluetooth* did not hold that settlements containing "clear sailing" provisions are necessarily collusive, as Mr. Frank proposes; and for good reason, as Mr. Frank's proposal would have the effect of requiring attorneys for the class and defendants to spend significant extra time and money contesting issues over which there is little or no dispute. This is wasteful. "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). It would also have the impact of detracting from the amount of time and effort that would otherwise be focused on providing relief to class members – exactly the thing Mr. Frank contends

Moreover, as described above, after remand of the case from the Ninth Circuit, the Parties agreed to a slight amendment to the Settlement Agreement to remove the following sentence from paragraph 44 of the Stipulation of Settlement: "HP does not oppose, and will not encourage or assist a third party in opposing, Class Counsel's request for attorneys' fees, costs and expenses up to Two Million Nine Hundred Thousand Dollars ($2,900,000.00), nor does HP contest the reasonableness of the amount." (*See* Supp. McCarthy Decl., Ex. A (Amendment to Stipulation of Settlement).)  In all other respects, the Stipulation of Settlement remains unchanged.

As the Court previously found, the record fully supports that the Stipulation of Settlement was the product of the Parties' extensive negotiations in good faith and at arm's length, which included multiple mediation sessions with three experienced and respected mediators. Nonetheless, given the extensive attention drawn by Mr. Frank to the second sentence of paragraph 44, the Parties after remand agreed in good faith to amend the Stipulation of Settlement to remove this clause and resubmit the settlement, as amended, to the Court.

### 3. There is no "Reversion"; this is not a Common Fund Settlement

On appeal Mr. Frank raised a new argument that he did not present to this Court: that the third *Bluetooth* "warning sign" – when any fees not awarded by the court "revert" to defendants instead of being distributed to the class – exists in this case.  The argument is meritless.  While the settlement does call for HP to keep any money not paid to class counsel, this money does not "revert back" to HP in any meaningful sense.  HP agreed to pay the amount ***awarded by*** the district court as reasonable, up to $2.9 million dollars in fees.  That negotiation was separate from the negotiation of the settlement, and this was not a common fund settlement.  Accordingly, the conclusion by this Court that class counsel was entitled to $1.5 million instead of the $2.3 million, would not have caused any money to move from the class to HP.

---

he seeks to avoid.  Additionally, it would discourage settling defendants from providing their best monetary offers to the class, knowing that they will have to spend money to pay counsel to contest a request for attorneys' fees, and that there will be no cap on those attorneys' fees.

## IV. CONCLUSION

These cases were heavily litigated with both sides expending significant resources. Based on consumer complaints from across the country, Plaintiffs expected to prove that HP deliberately engaged in commercial practices that were misleading and designed to push consumers to purchase replacement ink cartridges (a multibillion dollar market) even if not needed, or at a minimum earlier than they might be needed. HP aggressively fought back, and Plaintiffs did not achieve all they had set out to.

Ultimately, however, a settlement was reached that would improve disclosures on various platforms (owners manuals, product websites, packaging and pop warnings), requiring HP to be more transparent with consumers regarding ink usage. In addition, HP agreed to make available a maximum of $5 million in e-credits. The response to the settlement by the class was largely positive. Approximately 122,000 filed claims for e credits, only 800 class members chose to opt out and there were only a handful of objectors.

In order to finally resolve this case, and allow the benefits of the Settlement to finally reach these Class Members and future consumers of HP products, Plaintiffs respectfully request that this Court enter the accompanying Proposed Order granting final approval of the proposed settlement.

Respectfully submitted,

Dated: January 7, 2014            **COTCHETT, PITRE & McCARTHY, LLP**

By:   */s/ Justin T. Berger*
      NIALL P. McCARTHY
      JUSTIN T. BERGER
      840 Malcolm Road
      Burlingame, CA  94010
      Telephone:   (650) 697-6000
      Facsimile:   (650) 697-0577
      nmccarthy@cpmlegal.com
      jberger@cpmlegal.com

