SAMUEL G. LIVERSIDGE (SBN 180578)
SLiversidge@gibsondunn.com
CHRISTOPHER CHORBA (SBN 216692)
CChorba@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071
Telephone: (213) 229-7000
Facsimile:  (213) 229-7520

Attorneys for Defendant,
HEWLETT-PACKARD COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re: HP INKJET PRINTER LITIGATION | Master File No. C05-3580 JF |
| | **DEFENDANT HEWLETT-PACKARD COMPANY'S STATEMENT IN SUPPORT OF RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; EXHIBIT A** |
| This Document Relates To: | Hearing : TBD |
| All Actions | The Hon. Jeremy Fogel |

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ..................................................................................................................... 1

II. ARGUMENT ............................................................................................................................. 2

    A. Objectors Ignore The Ninth Circuit's Class Settlement Approval Factors
        And Improperly Attempt To Renegotiate The Settlement ............................................ 2

    B. The Ninth Circuit Panel Majority's Decision Does Not Support Objectors'
        Arguments, Nor Did That Opinion Disturb This Court's Analysis Of The
        Settlement Approval Factors ....................................................................................... 5

    C. The Court Should Sever Its Ruling On The Request For Attorneys' Fees
        From The Remainder Of The Settlement .................................................................... 7

III. CONCLUSION .......................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alliance to End Repression v. City of Chi.*,
  91 F.R.D. 182 (N.D. Ill. 1981) ................................................................................................ 2

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................................ 3

*Bowling v. Pfizer, Inc.*,
  922 F. Supp. 1261 (S.D. Ohio), *aff'd*, 102 F.3d 777 (6th Cir. 1996) ...................................... 8

*Bussie v. Allmerica Fin. Corp.*,
  1999 WL 342042 (D. Mass. May 19, 1999) ........................................................................... 8

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ............................................................................................................ 4

*Duhaime v. John Hancock Mutual Life Ins.*,
  989 F. Supp. 375 (D. Mass. 1997) .......................................................................................... 8

*Fleury v. Richemont N. Am., Inc.*,
  2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .......................................................................... 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 1, 2, 8

*In re Apple Computer, Inc. Deriv. Litig.*,
  2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ...................................................... 5

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................... 8

*In re HP Inkjet Printer Litig.*,
  716 F.3d 1173 (9th Cir. 2013) ..................................................................................... 1, 5, 6, 7

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ............................................................................................................ 6

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................................... 3

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ................................................................................................................ 5

*Strong v. BellSouth Telecomm. Inc.*,
  137 F.3d 844 (5th Cir. 1998) ................................................................................................... 8

*Yeagley v. Wells Fargo & Co.*,
  2008 U.S. Dist. LEXIS 5040 (N.D. Cal. Jan. 18, 2008), *rev'd on other grounds by*
  365 F. App'x 886 (9th Cir. 2010) ............................................................................................ 4

**Statutes**

28 U.S.C. § 1712 ............................................................................................................................ 1

Civil L.R. 54-5(a) .......................................................................................................................... 8

**Other Authorities**

S. Rep. No. 109-14 ........................................................................................................................ 7

# I. INTRODUCTION

Nearly three years ago, after presiding over the contentious litigation in these three consolidated cases for several years, the Court thoroughly reviewed the parties' settlement, analyzed each of the settlement approval factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), and determined that the settlement was fair, reasonable, and adequate. (*See* Dkt. Nos. 286, 287.) While, on May 15, 2013, a split panel of the Ninth Circuit reversed final approval of the settlement, that decision was based on a narrow ground relating to the method of calculation of attorneys' fees under CAFA. *See, e.g.*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("Our sole task on this appeal is to interpret and apply the attorneys' fees provisions of [28 U.S.C.] § 1712."). The panel majority's decision did not pass on the substance of the settlement or this Court's thorough analysis of the class settlement approval factors. The settlement remains fair, reasonable, and adequate, particularly when balanced against the significant hurdles facing Plaintiffs and the class if they continue to litigate these cases.

