SAMUEL G. LIVERSIDGE (SBN 180578)
SLiversidge@gibsondunn.com
CHRISTOPHER CHORBA (SBN 216692)
CChorba@gibsondunn.com
ZATHRINA PEREZ (SBN 266881)
ZPerez@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520

Attorneys for Defendant,
HEWLETT-PACKARD COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: HP INKJET PRINTER LITIGATION | Master File No. C05-3580 JF |
| | **DEFENDANT HEWLETT-PACKARD COMPANY'S OPPOSITION TO OBJECTORS' MOTION TO DECERTIFY THE CLASS OR, IN THE ALTERNATIVE, DISQUALIFY CLASS COUNSEL** |
| | **SUPPORTING DECLARATIONS OF SAMUEL G. LIVERSIDGE AND CHRISTOPHER CHORBA** |
| This Document Relates To:<br><br>All Actions | Hearing<br>Date:    September 5, 2014<br>Time:    2:00 p.m.<br>Courtroom 3 – Fifth Floor<br>The Hon. Jeremy Fogel |

**TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A.  The Objectors Have Not Identified Any Legal or Factual Grounds for Decertifying the Settlement Class or Rejecting the Settlement ................................... 2

    B.  Recent Authority Since the May 2014 Hearing Supports Final Approval ................... 5

III. CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Eubank v. Pella Corp.*,
   2014 U.S. App. LEXIS 10332 (7th Cir. June 2, 2014) .............................................................. 5, 6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................................... 1, 9

*In re Bluetooth Headset Products Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011) ......................................................................................................... 7

*In re Ferrero Litig.*,
   2014 U.S. App. LEXIS 13780 (9th Cir. July 16, 2014) ................................................................. 7

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) ................................................................................................... 4, 6

*In re Quaker Oats Labeling Litig.*,
   2014 U.S. Dist. LEXIS 105165 (N.D. Cal. July 29, 2014) ............................................................ 8

**Statutes**

28 U.S.C. § 1715(b)(5) ........................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23(e)(3) ....................................................................................................................... 2

## I. INTRODUCTION

The issue before the Court is whether to approve—for the second time—the proposed settlement of these consolidated consumer class actions. The Court first reviewed the parties' settlement nearly four years ago, analyzed each of the settlement approval factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), and determined that the settlement was fair, reasonable, and adequate.

Objectors Kimberly Schratwieser and Theodore Frank now claim, in their latest attempt to derail the settlement in these cases, that the class should be decertified or, in the alternative, that the Cotchett firm should be disqualified from representing the class because of a proposed settlement reached in unrelated shareholder derivative litigation relating to HP's acquisition of Autonomy Corporation. (*In re Hewlett-Packard Company Shareholder Derivative Litig.*, Case No. C-12-6003-CRB (N.D. Cal.) ("*Autonomy*")). This Motion is not brought in good faith. The Objectors offer *zero* support for their accusations that "the parties were actually colluding" and that "HP agreed to compensate class counsel with a separate side agreement to represent HP." (*See* Objectors' Mot., Dkt. No. 338 ("Mot."), at 4-5.) These are serious charges and the Federal Rules of Civil Procedure (including Rule 11) demand more than the baseless speculation offered by the Objectors.

The record establishes that the settlement in this case resulted from several years of arm's-length negotiations conducted in good faith through several mediation sessions overseen by respected mediators and a former U.S. District Judge. The settlement in this case in fact was reached *years* before the *Autonomy* case even was filed, and the shareholder derivative actions have absolutely *nothing* to do with the consolidated consumer class actions before this Court. The *Autonomy* settlement (which itself was overseen by a respected jurist—retired U.S. District Judge Vaughn R. Walker) is not a "side agreement" under the Federal Rules of Civil Procedure or the Class Action Fairness Act, and the Objectors have no legal or factual support for the extraordinary relief they seek.

As with their previous attempts to uproot the Court's conclusions regarding the merits of the parties' settlement, the Objectors' present effort fails to provide any valid basis for revising those conclusions. For these and the other reasons set forth below, HP respectfully requests that the Court deny the Objectors' Motion and approve the parties' settlement.

