THEODORE H. FRANK (SBN 196332)
    tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848

Attorney for Objectors Theodore H. Frank and Kimberly Schratwieser

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re HP Inkjet Printer Litigation | Case No. C-05-3580 JF (PVT) |
| | **CLASS ACTION** |
| Theodore H. Frank and Kimberly Schratwieser, | **REPLY IN SUPPORT OF MOTION FOR DECERTIFICATION OF CLASS, OR, IN THE ALTERNATIVE, DISQUALIFICATION OF COTCHETT, PITRE & MCCARTHY, LLP** |
| *Objectors.* | |
| | Judge:     Jeremy Fogel<br>Date:       September 5, 2014<br>Time:      2:00 p.m.<br>Courtroom: 3 – Fifth Floor |

The issue to be decided by Schratwieser's motion (Dkt. 338) is whether "Cal. R. Prof. Conduct 3-310 require[s] disqualification of class counsel that has signed an agreement to represent the defendant." HP's two sets of attorneys filed two responses to Schratwieser's motion at Dkt. 341 and Dkt. 342. Neither HP's more-recently-retained attorneys (class counsel Cotchett Pitre) nor HP's other, lower-paid, attorneys (Gibson Dunn) discuss the legal issue Schratwieser's motion raises. Not only do HP's two sets of attorneys fail to identify a single time in American legal history that a defendant's attorney has been permitted to represent a class suing that defendant, and not only do they fail to identify a single time in California legal history where a violation of Rule 3-310 through concurrent adverse representation has not resulted in disqualification, but they fail to mention the California Rules of Professional Conduct entirely.

Everything else HP's two sets of attorneys argue is a distraction from the fundamental point of black-letter law, uncontroversial and true in every American jurisdiction: attorneys may not, under any circumstances, simultaneously represent plaintiffs and defendants. This principle holds even when the second retainer is for work on "a matter *wholly unrelated* to the one for which counsel was [initially] retained." *Flatt v. Superior Court*, 885 P.2d 950 (Cal. 1994). This is true in the ordinary course of representation, but it's especially true in the class action context, when a court is required to give special scrutiny to protect the relationship between class counsel and absent class members. *Eubank v. Pella Corp.*, 753 F.3d 718, 720-21 (7th Cir. 2014); *Rodriguez v. West. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("The responsibility of class counsel to absent class members who control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.") (internal quotations omitted). (Remarkably, HP's two sets of attorneys cannot even so much as demonstrate any evidence that the named plaintiffs have consented to Cotchett's representation of HP—but even if they had, all the named plaintiffs could legally consent to is Cotchett's withdrawal from this case. But Schratwieser is skeptical that the named plaintiffs are even aware of this motion.)

Case No. C-05-3580 JF (PVT)      1
REPLY IN SUPPORT OF MOTION FOR DECERTIFICATION OF CLASS, OR, IN THE ALTERNATIVE, DISQUALIFICATION OF COTCHETT, PITRE & MCCARTHY, LLP – PROOF OF SERVICE

By itself, the Rule 3-310 violation requires disqualification and class decertification. HP's two sets of attorneys do not dispute that class counsel signed a retainer agreement with HP while this case was live before this Court. HP's two sets of attorneys, for some reason, focus instead on Schratwieser's other independent arguments for denying settlement approval. But even there they are wrong.

## I. Lead Counsel's conflict of interest requires disqualification under California law.

HP's two sets of attorneys do not dispute that Cal. R. Prof. Conduct 3-310 precludes attorneys from simultaneously representing HP and a class suing HP. They do not dispute that California law applies in this circumstance. They do not dispute that the Cotchett firm has filed motion papers that will eventually require HP, upon penalty of contempt, to retain the Cotchett firm to represent HP in a remarkably lucrative retainer agreement that guarantees $18 million in payment, and will likely pay $38 million or more—a retainer agreement that HP's other attorneys in this case, Gibson Dunn, surely envy. They do not dispute that the California Supreme Court requires disqualification in such an instance. With no parts of the syllogism challenged, the inquiry is at an end: disqualification is required as a matter of law.

The red herrings introduced do not change the analysis.

The fact that there is a proposed settlement agreement in this case pending approval (Dkt. 341 at 10) does not change the fact that class counsel is representing two adverse parties. *First*, if settlement approval is rejected, the class litigation against HP will continue, but the class will be represented by HP's attorneys. *Second*, if the settlement is approved, there is still potential adversity over settlement administration. What if HP refuses to honor the coupons or violates the injunction? The class will have no attorneys able to enforce the settlement, because class counsel will be ethically precluded from asking this Court to hold HP in contempt. Class counsel's representative duties to class continue post-settlement approval, and the conflict of interest here impedes discharging those duties.