      *[signatures continued on next page]*

/ / /

| | |
|---|---|
| 1 | |
| 2 | Brian S. Kabateck<br>Richard L. Kellner<br>**KABATECK BROWN KELLNER LLP**<br>644 South Figueroa Street |
| 3 | Los Angeles, CA 90017<br>Telephone: (213) 217-5000 |
| 4 | Facsimile: (213) 217-5010<br>bsk@kbklawyers.com |
| 5 | rlk@kbklawyers.com |
| 6 | Steven N. Berk |
| 7 | **BERK LAW PLLC**<br>1225 15th Street, N.W. |
| 8 | Washington D.C. 20005<br>Telephone: (202) 232-7550 |
| 9 | Facsimile: (202) 232-7556<br>steven@berklawdc.com |
| 10 | Mark Andrew Chavez |
| 11 | **CHAVEZ & GERTLER LLP**<br>42 Miller Avenue |
| 12 | Mill Valley, CA 93941<br>Telephone: (415) 381-5599 |
| 13 | Facsimile: (415) 381-5572<br>mark@chavezgertler.com |
| 14 | Jon Cuneo |
| 15 | **CUNEO, WALDMAN & GILBERT LLC**<br>317 Massachusetts Avenue, Suite 300 |
| 16 | Washington, D.C. 20002<br>Telephone: (202) 789-3960 |
| 17 | Facsimile: (202) 789-1813<br>jonc@cuneolaw.com |
| 18 | Marc Howard Edelson |
| 19 | **EDELSON & ASSOCIATES LLC**<br>45 West Court Street |
| 20 | Doylestown, PA 18901<br>Telephone: (215) 230-8043 |
| 21 | Facsimile: (215) 230-8735<br>medelson@edelson-law.com |
| 22 | Stephen Garcia |
| 23 | **THE GARCIA LAW FIRM**<br>1 World Trade Center #1950 |
| 24 | Long Beach, CA 90831<br>Telephone: (562) 216-5270 |
| 25 | Facsimile: (562) 216-5271<br>sgarcia@lawgarcia.com |
| 26 | |
| 27 | *[signatures continued on next page]* |
| 28 | |

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** Master File No. C053580 JF (PVT)

13

|   |   |
|---|---|
| 1 | Michael D. Liberty |
| 2 | **LAW OFFICES OF MICHAEL D. LIBERTY**<br>1290 Howard Avenue, Suite 303<br>Burlingame, CA  94010<br>Telephone:     (650) 685-8085<br>Facsimile:      (650) 685-8086<br>mdlaw@pacbell.net |

Michael D. Liberty
**LAW OFFICES OF MICHAEL D. LIBERTY**
1290 Howard Avenue, Suite 303
Burlingame, CA  94010
Telephone:     (650) 685-8085
Facsimile:      (650) 685-8086
mdlaw@pacbell.net

Scott E. Shapiro
**LAW OFFICE OF SCOTT E. SHAPIRO, PC**
9701 West Pico Boulevard, Suite 110
Los Angeles, CA  90035
Telephone:     (310) 720-5501
Facsimile:      (310) 388-4612
scott.e.shapiro.esq@gmail.com

John Patrick McNicholas, IV
**McNICHOLAS & McNICHOLAS LLP**
10866 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90024
Telephone:     (310) 474-1582
Facsimile:      (310) 475-7871
pmc@mcnicholaslaw.com

Bruce Simon
**PEARSON, SIMON, WARSHAW & PENNY LLP**
44 Montgomery Street, Suite 2450
San Francisco, CA  94104
Telephone:     (415) 433-9000
Facsimile:      (415) 433-9008

Jonathan Shub
**SHUBLAW LLC**
1818 Market Street, 13th Floor
Philadelphia, PA  19106
Telephone:     (610) 453-6551
Facsimile:      (215) 569-1606
jshub@shublaw.com

David R. Buchanan
**SEEGER WEISS LLP**
One William Street
New York, NY  10004
Telephone:     (212) 584-0700
Facsimile:      (212) 584-0799
dbuchanan@seegerweiss.com

*Counsel for Plaintiffs and the Settlement Class and On Behalf of the Proposed Settlement Class*

---

Law Offices
COTCHETT, PITRE
& MCCARTHY, LLP

**PLAINTIFFS' RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** Master File No. C053580 JF (PVT)

14