Ignoring the technical ground upon which the panel majority's decision was based, objectors seek to use that decision to uproot the Court's conclusions regarding the merits of the settlement and force the parties to *renegotiate* the settlement terms. Objectors effectively admit as much in their brief, arguing that "***the settlement is too low***," the agreement should be reworked (to "$2.2 million of value for the class and $0.7 million for the attorneys"), and that, in objectors' opinion, "class counsel left money on the table." (Dkt. No. 332 at 3, 5 (emphasis added).) Yet objectors offer no authority for their request to have this Court superintend the negotiations, and objectors do not (and cannot) cite anything in the panel majority's opinion to support a reconsideration of the Court's determinations regarding the settlement. To the contrary, the panel majority indicated approval of the Court's assignment of value to the injunctive relief provided by the settlement, *In re HP Inkjet Printer Litig.*, 716 F.3d at 1177 & n.3, and rejected some of the broad policy challenges to class settlements that objectors renew now on remand.

Moreover, as they have consistently done before, objectors fail to confront the substantial weaknesses of Plaintiffs' claims, the risks of further litigation (including class certification), and other *Hanlon* factors strongly supporting approval of the settlement. Instead, objectors continue to

make boilerplate objections and engage in baseless accusations of collusion despite compelling record evidence establishing the settlement was the result of several years of arm's-length negotiations conducted in good faith through several mediation sessions.

In sum, objectors do not offer any valid basis for revisiting this Court's previous conclusions and approving the proposed settlement as modified by the parties. For these and the other reasons below and in Plaintiffs' brief, HP respectfully requests that the Court enter the Order Granting Final Approval and Final Judgment.

## II.  ARGUMENT

### A.  Objectors Ignore The Ninth Circuit's Class Settlement Approval Factors And Improperly Attempt To Renegotiate The Settlement

The Ninth Circuit has cautioned that a court's role in evaluating the fairness, reasonableness, and adequacy of a settlement is not to debate whether the settlement could have been "better":

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.

*Hanlon*, 150 F.3d at 1027.

But objectors engage in precisely this sort of "Monday Morning Quarterbacking" here. In particular, they contend that "the settlement is too low," the settlement should be "$2.2 million of value for the class and $0.7 million for the attorneys," and that, in their opinion (without citing any evidence), "class counsel left money on the table." (Dkt. No. 332 at 3, 5.) These arguments flout the Ninth Circuit's directive in *Hanlon* that the relevant inquiry is not whether the settlement could have been "better." *See Hanlon*, 150 F.3d at 1027; *see also Alliance to End Repression v. City of Chi.*, 91 F.R.D. 182, 195 (N.D. Ill. 1981) ("By definition, a fair settlement need not satisfy every concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits.").

Notably, objectors' brief fails to address the factors that the Ninth Circuit has used to evaluate the fairness, reasonableness, and adequacy of a proposed class settlement, including the critical factors of the weaknesses of Plaintiff's claims and the risks of further litigation. (*See* Dkt. No. 332.) As the Court will recall, these cases have been fiercely contested for more than five years before the

parties reached settlement during which attorneys on both sides engaged in extensive motions practice and discovery.  Plaintiffs suffered several significant setbacks during the litigation—including the dismissal of several claims on the pleadings, the denial of nationwide class certification in one of the actions, and a determination by this Court that Plaintiffs' evidence was "weak" and that it would be very difficult to prove injury, causation, and damages.  (Dkt. No. 170 at 6, 7.)  In its 2011 evaluation, the Court correctly concluded that, in light of the weaknesses of Plaintiffs' claims and the risk of further litigation, the parties' settlement offered value to the class. (Dkt. No. 286 at 5-6; Dkt. No. 287 at 9-12.)  These facts have not changed in the last three years, and objectors do not argue otherwise.