DEFENDANT'S OPPOSITION TO OBJECTORS' MOTION TO DECERTIFY OR, IN THE ALTERNATIVE, DISQUALIFY CLASS COUNSEL                                   Master File No. C05-3580 JF

## II. ARGUMENT

### A. The Objectors Have Not Identified Any Legal or Factual Grounds for Decertifying the Settlement Class or Rejecting the Settlement

Instead of identifying any valid basis for revisiting this Court's prior certification of the settlement class and its conclusion that the parties' settlement is fair, reasonable, and adequate, the Objectors offer only speculative assertions of "collusion" based on their mischaracterization of the *Autonomy* letter as a "side agreement" to the Inkjet settlement. (Mot. at 4-5.) Their argument is legally and factually meritless.

The Federal Rules of Civil Procedure require the disclosure of side agreements—that is, "any agreement made in connection with the proposal" of settlement. Fed. R. Civ. P. 23(e)(3). In seeking preliminary approval of their settlement on August 26, 2010, the parties complied with this Rule and filed the only agreement that was made in connection with their settlement—the lengthy Stipulation of Settlement (Dkt. No. 253-2), and, after remand, their amendment to the Stipulation of Settlement (Dkt. No. 330-1 at pp. 4-7). There were no "side deals" or separate agreements in connection with the settlement of these actions. (Declaration of Samuel G. Liversidge ("Liversidge Decl.") ¶¶ 2-5; Declaration of Christopher Chorba ("Chorba Decl.") ¶¶ 2-5.) Likewise, the Class Action Fairness Act ("CAFA") requires the defendant to provide a notice to federal and state officials that, among other things, discloses "any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants." 28 U.S.C. § 1715(b)(5). Once again, the parties complied with this provision by providing notice of the settlement agreement to federal and state officials in September 2010. (*See* Dkt. No. 257 at 2.)

The *Autonomy* engagement letter does not remotely qualify as an "agreement made in connection with the proposal" of settlement (Fed. R. Civ. P. 23(e)(3)) or a "settlement or other agreement contemporaneously made between class counsel and counsel for the defendants" (28 U.S.C. § 1715(b)(5)) for several reasons:

*First*, the agreements in both cases were not "contemporaneously made" (*see* 28 U.S.C. § 1715(b)(5))—the *Autonomy* letter is dated May 21, 2014 (Dkt. No. 338-1 at pp. 73-79), almost *four years* after the settlement of these Inkjet class actions (Dkt. No. 253-2 at pp. 2-54), and the *Autonomy*

...

engagement remains subject to the approval of the court.

*Second*, the *Autonomy* matter is completely unrelated to the parties' settlement of these consolidated class actions. The settlement in these Inkjet class actions resolve consumer claims based on HP's Inkjet printers (Dkt. No. 253-2 at pp. 3-7), whereas the *Autonomy* settlement resolves certain shareholder derivative claims brought by, among others, the Cotchett firm and arising from HP's acquisition of Autonomy (Dkt. No. 338-1 at pp. 29-36).

On June 30, 2014, the shareholder plaintiffs in *Autonomy* and HP entered into a settlement in which, among other things, the plaintiffs (through their counsel, including the Cotchett firm) agreed to assist HP in lawsuits, arbitrations, or mediations that HP may bring against certain former Autonomy directors, officers, and/or employees. (Dkt. No. 338-1 at pp. 4-70.) For purposes of effectuating this provision, HP entered into an engagement with the plaintiffs' counsel (which is subject to court approval and thus has not yet been executed by the Cotchett firm) whereby counsel agreed to assist HP in connection with "claims relating to the acquisition of Autonomy Corporation plc and/or the aftermath of that acquisition." (*Id*. at p. 73.) The letter was attached to the publicly filed settlement. (*Id*. at pp. 73-79.) These future services have no conceivable connection to the Inkjet settlement, and the letter cannot in good faith be called a "side agreement" to a class action settlement that was reached almost four years ago.