HP's $38-million attorneys, Cotchett Pitre, argue that class member Schratwieser does not have standing because she is not their client. Dkt. 341 at 7-8. Both parts of that argument are simply incorrect. Absent class members are still clients and in an agency relationship with class counsel. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1327-28 (9th Cir. 1999). Even where an objecting class member unsuccessfully moves for disqualification, no one disputes that the objector has standing to do so. *E.g., White v. Experian Info. Solutions*, 2014 U.S. Dist. LEXIS 12354 (C.D. Cal. Jan. 21, 2014); *see also Eubank v. Pella Corp.*, 753 F.3d 718, 729 (7th Cir. 2014) (calling standing argument "frivolous" and disqualifying class counsel). None of the cases HP's $38-million attorneys cite refuse to entertain an absent class member's motion to disqualify because he or she is not a "client." Under HP's $38-million attorneys' argument, *no one* has standing to challenge their violation of the Rules of Professional Conduct, because as soon as a class member objects to the violation, they cease to be a client. That's too clever by half. (It's also remarkable chutzpah for attorneys who negotiated a worthless self-dealing settlement that paid themselves millions and have agreed to represent this case's defendant to be accusing Schratwieser of being "adverse to the class.")

Indeed, the entire standing argument is bogus. Even **defendants** have standing to request disqualification of an inappropriate class counsel. *E.g., Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App. 4th 1 (1997); *see also Moreno v. AutoZone, Inc.*, No. 05-04432, 2007 U.S. Dist. LEXIS 98250, 2007 WL 4287517 (N.D. Cal. Dec. 5, 2007); *Del Campo v. Mealing*, 2011 U.S. Dist. LEXIS 158019, at *21-*22 (N.D. Cal. Sept. 29, 2011) (specifically rejecting a challenge to defendants' standing to bring disqualification motion).

Schratwieser, as a class member objecting to settlement approval, has standing to raise any breach of fiduciary duty; indeed, class members objecting to settlement approval have the standing to assert any ground for settlement rejection. *See, e.g., Radcliffe v. Experian Info Solutions*, 715 F.3d 1157 (9th Cir. 2013); *Eubank*, 753 F.3d 718; *Rodriguez*, 563 F.3d 948; *Lobatz v. U.S. West Cellular of Cal., Inc*, 222 F.3d 1142, 1147

(9th Cir. 2000); *see also Martin v. Blessing*, 134 S. Ct. 402, 404-05 (2013) (Alito, J., respecting the denial of certiorari) (class members "unquestionably ha[ve] a legitimate interest in ensuring that class counsel is appointed in a lawful manner."). The blatant Rule 23(g)(4) violation resulting from the blatant Rule 3-310 violation is one such ground for settlement rejection.

HP's $38-million attorneys' reliance on *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*. (Dkt. 341 at 8) is misplaced. "The fiduciary relationship existing between lawyer and client extends to preliminary consultations by a prospective client with a view to retention of lawyer, although actual employment does not result … Consequently, a formal retainer agreement is not required before attorneys acquire fiduciary obligations of loyalty and confidentiality, which begin when attorney-client discussions proceed beyond initial or peripheral contacts." 980 P.2d 371, 20 Cal. 4th 1135, 1147-1148 (1999). And, in any event, even if Cotchett Pitre were correct that they have not actually begun an attorney-client relationship until the *HP-Autonomy* court ratifies the settlement agreement (an admittedly dicey proposition given that that settlement violates Fed. R. Civ. Proc. 23.1(a)), they still lose. HP has entered into a binding (if contingent) commitment to retain Cotchett Pitre and Cotchett Pitre made a motion to a federal district court to start the process to *order* HP, under penalty of contempt, to comply with that binding commitment. No court has ever held that attorneys can evade Rule 3-310 by negotiating a "contingent" retainer agreement with a litigation adversary to take effect at a later date. Cotchett Pitre has not renounced the $38-million retainer, so their argument is moot: they continue to seek to be HP's attorneys, and this is itself a Rule 3-310 violation and breach of the duty of loyalty.