Objectors also ignore that Plaintiffs in each of the three cases face significant factual and legal hurdles to obtaining class certification and ultimately proving their claims.  The Court recognized many of these obstacles in its order denying nationwide class certification in the *Ciolino* action, in which it correctly held that "the proposed nationwide class would be unmanageable" because of the choice of law issues that arise from certifying a nationwide class.  (Dkt. No. 170 at 10-11.)[1]  Although the Court also determined that Plaintiffs' evidence was sufficient to defeat HP's motion for summary judgment, it noted that this evidence was "weak."  (*Id.* at 6, 7.)  At the hearing on these motions, the Court also observed that "[n]one of us understand[s] what the actual claim is … What is the actual misrepresentation that the basis of this massive class claim has?" (Ex. A at 7:20-21, 8:7-8.)  After Plaintiffs' counsel discussed the LOI messages, the Court remarked that the message "also says, 'consider having a replacement cartridge available.'  That's hardly saying 'replace cartridge immediately ….'  Why would you replace the cartridge if it doesn't tell you to replace the cartridge?" (*Id.* at 15:7-9, 16:20-22.)  The Court also asked, "where are your damages? … [A]re we talking about a coupon, or are we talking about everybody who owns an HP printer gets .25 cents?" (*Id.* at 18:5-6, 31:8-10.)  And even if Plaintiffs could develop a plausible, class-wide theory of damages that survives last year's Supreme Court decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-35

---

[1] These manageability problems are not present in the context of settlements, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997), but the intervening law on this point has become worse for Plaintiffs, *see, e.g., Mazza v. Am. Honda Motor. Co.*, 666 F.3d 581, 590-94 (9th Cir. 2012).

3

(2013), "decid[ing] who gets the money" was a significant problem for Plaintiffs. (*Id.* at 34:18-19.) The Court has recognized that many of these same factual and legal challenges apply to *Rich* and *Blennis*. (Dkt. No. 287 at 2-3, 11-12; *see also* Dkt. No. 284 at 7:10-9:3.)

Objectors also failed to address these critical factors in 2011. (Dkt. Nos. 263, 278.) At the hearing on the motion for final approval, this Court explained:

> And the individual class member's recovery is pretty small. I think that's all true. But the – if the recovery that they would have had if the case had gone to trial or should have had is also very small because it's not a very big case in the first place.
>
> That's something the court has to look at. And none of the objections really address the merits of the claims.
>
> …
>
> And the court's view consistently has been that while claims were stated, the court would have dismissed the action otherwise. ***The claims are not particularly strong, and it's simply because the whole idea that a consumer would be damaged by a false low ink warning is a problematic concept***.
>
> …
>
> ***But if you look at the case that's not particularly strong on the merits and the fact that you don't have a particularly rich settlement doesn't mean as much***.

(Dkt. No. 284 at pp. 7:18-8:1, 8:9-15, 8:25-9:3 (emphases and ellipses added).) Similarly, as the Court observed in its 2011 evaluation of the parties' settlement, "[t]he objectors uniformly failed to address [the weaknesses of Plaintiffs' case]." (Dkt. No. 287 at 11.) On appeal, objectors effectively conceded their failure to address the weaknesses of Plaintiffs' case, arguing that "their objection was not based on the question of the size of the settlement relative to the strength of the case." (*See* Ninth Circuit Dkt. No. 16 at 17.)

Objectors continue to ignore these important considerations in their present brief. But comparing the settlement to the strength of the case goes to the heart of the analysis that this Court must conduct. *See*, *e.g.*, *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040, at *11 (N.D. Cal. Jan. 18, 2008) ("Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." (quoting

4

1  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,
2  424-25 (1968) (alterations in original))), *rev'd on other grounds by* 365 F. App'x 886, 887 (9th Cir.
3  2010).