In addition to the lack of legal support for the relief sought in their Motion, the Objectors also fail to provide any factual support for their assertions that "the parties were actually colluding" and that "[t]here is no dispute that HP agreed to compensate class counsel with a separate side agreement to represent HP." (Mot. at 4-5.) After remand of the case from the Ninth Circuit, the parties agreed to amend the settlement agreement to remove a provision that received unwarranted attention by the Objectors. Specifically, in January 2014, the parties removed the so-called "clear sailing" provision in which HP agreed not to oppose a request for attorneys' fees and costs of up to $2.9 million. (Dkt. No. 330-1 at pp. 5-7.) The Objectors contend that the amendment was "illusory" and the product of collusion. (Mot. at 4.) They say that HP did not put up enough resistance to the fee request and that the alleged "clear sailing" provision was only removed because "there was an undisclosed side-agreement not to make any serious effort to challenge class counsel's fee request." (*Id*.) This

3

assertion is beyond reckless.  The Objectors offer no support for the assertion, and there is none.  To the extent the removal of the "clear sailing" provision had any impact at all, it impacted *all* class counsel, and not just the Cotchett firm.  And it was not provided in exchange for anything, much less an agreement in an unrelated lawsuit.  (Liversidge Decl. ¶ 5; Chorba Decl. ¶ 5.)

The actual facts regarding the fees requested and awarded in these cases tell a much different story from the one the Objectors are trying to tell.  Class counsel initially requested attorneys' fees in the amount of approximately $2.3 million, which already reflected a significant reduction from their lodestar figure (by ***68%***), and about $600,000 in costs.  (Dkt. No. 287 at p. 14; Dkt. No. 271 at p. 24.)  Citing its independent duty to determine whether the fee award was fair, this Court conducted a rigorous analysis to determine the fees and expenses, reduced the fee request by ***35%***, and awarded class counsel $1.5 million in fees and $596,990.70 in expenses.  (*Id.* at pp. 14-15.)

As detailed in the parties' renewed briefs in support of final approval (Dkt. Nos. 330, 334), the split panel of the Ninth Circuit's decision to reverse final approval of the settlement was based upon the narrow, technical ground that the Court applied an incorrect method for calculating attorneys' fees under CAFA.  *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1186 (9th Cir. 2013).  Following remand, class counsel reduced their request for fees and costs and sought only the amounts that the Court originally granted—$1.5 million in fees (80% reduction in their lodestar) and $596,990.70 in costs.  (Dkt. No. 329 at p. 5; Dkt. No. 330 at p. 14.)  Nonetheless, in a February 6, 2014 filing, HP opposed the award of even this reduced fee amount.  In its written submission, HP argued for an additional $1 million *reduction* to class counsel's fee request, which would bring the potential fee award down to ***7%*** of class counsel's lodestar.  (Dkt. No. 334 at p. 12.)  HP's counsel again made this point at the final approval hearing, stating that the Court had the option of awarding "$500,000 in fees plus costs," rather than the $1.5 million requested by Plaintiffs.  (Transcript of May 23, 2014 Proceedings, Dkt. No. 340 at pp. 12:19-13:13, 13:24-14:4.)  In doing so, HP's counsel made clear that he was "free now to make" these arguments because of the removal of the so-called "clear sailing" provision.  (*Id*. at p. 14:9-14.)

Stripped of their baseless accusations, the Objectors have nothing to offer in support of their claims of collusion.  The record evidence establishes that the Inkjet settlement followed hard-fought,

4

arm's length, and good faith negotiations spanning several years and that all took place before the *Autonomy* litigation was even filed, and before the mediation that led to the proposed settlement of the *Autonomy* litigation even began. (Dkt. No. 338-1 at p. 185 [Declaration of Honorable Vaughn R. Walker ¶ 7].) The negotiations of the settlement of the Inkjet cases included multiple mediation sessions, informal meetings, and telephone calls with several highly respected and nationally-recognized mediators—the Honorable Daniel Weinstein of JAMS, the Honorable James L. Warren of JAMS, and Alexander S. Polsky, Esq. of JAMS. (Declaration of the Honorable James L. Warren, Dkt. No. 269 ¶¶ 3-4; Declaration of Samuel G. Liversidge in Support of Statement in Support of Final Approval of Class Action Settlement, Dkt. No. 268 ¶ 3; Declaration of Niall P. McCarthy in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Dkt. No. 272 ¶ 27.) Judge Warren submitted a declaration detailing the parties' negotiations over which he presided and stated:

> During the mediation sessions and telephone conferences, all parties gave detailed presentations covering the merits of the case, their potential defenses, the likelihood of class certification, and the risks each [party] faced if it decided to go forward with litigation. The mediation sessions included extensive analysis and dialogue regarding the factual and legal positions of the parties including, on October 23, 2007, having an HP engineer and a proposed expert retained by Plaintiffs' counsel give presentations to assembled counsel concerning the technical issues underlying the parties' disputes.