Cotchett Pitre's argument suffers from its focus on confidentiality of information. That's aiming at the wrong problem. Schratwieser's issue is with respect to the

> related but distinct fundamental value of our legal system is the attorney's obligation of loyalty. Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. The

> effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship. Therefore, if an attorney—or more likely a law firm—simultaneously represents clients who have conflicting interests, a more stringent *per se* rule of disqualification applies. With few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other.
>
> The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation. Such patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences. However, the attorney's actual intention and motives are immaterial, and the rule of automatic disqualification applies. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but also to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile conflicting interests, rather than fully pursuing their clients' rights. The loyalty the attorney owes one client cannot be allowed to compromise the duty owed another.

*SpeeDee Oil Change*, 980 P.2d at 824-25 (internal quotations and citations omitted).

HP's $38-million attorneys protest that it is permissible to simultaneously represent a shareholder class action and plaintiffs in a derivative suit. Dkt. 341 at 8 n.4. So what? Schratwieser doesn't contend that the derivative suit violates Rule 3-310. Schratwieser's complaint is that Cotchett Pitre (including the firm's attorneys in this case) are attempting—and have not stopped attempting—to sign a retainer agreement with ***HP***.

Rule 3-310 requires disqualification.

II.   **Lead Counsel's conflict of interest requires class decertification under Fed. R. Civ. Proc. 23(g).**

HP's $38-million attorneys argue that because the provisional class certification happened before the Autonomy litigation began in 2012 (or when the conflict arose in

2014 when Cotchett Pitre signed a retainer agreement with the defendant in this case), the class cannot be decertified. Dkt. 341 at 8-9. The argument is frivolous. Class certification is always subject to review before final judgment if circumstances change. Fed. R. Civ. Proc. 23(C)(1)(c). The "burden of showing that class litigation is appropriate generally remains on the plaintiff at all times during litigation." *White v. NFL*, -- F.3d --, 2014 U.S. App. LEXIS 11623 (8th Cir. Jun. 20, 2014). "A district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *accord Cummings v. Connell,* 316 F.3d 886, 896 (9th Cir. 2003*); see also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 11 (1978) (court's class certification order "inherently tentative"); *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982) (same).

Cotchett Pitre's co-counsel argues in the alternative that this Court can disqualify Cotchett Pitre without decertifying the entire class. Dkt. 341 at 9. But their argument depends on a misrepresentation of *Eubank*, which disqualified both the law firm with the direct conflict and all of the class representatives that failed to speak out and acquiesced in the conflict in favor of the objecting class representatives and their lawyers. 753 F.3d at 729. The co-counsel law firms ignore that they have "a fiduciary duty to the class as a whole and it includes reporting potential conflict issues to the district court." *Radcliffe*, 715 F.3d at 1167 (quoting *Rodriguez I*, 563 F.3d at 948). That obligation was breached, and disqualification is required. (If the Court nevertheless disqualifies Cotchett Pitre only, it should allocate any Rule 23(h) award in its order so that the other law firms neither receive a windfall from Cotchett Pitre's absence nor make a side payment to Cotchett Pitre.)

The class counsel cannot meet the Rule 23(g)(4) adequacy standard, and the class must be decertified.

III. **The Autonomy side agreement between HP and Cotchett suggests that the "clear sailing" abrogation was a sham.**

HP's $38-million attorneys, Cotchett Pitre, filed a motion for attorneys' fees on January 7, 2014. Dkt. 329. That motion asked for a Rule 23(h) award that plainly contravened the law of the case and Ninth Circuit precedent. **But HP never filed an opposition to their attorneys receiving an excessive $2.1 million Rule 23(h) award** by the January 21 deadline required by N.D. Cal. Loc. R. 7-3(a). The failure to do so means that any arguments HP had against the Rule 23(h) award were waived, even if submitted in a separate document that did not comply with Rule 7-3. *E.g.*, *Ramirez v. Ghilotti Bros., Inc.*, 941 F. Supp. 2d 1197, 1205 n.5 (N.D. Cal. 2013); *see also id.* at 1210 n.7 (citing long list of cases regarding waiver from failure to oppose a motion).

HP's *only* written opposition to the Rule 23(h) award was a single throwaway sentence in an untimely February 6 filing *responding to Schratwieser's objection*—and it only **suggested** reducing fees in the alternative ("the Court could consider awarding fees in this amount"), without citing a single case. Dkt. 334 at 9. Even that pathetic opposition asked for HP to surrender more in fees that Ninth Circuit law required and Schratwieser argued in the alternative: Schratwieser asked the Court to award **no more than** $500,000 **total** fees and expenses. *See* Dkt. 332 at ¶ 3, citing *Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012) (using the total of fees and expenses to calculate compliance with the 25% benchmark). But HP's lower-paid attorneys asked the Court to award more than twice that to HP's Autonomy attorneys, $500,000 in fees plus another $600,000 in expenses—a request that it repeated in the fairness hearing.