4      Instead of addressing the *Hanlon* factors, objectors assert—without any factual support—that
5  the settlement resulted from Plaintiffs' counsel's "self-dealing," to which HP "tacitly acquiesced."
6  (Dkt. No. 332 at 1.)  This is a very serious charge that demands more than the mere speculation
7  offered by objectors.  The *actual* record details a hard-fought, arm's length, and good faith
8  negotiation.  In fact, the parties ultimately reached settlement only after several sessions involving
9  multiple well-respected mediators.  The parties' mediator who ultimately oversaw the final deal—
10 Judge James L. Warren—has submitted a declaration explaining that the settlement was negotiated
11 by the parties at arm's length and in good faith.  (Dkt. No. 269, ¶ 5.)  *See In re Apple Computer, Inc.*
12 *Deriv. Litig.*, 2008 U.S. Dist. LEXIS 108195, at *11-12 (N.D. Cal. Nov. 5, 2008) (crediting
13 declaration submitted by the parties' mediator in concluding that the settlement negotiations were
14 free of collusion).

15 **B.   The Ninth Circuit Panel Majority's Decision Does Not Support Objectors' Arguments,
16        Nor Did That Opinion Disturb This Court's Analysis Of The Settlement Approval Factors**

17     In their attempt to obtain the wholesale reconsideration of the Court's conclusions regarding
18 the parties' settlement, objectors misrepresent that the panel majority's opinion addressed and ruled
19 in their favor on their challenges to the merits of the parties' settlement.  (*See* Dkt. No. 332 at 1
20 (arguing that they "successfully appealed the earlier approval of fee *and settlement* to the Ninth
21 Circuit") (emphasis added).)  Tellingly, objectors actually provide a citation to the panel majority's
22 opinion only *once*, and in that circumstance for an uncontroversial proposition that has nothing to do
23 with the substance of the settlement.  (*See* Dkt. No. 332 at 2 (citing *In re HP Inkjet Printer Litig.*, 716
24 F.3d at 1186 n.18 ("Even under the lodestar method, the district court must adjust the amount of any
25 fees award to account for the degree of success class counsel attained." (internal quotations and
26 citations omitted))).)

27     This is not surprising, given that the panel majority's decision was based on a technical
28 ground unrelated to the merits of the parties' settlement and/or the focus of objectors' appeal.

1  Specifically, in a 2-1 decision, the panel majority reversed the Court's order granting final approval
2  of the settlement on the narrow basis that the Court applied an incorrect method of calculating
3  attorneys' fees under CAFA. *See In re HP Inkjet Printer Litig.*, 716 F.3d at 1186. The panel
4  majority expressly declined to rule on any of objectors' other contentions, stating that "[o]ur sole task
5  on this appeal is to interpret and apply the attorneys' fees provisions of § 1712." *Id.* at 1175, 1178.

6  Not only is there nothing in the opinion warranting that this Court revisit its evaluation of the
7  *Hanlon* factors, but the panel majority indicated its *approval* of this Court's assignment of value to
8  the injunctive relief provided to the class. The panel majority stated "that the district court could
9  reasonably assume that 'injunctive relief would be of benefit to some number of class members,
10 because the groups of present and future consumers of HP printer products overlap." *Id.* at 1177 n.3
11 (agreeing with and quoting Judge Berzon's dissenting opinion). Further, with respect to the handling
12 of class counsel's fees request, the panel majority noted that this Court observed "its independent
13 duty to determine the reasonableness of any fees award" and found that it "meaningfully reduced the
14 proposed award." *Id.* at 1177.