(Dkt. No. 269 ¶ 3.) In addition to the mediation sessions, the parties engaged in numerous formal and informal in-person meetings and telephone calls between counsel regarding a potential global settlement of these consolidated class actions as well as similar lawsuits involving HP's Laserjet printers. (Dkt. No. 268 ¶ 3; Dkt. No. 272 ¶ 27.)

**B.     Recent Authority Since the May 2014 Hearing Supports Final Approval**

The Objectors also use their Motion as a vehicle for rearguing the underlying fairness, reasonableness, and adequacy of the settlement. Specifically, on the last page of their Motion, they contend that the out-of-circuit decision in *Eubank v. Pella Corp.*, 2014 U.S. App. LEXIS 10332 (7th Cir. June 2, 2014), requires a rejection of the proposed settlement because the purported presence of a "reversion" clause "makes the settlement unfair." (Mot. at 5.) This contention is meritless. The appellate court in *Eubank* described the settlement as "inequitable—even scandalous," because, among other things:

5

    (a) the lead partner at the law firm who served as lead counsel in *Eubank* was the son-in-law of the original named plaintiff;

    (b) plaintiff's counsel and his wife (another partner at that same law firm) were embroiled in lawsuits charging them with misappropriation of assets and misconduct;

    (c) the financial needs of the partners resulting from these lawsuits "drove the settlement of this case";

    (d) plaintiff's counsel was subject to disciplinary proceedings during the settlement approval process, which culminated in a suspension from practicing law for 30 months because of repeated misconduct; and

    (e) early in the case, lead counsel added four additional named plaintiffs and then quickly dropped the new plaintiffs when they opposed preliminary approval of the settlement.

2014 U.S. App. LEXIS 10332, at *9, 11-19.  The misconduct in *Eubank* was so egregious that the Court of Appeals took the extraordinary step of *removing class counsel* from participating in the case on remand.  *Id*. at *35.

In stark contrast, while the Ninth Circuit panel majority in these cases reversed the Court's order granting final approval of the settlement upon a technical ground, the panel majority indicated its *approval* of the assignment of value to the injunctive relief that the settlement provided to the class.  *See, e.g.*, *In re HP Inkjet Printer Litig.*, 716 F.3d at 1177 n.3, 1186 (agreeing with and quoting Judge Berzon's dissenting opinion: "[T]he district court could reasonably assume that 'injunctive relief would be of benefit to some number of class members, because the groups of present and future consumers of HP printer products overlap.").

In addition, the settlement in *Eubank* "directed [the defendant] to pay $11 million in attorneys' fees to class counsel," including a $2 million advance of these fees before even notice of the settlement was sent to the class.  *Id*. at *15, 20.  By contrast, the parties here never agreed to a specific amount of attorneys' fees or any "reversion" of unpaid fees to HP.  Instead, the settlement agreement and notices specifically apprised the class that HP would only pay those fees and costs "approved" or "awarded" by the Court. (Dkt. No. 253-2 at pp. 21-22; Dkt. No. 253-4 at p. 13; Dkt. No. 253-7 at p. 2.)  Further, the agreement and notices did not provide that any amount sought by Plaintiffs and not awarded by the Court would *increase* the monetary benefits to the class.  (*Id.*)  Accordingly, it was apparent that the class never would receive any portion of the fees, even if the

1    Court did not award any fees. That is because this was not a "common fund" settlement from which
2    the fees would be paid.[1]

3    Even if the Court considered this issue, however, a purported "reversion" does not "make the
4    settlement unfair," as the Objectors have argued. (*See* Dkt. No. 338 at p. 6.) As the Ninth Circuit has
5    held, a reversion clause should be considered as part of the district court's *overall* analysis of fairness
6    of settlement, but such a clause is not—as the Objectors continue to assert—a *per se* basis to reject a
7    settlement. *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 947-50 (9th Cir. 2011).
8    Nothing in *Eubank* is to the contrary.