HP's two sets of attorneys put a lot of weight on that single throwaway sentence filed in a different brief two weeks after the Rule 7-3(a) deadline and nine days after the Rule 7-3(c) deadline for reply briefs. But even if it had complied with Rule 7-3, the single-sentence argument was itself a waiver. *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 857 n.9 (9th Cir. 2012); *Brooks v. Gomez*, 2013 U.S. Dist. LEXIS 16976, 2013 WL 496339 at *7 (N.D. Cal., Feb. 7, 2013) (citing *Indep. Towers of Wash. v. Wash.*, 350 F.3d

925, 929 (9th Cir. 2003)). Class counsel contemporaneously felt so little threatened by the HP argument (which itself undermined Schratwieser's argument by misstating it) that they never moved to strike the brief for violating Rule 7-3(a) and Rule 7-3(c), though they seek to press Rule 7-3(d) against Schratwieser for pointing out that *Eubank* requires settlement rejection unless the reversionary kicker is deleted.

HP's two sets of attorneys accuse Schratwieser of making collusion allegations in bad faith.[1] Schratwieser's accusations are hardly baseless: there is an agreement ***in writing*** that HP will retain class counsel and pay them millions of dollars. We can also draw an inference from the fact that HP claims to oppose a motion for class decertification! Why is HP paying Gibson Dunn lawyers to file briefing litigating for HP's Autonomy lawyers to receive more of HP's money when if Schratwieser prevails upon her motion, it will be class counsel that is liable to the class instead of HP?

That's the not the only inexplicable conduct from Gibson Dunn in this case. HP may not think their other attorneys, Gibson Dunn, are worthy of the lucrative compensation and retainers they lavish upon Cotchett Pitre, but Schratwieser begs to differ: Gibson Dunn is one of the finest firms in the United States. Gibson Dunn does not commit such bald waivers out of incompetence or neglect. The Court should inquire whether ever in its history, Gibson Dunn failed to file papers opposing a demand that one

---

[1] HP's Autonomy attorneys' allegation that Schratwieser is only interested in "delay" (Dkt. 341 at 10 n.5) is entirely false, and violates 9th Cir. R. 33-1(c) by purporting to disclose what happened in the confidential mediation. What is public is the fact that any delay in this case comes from (1) the parties' failure to comply with the Class Action Fairness Act; (2) their failure to "delete" the "questionable provision" of the settlement that will eventually cheat class members out of between $0.8 million and $2.4 million (*see Eubank*, 753 F.3d at 723); and (3) filing a meritless petition for rehearing and *en banc* review in the Ninth Circuit. And for all their complaints about delay, class counsel apparently wants to engage in collateral discovery in this case: *see* p. 10 n.2 below. Schratwieser notes that the parties never approached her attorney after the mandate issued to ask his opinion on how to avoid future objections, and that the parties proceeded with a settlement that ran afoul of the same issues Schratwieser previously objected to—even after intervening Ninth Circuit precedent condemned those practices.

of its clients pay $2.1 million (or even an extra $600,000) when its client did not want to pay that money and the law gave their client a sound argument for opposing. Simply put, there are two possibilities: HP had agreed (explicitly or tacitly) to clear sailing, or Gibson Dunn committed extraordinary malpractice unprecedented in the history of its firm, when, against its client's interests, it waived winning arguments that the Rule 23(h) request should be reduced by at least $1.6 million by failing to file more than a sentence opposing the request, and then weeks late. The implausibility of the latter scenario provides a good-faith basis for Schratwieser's inference. HP's "opposition" to the Rule 23(h) request is more akin to the sham litigation conduct in *Booth v. Mary Carter Paint Co.,* 202 So.2d 8 (Fla. App. 1967). Neither the Liversidge nor the Chorba declarations give any explanation why HP engaged in this litigation conduct that would be against HP's interests if there were no clear sailing or side agreement. Indeed, HP implicitly suggests that the clear sailing agreement is still in effect when they claim that this case was settled in 2010, rather than in 2013 when the clear-sailing agreement was supposedly deleted as part of new post-remand negotiations. Dkt. 342 at 2-3.

The presence of mediators is irrelevant: mediators are there to help the two parties reach agreement, not to safeguard the interests of absent class members. Moreover, the *Inkjet* mediators were not made aware of the Autonomy deal, were not aware of *Bluetooth* or *Eubank*'s condemnation of the questionable reversion provision in this case, were not involved in the supposed renegotiation of the clear-sailing clause, and were not involved in discussions (if any) relating to HP's litigation waiver.