15 Although objectors pressed their broad policy challenges to class settlements, the panel
16 majority rejected many of those arguments and declined to reach the remainder. For example,
17 objectors argued on appeal—as they do now—that prospective injunctive relief and coupons are
18 "worthless." (*Compare* Ninth Cir. Dkt. No. 16 at 34-41, *with* Dkt. No. 332 at 1-3.) But the panel
19 majority *rejected* these contentions, and instead reaffirmed that injunctive relief is the primary form
20 of relief available under California's unfair competition laws and that coupons can be an important
21 part of settlements involving injunctive relief as an ancillary way to add value for settlement class
22 members. *In re HP Inkjet Printer Litig.*, 716 F.3d at 1177 n.3 (reaffirming that "injunctions 'are the
23 primary form of relief available under [California's unfair competition laws] to protect consumers
24 from unfair business practices,' while monetary awards are a 'type of ancillary relief'" (quoting
25 *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011) (alterations in original))).

26 In addition, the panel majority approved the continued use of coupon and other in-kind
27 settlements in general, *id.* at 1178 n.4 ("The legislative history of CAFA makes clear that Congress
28 did 'not intend to forbid all non-cash settlements.'" (quoting S. Rep. No. 109-14, at 31)), and noted

6

that "coupon or other in-kind settlements may be particularly appropriate in situations 'where they provide real benefits to consumer class members,'" *id.* (quoting S. Rep. No. 109-14, at 31).  As discussed above, this Court correctly concluded that, in light of the relative weaknesses of Plaintiffs' case and the risk of further litigation, the parties' settlement offers value to the class.  (Dkt. No. 286 at 5-6; Dkt. No. 287 at 9-12.)

**C.     The Court Should Sever Its Ruling On The Request For Attorneys' Fees From The Remainder Of The Settlement**

Despite the passage of more than three years since the parties reached the proposed settlement, and more than eight years since the first case was filed, the settlement benefits have yet to be issued to the class.  Given the significant delay the parties' settlement already has experienced, and to facilitate the prompt resolution of the objections to the settlement, HP respectfully requests that the Court sever the attorneys' fees request from the underlying settlement benefits.

The attorneys' fee request is—and always has been—the objectors' focus.  (Dkt. No. 332 at 1-2 (arguing that class counsel engaged in "self-dealing" because counsel allegedly received more in attorneys' fees than the class received in benefits); *see also* Ninth Circuit Dkt. No. 16 at 16-27 (same); Dkt. No. 278 at 14 (same); Dkt. No. 263 at 14-17 (same).)  They also freely admit that their "objection is brought … to create precedent deterring future settlements designed to benefit attorneys at the expense of their putative clients." (Ninth Circuit Dkt. No. 16 at 16.)  There is little doubt that objectors intend to take this case back up to the Ninth Circuit for another multi-year appeal, in hopes of "creat[ing] precedent" on fees in class settlements.  (*See id.*)  Yet objectors' continued pursuit of their attacks on class counsel's request for $1.5 million in costs and fees (which already reflects a significant discount from a lodestar of over $7 million, and their original request for approximately $2.3 million) should not be a basis to yet again delay for several years the entry of a final judgment and the issuance of the settlement benefits in this case.

To avoid this result, the Court should sever any fees award from the rest of the settlement.  Specifically, the Court has the authority to grant final approval of the parties' settlement and defer its ruling on class counsel's fees request until after the settlement benefits are distributed.[2]  Objectors

---

[2]  *See*, *e.g.*, *Fleury v. Richemont N. Am., Inc.*, 2008 WL 3287154, at *1, 3 (N.D. Cal. Aug. 6, 2008)
[Footnote continued on next page]

7

previously have advocated for a similar bifurcation, arguing in their appellate briefs for a procedure that "separates the question of settlement fairness and the fee request":

> The fairness hearing decides whether the settlement is fair; the parties **then** litigate the fee request after the redemption rate is known (or, in the alternative, litigate at the fairness hearing what percentage of the value of the redeemed coupons class counsel will receive, with class counsel then applying for an award on a periodic basis as redemptions are realized and verified with the court).