9    If anything, the recent decisions within this Circuit since the May 2014 hearing provide
10   further support for approving the settlement. For example, the Ninth Circuit recently upheld the final
11   approval of a consumer class action settlement that provided "substantial injunctive relief" that
12   addressed the primary conduct challenged in the action and that awarded attorneys' fees to class
13   counsel under the lodestar method. *In re Ferrero Litig.*, 2014 U.S. App. LEXIS 13780, at *2, 5 (9th
14   Cir. July 16, 2014). The court rejected the objections that "the value of the injunctive relief was too
15   speculative to be ascertainable and, in any event, benefits 'society at large' rather than the class
16   members themselves," because "the injunctive relief in this case is meaningful and consistent with the
17   relief requested in plaintiffs' complaint." *Id*. at *4.

18   As in *Ferrero*, the disclosures provided through the injunctive relief in the settlement here
19   directly address the core claims in the Inkjet actions. (Dkt. No. 267 at pp. 9-10; Dkt. No. 271 at
20   pp. 11-12; Dkt. No. 329 at pp. 16-17; Dkt. No. 334 at p. 9.) The Ninth Circuit in *Ferrero* also
21   rejected objections to the settlement based on the presence of so-called "clear sailing" and "reversion"
22   provisions, and it confirmed that the mere presence of these provisions does not invalidate a
23   settlement. 2014 U.S. App. LEXIS 13780, at *6 (holding that "the district court did not abuse its
24   discretion in concluding that the settlement survived [the] scrutiny [required by *Bluetooth*].").

---

[1] For this reason, it is inaccurate to describe the settlement as providing a "rever[sion]" to HP. (Mot. at 6.) HP's only agreement was to pay the amount *awarded by the Court*, and to this day it has paid nothing. (Dkt. No. 253-2 at pp. 21-22.) Accordingly, there is nothing to "revert" to HP and the Objectors' argument continues to mischaracterize the settlement in this case. In addition, the fee award was separate from the settlement benefits provided to class members (*Id*. at pp. 21-22), so the settlement would still go forward even if the Court awarded zero attorneys' fees.

7

Similarly, just two weeks ago, Judge Seeborg issued an order granting final approval of a consumer class action settlement despite similar objections that the settlement only provided injunctive relief to the class and contained several *Bluetooth* "warning signs":

1. Judge Seeborg rejected the contention of the objectors in that case that the mere presence of the *Bluetooth* factors alone warrants a rejection of the settlement (*In re Quaker Oats Labeling Litig.*, No. 10-cv-00502-RS, Dkt. No. 195): "While at first blush, some of the 'warning signs' discussed in [*Bluetooth*] might appear to be present here, the parties have adequately established that the settlement, including the provisions regarding attorney fees, are reasonable, fair, and not the product of collusion, or any disregard for the interests of the class." *In re Quaker Oats Labeling Litig.*, 2014 U.S. Dist. LEXIS 105165, at *2-3 (N.D. Cal. July 29, 2014).

2. The court also explained that because there was no "common fund," the fee amount did not impact the amount available to the settlement class:

> Nevertheless, the facts here establish that the fee award in no sense can be seen as diminishing the cash available to the class, as it would in a prototypical 'common fund' case. First, the fee award is based on statute, not a common fund theory. Moreover, were some portion of the amount defendant was willing to pay in fees instead awarded to the members of the class, it would could not be economically distributed, and thus would at most benefit the class indirectly, through a cy pres recipient. Finally, the fees requested [$760,000] are relatively modest, and do not reflect the type of contingency fee 'windfall' that sometimes results when fees are calculated as a percentage of a large cash recovery. Thus, the facts here support no inference of impropriety that would warrant rejecting either the settlement agreement or the requested fees.

*Id.* at *3-4.

3. The court also rejected the objectors' contention that the settlement could have been "better":

> In essence, the objections reduce to a complaint that a fee award is improper in the absence of a cash recovery by class members, or that more favorable settlement terms might have been obtainable. … Arguments that the relief should have been tailored differently, or could have been more robust, are misdirected. 'Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'

8
DEFENDANT'S OPPOSITION TO OBJECTORS' MOTION TO DECERTIFY　　　　　Master File No. C05-3580 JF
OR, IN THE ALTERNATIVE, DISQUALIFY CLASS COUNSEL

1 | *Id.* at *4 (quoting *Hanlon*, 150 F.3d at 1027).

2 |     The rulings in *Ferrero* and *Quaker Oats* support final approval of the settlement here, which
3 | offers meaningful injunctive relief in exchange for relatively weak claims.  (*See* Dkt. No. 287 at
4 | pp. 2-3, 11-12.)