Indeed, given that HP had yet a third set of attorneys that negotiated the Autonomy agreement with class counsel in this case, the Liversidge and Chorba declarations don't even establish lack of collusion: they have no personal knowledge of the Autonomy negotiations and whether Cotchett Pitre is permitted to bill HP additional money for Autonomy representation if their fee request is reduced here. (We might even draw an adverse inference from the fact that HP chose to submit declarations from people not in the room, rather than from the HP attorneys who did negotiate the Autonomy deal.) But

there should be no need to engage in extensive and expensive discovery to determine the extent of the abuse: this sort of conflict of loyalty is exactly why Rule 3-310 requires disqualification and class decertification.[2]

Whether there was an explicit clear sailing agreement or not, HP gave class counsel *de facto* clear sailing. It matters little whether this Court uses the subjective word "collusion" to characterize what happened: it's the objective *conduct* that requires the settlement to be struck and the class decertified, not whether or not there was an explicit backroom agreement to collude. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). This is an independent reason to reject the settlement.

## IV. If the Rule 23(e) issues are not moot, the Court should follow *Eubank*.

Plaintiffs are correct that Schratwieser included Rule 7-3(d) material in her motion instead of making a separate filing. Schratwieser did so to avoid delay that would result

---

[2] That said, on the afternoon of August 21, the day before this reply was due, class counsel served Frank and Schratwieser with abusive deposition and document requests scheduled for after this motion hearing, September 10, a day when Frank is arguing in the Eighth Circuit.  Class counsel has refused to withdraw the requests, meet and confer over them, or even respond to any of Frank's multiple attempts to communicate on the subject. Sanctions are appropriate. *First*, it is hard to imagine how these requests—including one for a list of Frank's non-profit's donors—comply with Rule 26(g), or could conceivably be relevant to the fairness of the settlement. One of the class counsel in this case, Kabateck Brown Kellner, was previously sanctioned $100,000 for serving similarly "egregious" "bullying" requests for donor lists on the Center for Class Action Fairness in 2012. *In re Classmates.com Consol. Litig.*, No. 09-CV-0045 RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012). Given that that punishment was insufficient to deter class counsel from a repeat offense, a larger sanction is appropriate here if class counsel does not withdraw the requests before the motion hearing, especially because Rule 26(g)(3) states that the court "on motion or on its own, ***must*** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both" for improper certifications of abusive discovery requests. *Second*, the discovery requests are in contempt of the stay of "proceedings" in this case that this Court ordered in October 2010. *Cf., e.g., Global Educ. Servs. v. Intuit Inc.*, 2011 U.S. Dist. LEXIS 57593 at *11 (W.D. Wash. May 27, 2011) (discovery is a type of "pre-trial proceeding").

If nothing else, the intimidation tactic demonstrates that class counsel does not believe it can win on the merits.

from an appeal of a decision that might contradict *Eubank*, and to minimize the amount of paper this Court would be confronted with, but regrets the technical rules violation. HP has repeatedly violated Rule 7-3 itself. Dkt. 334; Dkt. 337. Two wrongs don't make a right, and to comply with Rule 7-3(d) going forward, Schratwieser will not point out the multiple misstatements about *Eubank* made by HP's two sets of attorneys in their briefs, but asks the Court to decide whether to invite briefing on that decision's meaning (and those of other recent decisions) if Rule 23(e) questions are not mooted by class decertification, if it is inclined not to follow its holding against reversion agreements or settlements where class counsel attempts to .

## CONCLUSION

California law requires disqualification of Cotchett Pitre; Rule 23(g)(4) requires class decertification.

Dated: August 22, 2014

                                            Respectfully submitted,

                                            /s/ Theodore H. Frank
                                            Theodore H. Frank
                                            **CENTER FOR CLASS ACTION FAIRNESS**
                                            1718 M Street NW, No. 236
                                            Washington, DC 20036
                                            (703) 203-3848
                                            Attorney for Objectors Theodore H. Frank and Kimberly Schratwieser

PROOF OF SERVICE

I declare that:

I am employed in the District of Columbia.  I am over the age of 18 years; my office mailing address is 1718 M Street NW, No. 236, Washington, DC 20036.

On August 22, 2014, I served the attached motion, memorandum, proposed order, and supporting declaration.

  X   By ECF.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 22, 2014.

/s/ *Theodore H. Frank*
Theodore H. Frank