(Ninth Cir. Dkt. No. 59 at 18-19 (emphasis added).) Indeed, the sequence that HP proposes of the Court ruling on the merits and issuing a judgment before attorneys' fees are considered is the practice in other types of civil litigation, where fee requests are due *after* a judgment is entered. *See* Civil L.R. 54-5(a) (providing that "motions for awards of attorneys' fees by the Court must be served and filed within 14 days of judgment by the District Court"). Because this authority is undisputed, the Court should rule at this stage on the parties' request for final approval of the settlement and defer ruling on class counsel's fees request.

To be clear, this procedure also is entirely consistent with the Ninth Circuit's direction that "the settlement *taken as a whole* [including any fees provision] must be examined for overall fairness …. The settlement must stand or fall *in its entirety*." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1026) (alteration added, emphases and ellipses in original). HP does not propose that the Court *ignore* the fees request at this

---

[Footnote continued from previous page]
(granting final approval of class settlement and awarding some attorneys' fees, but deferring ruling on the balance of plaintiffs' fees request "until after [the court] has a sense of the actual results obtained by the settlement"); *Strong v. BellSouth Telecomm. Inc.*, 137 F.3d 844, 848, 852-53 (5th Cir. 1998) (noting that the trial court had "entered a final order approving the Agreement, as amended, and expressly reserved the determination of attorneys' fees, if any, to be paid to plaintiffs' counsel until after the parties had provided the court with information concerning the distribution of benefits"); *Bussie v. Allmerica Fin. Corp.*, 1999 WL 342042, at *3 (D. Mass. May 19, 1999) (structuring the fee award in stages: the court "provisionally approve[d] the payment of attorneys' fees in the sum of $7,644,535 based on the estimated value of the settlement," "authorize[d] the immediate payment of $4 million of that amount," and deferred ruling on the balance, which was to be held in escrow until further court order); *Duhaime v. John Hancock Mutual Life Ins.*, 989 F. Supp. 375, 378-79 (D. Mass. 1997) (similarly structuring the attorneys' fees award in stages in order "to make sure the fee awarded is appropriate to the value actually received by the class members"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-85 (S.D. Ohio) (holding back a large proportion of the fee award until additional "future" benefits to class were actually paid into the class fund), *aff'd*, 102 F.3d 777 (6th Cir. 1996).

stage, but that it instead concentrate on that request only insofar as it is necessary to weigh the settlement approval factors and apply Ninth Circuit precedent.  Under the proposed procedure, the Court may still "scrutin[ize]" any and all aspects of the settlement and class counsel's fees request "for evidence of collusion or other conflicts of interest" in determining whether to approve the parties' settlement as fair, reasonable, and adequate.  *See id.* at 947-49.  The Court may undertake that analysis now, and defer its decision on *whether* to award such fees and, if so, the *amount* of any fees.  Under the proposed procedure, the Court still would issue two orders, but simply would delay ruling and issuing the order on class counsel's fees request until after the settlement benefits are distributed.[3]  The bifurcated procedure that HP proposes above allows final judgment to be entered and settlement benefits to be issued to the class without further delay resulting from objectors' likely appeal of this Court's ruling on class counsel's fees request.

       Alternatively, because objectors concede that the Court properly may award Plaintiffs' counsel "**$0.5 million in fees plus expenses**" (Dkt. No. 332, at 2-3 (emphasis added)), the Court could consider awarding fees in this amount.

### III. <u>CONCLUSION</u>

       Given the value conferred on the class by the settlement, particularly in light of the substantial questions surrounding Plaintiffs' claims, HP respectfully requests that the Court again reject the objections and approve the settlement as fair, reasonable, and adequate.

Dated:  February 6, 2014                GIBSON, DUNN & CRUTCHER LLP

                                       /s/ Samuel G. Liversidge*
                                  Samuel G. Liversidge
                                  Attorneys for Defendant Hewlett-Packard Company

                                  *I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

---

[3] When it approved the parties' settlement in 2011, the Court issued separate orders on the settlement (Dkt. No. 286) and class counsel's fees request (Dkt. No. 287).