### III.   CONCLUSION

The Objectors have failed to provide any factual or legal basis for their request to decertify the settlement class and/or disqualify class counsel.  Accordingly, HP respectfully requests that the Court deny the Objectors' Motion and grant final approval to the parties' class settlement.

Dated:  August 15, 2014                      GIBSON, DUNN & CRUTCHER LLP

                                                      /s/ Samuel G. Liversidge*
                                           Samuel G. Liversidge
                                           Attorneys for Defendant Hewlett-Packard Company

*I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

**DECLARATION OF SAMUEL G. LIVERSIDGE**

I, Samuel G. Liversidge, hereby declare as follows:

1. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys principally responsible for representing Defendant Hewlett-Packard Company ("HP") in this matter. I am familiar with the claims against HP in the above-referenced litigation, and the terms of the settlement in this litigation set forth in the parties' Stipulation of Settlement, as amended by the parties' Amendment to Stipulation of Settlement filed on January 7, 2014 (Dkt. No. 330-1 at pp. 4-7). I provide this Declaration in support of HP's Opposition to the Objectors' Motion to Decertify the Class or, in the Alternative, Disqualify Class Counsel. I have personal knowledge of the facts stated herein, and if called upon could and would competently testify to those facts.

2. On behalf of HP, I was actively involved in the parties' negotiations leading up to the settlement of these consolidated actions (*In re: HP Inkjet Printer Litigation*, Case No. C05-3580 (the "*Ciolino*" action), *Rich v. Hewlett-Packard Company*. Case No. C06-03361 (the "*Rich*" action), and *Blennis v. Hewlett-Packard Company*, Case No. C07-00333 (the "*Blennis*" action). The parties vigorously litigated these actions for more than five years, including several motions for class certification and summary judgment, extensive discovery (including multiple depositions, written discovery requests and responses, and thousands of documents produced), and numerous contested hearings before this Court. The parties engaged in several settlement discussions before reaching a final resolution. The negotiations included multiple mediation sessions and conference calls with three respected mediators—the Hon. Daniel Weinstein (Ret.), the Hon. James L. Warren (Ret.), and Alexander S. Polsky, Esq. During one of the in-person sessions, an HP engineer and an expert retained by plaintiffs gave presentations on the technology at issue. Judge Warren described the negotiations as "long and arduous" and stated that "[a]ll counsel vigorously asserted their positions and negotiated in good-faith and at arm's-length to reach an appropriate compromise for the class." (Dkt. No. 269, ¶ 5.)

3. The parties filed the Stipulation of Settlement and all supporting documents in support of their motion for preliminary approval in August and September 2010. (*See* Dkt Nos. 252-258.)

4. All of the terms of the parties' settlement of these consolidated actions are set forth in

1   the Stipulation of Settlement dated August 26, 2010 (Dkt. No. 253-2), and the parties' Amendment to
2   Stipulation of Settlement dated January 7, 2014 (Dkt. No. 329-1). The parties filed their final
3   approval papers in January 2011 (Dkt. Nos. 267, 271-272), and again following the Ninth Circuit's
4   remand in January 2014 (Dkt. Nos. 329-334). Every agreement between the parties has been
5   disclosed to this Court. There were no "side deals," promises, negotiations, or agreements of any
6   kind with Plaintiffs' counsel related in any way to the settlement in this case that have been withheld
7   from the Court. In particular, at no point in time did any of the parties discuss the litigation captioned
8   *In re Hewlett-Packard Company Shareholder Derivative Litig.*, Case No. C-12-6003-CRB (N.D.
9   Cal.) ("*Autonomy*") in connection with their settlement of the *Ciolino*, *Rich*, and *Blennis* actions. Nor
10  could they have done so, because the settlement in these consolidated actions predated the *Autonomy*
11  matter by several years. Nor was any agreement to settle the *Autonomy* matter in any way related to
12  the settlement of the *Ciolino*, *Rich*, and *Blennis* actions.

13  5.   Following the Ninth Circuit's opinion in the appeal of the final approval order, the
14  parties decided to amend the Stipulation of Settlement and remove the second sentence of
15  paragraph 44 (which read, "HP does not oppose, and will not encourage or assist a third party in
16  opposing, Class Counsel's request for attorneys' fees, costs and expenses up to Two Million Nine
17  Hundred Thousand Dollars ($2,900,000.00), nor does HP contest the reasonableness of the
18  amount."). This amendment to the Stipulation of Settlement had nothing to do with *Autonomy* or any
19  other matter. Instead, the parties deleted this provision because it had received unwarranted attention
20  by the Objectors and the parties wanted to avoid further baseless assertions of "collusion" by
21  Objectors and their counsel.

22  6.   As set forth in the parties' Stipulation of Settlement, HP has vigorously denied and
23  continues to vigorously deny all of the claims and contentions alleged in the *Ciolino*, *Rich*, and
24  *Blennis* actions, it denies any wrongdoing and denies any liability to Plaintiffs or any member of the
25  putative classes, and it disputes that Plaintiffs would be able to certify any class if they chose to
26  litigate their claims. However, HP has decided to settle these lawsuits given the risks and potential
27  costs of continued litigation.
28

1  I declare under penalty of perjury that the foregoing is true and correct to the best of my
2  knowledge, information and belief.  Executed on August 15, 2014, in Los Angeles, California.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Samuel G. Liversidge*

*I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

**DECLARATION OF CHRISTOPHER CHORBA**

I, Christopher Chorba, hereby declare as follows:

1. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys principally responsible for representing Defendant Hewlett-Packard Company ("HP") in this matter. I am familiar with the claims against HP in the above-referenced litigation, and the terms of the settlement in this litigation set forth in the parties' Stipulation of Settlement, as amended by the parties' Amendment to Stipulation of Settlement filed on January 7, 2014 (Dkt. No. 330-1 at pp. 4-7). I provide this Declaration in support of HP's Opposition to the Objectors' Motion to Decertify the Class or, in the Alternative, Disqualify Class Counsel. I have personal knowledge of the facts stated herein, and if called upon could and would competently testify to those facts.

2. On behalf of HP, I was actively involved in the parties' negotiations leading up to the settlement of these consolidated actions (*In re: HP Inkjet Printer Litigation*, Case No. C05-3580 (the "*Ciolino*" action), *Rich v. Hewlett-Packard Company*. Case No. C06-03361 (the "*Rich*" action), and *Blennis v. Hewlett-Packard Company*, Case No. C07-00333 (the "*Blennis*" action). The parties vigorously litigated these actions for more than five years, including several motions for class certification and summary judgment, extensive discovery (including multiple depositions, written discovery requests and responses, and thousands of documents produced), and numerous contested hearings before this Court. The parties engaged in several settlement discussions before reaching a final resolution. The negotiations included multiple mediation sessions and conference calls with three respected mediators—the Hon. Daniel Weinstein (Ret.), the Hon. James L. Warren (Ret.), and Alexander S. Polsky, Esq. During one of the in-person sessions, an HP engineer and an expert retained by plaintiffs gave presentations on the technology at issue. Judge Warren described the negotiations as "long and arduous" and stated that "[a]ll counsel vigorously asserted their positions and negotiated in good-faith and at arm's-length to reach an appropriate compromise for the class." (Dkt. No. 269, ¶ 5.)

3. The parties filed the Stipulation of Settlement and all supporting documents in support of their motion for preliminary approval in August and September 2010. (*See* Dkt Nos. 252-258.)

4. All of the terms of the parties' settlement of these consolidated actions are set forth in

4

DEFENDANT'S OPPOSITION TO OBJECTORS' MOTION TO DECERTIFY   Master File No. C05-3580 JF
OR, IN THE ALTERNATIVE, DISQUALIFY CLASS COUNSEL

1  the Stipulation of Settlement dated August 26, 2010 (Dkt. No. 253-2), and the parties' Amendment to
2  Stipulation of Settlement dated January 7, 2014 (Dkt. No. 329-1).  The parties filed their final
3  approval papers in January 2011 (Dkt. Nos. 267, 271-272), and again following the Ninth Circuit's
4  remand in January 2014 (Dkt. Nos. 329-334).  Every agreement between the parties has been
5  disclosed to this Court.  There were no "side deals," promises, negotiations, or agreements of any
6  kind with Plaintiffs' counsel related in any way to the settlement in this case that have been withheld
7  from the Court.  In particular, at no point in time did any of the parties discuss the litigation captioned
8  *In re Hewlett-Packard Company Shareholder Derivative Litig.*, Case No. C-12-6003-CRB (N.D.
9  Cal.) ("*Autonomy*") in connection with their settlement of the *Ciolino*, *Rich*, and *Blennis* actions.  Nor
10  could they have done so, because the settlement in these consolidated actions predated the *Autonomy*
11  matter by several years.  Nor was any agreement to settle the *Autonomy* matter in any way related to
12  the settlement of the *Ciolino*, *Rich*, and *Blennis* actions.

13       5.     Following the Ninth Circuit's opinion in the appeal of the final approval order, the
14  parties decided to amend the Stipulation of Settlement and remove the second sentence of
15  paragraph 44 (which read, "HP does not oppose, and will not encourage or assist a third party in
16  opposing, Class Counsel's request for attorneys' fees, costs and expenses up to Two Million Nine
17  Hundred Thousand Dollars ($2,900,000.00), nor does HP contest the reasonableness of the
18  amount.").  This amendment to the Stipulation of Settlement had nothing to do with *Autonomy* or any
19  other matter.  Instead, the parties deleted this provision because it had received unwarranted attention
20  by the Objectors and the parties wanted to avoid further baseless assertions of "collusion" by
21  Objectors and their counsel.

22       6.     As set forth in the parties' Stipulation of Settlement, HP has vigorously denied and
23  continues to vigorously deny all of the claims and contentions alleged in the *Ciolino*, *Rich*, and
24  *Blennis* actions, it denies any wrongdoing and denies any liability to Plaintiffs or any member of the
25  putative classes, and it disputes that Plaintiffs would be able to certify any class if they chose to
26  litigate their claims.  However, HP has decided to settle these lawsuits given the risks and potential
27  costs of continued litigation.

28

1  I declare under penalty of perjury that the foregoing is true and correct to the best of my
2  knowledge, information and belief.  Executed on August 15, 2014, in Los Angeles, California.

        /s/ Christopher Chorba*

*I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

6

DEFENDANT'S OPPOSITION TO OBJECTORS' MOTION TO DECERTIFY
OR, IN THE ALTERNATIVE, DISQUALIFY CLASS COUNSEL

Master File No. C05-3580 JF

SAMUEL G. LIVERSIDGE (SBN 180578)
SLiversidge@gibsondunn.com
CHRISTOPHER CHORBA (SBN 216692)
CChorba@gibsondunn.com
ZATHRINA PEREZ (SBN 266881)
ZPerez@gibsondunn.com
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant,
HEWLETT-PACKARD COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: HP INKJET PRINTER LITIGATION | Master File No. C05-3580 JF |
| This Documents Relates To:<br><br>All Actions | **CERTIFICATE OF SERVICE** |

**CERTIFICATE OF SERVICE**

# CERTIFICATE OF SERVICE

I, Zathrina Perez, declare as follows:

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and am not a party to this action; my business address is the Law Offices of Gibson Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California, 90071, in said County and State.

I hereby certify that on August 15, 2014, the following documents were e-filed using the United States District Court, Northern District of California's CM/ECF website, thereby serving all those who are registered for CM/ECF Notice of Electronic Filing service.

I further certify that on this day, the following documents were served in the manner described below.

**DEFENDANT HEWLETT-PACKARD COMPANY'S OPPOSITION TO OBJECTORS' MOTION TO DECERTIFY THE CLASS OR, IN THE ALTERNATIVE, DISQUALIFY CLASS COUNSEL; SUPPORTING DECLARATIONS OF SAMUEL G. LIVERSIDGE AND CHRISTOPHER CHORBA**

✓ **VIA FIRST CLASS MAIL**:  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing.  Following that practice, I placed a true copy of the aforementioned document(s) in a sealed envelope, addressed to each addressee, respectively, as specified below.  The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service on that same day in the ordinary course of business.

| | |
|---|---|
| Lori Singer Meyer<br>8016 Lewinsville Road<br>McLean, VA  22102 | *Objector* |
| Sam P. Cannata<br>9555 Vista Way, No. 200<br>Cleveland, OH  44125 | *Objector* |
| Christina Jean Smith<br>Kantor & Kantor LLP<br>19839 Nordhoff Street<br>Northridge, CA  91324 | |

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.  Executed at Los Angeles, California on August 15, 2014.

/s/ Zathrina Perez
Zathrina Perez

101750300_1.DOC.DOC

CERTIFICATE OF SERVICE